IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AKIACHAK NATIVE COMMUNITY, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| THE INTERIOR, et al. ) | NO. 1:06-cv-00969 (RWR) |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF AKIACHAK, ET AL.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO FEDERAL DEFENDANTS'
MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)**

Plaintiff Tribes Akiachak et al., ("Plaintiffs") respectfully request that the Court deny Defendants' motion to transfer this case to the United States District Court for the District of Alaska. Because the only issue in this case is whether the federal government complied with federal law, this Court is an appropriate venue and transferring this case to the Alaska District Court would not serve the interest of justice or the parties.

**STATEMENT OF THE CASE**

At issue in this case is whether the United States Department of the Interior and Secretary Kempthorne ("Defendants") violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2) and the Indian Reorganization Act ("IRA"), 25 U.S.C. § 476(f) & (g), by adopting a regulatory prohibition to the acquisition of lands in trust by Alaska Tribes and individuals. See 25 C.F.R. Part 151. That regulation sets forth the purpose and scope of the regulations

governing trust land acquisitions and states in relevant part, "[t]hese regulations do not cover the acquisition of land in trust status in the State of Alaska, except the acquisitions for the Metlakatla Indian Community of the Annette Island Reserve or its members." Id.

Sections 476(f) and (g) of the IRA expressly prohibit the agency from promulgating regulations pursuant to the IRA that "diminish[] the privileges and immunities available to the Indian tribe relative to the privileges and immunities available to other federally recognized Tribes by virtue of their status as Indian Tribes." See 25 U.S.C. § 476(f) & (g). Thus, Part 151.1's express exclusion of only Alaska Tribes from the land-into-trust regulations is in direct violation of the IRA's privileges and immunities clause. Id. By this exclusion the Secretary's regulation has by administrative fiat eliminated the protections and opportunities that Alaska Tribes are entitled to under the IRA. Plaintiffs challenge the exclusion of Alaska Tribes (other than Metlakatla) from the scope of the regulations, and the resulting bar on the acquisition of trust title to land in Alaska, as arbitrary, capricious, an abuse of discretion, unconstitutional and otherwise contrary to law.

## FACTUAL AND STATUTORY BACKGROUND

Congress passed the Indian Reorganization Act in 1934, (Act of June 18, 1934, 48 Stat. 984, codified as 25 U.S.C. §§ 461-479) to protect the land base of Tribes, and to permit Tribes to set up legal structures that would advance tribal self-government. See Morton v. Mancari, 417 U.S. 535, 542 (1974) (IRA created "machinery whereby Indian Tribes would be able to assume greater self-government, both politically and economically"). In section 5 of the IRA Congress authorized the Secretary of the Interior to take real property into trust on behalf of Tribes and individual Indians (IRA § 5, 25 U.S.C. 465), and in section 7 Congress empowered the Secretary

to declare newly acquired lands Indian "reservations" (or to add them to existing reservations). IRA § 7, 25 U.S.C. 467. As a result of a drafting oversight, the IRA as initially passed was largely inoperative in Alaska because the sections providing for the formation of constitutional governments (section 16) and awarding loans (section 10) were only applicable to Tribes residing on reservations and few reservations existed in Alaska.

The IRA was amended in 1936 to facilitate its application to the then-Territory of Alaska. Act of May 1, 1936 c. 254, 49 Stat. 1250. Section 1 of the 1936 amendments extended sections 1, 5, 7, 8, 15, 17, and 19 of the IRA to Alaska. Section 2 of the 1936 amendments placed special conditions on Secretarial creation of any new Alaska reservations. A total of six reservations were created in Alaska pursuant to the Act. See Alaska Native Management Report, Vol. 2, No. 9 (May 15, 1973) at 5.

In 1971 Congress revoked all existing reservations in Alaska (except for the Metlakatla Reserve), 43 U.S.C. § 1618(a), but did not repeal any portion of the IRA, nor any portion of the 1936 amendments. (The revocation of reservations occurred in the Alaska Native Claims Settlement Act of 1971, 43 U.S.C. §§ 1601 et seq. ("ANCSA"). Five years later, Congress repealed section 2 of the 1936 amendments (the amendments which had placed conditions on the Secretary's creation of new reservations in Alaska).[1] Congress did not repeal any other part of the IRA or the 1936 IRA Amendments, nor otherwise amend or repeal the IRA's application to Alaska.

