# Comments of NCAI Land Recover Task Force

## Table of Contents

1. Introduction .................................................................. 1

2. Priority Issues ................................................................ 3

3. Purposes of Interior's Land-into-Trust Authority ........................... 4

4. Standards for Evaluation ..................................................... 6

5. Contiguous Lands ............................................................ 11

6. Former Reservation Lands and Treaty Right Lands ......................... 12

7. Burden of Providing Information for Off-Reservation Acquisitions ........ 14

8. Need for Timely Action in Interior Decision-Making ....................... 15

9. Tribal Land Acquisition Areas ............................................... 16

10. Retroactive Effect of Regulations .......................................... 17

11. Timing and Exhaustion of Agency and Federal Court Appeals ............ 18

12. Mandatory Acceptance of Title ............................................. 19

13. Protection of Confidentiality of Religious and Cultural Sites ............. 19

14. Clarify Land-into-Trust for Gaming Purposes .............................. 20

15. Federal to Federal Transfers ................................................ 20

16. Alaska Trust Lands .......................................................... 22

17. Payments in Lieu of Taxes .................................................. 24

18. Notice to Tribe When Land Goes Out of Trust ............................. 24

19. Consultation ................................................................. 25

Conclusion ...................................................................... 26

Comments of the National Congress of American Indians
Tribal Leaders Task Force on Land Recovery
on the Proposed Regulations Governing
Department of Interior's Procedures for
Taking Land into Trust for the Benefit of Tribes and Indians

November 12, 1999

1. **Introduction** - On April 12, 1999, the Department of Interior issued a proposed revision of the regulations for taking land into trust for Indian tribes and individual Indians. (64 Federal Register 17574-17588). Interior's primary authority for taking land into trust is found in Section 5 of the Indian Reorganization Act and is one of the most important powers that the agency possesses to aid the long-term recovery and survival of Indian Nations

   In general, tribal government leadership has deep differences with Interior on both the substance of the proposed regulations and the lack of consultation in proposing the regulations. The National Congress of American Indians hosted a large meeting on the regulations during the Midyear Session in July in Vancouver, BC, which featured a dialogue between tribal leaders and Assistant Secretary for Indian Affairs Kevin Gover. As a result of this meeting, the tribal leadership of NCAI passed a resolution opposing the regulations and established a Tribal Leaders' Task Force on Land Recovery to address concerns with the regulations. The Land Recovery Task Force has been open to all tribes and the following comments are the result of the considerable efforts that the members of the Task Force have made.

   The Task Force is co-chaired by Chairman Tex Hall of the Three Affiliated Tribes of the Ft. Berthold Reservation and Chairman Les Miller of the Scotts Valley Band of Pomo Indians. We have attached to these comments a statement of the history of land loss that has been experienced by each of these tribes. Technical support for the Task Force has been led by Dore Bietz of the California Indian Lands Office and NCAI staff. Many tribes have contributed and participated over the last several months in drafting proposals for amending the proposed regulations and discussing them in a succession of meetings. The leadership of the Task Force would like to express its deep appreciation to all who have contributed to the effort.

   The Task Force believes that Interior must adhere to three fundamental principles in revising its proposal and promulgating the final regulation:

   **First, the regulations must carry out the intent of Congress in Section 5 of the Indian Reorganization Act to recover land in trust status as a critical component in revitalizing tribal economic, governmental and cultural life.**

   **Second, the regulations must include clear standards regarding when lands will be taken into trust. This is an issue to which all parties – including the tribes, the state and Interior – share a fundamental interest.**

   **Third, the regulations must create accountability in the Department of Interior for consideration of appropriate factors and timely decisions on trust land applications.**

**Comments of NCAI Land Recovery Task Force**                                                                  Page 2

While the preamble to the proposed regulations indicates that Interior agrees with these principles, the Task Force believes that the language of the proposed regulations does not adequately implement these principles. In our view, the proposed regulations erect significant new and unnecessary barriers to the recovery of land for Indian tribes that, for many tribes, may ensure that they are never able to recover land sufficient to ensure economic and cultural survival. In addition, the proposed regulations do not provide clear standards for the consideration of trust land applications, nor do they address what for many tribes has the most critical issue, the lack of time frames for Interior's decisions.

