# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
AKIACHAK NATIVE COMMUNITY    )
   et al.,    )
)
     Plaintiffs,    )
)
        v.    )    No. 1:06-cv-00969 (RWR)
)    Judge Richard W. Roberts
DEPARTMENT OF THE INTERIOR,    )
   et al.    )
)
     Defendants.    )
_____)

## DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS'
## MOTION TO TRANSFER VENUE TO THE DISTRICT OF ALASKA

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

DANIEL G. STEELE
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources
 Division
Natural Resource Section
P.O. Box 663
Washington, D.C.  20044-0482

Of Counsel:
Thomas A. Blaser
Division of Indian Affairs
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, N.W.  MS 6513
Washington, D.C.  20240

ATTORNEYS FOR DEFENDANTS

TABLE OF CONTENTS

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   I.     Plaintiffs' Choice of Forum Is Not Entitled to Much Deference . . . . . . . . . . . . . . 2

   II.    Substantial and Immediate Alaskan Local Interests Are at Stake in this
         Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   III.   Transfer to Alaska is in the Interests of Justice . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.    The Applicability of 25 U.S.C. § 476 Can and Should Properly Be
             Adjudicated in Alaska . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        B.    The Applicability of 25 C.F.R. Part 151 Can and Should Also Be
             Adjudicated in Alaska . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

   IV.   Plaintiffs' Reliance on <u>Wilderness Society</u> Lends Credence to Defendants'
         Venue Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

TABLE OF AUTHORITIES

FEDERAL CASES

Alaska v. Alaska Native Village of Venetie Tribal Government, 522 U.S. 520 (1988) . . . . . . . . 6

Armco Steel Co. v. CXS Corp., 790 F. Supp. 311(D.D.C. 1991) . . . . . . . . . . . . . . . . . . . 2, 7, 14

Carcieri v. Norton, 423 F.3d 45 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Citizen Advocates for Responsible Expansion, Inc. v. Dole, 561 F. Supp. 1238
(D.D.C. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

City of Sault Ste. Marie v. Andrus, 458 F. Supp. 465 (D.D.C. 1978) . . . . . . . . . . . . . . . . . . . 13

Consolidated Metal Products, Inc. v. American Petroleum Institute, 569 F. Supp. 773
(D.D.C. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

DeLoach v. Philip Morris Cos., 132 F. Supp. 22 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . 2

Greater Yellowstone Coalition v. Bosworth, 180 F. Supp. 2d 124 (D.D.C. 2001) . . . . . . . . 18, 19

Harris v. Republic Airlines, 699 F. Supp. 961(D.D.C. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Kafack v. Primerica Life Ins. Co., 934 F. Supp. 3 (D.D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . 13

National Wildlife Federation v. Westphal, 1999 WL 1567731 (D.D.C. 1999) . . . . . . . . . . 18, 19

Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Shawnee Tribe v. United States, 298 F. Supp. 2d 21 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . 3, 9, 12

Shivwits Band of Paiute Indians v. Utah, 428 F.3d 966 (10th Cir. 2005) . . . . . . . . . . . . . . . . . 8

South Dakota v. Department of the Interior, 423 F.3d 790 (8th Cir. 2005) . . . . . . . . . . . . . . . . 8

South Dakota v. Department of the Interior, 69 F.3d 878 (8th Cir. 2005) . . . . . . . . . . . . . . . . . 8

TOMAC v. Norton, 193 F. Supp. 2d 182 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Town of Ledyard v. United States, 1995 WL 908244 (D.D.C. 1995) . . . . . . . . . . . . . . . . . . . . . 18

<u>Trout Unlimited v. United States Dep't of Agriculture</u>, 944 F. Supp. 13 (D.D.C. 1996)
(10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Valley Community Preservation Commission v. Mineta</u>, 2002 WL 31163094
(D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Wilderness Society v. Babbitt</u>, 104 F. Supp. 2d 10 (D.D.C. 2000) . . . . . . . . . . . . . 2, 13, 14, 18

FEDERAL STATUTES

101 Stat. 1788 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

101 Stat. 1804-10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

140 Cong. Rec. S6147 (daily ed. May 19, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. 3243 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25 U.S.C. § 1300g4(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25 U.S.C. § 1725 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25 U.S.C. § 465 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10, 15, 19

25 U.S.C. § 476(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 13, 19

25 U.S.C. § 715d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25 U.S.C. § 941h . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25 U.S.C. §§ 1701-1716 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

25 U.S.C. §§ 232 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1391(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13

43 U.S.C. § 1601(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

43 U.S.C. § 1620(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

43 U.S.C. § 1636(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

43 U.S.C. §§ 1601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

43 U.S.C. §§ 1629e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

94 Stat. 2371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

94 Stat. 2444-47 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Pub. L. 100-241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Pub. L. 96-487 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

FEDERAL REGULATIONS

25 C.F.R. Part 152 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

25 C.F.R. § 151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

25 C.F.R. § 151.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9-13, 16

25 C.F.R. § 151.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

25 C.F.R. § 151.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

433 F.3d 852 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

455 U.S. 928 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

519 U.S. 919 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
AKIACHAK NATIVE COMMUNITY        )
    et al.,                                             )
                                                    )
    Plaintiffs,                                     )
                                                    )
        v.                                           )        No. 1:06-cv-00969 (RWR)
                                                    )        Judge Richard W. Roberts
DEPARTMENT OF THE INTERIOR,      )
    et al.                                             )
                                                    )
    Defendants.                                 )
_____)

