UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AKIACHAK NATIVE COMMUNITY <u>et al.</u>, | ) ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) | No. 1:06-cv-00969 (RWR) |
| DEPARTMENT OF THE INTERIOR, <u>et al.</u>., | ) ) ) | |
| Defendants | ) ) | |

**ALASKA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ITS MOTION TO INTERVENE**

## I.    INTRODUCTION

This case raises the important question of whether the Secretary of the Interior (Secretary) may maintain regulations promulgated at 25 C.F.R. Part 151 that bar acquisition of land in trust on behalf of federally recognized tribes in Alaska or their members.  Five specific scenarios are involved in this lawsuit, although resolution of the legal issues in this case may have far-reaching effects on the State of Alaska's jurisdiction over land within its borders.

The bar does not apply to the Metlakatla Indian Community (MIC) of the Annette Island Reserve or its members.  25 C.F.R. § 151.1.  Members of the Metlakatla Indian Community are of Canadian origin and have no aboriginal land claims in Alaska. Because of this, the Metlakatlans did not participate in the Alaska Native Claims Settlement Act (ANCSA), 43 U.S.C. §§ 1601 *et seq.*, and their reservation, the Annette Island Reserve, was not revoked.  In this memorandum, discussion of the prohibition

Alaska's Memorandum of Points and Authorities in Support of Its Motion to Intervene:
*Akiachak Native Community et al. v. Kempthorne*, 1:06-cv-969
Page 1 of 17

against taking land into trust for Alaska tribes incorporates the exclusion of MIC and its members.

Plaintiffs seek an injunction directing the Secretary to implement the land into trust procedures without regard to the current legal bar against Alaska tribes. Such an expansive ruling would diminish state jurisdiction and greatly compromise the State of Alaska's ability to manage the state's fish and game resources, enforce state alcoholic beverage control laws, protect the environment, tax, provide public services, and ensure public safety.[1] Additionally, Alaska has an interest both as a sovereign and as a settling party in maintaining the integrity, scope and finality of the land claims settlement in ANCSA. Application of 25 C.F.R. Part 151 to Alaska tribes would directly contravene Congress' declaration of policy in enacting ANCSA by producing the sort of reservation or lengthy wardship or trusteeship that Congress explicitly intended to preclude in enacting ANCSA:

> The settlement should be accomplished rapidly, with certainty, in conformity with the real economic and social needs of Natives, without litigation, with maximum participation by Natives in decisions affecting their rights and property, without establishing any permanent racially defined institutions, rights, privileges, or obligations, *without creating a reservation system or lengthy wardship or trusteeship, and without adding to the categories of property and institutions enjoying special tax privileges* or to the legislation establishing special relationships between the United States Government and the State of Alaska.

---

[1] There is dispute as to whether merely taking land outside of a reservation into trust under 25 U.S.C. 465 transforms it into Indian country. Compare *U.S. v. Roberts,* 185 F.3d 1125 (10th Cir. 1999) with *U.S. v. Stands*, 105 F.3d 1565 (8th Cir. 1997). However, Indian country status is clearly the result sought by some, if not all, of the plaintiffs.
Alaska's Memorandum of Points and Authorities in Support of Its Motion to Intervene:
*Akiachak Native Community et al. v. Kempthorne*, 1:06-cv-969
Page 2 of 17

43 U.S.C. § 1601(b) (emphasis added).

   The State supports the current legal bar prohibiting the Secretary from taking land into trust for Alaska tribes.  However, the State's interest is not identical to and cannot be adequately represented by the current defendants.  As indicated in the state's answer to the consolidated complaint, certain affirmative defenses apply to the state that cannot be advanced by the federal defendants.  The State therefore moves to intervene in these consolidated cases as a matter of right.  In the alternative, the State requests permissive intervention.  Alaska clearly satisfies the requirements to intervene as of right and for permissive intervention.  The State's motion to intervene should be granted.