---

[1] See Federal Land Policy Management Act (FLPMA) (Act of October 21, 1976, P.L. 94-579, 90 Stat. 2743, 2792 (1976).

In 1978, then-Associate Solicitor for Indian Affairs Thomas Fredericks wrote a memorandum ("Fredericks Opinion"), opining that ANCSA precluded the Secretary from taking land into trust for Natives in Alaska.  See Trust Land for the Natives of Venetie and Arctic Village, Memorandum to Assistant Secretary, Indian Affairs from Associate Solicitor, Indian Affairs, Thomas W. Fredericks (September 15, 1978).  Two years later the Secretary issued regulations officially implementing section 5 of the IRA through 25 C.F.R. Part 151.  These regulations were published to guide the Secretary's discretion under section 5.

The 1980 regulations expressly excluded acquisition of land by the Secretary in trust status for Tribes or Tribal members situated in Alaska (except for land acquisitions for the Metlakatla Indian Community of the Annette Island Reserve or its members).  25 C.F.R. § 151.1.  The general exclusion of Alaska Tribes and Tribal members from the Part 151 Trust Lands Regulations also prohibits the Secretary from taking land into trust for any Alaska Tribe other than the Metlakatla Indian Community.  The Department's preclusion of Alaska Tribes (other than Metlakatla) from the Part 151 Trust Lands Regulations was based upon the 1978 Fredericks Opinion.  See 64 Fed. Reg. 17578.

On October 11, 1994, Plaintiff Chilkoot Indian Association, along with other Tribes, filed a rulemaking petition with the Secretary requesting that the Secretary revise the Part 151 trust lands regulations to include lands in Alaska.  The petitioning Tribes further urged the Secretary to revoke the Fredericks Opinion as erroneous and contrary to existing law.  On January 5, 1995, the agency published notice of the Tribes' petition and requested comment.  60 Fed. Reg. 1956 (1995).  For four years the agency did nothing.

Then, on April 12, 1999, the Secretary proposed major revisions to Part 151. 64 Fed. Reg. 17574-17588. The revisions were prompted in part by a decision of the U.S. Court of Appeals for the Eighth Circuit that section 5 of the IRA was unconstitutional. See South Dakota v. Dept. of Interior, 69 F.3d 878 (8th Cir. 1995) ( IRA violated nondelegation doctrine by providing no legislative standards governing Secretary's acquisition of trust land); cert granted, judgment vacated by Dept. Of Interior v. South Dakota, 519 U.S. 919 (1996).

The notice of proposed rulemaking stated:

> These regulations have not undergone substantial revision since their adoption [in 1980]. We now propose to amend these regulations to make clearer that we will follow a process that is somewhat different, and we will apply a standard which is somewhat more demanding when a land-into-trust application involves title to lands which are located outside the boundaries of a reservation ("off-reservation lands"). In contrast, when the application involves title to lands which are located inside the boundaries of a reservation ("on-reservation lands"), we will apply a process and a standard which reflect a presumption in favor of acquisition of trust title to those lands. In addition, the proposed rule sets out the process we will use to comply with a mandate from Congress directing us to use our administrative procedures to place a particular tract of land into trust. Finally, the proposed rule establishes a framework in which a tribe without a reservation can establish a geographic boundary within which it may acquire land under the on-reservation provisions of the regulation.

64 Fed. Reg. 17574 (April 12, 1999). The notice of proposed rulemaking also addressed discretionary land acquisitions in Alaska, mentioning that the prohibition on taking land into trust in Alaska was being reexamined:

> Both the current and the proposed regulations bar the acquisition of trust title in land in Alaska, unless an application for such acquisition is presented by the Metlakatla Indian Community or one of its members. (The lands of the Metlakatla Indian Community comprise the only Native land in Alaska currently designated as a "reservation" by the federal government.) The regulatory bar to acquisition of title in trust in Alaska in the original version of these regulations was predicated on an opinion of the Associate Solicitor, Indian Affairs ("Trust Land for the Natives of Venetie and Arctic Village," September 15, 1978), which

> concluded that the Alaska Native Claims Settlement Act (ANCSA) precluded the Secretary from taking land into trust for Natives in Alaska (again, except for Metlakatla).
>
> Although that opinion has not been withdrawn or overruled, <u>we recognize that there is a credible legal argument that ANCSA did not supersede the Secretary's authority to take land into trust in Alaska under the IRA</u> (see relevant IRA provision at 25 U.S.C. 473a). See also the Petition of Chilkoot Indian Association, Native Village of Larsen Bay, Kenaitze Indian Tribe, requesting the Department to undertake a rulemaking to remove the prohibition of taking land in trust in Alaska (60 FR 1956 (1995)).