As we have reviewed these regulations and the great variety of tribal land acquisition needs and circumstances, we have been struck by the variety of unintended consequences that can arise from apparently well-intended regulatory language. We understand Interior's rationale to create a process that will accommodate state and local government procedural interests, but we do not believe that the intention was to create barriers that are unrelated to state and local government's legitimate concerns. In addition, we sense that the proposed regulations were drafted with a deep awareness of a handful of controversial trust land applications, but without a sufficient context for the great variety of tribal land acquisition needs and circumstances, the vast majority of which are not controversial at all. As a result, the proposed regulations assume that conflict is the norm and create extensive mandatory procedures when a more flexible system might better serve the needs of all parties.

Finally, the proposed regulations were published without meaningful consultation or engagement with Indian tribes. While we are appreciative of the efforts that Interior has made to meet with the Task Force and with Indian tribes in general since the draft was published, we do not believe that appropriate government-to-government consultation has taken place because tribes were left out of the initial phases when the basic concepts of the proposal were under consideration. Since Interior has determined to go forward, we strongly request that Interior devote sufficient resources to reviewing the comments of all tribal governments and to the overall consideration of these vitally important and technically demanding regulations. The comments of so many tribal governments show a repeated history of land loss, the continuing economic and social disruptions caused by that land loss, and the adverse impacts that the proposed regulations would have on efforts to recover tribal land and restore tribal cultures. It is these comments that provide the most compelling argument for the continued need for recovering land into trust in fulfillment of the original purposes of the IRA.

The following comments include a listing of the our priority issues in the proposed regulations, a brief discussion of the purposes of Section 5 of the IRA, as well as the rationale for a number of our specific proposals for modifying the regulations. Attached to these comments is a complete set of specific suggestions for amending to the proposed regulations with comparison markings, as well as a copy without markings. This attachment contains many more detailed suggestions and we would urge Interior to review it carefully. Finally, these comments supercede all other drafts that may have been previously received by Interior.

**Comments of NCAI Land Recovery Task Force**　　　　　　　　　　　　　　　　Page 3

2. **Priority Issues** - Based on the three principles described above, the Task Force would urge the Department to revise a number of provisions in the proposed regulations – most significantly:

**Standards.** The regulations should include standards that a) are consistent with the purposes of the IRA, require consideration of relevant factors including the history and consequences of a tribe's land loss, b) create a presumption in favor of taking land into trust and c) establish an evidentiary standard to permit the presumption to be rebutted in appropriate situations. We propose separate standards for on-reservation (section 151.10) and off-reservation (section 151.14) acquisitions. The regulations should recognize that for many tribes the only meaningful opportunity for achieving the purposes of the IRA involve the acquisition of lands off of the reservation.

**Contiguous lands.** The regulations should recognize that acquisition of lands contiguous to a reservation or to other trust parcels is a primary vehicle for many tribes in rebuilding a viable tribal homeland. To the maximum extent possible, contiguous lands should be treated as reservation lands under the regulations.

**Former reservation and treaty rights lands.** There are certain off-reservation lands as to which a tribe today has a strong historical, cultural or other connection. A tribe's former reservation or lands where a tribe retains treaty rights are examples of lands where a tribe has a special ongoing interest. The regulations should reflect these interests by treating the location of such lands as a positive factor in the Department's consideration of a trust land application.

**Burden of providing information for off-reservation acquisitions.** The proposed regulations would create an undue burden on tribes with respect to the information required in connection with off-reservation acquisitions. Among other things, the proposed regulations would require tribes to provide information even if it is clearly not pertinent to a particular application, as well as information in the custody of other governments. The regulations should be modified to clearly separate the information required of a tribe from information that may, in appropriate circumstances, be provided by any interested party.