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS'**
**MOTION TO TRANSFER VENUE TO THE DISTRICT OF ALASKA**

**<u>Introduction</u>**

Plaintiffs do not dispute that this case might have been brought in Alaska – a

jurisdictional prerequisite of the transfer statute, 28 U.S.C. § 1404(a).  Plaintiffs' Response Brief

at 9, n. 2 ("Pls' Response").  Plaintiffs do, however, argue that "because the only issue in this

case is whether the federal government complied with federal law," their choice of forum – the

District of Columbia – should prevail.  Pls' Response at 1.  In support of their position, Plaintiffs

contend that the action "has considerable nexus" to the District of Columbia for the following

reasons:  (1) "a substantial part of the events or omissions giving rise to the claim occurred here,"

<u>id.</u> at 10; (2) the case involves "federal statutes of national application," <u>id.</u> at 12; and (3) a

Plaintiff in this suit "fully participated in a national rulemaking process" in Washington, D.C.

commencing on April 12, 1999 to consider proposed changes to federal regulations incorporated

in 25 C.F.R. § 151, <u>id.</u> at 13.

At best, these assertions support an argument that Plaintiffs have satisfied threshold

venue prerequisites for filing suit in the District of Columbia, 28 U.S.C. § 1391(e) – which Defendants have already acknowledged – and they add no support for the retention of this case in the District of Columbia in the face of Defendants' transfer motion.  Moreover, none of the reasons why Plaintiffs seek District of Columbia venue address compelling public interest considerations in Alaska that Defendants have identified, nor a threshold precept that local controversies impacting local interests should be decided at home where the effects of a judicial decision will be felt.  Where, as here, Plaintiffs have chosen a forum that is not their home, their choice is entitled to far less deference than the choice of a home forum.  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981), r'hrg. denied, 455 U.S. 928 (1982).  Under Wilderness Society v. Babbitt, 104 F. Supp. 2d 10 (D.D.C. 2000), a case upon which Plaintiffs substantially rely, transfer to the United States District Court for the District of Alaska is wholly appropriate.

## Argument

## I.    PLAINTIFFS' CHOICE OF FORUM IS NOT ENTITLED TO MUCH DEFERENCE

While the moving party ordinarily bears the burden of making a "strong" showing in favor of transfer, when a plaintiff chooses a forum that is not its home – as here – the choice is entitled to far less deference than the choice of a home forum.  See Piper Aircraft Co., 454 U.S. at 255; DeLoach v. Philip Morris Cos., 132 F. Supp. 2d 22, 24 (D.D.C. 2000) (If the forum chosen by plaintiff is neither the place of plaintiff's residence nor the place where the operative events occurred, the court gives substantially less weight to plaintiff's preference and is likely to override plaintiff's choice.); Armco Steel Co. v. CXS Corp., 790 F. Supp. 311, 323 (D.D.C. 1991) (deference to plaintiff's choice of forum is "greatly diminished" when the events have little

-2-

connection to the chosen forum) (quoting Consolidated Metal Products, Inc. v. American Petroleum Institute, 569 F. Supp. 773, 774 (D.D.C. 1983); Trout Unlimited v. United States Dep't of Agriculture, 944 F. Supp. 13, 17 (D.D.C. 1996), appeal dismissed, 441 F.3d 1214 (10th Cir. 2006) (showing that a defendant must make in order to overcome the deference afforded to plaintiff's choice of forum "is lessened . . . where . . . transfer is sought to the forum with which plaintiffs have substantial ties and where the subject matter of the lawsuit is connected to that state"); Citizen Advocates for Responsible Expansion, Inc. v. Dole, 561 F. Supp. 1238, 1239 (D.D.C. 1983) (finding that defendant's "burden is substantially diminished where . . . transfer is sought to the forum where plaintiffs reside"); cf. Valley Community Preservation Commission v. Mineta, 2002 WL 31163094 (D.D.C. 2002).

The United States District Court's deference principles in the District of Columbia apply equally to tribal plaintiffs as they do to any non-Indian plaintiff. See Shawnee Tribe v. United States, 298 F. Supp. 2d 21, 25 (D.D.C. 2002). See also, e.g., Santee Sioux Tribe of Nebraska v. National Indian Gaming Commission, Civ. No. 99-528, Slip op. at 6-7 (D.D.C. Apr. 19, 1999) ("[W]here, as here, the plaintiff does not reside in the chosen district, and defendant seeks to transfer the case to plaintiff's home forum, the traditional deference to a plaintiff's choice of forum is substantially lessened"), Exhibit A, hereto; Cheyenne Arapaho v. Reno, Civ. No. 98-CV-065 (RMU), Slip op. at 3-4 ( D.D.C. Sept. 9, 1998) (Where the plaintiff argued, in opposing transfer of a case involving the National Indian Gaming Commission and the Department of Justice, that both agencies were headquartered in Washington, D.C., the court stated: "Under 1404(a), the court accords insignificant weight to the location of federal agencies and counsel" and, "in cases that touch the affairs of many people, there are reasons for holding the trial in their

view and reach rather than in remote parts of the country where they can learn by report only."),