## II. BACKGROUND

### A. ANCSA and the Land into Trust Regulation

   The Department of the Interior's ("Interior" or "Secretary") land into trust regulations were first proposed in July 1978.  43 Fed. Reg. 32311 (Jul. 19, 1978).  Two months later, the Associate Solicitor for Indian Affairs issued an opinion on the effect of ANCSA on the Secretary's ability pursuant to section 5 of the Indian Reorganization Act to restore to trust status land held in fee by Alaska Natives.  The opinion concluded that "[t]he intent of Congress to permanently remove all Native lands in Alaska from trust status is unmistakable."  Memorandum from Thomas W. Fredericks, Associate Solicitor for Indian Affairs, to Assistant Secretary for Indian Affairs (Sep. 15, 1978) ("Fredericks

Alaska's Memorandum of Points and Authorities in Support of Its Motion to Intervene:
*Akiachak Native Community et al. v. Kempthorne*, 1:06-cv-969
Page 3 of 17

Opinion"). The final rule was initially published on September 18, 1980, and included the following provision:

> These regulations do not cover the acquisition of land in trust status in the State of Alaska, except acquisitions for the Metlakatla Indian Community of the Annette Island Reserve or its members.

45 Fed. Reg. 62036 (Sep. 18, 1980). The supplementary information accompanying the final rule explained that this provision was added because "the Alaska Native Claims Settlement Act does not contemplate the further acquisition of land in trust status in the State of Alaska" except for Metlakatla. *Id.* at 62034.

Revisions to the land into trust rule were proposed in 1999. 64 Fed. Reg. 17574 (Apr. 12, 1999). The proposed regulations alleged "that there is a credible legal argument that ANCSA did not supersede the Secretary's authority to take land into trust in Alaska under the IRA." *Id.* at 17578. The final rule, which included significant revisions, was promulgated in 2001. 66 Fed. Reg. 3452 (Jan. 16, 2001). Interior rescinded the 1978 Fredericks Opinion on the same day, and stated that it would maintain the Alaska prohibition for three years while the issue was studied. *Id.* at 3454; Memorandum from Solicitor John Leshy to Assistant Secretary, Indian Affairs (Jan. 16, 2001). Interior delayed the effective date of the regulations several times. 66 Fed. Reg. 8899 (Feb. 5, 2001); 66 Fed. Reg. 10815 (Feb. 20, 2001); 66 Fed. Reg 19403 (Apr. 16, 2001); 66 Fed. Reg. 42415 (Aug. 13, 2001). The revised regulations were withdrawn in late 2001 without ever having become effective. 66 Fed. Reg. 56608 (Nov. 9, 2001). The Alaska prohibition remains in effect. 25 C.F.R. § 151.1.

Alaska's Memorandum of Points and Authorities in Support of Its Motion to Intervene:
*Akiachak Native Community et al. v. Kempthorne*, 1:06-cv-969
Page 4 of 17

The documented basis for excluding Alaska from the land into trust regulation has been that, in enacting ANCSA, Congress intended to settle permanently all aboriginal title claims and prevent the reintroduction of reservations or an extensive trusteeship or wardship in Alaska.  Plaintiffs' claims, however, involve lands that were not ANCSA conveyances.  *Alaska v. Native Village of Venetie Tribal Government*, 522 U.S. 520, 531-33 (1998), establishes that ANCSA conveyed lands are not Indian country as defined by 18 US.C. § 1151(b) because lands conveyed to ANCSA corporations meet neither the federal set-aside nor the federal superintendence requirement for finding a "dependent Indian community."  Akiachak and Chalkyitsik apparently seek to have land placed into trust so that it can be classified as Indian country under 18 U.S.C. § 1151, making the tribes eligible to receive federal enforcement assistance of their tribal alcohol bans or to enforce the ban directly.  Consolidated Compl. ¶¶ 29, 36.  The Chilkoot Indian Association seeks to have land which was conveyed to the tribe in 1994 by the Presbyterian Church placed into trust "to ensure its protection for future generations of tribal members."  Consolidated Compl. ¶40.   Similarly, Tuluksak seeks to avoid borough and state taxation of former City of Tuluksak land that was conveyed to the tribe when the City dissolved.  Consolidated Compl. ¶ 42.

Application of the land in trust regulations to Alaska could diminish Alaska's authority over land in the state by creating islands of land largely controlled by a competing sovereign.  That result would contravene the express congressional intent of ANCSA.  Alaska must be permitted to intervene to protect its compelling interest in

Alaska's Memorandum of Points and Authorities in Support of Its Motion to Intervene:
*Akiachak Native Community et al. v. Kempthorne*, 1:06-cv-969
Page 5 of 17

providing uniform regulation and application of state law concerning fish and game management, environmental protection, taxation, and public safety throughout the state. Additionally, Alaska was a party to the settlement of all aboriginal title claims codified in ANCSA. Alaska provided consideration for the ANCSA settlement in the form of land selection priorities and half of the monetary settlement. 43 U.S.C. §§ 1605, 1608, 1610. Alaska's interests in this litigation include preserving the integrity of the ANCSA settlement as well as defending its sovereignty.