64 Fed. Reg. at 17578 (emphasis added). The notice invited comment on the proposed revision to Part 151 and requested that all comment be sent to the Office of Trust Responsibilities, Bureau of Indian Affairs, Washington, D.C. <u>Id.</u>

In addition to publishing the proposed amendments to Part 151, then-Assistant Secretary for Indian Affairs Kevin Gover hosted a public panel discussion on May 12, 1999, to provide an opportunity for interested parties to discuss their views on the Department's proposed amendments. <u>See</u> <u>Ex.</u> 1. The panel discussion took place in the South Interior Building Auditorium at 1951 Constitution Ave., N.W., Washington, D.C. <u>Id.</u> Panelists included representatives from Tribes, States, interested non-Indian groups, Congress and the Department of the Interior. <u>See</u> <u>Ex.</u> 2. Tribal representatives voiced strong opposition to the proposed changes on the twin bases that they would place undue burdens and restrictions on Tribes and were developed without tribal consultation prior to publication. <u>See</u> <u>Ex.</u> 3.

In response to overwhelming tribal criticism, the National Congress of American Indians of Washington, D.C. (NCAI) established a Tribal Leaders' Task Force on Land Recovery. <u>See</u> <u>Ex.</u> 4. The NCAI Tribal Task Force was open to all Tribes but consisted of some 30 Tribal leaders nationwide who assumed the primary role of drafting comprehensive comments on the

proposed regulations.  Id.  On July 16, 1999, NCAI sent a forceful letter to Secretary Babbitt objecting to the Department's proposed changes and demanding that they be withdrawn until tribal consultation could take place.  See Ex. 5.

On November 10, 1999, Plaintiffs submitted timely comments in response to the proposed rule once again urging the Secretary to revoke the general regulatory bar to the acquisition of trust land in Alaska.  On November 12, 1999, the NCAI Land Recovery Task Force submitted comprehensive comments on the proposed trust land regulations.  See Ex. 6.  The NCAI Task Force comments included a section urging the Secretary to lift the prohibition to trust land acquisitions in Alaska.  Id. at 22.

After extensive consultation with Tribes nationwide, on January 16, 2001 the Secretary published a final rule amending Part 151.  66 Fed. Reg. 3452-3466.  Addressing the comments submitted by the petitioning Alaska Tribes, the agency stated:

> The Solicitor has considered the comments and legal arguments submitted by Alaska Native governments and groups and by the State of Alaska and two leaders of the Alaska State Legislature on whether the 1978 Opinion accurately states the law.  <u>The Solicitor has concluded that there is substantial doubt about the validity of the conclusion reached in the 1978 Opinion . . . .  Accordingly, the Solicitor has signed a brief memorandum rescinding the 1978 Opinion</u> .

66 Fed. Reg. 3454 (emphasis added).

Notwithstanding the rescission of the Fredericks Opinion, the final rule retained in place the prohibition against the acquisition of trust lands in Alaska.  However, the final rule explained the decision to continue the prohibition as a temporary measure:

> [T]he position of the Department has long been, as a matter of law and policy, that Alaska Native lands ought not to be taken in trust.  Therefore, the Department has determined that the prohibition in the existing regulations on taking Alaska lands into trust (other than Metlakatla) ought to remain in place

> for a period of three years during which time the Department will consider the legal and policy issues involved in determining whether the Department ought to remove the prohibition on taking Alaska lands into trust.