**The timing of Departmental decisions.** The proposed regulations should include appropriate, mandatory time frames for agency action on trust land applications. To accommodate the Department's concerns, we would support a provision authorizing the waiver of time frames in extraordinary cases – provided that the Department met with the affected tribe and developed an alternative time frame for such a case. The uniform experience of tribes around the country has been that, without time requirements, trust land applications simply languish for extended periods in the Department. The regulations must address this concern.

**Tribal Land Acquisition Areas.** The proposed regulations would authorize landless tribes to apply for approval of a Tribal Land Acquisition Area – within which lands would be evaluated under the on-reservation criteria. This useful approach should be available not just to a completely landless tribe, but also to a tribe with a clearly inadequate land base – including a tribe with an extremely small reservation, or one with only widely scattered trust parcels and no overall reservation boundary.

**Comments of NCAI Land Recovery Task Force**                                              Page 4

3. **Purposes of Interior's Land-into-Trust Authority** - The principal goal of the Indian Reorganization Act of 1934 (IRA), 25 U.S.C. §465 was to halt and reverse the abrupt decline in the economic, cultural, governmental and social well-being of Indian tribes caused by the disastrous federal policy of "allotment" and sale of reservation lands. Between the years of 1887 and 1934, the U.S. Government took more than 90 million acres from the tribes without compensation, nearly 2/3 of all reservation lands, and sold it to settlers. The IRA is comprehensive legislation for the benefit of tribes that stops the allotment of tribal lands, continues the federal trust ownership of tribal lands in perpetuity, encourages economic development, and provides a framework for the reestablishment of tribal government institutions on their own lands.

Section 5 of the IRA, 25 U.S.C. §465, provides for the recovery of the tribal land base and must be viewed in light of the IRA's overall goals of recovering from the loss of land and reestablishing tribal economic, governmental and cultural life:

> *The Secretary of the Interior is hereby authorized, in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust or otherwise restricted allotments, whether the allottee be living or deceased, for the purpose of providing land for Indians.*

Section 5 is broad legislation designed to implement the fundamental principle that all tribes in all circumstances need a tribal homeland that is adequate to support economic activity and self-determination. As noted by one of the IRA's principal authors, Congressman Howard of Nebraska, "the land was theirs under titles guaranteed by treaties and law; and when the government of the United States set up a land policy which, in effect, became a forum of legalized misappropriation of the Indian estate, the government became morally responsible for the damage that has resulted to the Indians from its faithless guardianship," and said the purpose of the IRA was "to build up Indian land holdings until there is sufficient land for all Indians who will beneficially use it."(78 Cong. Rec. 11727-11728, 1934.)

As Congressman Howard described these land reform measures:

> *Section 5 sets up a land acquisition program to provide land for Indians who have no land or insufficient land, and who can use land beneficially...*

> *I have already said that there are more than 100,000 landless Indians in America today, and in addition many of the reservations are so riddled by alienation that their economic use for Indian grazing is impossible. This program would permit the purchase of land for many bands and groups of landless Indians and would permit progress toward the consolidation of badly checkerboarded Indian reservation, as well as provide additional agricultural land to supplement stock grazing or forestry operations. Considering the magnitude of the losses of Indian land brought about by the past 50 years of incompetent Federal guardianship, the purchase program*

**Comments of NCAI Land Recovery Task Force**                                    Page 5

> *here proposed is indeed a very modest restitution; and it is moreover an investment that will many times repay itself by taking Indians off the relief and ration rolls.*

78 Cong. Rec. 11730 (1934).

> *This Congress, by adopting this bill, can make a partial restitution to the Indians for a whole century of wrongs and of broken faith, and even more important – for this bill looks not to the past but to the future – can release the creative energies of the Indians in order that they may learn to take a normal and natural place in the American community.*

78 Cong. Rec. 11731.

Of the 90 million acres of tribal land lost through the allotment process, only about 8 percent have been reacquired in trust status since the IRA was passed sixty-five years ago. Still today, many tribes have no land base and many tribes have insufficient lands to support housing and self-government. Most tribal lands will not readily support economic development. And the legacy of the allotment policy, which has deeply fractionated heirship of trust lands, means that for most tribes, far more Indian land passes out of trust than into trust each year. Section 5 clearly imposes a continuing active duty on the Secretary of Interior, as the trustee for Indian tribes, to take land into trust for the benefit of tribes until their needs for self-support and self-determination are met.