Exhibit B, hereto; Mescalero-Apache Tribe v. Janet Reno and Bruce Babbitt, Civ. No. 96-115,

Slip op. at 5 (D.D.C. Feb. 5, 1996) (instructing that the court is "is to give [plaintiff's choice of

forum] significantly less deference when plaintiff files a lawsuit in a foreign forum"), Exhibit C,

hereto; Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. United

States, Civ. No. 01-1042, Slip op. at 4, 6 (D.D.C. July 11, 2001) (granting the United States'

motion to transfer the case to the plaintiff tribe's home forum in Wisconsin and stating that the

plaintiff's choice of forum held less weight "because the plaintiffs lack any connection to their

forum of choice; they do not reside here; and the forum has no particular connection to the

specific matter at hand"), Exhibit D, hereto.

      Defendants will demonstrate why, in this case, all of the foregoing diminished standards

of deference apply to the Plaintiffs' choice of forum in the District of Columbia based on

Plaintiffs' Response, which, at bottom, only relies on the broad brush of federal statutes "of

national application" and "of some national significance," Pls' Response at 12, and the fact that,

pursuant to rulemaking, the Department of the Interior ("Interior" or "Department") hosted a

public panel discussion here in 1999, see id. at 6 and Exhibit 1.  Without more, Defendants

submit that the Court should transfer venue of this case to the District of Alaska.

## II. SUBSTANTIAL AND IMMEDIATE ALASKAN LOCAL INTERESTS ARE AT STAKE IN THIS LITIGATION

      The central issue underlying this litigation is a 1980 Interior regulation that excludes the

State of Alaska from discretionary acquisitions of land in trust status for Indian tribes.  The

provision at issue, 25 C.F.R. § 151.1 [Purpose and scope.], states in relevant part, "[t]hese

regulations do not cover the acquisition of land in trust status in the State of Alaska, except

acquisitions for the Metlakatla Indian Community of the Annette Island Reserve or its members."

The regulation defines limits on Interior's application of its general discretionary authority for

acquiring land in trust for Indians pursuant to Section 5 of the Indian Reorganization Act of 1934

("IRA"), 25 U.S.C. § 465, and amendments to the Act.  It is Defendants' position that, in light of

federal legislation that post-dates the 1934 IRA and that applies only to Alaska, the Secretary

ought not take lands in trust in Alaska (except for the Metlakatla).

　　　　Plaintiffs seek both declaratory and injunctive relief.[1]  It is disingenuous for Plaintiffs to

summarily dispose of the "local interest" inquiry by asserting that "there is no local controversy

in Alaska because there is no pending land-into-trust petition," Pls' Response at 15, and that

Defendants have failed to establish local interests "[b]ecause there is no local controversy in

Alaska," id. at 18.  Plaintiffs' representation is belied by their very prayer for an injunction that

would require Interior to "accept and consider Plaintiffs' requests to have lands in Alaska taken

into trust or restricted status."  See Complaint ¶¶ 31-32, 39, 42-43, 45.

　　　　As discussed in the Federal Defendants' motion for transfer, an injunction against

---

[1]　　　　Specifically, Plaintiffs seek a judgment declaring that 25 C.F.R. Parts 151 and 152 violate
25 U.S.C. § 476(f) & (g), see Prayer for Relief I; that 25 C.F.R. Parts 151 and 152 violate due
process under the Fifth Amendment, see Prayer for Relief II; that 25 C.F.R. Parts 151 and 152 are
"arbitrary, capricious, in excess of the Secretary's authority, or otherwise contrary to law," see
Prayer for Relief III; and an injunction directing the Defendants to implement land-into-trust
procedures and to accept and consider Plaintiffs' request to have lands in Alaska taken into trust
or restricted status, see Prayer for Relief IV.  Because the Secretary of the Interior lacks a
delegation of general authority to place lands in restricted status, and consequently has not issued
regulations in order to do so, Plaintiffs' claims regarding Part 152 are without any basis in the
law.  Cf. 25 C.F.R. Part 152 (concerning, inter alia, removal of restrictions).  Accordingly,
Defendants' transfer motion papers focus on Plaintiffs' claims and prayers for relief regarding
Part 151.

Interior's policy regarding Alaska and a requirement for Interior to consider applications to place lands in trust there would place new burdens on the state and its political subdivisions, and Interior's Bureau of Indian Affairs ("BIA") in Alaska.  Alaskan private interests would be affected as well.  Plaintiffs assert that, if Interior is required to consider land-into-trust applications in Alaska, then the state and other interests will have an opportunity to offer their views during the land-into-trust process.  See Pls' Response at 15.  That is precisely the point regarding the impacts that this case may have on Alaska, and Alaska only.  If Plaintiffs obtain the relief that they seek, it would be newly incumbent upon the State of Alaska and local governments to provide information to the BIA regarding the potential jurisdictional, zoning, and tax impacts of the acquisition, in addition to engaging in environmental review procedures along with other local affected interests.  See, e.g., 25 C.F.R. § 151.10.  New burdens would be imputed to Alaska Natives as well.  For example, in the lower 48 states, Indian tribes have sometimes opposed land-into-trust applications of other Indians tribes where they assert historic connections to the same land or have other competing interests.