## III.    ARGUMENT

### A.    The Legal Standard for Intervention as a Matter of Right

Federal Rule of Civil Procedure 24(a) sets out the standard for intervention as a matter of right:

> Upon timely application anyone shall be permitted to intervene in an action[ ]…when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The District of Columbia Circuit has articulated a four part test drawn from the language of the rule:  (1) whether the motion is timely; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by the existing parties. *Fund for Animals v. Norton*,

Alaska's Memorandum of Points and Authorities in Support of Its Motion to Intervene:
*Akiachak Native Community et al. v. Kempthorne*, 1:06-cv-969
Page 6 of 17

322 F.3d 728, 731 (D.C. Cir. 2003).  The District of Columbia Circuit also requires that a party seeking to intervene in an action demonstrate that it has standing under Article III of the Constitution.  *Id.* at 731-32.  Standing is demonstrated when a party shows (1) injury in fact, (2) causation, and (3) redressability.  *Id.* at 732-33 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Alaska clearly satisfies these criteria.

### B.    Alaska Has Standing To Pursue This Action

Alaska meets the constitutional standing requirements to participate as a party in this litigation.  The land at issue in this litigation is within the boundaries of the State of Alaska, the state benefits from the land in trust regulation and would be harmed if the regulation were changed to apply to lands within the state, and the harm the state would suffer from applying the regulation to Alaska is redressable by court decision to uphold the regulation.  The issues presented in this litigation directly affect Alaska's sovereignty.

Application of the land in trust regulations to Alaska would result in piecemeal abrogation of the state's jurisdiction over land within its borders.  State and local taxing authority could be lost and Indian country status asserted.  "Generally speaking, primary jurisdiction over land that is Indian country rests with the Federal Government and the Indian tribe inhabiting it, and not with the States."  *Alaska v. Native Village of Venetie*, 522 U.S. 520, 527 n.1 (1998) (citing *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 343 (1998)).  States have limited powers to assert jurisdiction in Indian country.  *American Vantage Companies v. Table Mountain Rancheria*, 292 F.3d 1091, 1096 n.3

Alaska's Memorandum of Points and Authorities in Support of Its Motion to Intervene:
*Akiachak Native Community et al. v. Kempthorne*, 1:06-cv-969
Page 7 of 17

(9th Cir. 2002).  The state has no authority to tax land taken into trust.  Should the land taken into trust be deemed Indian county, the state could also lose authority to impose its land use restrictions, natural resource management requirements, and certain environmental regulations on that land.  Exercise of police powers and regulation of state resources are fundamental elements of state sovereignty.  Const. Art. IV, § 3, cl. 1.

Application of the land in trust regulations to Alaska could impinge upon state sovereignty by transferring primary jurisdiction over land taken into trust from the state to the federal government and the affected Indian tribe.  Maintaining the regulatory bar prohibiting the Secretary from applying the regulations in Alaska would prevent the loss of state jurisdiction and completely mitigate any harm that application of the regulations to Alaska tribes would cause.  Alaska therefore meets the requirements of constitutional standing with respect to this case.

### C.    Alaska's Motion Is Timely

Determining the timeliness of intervention is left to the "sound discretion" of the trial court.  *Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.,* 840 F.2d 72, 74 (D.C. Cir. 1988); *People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6, 7 (D.D.C. 1993).  The court should consider all related circumstances, especially the time elapsed since the suit was filed, the purpose of intervention, the need to preserve the applicant's rights, and the possibility of prejudice to existing parties.  *U. S. v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980).  The D.C. Circuit has treated the timeliness prong of the test with great flexibility, frequently allowing

Alaska's Memorandum of Points and Authorities in Support of Its Motion to Intervene:
*Akiachak Native Community et al. v. Kempthorne*, 1:06-cv-969
Page 8 of 17

intervention long after the commencement of litigation. *Foster v. Gueory,* 655 F.2d 1319, 1324 (D.C. Cir. 1981) (motion to intervene was timely when filed ten months after litigation was commenced and one month after class certification was denied); *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 907-908 (D.C. Cir. 1977) (affected industries' motions to intervene in environmentalists' action against EPA were timely where motions were filed immediately prior to or soon after existing parties filed a proposed settlement agreement); *Hodgson v. United Mine Workers of America*, 473 F.2d 118, 129 (D.C. Cir. 1972) (intervention allowed seven years after case was filed where applicant was seeking to participate in upcoming remedial phase of the litigation).