66 Fed. Reg. 3454.

On January 20, 2001, George W. Bush was sworn in as President. That same day President Bush's Administration ordered a delay in the effective date of these and all other pending regulations in order to allow for review by the President's new appointees. On November 9, 2001, the Secretary of the Interior formally withdrew the final rule noticed at 66 Fed. Reg. 3452. See 66 Fed. Reg. 56608; see also Ex. 7. Thus, today Part 151 maintains the original 1980 general regulatory prohibition against taking lands into trust status in Alaska, notwithstanding the Department's withdrawal of the 1978 Fredericks Opinion which formed the basis for that prohibitory bar. The regulatory prohibition thus bars Plaintiffs from petitioning the Secretary to take lands into trust, and prohibits the Secretary from acting favorably on any such petition.

On May 23, 2006, Plaintiffs filed the instant action challenging the regulatory prohibition. After Plaintiffs filed this action, Alice Kavairlook filed suit in the District of Columbia, challenging the same aspect of the same regulation. See Case No. 06-CV-01405-RWR. The Kavairlook case has already been assigned to this Court, and counsel for Ms. Kavairlook have moved for consolidation with the instant action. (Plaintiffs here do not oppose such consolidation).

## ARGUMENT

**A.    This Case Should Not Be Transferred To The District Of Alaska**

The Federal Defendants seek transfer under 28 U.S.C. § 1404(a). That statute allows courts to transfer a civil action to another jurisdiction "where it might have been brought" for the "convenience of the parties and witnesses" and "in the interests of justice." Id.[2] The Court has broad discretion to determine whether to transfer a case from one forum to another under 1404(a). Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988), Shapiro, Lifschitz & Schram, P.C. v. Hazard, 24 F. Supp. 2d 66, 71 (D.D.C. 1998). A district court's decision whether to transfer a case should be assessed "according to an 'individualized, case-by case consideration of convenience and fairness.'" Ricoh, 487 U.S. 22, 29 (1988) (citing Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

In exercising its discretion, a court must balance several factors, including the private and public interests at stake and the interests of justice. See Navajo Nation v. Peabody Holding Co., Inc., 209 F. Supp. 2d 269, 279 (D.D.C. 2002) citing The Wilderness Society v. Babbitt, 104 F. Supp. 2d 10, 12 (D.D.C. 2000). Considerations of the parties' private interests include the plaintiff's and the defendant's choice of forum, where the claim arose, the location and convenience of witnesses, and the ease of access to sources of proof. See id. Public interest factors include the relative familiarity of the two forums' courts with the governing laws, the relative congestion of the courts, and the local interest in deciding local controversies at home. See id.

When weighing these factors, courts accord "paramount consideration" to the plaintiff's choice of forum. Air Line Pilots Ass'n v. Eastern Air Lines, 672 F. Supp. 525, 526 (D.D.C.

---

[2] Plaintiffs do not dispute that this action could also have been filed in the Alaska District Court.

1987). The "strong presumption in favor of the plaintiff's choice of forum . . . may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981). Accordingly, courts place a heavy burden on the moving party to demonstrate that the action must be transferred. See NAACP v. Levi, 418 F. Supp. 1109, 1113-14 (D.D.C. 1976) superceded by statute on other grounds as stated in Williams v. Glickman, 936 F. Supp. 1, 4 (D.D.C. 1996) ("plaintiffs have made what is presumed to be a considered and deliberate choice [that] should not be disturbed absent a strong showing that their chosen forum is completely inappropriate and inconvenient"); see also Int'l Bhd. of Painters and Allied Trades Union v. Best Painting and Sandblasting Co., Inc., 621 F. Supp. 906 (D.D.C. 1985).

Because Plaintiffs' choice of forum is appropriate and Defendants have not demonstrated that private and public interest factors clearly favor transfer under § 1404(a), Defendants' transfer motion should be denied.

**B.      Private Interest Factors Do Not Warrant Transfer**

   **1.      This Action Has Considerable Nexus to the District of Columbia and Plaintiffs are Entitled to Deference in Their Choice of Forum**

Indisputably this Court has venue since Defendants reside here and a substantial part of the events or omissions giving rise to the claim occurred here. See 28 U.S.C. § 1391(e). Indeed, all of the events giving rise to the flawed regulation occurred in this District. Venue here is thus unassailable.