In broad terms, the proposed regulations published by Interior do not fulfill the intent of Section 5 of the IRA because they tend to favor non-Indian interests over Indians and also create an application process that will be very difficult and expensive to fulfill. The statute was enacted for the benefit of tribes, and their interests should be paramount in its interpretation and implementation. Creating unnecessarily burdensome financial and legal barriers to land reacquisition cannot fulfill the purposes of a statute intended to aid the economic, governmental and cultural recovery of Indian tribes.

The IRA reflected a fundamental shift in federal Indian policy – away from the devastating policy of allotment, in favor of a new policy of promoting the governmental, cultural and economic advancement of tribes. The regulations implementing the trust land acquisition sections of the IRA, and Interior's decisions on trust land applications, must recognize both that taking land into trust is a means to address a massive historical wrong, and that Congress has established a policy favoring the return of lands to trust status. To the extent that the rules proposed by the Department do not comport with those objectives they need to be changed, as described below.

**Comments of NCAI Land Recovery Task Force**         Page 6

4. **Standards for Evaluation** - One of the central issues in the proposed regulations is the standards for evaluation of trust land applications. The issue of standards has been the subject of considerable controversy, with certain states and others arguing that the current standards are not adequate. The Secretary has stated publicly that one of his objectives in developing proposed regulations was to address the concerns arising from the issue of standards. We feel very strongly that decisions on trust land applications must be made based on clear and appropriate standards. Basic fairness demands no less. In short, we believe that all parties share an interest in assuring that the regulations provide clearly defined standards for when lands will be taken into trust. Such standards will do much to reduce any controversy surrounding the land to trust process.

The proposed regulations do not provide clear standards under which the Secretary would exercise his discretion and balance competing interests on trust land decisions. Instead, the proposed regulations list factors for the Secretary to consider, but do not tell him what to do with such factors and retain ultimate discretion for the Secretary. We believe that tribes are entitled to have decisions that are based on clear and appropriate standards.

We also believe that the proposed criteria should incorporate the historical and policy context in which trust land decisions are made. Trust land decisions that are made today do not occur on a blank slate. The devastating loss of land that most tribes have suffered – and the long term adverse consequences of that land loss – creates an important historical backdrop to those decisions. Moreover, the fact that Congress has spoken to the problem, and through section 5 of the IRA has provided a mechanism to remedy the tribal loss of lands and rebuild tribal economic life, should provide a guiding policy principle to inform trust land decisions. Accordingly, we have suggested language to provide that these matters are considered, along with other pertinent factors, in the Secretary's consideration of trust land applications.

In addition, many tribes are attempting to recover and preserve land for protection of cultural or natural resources. Tribal concerns for protecting cultural resources should be considered paramount. In addition, tribal governments are increasingly taking an active role in protecting land for its natural resource and bio-diversity values. These are goals that are shared by the federal government and should be actively encouraged in the regulations. We have included protection of cultural and natural resources as factors weighing in favor of land acquisition.

We have suggested standards under which the Secretary, after consideration of the specified factors, would balance competing interests with respect to trust land decisions. Separate standards would apply to on-reservation and off-reservation acquisitions.

**Off-Reservation Standards** - For off-reservation acquisitions (as for on-reservation acquisitions) there must be a clear standard, and that standard must be firmly grounded in the Indian Reorganization Act. Our proposed off-reservation standard meets that test – while at the same time fairly accommodating the Department's concerns about the potential impacts of off-reservation trust land acquisitions on non-tribal governments. Under our proposed standard for off-reservation acquisitions both the benefits to the tribe as defined by the IRA and the potential collateral consequences to non-Indian governments would be weighed by the Secretary. Upon