Further, Plaintiffs' goal of having land placed in trust would likely have other substantial consequences within Alaska:  trust land would become exempt from taxation; there would be restrictions against voluntary or involuntary alienation of the land, including against the state's exercise of eminent domain authority; and the tribal owner would be able to exercise sovereignty over the land.  The issue of tribal sovereignty in particular has previously generated significant interest and controversy in Alaska.  This has occurred, for example, with regard to tribal tax jurisdiction.  See Alaska v. Alaska Native Village of Venetie Tribal Government, 522 U.S. 520 (1988) (holding that the lack of federal superintendence over Alaska Native Claims Settlement

Act lands meant that the lands were not Indian country within 18 U.S.C. § 1151).  Indian gaming

has also been controversial.  See, e.g., Anchorage Daily News article titled "State shuts down

Native Rippie Parlor" (July 2, 2003), Exhibit E, hereto.

These are just a few examples of the substantial and immediate impacts that would be

realized in Alaska by virtue of the relief that Plaintiffs have initiated in this lawsuit.  Moreover,

the ultimate goal of Plaintiffs implicates changes to the pattern of land tenure and tribal

sovereignty throughout Alaska.

Besides tribal interests in having lands placed in trust, Native individuals in Alaska would

also seek to have individual lands placed in trust.  Already, an individual Alaska Native has

followed these tribal Plaintiffs to the District of Columbia to have her land placed in trust or

restricted status.  See Complaint filed on August 8, 2006 in Kavairlook v. Kempthorne, Case No.

1:06-cv-1405 (D.D.C.).[2]  Should the Plaintiffs in this matter establish venue in the District of

Columbia, it is reasonable to expect that other Alaska Native tribes and individuals will follow

their lead for similar relief in the District of Columbia.

## III.    TRANSFER TO ALASKA IS IN THE INTERESTS OF JUSTICE

Plaintiffs' Response has not addressed the fundamental precept in venue controversies

that "justice requires that such localized controversies be decided at home."  Citizen Advocates

for Responsible Expansion, Inc. (I-Care) v. Dole, 561 F. Supp. 1238, 1240 (D.D.C. 1983);

Armco Steel Co. v. CXS Corp., 790 F. Supp. 311, 324 (D.D.C. 1991) (the interest in having local

---

[2]    Defendants' Answer in the Kavairlook case is due for filing on November 20, 2006.
Defendants intend at this time to also seek a change of venue in that case to the District of
Alaska.

controversies decided locally is compelling); Harris v. Republic Airlines, 699 F. Supp. 961, 963 (D.D.C. 1988). It is in the interests of justice to permit the United States District Court for the District of Alaska to resolve the substantial and immediate Alaskan interests, discussed above.

Other tribes' petitions to have land placed in trust status in the lower 48 states have recently resulted in lawsuits where the lands and primary interests were located. See, e.g., South Dakota v. Department of the Interior, 69 F.3d 878 (8th Cir. 2005), cert. granted, judgment vacated, 519 U.S. 919 (1996) (South Dakota I); South Dakota v. Department of the Interior, 423 F.3d 790 (8th Cir. 2005), cert. denied, __ U.S. __, 2006 WL 1520764, 2006 U.S. LEXIS 5743 (2006) (South Dakota II); Shivwits Band of Paiute Indians v. Utah, 428 F.3d 966 (10th Cir. 2005), cert. denied, __ U.S. __, 2006 WL 622231, 2006 U.S. LEXIS 5695 (2006). In each of these lawsuits, intense local campaigns were initiated to defeat the results that would come from tribal land-into-trust petitions. In South Dakota I, local controversy included concerns that the tribe would use the subject 91-acre parcel for gaming purposes when that use was not disclosed to the public. South Dakota II, 423 F.3d at 801-02. In Shivwits Band of Paiute Indians, local controversy arose over the tribe's application to acquire land in trust for purposes of generating revenue from billboard advertising. Utah asserted, inter alia, that erection of a billboard on the property violated state and local regulations, and that it was inappropriate to place land in trust in order to avoid having to comply with those requirements. Shivwits Band, 428 F.3d at 970.

Of note, Plaintiffs' lawsuits in South Dakota I, South Dakota II, and Shivwits Band were all brought in federal court in the states where the controversies arose, not in a foreign jurisdiction. The Akiachak Plaintiffs should also bring their claims, not in the District of Columbia, but in Alaska, which has substantial and unique interests at stake and therefore an

interest in having this case decided at home.  See Shawnee Tribe v. United States, 298 F. Supp.

2d 21, 26 (D.D.C. 2002) ("What the Court finds to be the most persuasive factor favoring

transfer . . . is the local interest in deciding a sizable local controversy at home").

     **A.**     **The Applicability of 25 U.S.C. § 476 Can and Should Properly be Adjudicated in Alaska**

Plaintiffs' case references and their assertion that Interior has violated 1994 amendments

to Section 16 of the IRA, 25 U.S.C. § 476(f) & (g), "an Act that has national application," Pls'

Response at 12, does not make this case a matter of national interest or particularly well-suited

for review in the District of Columbia.  Assuming, arguendo, that Plaintiffs have properly

asserted claims, the lawfulness of Interior's policy regarding Alaska at 25 C.F.R. § 151.1 must be

considered in light of, as it is grounded upon, Alaska-specific enactments.