The Native village plaintiffs filed their complaint on May 24, 2006. *Akiachak Native Community et al., v. Department of Interior*, Case No. 1:06-cv-969-RWR. The Kavairlook complaint was filed on August 6, 2006. *Alice Kavairlook v. Dirk Kempthorne et al.,* Case No. 1:06-cv-1405-RWR. Although more than a year has passed since the Kavairlook complaint was filed, no substantive litigation of the merits of either complaint has occurred. During this time, the Court has granted extensions of time to file responsive pleadings, denied defendants' motion to transfer venue, and consolidated the cases. Plaintiffs' consolidated complaint was filed less than three weeks ago, and this motion to intervene and accompanying answer is filed on the same date as the defendants' answer is due.

Alaska's Memorandum of Points and Authorities in Support of Its Motion to Intervene:
*Akiachak Native Community et al. v. Kempthorne*, 1:06-cv-969
Page 9 of 17

No party would be prejudiced by the State's participation as an intervenor. Alaska, however, could suffer irreparable harm if not permitted to defend its sovereignty in this case.

### D.    Alaska Has a Substantial Interest in the Subject Matter of This Action and Disposition May Impair Those Interests

An applicant does not need to show a specific legal or equitable interest in the property or transaction which is the subject of the action to be entitled to intervene of right under Rule 24(a)(2). The language of the rule requires an interest "relating to" that property or transaction. The D.C. Circuit has characterized the interest requirement of Rule 24 as "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967). The State's interests here go far beyond the minimum required by the rule and, for the reasons discussed below, may be impaired by the disposition of this action.

The D.C. Circuit has ruled that a state's interest is sufficient for intervention where the interpretation of a federal statute may have some effect on state policy. *Id*. at 694. In *Nuesse*, a state banking commissioner sought intervention in an action filed by American State Bank against the United States Comptroller of Currency who was allegedly about to approve the application of another bank to open a branch in the vicinity of an American State Bank office. The district court rejected the request for intervention, ruling that the state official lacked a sufficient interest in the court's interpretation of the National Bank Act. *Id.* at 701. The D.C. Circuit Court of Appeals

Alaska's Memorandum of Points and Authorities in Support of Its Motion to Intervene:
*Akiachak Native Community et al. v. Kempthorne*, 1:06-cv-969
Page 10 of 17

reversed, ruling that "courts may not be insensitive to the request by [a state] official …
to appear as a party to urge the construction of the federal statute that he claims is
necessary to secure the state's interests." *Id*. "No specific legal or equitable interest is
required." *Id.* at 700.

A governmental entity usually has the right to intervene to protect the
public interest of its citizens. For example, the eighth circuit has allowed a state to
intervene in an action to challenge the United States Forest Service's management plan to
protect essential interests in fish and wildlife, recreational opportunities and water
quality. *Sierra Club v. Robertson*, 960 F.2d 83, 84 (8th Cir. 1992). Similarly, the City of
Chico, California had sufficient interest in enforcing its land use regulations to allow
intervention in an action to restore lands to federal trust status. *Scotts Valley Band of
Pomo Indians of Sugar Bowl Rancheria v. United States*, 921 F.2d 924, 927 (9th Cir.
1990). The possibility of practical impairment of a potential intervenor's interest is
sufficient to warrant intervention. *Sierra Club v. United States Environmental Protection
Agency*, 995 F.2d 1478, 1486 (9th Cir. 1993) (holding that practical effect of *stare decisis*
on applicant was sufficient impairment).

In this case, Alaska's interest does not merely "relate to" the property or
transaction that is the subject of this action: Alaska's interest is direct and fundamental to
its sovereignty.

> Courts have long recognized that a governmental entity has
> sovereign interests in exercising power over individuals and
> entities in its territory and in having its territory and power
> recognized by other sovereigns. A governmental body's

Alaska's Memorandum of Points and Authorities in Support of Its Motion to Intervene:
*Akiachak Native Community et al. v. Kempthorne*, 1:06-cv-969
Page 11 of 17

> sovereign interest is the type of direct, significant and legally
> protectable interest that could justify intervention under Rule
> 24 (a)(2).