Defendants claim that the case should nonetheless be transferred to the District of Alaska because there is no alleged connection between the ultimate relief sought by Plaintiffs and the

District of Columbia.  See Motion to Transfer at 2. This is hardly so. The ultimate relief requested by Plaintiffs is a declaration that the agency's rulemaking is in violation of 25 U.S.C. § 476(f) and (g), and otherwise arbitrary, capricious, an abuse of discretion, unconstitutional and contrary to law.  See Complaint at 14-6, ¶¶ II-IV.  With respect to Plaintiffs' relief, it cannot be denied that the defendants engaged in a national rulemaking and held public forums in the District of Columbia to discuss its rulemaking as it would effect all Tribes nationwide (see Exs. 1-2).  It received comment back from the NCAI Land Recovery Task Force based in Washington, D.C. (as well as many other Tribes across the country (see Exs. 3-6), including Plaintiffs).

     Courts in this Circuit have repeatedly affirmed that this District is an appropriate forum to determine cases involving challenges to federal agency actions such as those challenged here. See The Wilderness Society v. Babbitt, 104 F. Supp. at 13 (denying transfer of an environmental action to Alaska although federal lands at issue, a number of agency officials, and some plaintiffs were in Alaska); Concerned Rosebud Area Citizens v. Babbitt, 34 F. Supp. 2d 775, 776 (D.D.C. 1999) (declining transfer of NEPA challenge to South Dakota, the locale of subject, because the "issue in this case is solely whether the federal government complied with federal law, and that is the kind of question that is routinely and properly answered in this District and Circuit."); Nat'l Wildlife Fed'n v. Westphal, 1999 WL 1567731, 48 ERC 1639 (D.D.C. Mar. 3, 1999) (NO. CIV. A. 98-2700 (EGS) (denying transfer of NEPA and APA challenge to Mississippi, the site of the challenged project, and stating that "this court routinely reviews agency decision sought under the APA").  See Ex. 8.  In Greater Yellowstone Coalition v. Bosworth, the court denied defendants' motion to transfer to Montana a case challenging a cattle grazing permit outside

Yellowstone National Park on grounds that there was a pending suit in that forum concerning closely related issues." 180 F. Supp. 2d 124 (D.D.C. 2001).  Although many of the parties, the decision-makers, and the land covered in the challenged permit in Bosworth were located in Montana, the court ultimately determined that since the case involved the interpretation of federal statutes and because federal government officials in Washington were involved in the decision-making process, the case had "some national significance" and Washington was therefore the appropriate forum.  Id. at 129.

As in Bosworth, Plaintiffs' case involves the interpretation of federal statutes of national application, most notably the IRA and the APA.  While Defendants attempt to cast Plaintiffs' claims as implicating ANCSA (a statute unique to Alaska) ANCSA's relevance will only be considered in the context of the Secretary's defense for denying Alaska Tribes equal status as Tribes under the IRA.  Particularly given that the agency has now cast "substantial doubt about the validity of the conclusion reached in the 1978 Opinion," 66 Fed. Reg. 3454 (Jan. 16, 2001), and even withdrawn that opinion, it would appear ANCSA will now be at best, of only tangential interest.

The relevant federal statute of significance here is the IRA, an Act that has national application to all federally recognized Tribes in the United States.  As Plaintiffs noted in their rulemaking comments, section 5 of the IRA (25 U.S.C. § 465 ), which gave the Secretary authority to take tribal lands into trust pursuant to section 473, has not been repealed by ANCSA or any other statute.  The agency's "Alaska" prohibition in Part 151 is therefore only defensible if it survives under the APA and under section 476(f) and (g) of the IRA.

Plaintiffs here challenge a regulation. Associated with their regulatory challenge, one of the Plaintiffs fully participated in a national rulemaking process that was conducted pursuant to the Secretary's delegated authority under the IRA. All decisions regarding the rulemaking were made by agency officials in the District of Columbia. Accordingly, this action has a considerable nexus to the District of Columbia and Plaintiffs are entitled to deference in their choice of forum. See Bosworth, 180 F. Supp. 2d at 128 (finding nexus between the operative facts and parties to the District of Columbia sufficient to warrant deference to plaintiffs' choice of forum).

### 2. This Forum Is Equally Convenient for Parties, Witnesses, and Access to Proof

The convenience of the parties does not favor transfer to the District of Alaska. Defendants are headquartered in Washington, D.C. and are represented by counsel in the Justice Department's Environment & Natural Resources Division, which is also headquartered in this District.