25 U.S.C. § 476(f) & (g) prohibit the promulgation or enforcement of regulations that

"diminish[] the privileges and immunities available to the Indian tribe relative to the privileges

and immunities available to other federally recognized Indian tribes by virtue of their status as

Indian tribes."  These Section 16 IRA amendments directly overruled a 1936 Solicitor's Opinion

that concluded that Congress, in authorizing the adoption of tribal constitutions in Section 16 of

the IRA, distinguished between the governmental powers that may be exercised by "historic"

tribes versus "non-historic" or "created" tribes organized under Section 16.  See 140 Cong. Rec.

S6147 (daily ed. May 19, 1994) (statement of Sen. McCain).

The extent to which the Section 16 amendments regarding diminishment of tribal

privileges and immunities may be relevant to discretionary acquisitions of land in trust in Alaska

is an issue that can be decided by United States District Court for the District of Alaska

consistent with federal legislation that pertains only to Alaska and the significant related local issues and public interest factors that should also be considered by an Alaskan court. Regardless of the merits of Plaintiffs' Section 476 challenge, which is irrelevant to the issue of transfer, the appropriate place to consider their challenge is in Alaska, just as the legal issues in <u>South Dakota I</u>, <u>South Dakota II</u>, and <u>Shivwits Band</u> were litigated where the land and primary interests were located.

Equally, if not more, instructive is a Rhode Island case that is being decided in the home jurisdiction and involves, <u>inter alia</u>, issues of whether the Secretary of the Interior properly decided to acquire land in trust for a tribe notwithstanding a land claim settlement agreement (the Rhode Island Indian Claims Settlement Act, 25 U.S.C. §§ 1701-1716) that the state argues was patterned after the Alaska Native Claims Settlement Act ("ANCSA"), 43 U.S.C. §§ 1601 <u>et seq.</u>, and the relevance of Section 476(f) & (g) to trust land acquisitions for Indian tribes that were recognized after enactment of the IRA in 1934. <u>See</u> <u>Carcieri v. Norton</u>, 2005 U.S. App. LEXIS 19719 (1st Cir. 2005).

**B. The Applicability of 25 C.F.R. Part 151 Can and Should Also be Adjudicated in Alaska**

25 C.F.R. § 151.1 was promulgated under Section 5 of the IRA, 25 U.S.C. § 465, which is the Secretary's primary authority for discretionary acquisitions of land in trust. Section 465 provides in relevant part that "[t]he Secretary is authorized, in his discretion, to acquire . . . lands . . . for the purpose of providing land for Indians." By its terms, this statute confers broad discretion on the Secretary and consequently has been the subject of hard fought, but

-10-

unsuccessful, non-delegation doctrine challenges in the localities where the controversy lay. See

e.g., South Dakota I, South Dakota II, and Shivwits Band, supra.

The lawfulness of Interior's policy regarding Alaska that is expressed at 25 C.F.R. §

151.1, including any limits that Section 476(f) & (g) place on the Secretary's broad discretion for

acquiring land in trust under Section 465, must be considered in light of special legislation

applicable to Alaska, including ANCSA, 43 U.S.C. §§ 1601 et seq., and amendments thereto.[3]

Congress declared its policy under ANCSA not to "creat[e] a reservation system or lengthy

wardship or trusteeship . . . ." 43 U.S.C. § 1601(b). Accordingly, ANCSA revoked all existing

reservations in Alaska except for the reservation held by the Metlakatla Indian Community of the

Annette Island Reserve, which did not participate in ANCSA, and created a unique form of

Native land tenure that involved the distribution of land and/or funds to 13 regional corporations

and to more than two-hundred village corporations. Id. §§ 1605-1608, 1610-13. Regional

corporations received surface and subsurface estates, as well as the subsurface estates of village

lands within their boundaries. All of the settlement lands were conveyed to the corporations in

fee rather than in trust. Id. § 1613.

---

[3]      Notwithstanding Section 476(f) & (g), the United States Code is replete with special legislation limiting or otherwise affecting the tribal powers of individual tribes or groups of tribes. See, e.g., 25 U.S.C. § 941h (all matters involving tribal powers, immunities, and jurisdiction of the Catawba Indian Tribe of South Carolina are governed by a settlement agreement and the State Act); 25 U.S.C. § 715d (granting Oregon civil and criminal jurisdiction within the boundaries of the Coquille Reservation); 25 U.S.C. §§ 232, 233 (granting New York criminal and civil jurisdiction on Indian reservations); 18 U.S.C. 3243 (granting Kansas criminal jurisdiction on Indian reservations); 25 U.S.C. § 1725 (granting Maine criminal jurisdiction over Indian reservations); 25 U.S.C. § 1300g-4(f) (granting Texas civil and criminal jurisdiction over the Ysleta Del Sur Pueblo).