*Miami Tribe of Oklahoma v. Walden*, 206 F.R.D. 238, 242 (S.D. Ill. 2001) (internal

citations omitted).

The interest of Alaska in the outcome of this litigation is of great

importance. Following enactment of ANCSA, only one Indian reservation exists in

Alaska.[2] A ruling that lands in Alaska may be taken into trust could dramatically

increase Indian country in Alaska and severely limit the ability of the State of Alaska to

manage fish and game and other resources, and provide for environmental protection and

public safety on these lands.[3] The state *qua* state has an important sovereign interest in

securing enforcement of its laws and regulatory schemes. *See, e.g., Sierra Club v. City of*

*San Antonio*, 115 F.3d 311, (5th Cir. 1997) (finding that the State of Texas, in its various

capacities, had several important interests justifying intervention).

In Alaska, there is a constitutional imperative for state government to

manage fish and game under principles of sustained yield. Alaska Const., Art. VIII, Sec.

4. The Alaska Constitution also requires that laws and regulations governing the use of

fish and game resources "apply equally to all persons." Alaska Const., Art. VIII, Sec. 17.

These constitutional interests in managing state fish and game resources could be placed

at significant risk by a ruling that concludes that the land into trust regulations should

---

[2] The Annette Island Reserve qualifies as Indian country under 18 U.S.C. § 1151(a).

[3] As a general rule, tribal and federal authority are primary on lands determined to be
Indian country. *See California v. Cabazon Band of Mission Indians*, 480 U.S. 202,
209, 102 S. Ct. 1083, 1088 (1987).

Alaska's Memorandum of Points and Authorities in Support of Its Motion to Intervene:
*Akiachak Native Community et al. v. Kempthorne*, 1:06-cv-969
Page 12 of 17

apply in Alaska.  Although its discussion concerned only Native allotments, and not the

village lands owned in fee at issue in this case, a decision by the Alaska Court of Appeals

correctly reflects the importance of uniform management of state fish and game

resources:

> If the State could not regulate hunting and fishing on Native
> allotment parcels, the result would be islands of non-regulation
> spread throughout practically every game-management unit in the
> state - leading to disruption and endangerment of the State's efforts
> to protect and conserve game resources.

*Jones v. State*, 936 P.2d 1263, 1267 (Alaska  App. 1997).

Precisely the same kinds of concerns exist with respect to environmental

regulation.  *See* AS 46.03 (authority of the Alaska Department of Environmental

Conservation to develop, implement and enforce environmental regulations).  Finally,

enforcement of state laws and regulations through the Department of Public Safety on

land taken into trust would be put at risk and jeopardize the State's ability to provide for

public health and safety.  *See* AS 18.65 (authority of Commissioner of Public Safety and

State Troopers to enforce state law).  Alaska's interest in this action clearly satisfies the

second and third requirements of Rule 24(a)(2).

Alaska also has an interest as a settling party in preserving the scope and

finality of the land claims settlement codified in ANCSA.  Alaska's consideration for the

settlement consisted of money, 43 U.S.C. §§ 1605 & 1608, and forfeiting its priority to

receive certain state-selected lands from the federal government in favor of Alaska Native

interests. *Id.* § 1610(a)(2).  ANCSA broadly extinguishes "all aboriginal titles, if any, and

Alaska's Memorandum of Points and Authorities in Support of Its Motion to Intervene:
*Akiachak Native Community et al. v. Kempthorne*, 1:06-cv-969
Page 13 of 17

claims of aboriginal title in Alaska based on use and occupancy, including submerged land underneath all water areas, both inland and offshore, and including any aboriginal hunting or fishing rights that may exist," and all claims based on claims of aboriginal title. *Id.* § 1603. The state has a very important interest in maintaining the terms of this settlement, which would be compromised should the land into trust regulations be applied to Alaska.

### E.    Alaska's Interests Cannot Be Adequately Represented By the Federal Defendants

Rule 24(a)(2) provides that if an applicant meets the conditions of timeliness and impairment of interest, intervention shall be permitted "unless the applicant's interest is adequately represented by existing parties." An intervenor-applicant's burden of demonstrating inadequate representation is minimal: it is sufficient if the applicant shows simply that the "representation of his interest *may be* inadequate." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10, 92 S. Ct. 630, 636 (1972) (citations omitted; emphasis added).