The convenience of witnesses also does not warrant transfer. The convenience of witnesses is not an issue in an APA challenge to an administrative decision because the Court is limited to the administrative record in reaching its decision. The Wilderness Society, 104 F. Supp. 2d at 15; Vencor Nursing Ctrs., L.P. v. Shalala, 63 F. Supp. 2d. 1, 7 (D.D.C. 1999) (noting that convenience of witnesses was of little relevance because no evidentiary hearing or trial was foreseeable). Since this case involves a review of a regulation under the relevant statutory structure, it is highly unlikely that witness testimony will be necessary.

Additionally, although Defendants have not yet produced the administrative record, any documents located outside the District of Columbia can easily be shipped or electronically transferred to Washington.  See Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc., 196 F. Supp. 2d 21, 36 (D.D.C. 2002) ("the location of documents, given modern technology, is less important in determining the convenience of the parties") citing inter alia, Air Line Pilots Ass'n, 672 F. Supp. at 527 ("No matter where the litigation proceeds, these materials will have to be photographed and shipped to Eastern's lawyers who live and work in the District area and to ALPA's lawyers who likewise live and work in D.C.").  Accordingly, no private factors favor transfer.

**C.      Transfer Is Not in the Interest of Justice and Public Interest Considerations Do Not Favor Transfer**

   **1.   The Court's Relative Familiarity With the Governing Laws Weighs Against Transfer**

"A court's knowledge and familiarity with the issues presented can weigh for or against transfer in the interest of justice."  The Wilderness Society, 104 F. Supp. 2d at 16.  This District has already been found an appropriate forum to decide issues related to section 5 of the Indian Reorganization Act.  See City of Sault Ste. Marie, Mich. v. Andrus, 458 F. Supp. 465, 473 (D.D.C. 1978) (upholding IRA § 5); Tomac v. Norton, 193 F. Supp. 2d 182, 191 (D.D.C. 2002) (dismissing Plaintiffs' nondelegation claim to § 5 of the IRA and rejecting Federal Defendants' motion to transfer venue).  In Tomac, an organization of taxpayers against casinos challenged a decision by the Bureau of Indian Affairs to take land into trust for the Pokagon Band of Potawatomi Indians so that they could build a casino.  This Court denied transfer finding that

convenience of the witnesses was a relatively minor concern in an administrative case, and that fairness would not be served by transfer since the district court had invested a significant amount of time in the case. 193 F. Supp. 2d at 196. Because this Court is familiar with the law governing Plaintiffs' claim, there is no reason to transfer the case on these grounds. Accordingly, this factor weighs against transfer.

### 2. The Local Interest in Deciding Local Controversies at Home Does Not Outweigh Plaintiffs' Choice of Forum

Defendants argue that Plaintiffs' dispute concerns a localized interest that has potential for implicating "considerable economic and political interests, across the State of Alaska." See Motion to Transfer at 6. Defendants' argument is speculative. If the regulations are found to be unlawful under the IRA, and Alaska Tribes are thereafter allowed to participate in the trust lands application process, the State of Alaska and other interests will have ample opportunity to offer their views under the existing criteria that the Secretary applies in its consideration of all trust land applications. See 25 C.F.R. § 151.10. For purposes of this case, however, there is no local controversy in Alaska because there is no pending land-into-trust petition.

Defendants err in relying on Shawnee Tribe v. United States, 298 F. Supp. 2d 21, 26 (D.D.C. 2002). At issue in Shawnee was the disposal of a 9,065 acre military reservation near Kansas City which the Shawnee Tribe claimed was part of its reservation. Id. at 22. As such, the Shawnee requested that the property be transferred to the Secretary to be held in trust for the Tribe. Believing the United States' transfer of the property to the public to be imminent, the Shawnee brought suit in the District of Columbia to enjoin the transfer. Upon the Government's motion to transfer venue to the District Court of Kansas, the court found substantial local interest

in Kansas regarding the future division and allocation of the 9,065 acre property given that it was located "proximate to a major metropolitan center." Id. at 16. In addition, the court found transfer appropriate by virtue of the fact that a related case involving the same property was already before the District Court for Kansas. Id. at 27.