Under amendments to ANCSA, the Alaska Native corporations that had been allocated lands and/or funds received special protection of their property interests.  Congress extended and then made permanent tax immunity for undeveloped lands held by Native corporations.  See 43 U.S.C. § 1620(d)(1), as amended by Pub. L. 96-487, 94 Stat. 2371, 2434 (Dec. 2, 1980).  Congress also provided extensive protections against creditor claims.  See 43 U.S.C. § 1636(d), Pub. L. 100-241, 101 Stat. 1788, 1807 (Feb. 3, 1988).  In addition, special Land Bank and Settlement Trust provisions, codified at 43 U.S.C. §§ 1629e and 1636, were added to ANCSA by Pub. L. 96-487, 94 Stat. 2444-47, and Pub. L. 100-241, 101 Stat. 1804-10.  The foregoing protections are somewhat similar to, but not the same as, those afforded to tribal lands by virtue of the Secretary taking land in trust under Section 5 of the IRA, such as exemption from state and local taxation and restrictions against alienation.  In consideration of legislation concerning Alaska only, Interior has since 1980 continuously followed a regulatory policy of not acquiring lands in trust in Alaska for Indian tribes.  See 25 C.F.R. § 151.1.  Although Interior's rationale for the policy expressed in section 151.1 has evolved from its initial opinion that ANCSA precluded acquisitions of land in trust in Alaska (discussed further, infra), its rationale remains centered on ANCSA and its amendments.

It is appropriate for the Court to consider on a motion for transfer that the reviewing court may be required to consider laws that are specific in their application to a particular state, like ANCSA, which applies only to Alaska, and that the courts having jurisdiction over cases within that state have experience with those laws.  See Shawnee Tribe, 298 F. Supp. 2d at 21, 27; see

generally <u>Carcieri v. Norton</u>, 423 F.3d 45 (1st Cir. 2005) (reviewing land-into-trust dispute involving the Rhode Island Indian Claims Settlement Act).

      Although Plaintiffs argue that two cases involving challenges to land-into-trust decisions under Section 465 were decided in the District of Columbia and that, therefore, "this Court is familiar with the law governing Plaintiffs' claim", Pls' Response at 14-15, those cases are distinguishable and not directly helpful to the Court's understanding of the discrete legal issues in this case. <u>See</u> <u>City of Sault Ste. Marie v. Andrus</u>, 458 F. Supp. 465 (D.D.C. 1978); <u>TOMAC v. Norton</u>, 193 F. Supp. 2d 182 (D.D.C. 2002), <u>aff'd</u>, 433 F.3d 852 (D.C. Cir. 2006). At issue in each case was a BIA determination to acquire land in trust in a state other than Alaska and where the land-into-trust procedures at Part 151 were applicable. Plaintiffs in this case have not alleged any violation of Section 465 and instead argue that Interior has violated 25 U.S.C. § 476(f) & (g) by withholding Section 465 trust land acquisitions from them. <u>See</u> Complaint ¶ 47. Moreover, as Plaintiffs acknowledge, the district court denied transfer in one of those cases, <u>TOMAC</u>, because it "had invested a significant amount of time in the case." Pls' Response at 15; <u>TOMAC</u>, 193 F. Supp. 2d at 196. In this case, however, at the heart of Plaintiffs' suit challenging 25 C.F.R. § 151.1 is ANCSA and Section 476(f) & (g), and this case is in its earliest stages, unlike the situation in TOMAC.

## IV.    PLAINTIFFS' RELIANCE ON <u>WILDERNESS SOCIETY</u> LENDS CREDENCE TO DEFENDANTS' VENUE POSITION

      Throughout their Response, Plaintiffs rely on <u>The Wilderness Society v. Babbitt</u>, 104 F. Supp. 2d 10 (D.D.C. 2000), to support their position on venue. In addition to the Court's consideration under 28 U.S.C. § 1404(a) of the convenience of the parties and witnesses and the

interests of justice, the District of Columbia District Court routinely considers other "variants" which take into account the private interests of the parties and the public interest of the Court. Kafack v. Primerica Life Ins. Co., 934 F. Supp. 3, 6 (D.D.C. 1996). In Wilderness Society, the court recently analyzed venue issues in terms of private and public interests as well. Although the court ruled that a transfer of venue was not warranted based on the facts in that case, Defendants submit that the court's analysis in Wilderness Society lends further support to Defendants' position in this case.

Under private interest considerations, Wilderness Society recognizes that a plaintiff receives "diminished consideration" as to its choice of forum when that forum "has no meaningful ties to the controversy and no particular interest in the parties or the subject matter." 104 F. Supp. 2d at 13 (quoting Islamic Republic of Iran v. Boeing Co., 477 F. Supp. 142, 144 (D.D.C. 1979)). And, when the activities have little, if any, connection to the chosen forum, deference is greatly diminished. Armco Steel Co., 790 F. Supp. at 323.

In Wilderness Society, the court determined that venue in the District of Columbia was appropriate because plaintiff's claim involved a "national public decision" relating to a "national resource" to commence oil and gas leasing. 104 F. Supp. 2d at 13. The court also found it instructive that comments on the Agency's leasing proposal were submitted by persons around the Country. Id. at 14. In addition, the court noted that six out of eight plaintiffs were "national" conservation organizations and that four of the plaintiffs were headquartered in Washington, D.C. Id. Further, the court observed the substantial involvement of Secretary Babbitt who signed key documents and traveled to Alaska where the controversy arose. Id.