The permissive standard of *Trbovich* was correctly anticipated by the D.C. Circuit in *Nuesse* where the court reasoned that the rule "underscore[d] both the burden on those opposing intervention to show the adequacy of existing representation and the need for a liberal application in favor of permitting intervention." 385 F.2d at 702. Significantly, in *Nuesse* the court found that even the "tactical similarity of ... present legal contentions" between a party and an applicant was not reason to deny intervention.

Alaska's Memorandum of Points and Authorities in Support of Its Motion to Intervene:
*Akiachak Native Community et al. v. Kempthorne*, 1:06-cv-969
Page 14 of 17

*Id*. at 703 (reasoning that state banking commissioner was in a better position than single bank to provide full ventilation of legal and factual context of dispute).

Here, the positions of Alaska and the federal defendants are not the same. The Department of the Interior withdrew the 1978 Fredericks Opinion stating that ANCSA prohibits the Secretary from taking land into trust in Alaska, except for the benefit of the Annette Island Reserve. Alaska supports the reasoning of the Fredericks Opinion, and maintains that, with the exception of the Annette Island Reserve, Indian country does not exist in Alaska. Without intervention, the full ventilation of these issues cannot take place, and they may be decided without the benefit of the State's views.

The state and federal interests at stake are also markedly different. The federal defendants have a trust responsibility with respect to the plaintiffs. By contrast, the State's interest in this matter is in ensuring the consistent and uniform application of state law, and protecting its territorial jurisdiction throughout the state. The federal defendants do not share these interests, and there is no assurance that the federal defendants would adequately protect these interests in this matter. Intervention of right is therefore appropriate in this case.

### F.   The State Also Satisfies the Requirements for Permissive Intervention Under Rule 24(b)(2)

The primary concern in evaluating permissive intervention motions under Rule 24(b)(2) is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights. *South Dakota v. United States Dept. of Interior*, 317

Alaska's Memorandum of Points and Authorities in Support of Its Motion to Intervene:
*Akiachak Native Community et al. v. Kempthorne*, 1:06-cv-969
Page 15 of 17

F.3d 783, 787 (8th Cir. 2003) (citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2nd Cir. 1994).

Alaska also meets the requirements for permissive intervention. The rule vests this court with the discretion to allow intervention "where an applicant's claim or defense and the main action have a question of law or fact in common." *Nuesse*, 385 F.2d at 704. Intervention should be granted to promote a relevant public interest "whenever the public official charged with primary responsibility for vindicating that interest seeks to defend it." *SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 60 S. Ct. 1044 (1940). "Permissive intervention is available when sought because an aspect of the public interest with which [the state] is officially charged is involved in the litigation." *Nuesse*, 385 F.2d at 704. There can be no doubt that the State has an important public interest in intervention in this case. Accordingly, Rule 24(b)(2) is an adequate alternative basis upon which to grant Alaska's request to intervene.

## IV.    CONCLUSION

Alaska is entitled to intervene in this case under Rule 24(a)(2). Alternatively, the State should be permitted to intervene under Rule 24(b)(2). Alaska's right to defend its sovereignty must be honored by allowing its intervention in this litigation. Amicus status would not adequately protect the state's interests in this case, as amici may not appeal unfavorable decisions and may not advance defenses or issues not raised by the original parties. The State's motion to intervene should be granted.

Alaska's Memorandum of Points and Authorities in Support of Its Motion to Intervene:
*Akiachak Native Community et al. v. Kempthorne*, 1:06-cv-969
Page 16 of 17

DATED this 27th day of November, 2007.

TALIS J. COLBERG
ATTORNEY GENERAL


By:    J. Anne Nelson
       Assistant Attorney General
       Alaska Bar No. 0705023
       1031 West 4th Avenue, Suite 200
       Anchorage, Alaska 99501-1994

       Elizabeth J. Barry
       Chief Assistant Attorney General
       Alaska Bar No. 8106006
       1031 West 4th Avenue, Suite 200
       Anchorage, Alaska 99501-1994

Alaska's Memorandum of Points and Authorities in Support of Its Motion to Intervene:
*Akiachak Native Community et al. v. Kempthorne*, 1:06-cv-969
Page 17 of 17