None of the factors that favored transfer in Shawnee are present here. Unlike the situation in Shawnee, there is no specific land at issue here. And, the only related case to Plaintiffs' suit is one brought by Ms. Kavairlook here in the District of Columbia and assigned to this Court. See Kavairlook v. Kempthorne (Case No. 06-CV-01405-RWR) (challenging the same aspect of the same regulation).

As discussed above, Plaintiffs challenge regulations under the IRA, a statute with national applicability. And while Plaintiffs' specific challenge to the regulations are to their illegal prohibition in Alaska, Plaintiffs seek to enforce provisions of the IRA that apply to all federally recognized Tribes, see 25 U.S.C. § 476(f) and (g). The suit is therefore of national applicability. Moreover, courts in this District regularly decide issues concerning federal statutes, applicable to Alaska. See, e.g., Wilderness Society v. Griles, 824 F.2d 4, (D.C. Cir. 1987) (involving challenge to federal policy governing the allocation of submerged lands underneath nonnavigable waters in Alaska); Natural Res. Def. Council v. Luhan, 768 F. Supp. 870 (D.D.C. 1991) (involving challenge under Alaska National Interest Lands Conservation Act and the APA to legislative environmental impact statement concerning the future management of the coastal plain of the Arctic National Wildlife Refuge in Alaska).[3]

---

[3]If Alaska has a concern with Plaintiffs' requested relief here, it can intervene in the instant action and represent its own interests. Indeed, the State of Alaska frequently litigates in

A comparison to another case where transfer was sustained is helpful.  In 2005, Alaska brought suit in the District of Columbia challenging regulations issued by the U.S. Department of the Interior and the U.S. Department of Agriculture, that preempted state authority on federal public lands.  Alaska v. Norton, No. 1:05-cv-00012 (RMC).  The Federal Defendants moved to transfer venue to the District of Alaska where law suits raising similar challenges to the same regulations were pending.  Judge Collyer found that the critical issue in determining whether the case should stay or go to Alaska was whether the two pending cases (one in Alaska and one in D.C.) raised "the same issues or issues so related that a single jurist should decide both for the sake of efficiency and to avoid conflicting orders."  6/9/2005 Order to Transfer at 7, Dkt. No. 16.  Finding that the two cases were related because resolution of each would require an interpretation of the reserved waters doctrine in the context of ANILCA and in light of Ninth Circuit precedent, the Court transferred venue to the District of Alaska to avoid conflicting rulings.  Id.  In contrast, in the instant case there is no pending related suit in Alaska to justify transfer, and the only related case is the Kavairlook case, pending here.  Since both cases are to be heard by the same court, there can be no threat of conflicting rulings.[4]

---

the District of Columbia.  See Alaska Legislative Council v. Babbitt, 15 F. Supp. 2d 19, 22 (D.D.C. 1998) (denying motion to transfer to Alaska "because plaintiffs in this action had chosen a proper forum (though not the most logical one)"); The Wilderness Society, 104 F. Supp. 2d at 18 (denying motion to transfer venue to Alaska but granting State of Alaska's motion to intervene).

[4] Unless of course this case is transferred and Kavairlook is not.

Because there is no local controversy in Alaska, Defendants fail to establish that local interests warrant transfer. Transfer is thus not in the interest of justice and public interest considerations do not favor transfer.

## CONCLUSION

This Court is the appropriate forum to decide this case. Because the Defendants cannot demonstrate that any private or public interest considerations warrant transfer, Plaintiffs respectfully request that the Court defer to Plaintiffs' choice of forum and deny Defendants' Motion to Transfer this case to the Alaska District Court.

Dated this 16th day of October, 2006.

    Respectfully submitted,

    /s/ Heather Kendall-Miller
    Heather R. Kendall-Miller
    (AK Bar # 9211084)
    NATIVE AMERICAN RIGHTS FUND
    420 L Street, Suite 505
    Anchorage, Alaska 99501
    Tel: (907) 276-0680
    Fax: (907) 276-2466
    Email: kendall@narf.org

    Attorney for Plaintiffs

Certificate of Service

The undersigned hereby certifies that on the 16 day of October, 2006, a true and correct copy of the Opposition to Motion to Transfer in the above-captioned case was served by electronic means upon the following:

Daniel G. Steele

Attorney for Defendants

                                      s/  Heather Kendall-Miller