-14-

Plaintiffs strain to characterize the instant case as a national controversy and to liken it to Wilderness Society. For example, Plaintiffs contend that "one of the Plaintiffs fully participated in a national rulemaking process" concerning amendments to the regulations at 25 C.F.R. Part 151 that began in April 1999 and that "[a]ll decisions regarding the rulemaking were made by agency officials in the District of Columbia." Pls' Response at 13. Plaintiffs also refer to a panel discussion held at Interior in 1999 regarding the amendments to Part 151, as well as comments on the proposed amendments that were prepared by the National Congress of American Indians. To the extent that these events are relevant to a legal challenge to a regulation that was promulgated in 1980, the facts, placed in their appropriate context, distinguish this case from Wilderness Society and support transfer of this case to Alaska.

To begin with, the amendments to Part 151 that were developed by the previous Administration were comprehensive and went far beyond the issue of whether the regulations ought to apply to Alaska. The amendments were intended to clarify how trust acquisitions are reviewed. Among other things, the amendments included a presumption in favor of on-reservation acquisitions and set stricter standards for off-reservation acquisitions; provided a definition and procedures for instances where Congress mandates Interior to accept title in trust (i.e., acquisitions under statutes other than Interior's general discretionary authority, 25 U.S.C. § 465); established standards that were more objective for the Secretary to weigh in making the decision to take land into trust; and imposed a time line for the BIA to issue a decision on an application. See Proposed Rule, Acquisition of Title to Land in Trust, 64 Fed. Reg.17574 (Apr. 12, 1999); Final Rule, Acquisition of Title to Land in Trust, 66 Fed. Reg. 3452 (Jan. 16, 2001). The Part 151 regulations, which concern the process for discretionary acquisitions of land in trust

-15-

in every state but Alaska, and congressionally-mandated acquisitions, do not make this case regarding Alaska a national matter.

To the degree that the amended regulations addressed Alaska, they did not suggest, much less make, any substantive changes. The amended regulations continued the 1980 policy against trust acquisitions in Alaska. In explanation, the preamble to the 2001 Final Rule stated that:

> [t]he position of the Department has long been as a matter of law and policy, that Alaska Native lands ought not to be taken in trust. Therefore the Department has determined that the prohibition in the existing regulations on taking Alaska lands into trust (other than Metlakatla) ought to remain in place for a period of three years during which time the Department will consider the legal and policy issues involved in determining whether the Department ought to remove the prohibition on taking Alaska lands into trust.

66 Fed. Reg. at 3454; see also 64 Fed. Reg. at 17578 (the preamble to the Proposed Rule explained, "even if it were held that the Secretary retained authority to take land in trust in Alaska, whether to exercise that authority remains in the sound discretion of the Secretary."). In any event, the 2001 Final Rule was withdrawn in its entirety before it became effective. See Withdrawal of Final Rule, Acquisition of Title to Land in Trust, 66 Fed. Reg. 56608 (Nov. 9, 2001). And, Plaintiffs' Complaint indicates that they are challenging the original 1980 regulation that is currently found at 25 C.F.R. § 151.1, not the withdrawn 2001 regulation, which was located at 25 C.F.R. § 151.3. See Complaint ¶¶ 32, 39, 43, 45. This rulemaking provides no basis under Wilderness Society for maintaining this case in the District of Columbia.

Second, the only tribes which, in 1994, petitioned for a rulemaking regarding the Alaska policy were three Alaska tribes (Plaintiff Chilkoot Indian Association, Native Village of Larsen Bay, and Kenaitze Indian Tribe). See 60 Fed. Reg. 1956 (Jan. 5, 1995); Complaint ¶¶17-18. The Department cited the petition of these three Alaskan tribes when, in 1999, it publicly called into

question a 1978 memorandum by the then-Associate Solicitor for Indian Affairs ("1978 Opinion"), which opined that ANCSA precluded the acquisition of land in trust in Alaska (except for the Metlakatla). See 64 Fed. Reg. at 17578; Trust Land for the Natives of Venetie and Arctic Circle Village, Memorandum to Assistant Secretary, Indian Affairs, from Associate Solicitor, Indian Affairs, Thomas W. Fredericks (Sept. 15, 1978). When, in 2001, Interior announced that it had rescinded the 1978 Opinion (because of its substantial doubt about the validity of the conclusion that ANCSA superseded the Secretary's authority to acquire land in trust in Alaska), the Department cited "the comments and legal arguments submitted by Alaska Native governments and groups and by the State of Alaska and two leaders of the Alaska legislature on whether the 1978 Opinion accurately states the law." 66 Fed. Reg. at 3454. The fact that all of the non-federal participants in the events leading up to and including Interior's rescission of the 1978 Opinion were from Alaska, and only Alaska, underscores that this matter primarily concerns Alaska, and further distinguishes it from Wilderness Society.

Third, the participation of the National Congress of American Indians ("NCAI") on the Part 151 rulemaking effort also does little or nothing to expand this controversy beyond Alaska. Plaintiffs' exhibits submitted with their opposition to transfer show that Interior's Alaska policy was not among NCAI's priorities. Plaintiffs' Exhibit 4, an NCAI news bulletin, makes no mention of the Alaska policy. Plaintiffs' Exhibit 5, a letter from NCAI to the Secretary of the Interior, raises several "serious objections" to the amendments to Part 151, but does not cite the Alaska policy. Plaintiffs' Exhibit 6, the comments of the NCAI Tribal Leaders Task Force on

-17-

Land Recovery on the amendments to Part 151, does not include the Alaska policy among its "priority issues" and instead this issue is discussed sixteenth among nineteen issues.

More telling about the local nature of this controversy is the fact that, of those who commented on the aspect of the amendments to Part 151 that concerned Alaska, virtually all were located in Alaska. Commenters on the proposed regulation included individual Alaskan tribes, the Alaska Inter-Tribal Council (a statewide tribal organization), the Arctic Slope Native Association, the Attorney General for the State of Alaska, and the Alaska State Legislature. Interior also solicited comments from the State of Alaska's Rural Governance Commission on its policy regarding trust land acquisitions in Alaska. See 64 Fed. Reg. at 17578. On these facts, unlike the oil and gas leasing rule that was at issue in Wilderness Society, the Alaska land-into-trust policy is not a national issue.

Most important for the purposes favoring transfer in the instant case is the Wilderness Society Court's observation that "there is a local interest in having localized controversies decided at home." 104 F. Supp. 2d at 16-17 (quoting Gulf Oil Corps. v. Gilbert, 330 U.S. 501, 509 (1947)). As discussed above, unlike the national energy reserve issues capturing national attention in Wilderness Society, at bottom, this case is really a local matter involving the citizens and governments in Alaska. The same was true in Town of Ledyard v. United States, 1995 WL 908244 (D.D.C. 1995), a land-into-trust case in which the court transferred venue to the District of Connecticut. The court observed, in response to the plaintiffs' argument that the case had national significance because it involved "the intersection of national policies regarding Indians

-18-

and national environmental policies," that it was "also a controversy the resolution of which will have an indisputably local effect." Id. at *2.

Finally, two other cases that Plaintiffs rely upon also do not support retention of this case in the District of Columbia: National Wildlife Federation v. Westphal, 1999 WL 1567731 (D.D.C. 1999), and Greater Yellowstone Coalition v. Bosworth, 180 F. Supp. 2d 124 (D.D.C. 2001), in which the District of Columbia courts retained jurisdiction of suits arising in foreign states. Neither case dealt with 25 U.S.C. § 476(f) & (g) or the placement of land in trust under 25 U.S.C. § 465. Westphal involved a large public works project in Mississippi. The decision states that "local considerations improperly influenced" the federal agency's administrative decision, requiring consideration by the District of Columbia as a "neutral forum." 1999 WL 1567731 at *1. Certainly, in the instant case, the Plaintiffs do not allege that the District of Alaska is unable to fairly consider the Plaintiffs' claims and to appropriately dispense justice, a matter that the Westphal court called into question. Further distinguishing Westphal is the fact that the controversy there concerned final agency decision, whereas in the instant case Plaintiffs are seeking an injunction directing the Defendant to implement land-into-trust procedures and to accept and consider Plaintiffs' request to have lands in Alaska taken into trust. See Prayer for Relief IV.

In Greater Yellowstone Coalition, the Court retained jurisdiction of the case, "as a case of some national significance," 180 F. Supp. 2d at 129, noting earlier in the decision that at issue was the health of bison in Yellowstone National Park and the possible spread of bacteria that

causes a contagious disease among cattle. Id. at 126. Of concern also to the court was the fact that the defendant sought transfer of the case to a specific judge, which the court characterized as "suspect." Id. at 130. Here, Defendants seek transfer of this case to any federal judge in Alaska because transfer to Alaska is in the interests of justice and not because of any "suspect" considerations as was apparently the case in Greater Yellowstone Coalition. While the issue of placing land into trust is of immense importance to Alaskans, it cannot be reasonably likened to nationally significant issues, such as the spread of contagious disease in animals (Greater Yellowstone Coalition) or oil and gas leasing in the National Petroleum Reserve in Alaska (Wilderness Society).

### Conclusion

For these reasons, Defendants' motion to transfer venue of the case to the District of Alaska should be granted.

Dated this 31st Day of October, 2006            Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

_____/s/_____
DANIEL G. STEELE
Trial Attorney
D.C. Bar No. 962894
U.S. Department of Justice
Environment and Natural Resources Division
General Litigation Section
P.O. Box 663
Washington, D.C. 20044-0482
Telephone: (202) 305-0484
Fax: (202) 305-0506

Of Counsel:
Thomas A. Blaser
Division of Indian Affairs
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, N.W.  MS 6513
Washington, D.C.  20240
Telephone: (202) 208-5811
Fax:         (202) 219-1791

## CERTIFICATE OF SERVICE

I hereby certify that on October 31st, 2006, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system that will send notice of an electronic filing to the following:

Mr. Richard A. Guest
1712 N Street, N.W.
Washington, D.C.  20036-2976

Heather Kendall Miller
Native American Rights Fund
420 L Street, Suite 505
Anchorage, Alaska  99501

_____/s/_____
DANIEL G. STEELE