IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AKIACHAK NATIVE COMMUNITY, *et al.* | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| THE INTERIOR, *et al.* | ) CASE NO. 1:06-cv-969 (RWR) |
| | ) |
| Defendants. | ) |
| | ) |

AKIACHAK PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE

Plaintiffs Akiachak Native Community, *et al.* respectfully urge the Court to reject State of Alaska's Motion to Intervene (Dkt. No. 18) because it does not meet the requirements of standing, nor does it have a legally protectable interest under Fed. R. Civ. P. 24(a)(2), and any "interest" it does have is adequately represented by the federal defendants. Permissive intervention under Fed. R. Civ. P. 24(b) should also be denied. Where no new issues are presented, the most effective and expeditious way to participate is by a brief amicus curiae, and not by intervention.

I. MOVANT DOES NOT SATISFY THE REQUIREMENTS OF PRUDENTIAL STANDING, ARTICLE III STANDING OR INTERVENTION OF RIGHT UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2)

To be able to successfully intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2), an applicant must file a timely motion claiming:

> an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or

impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

In addition to meeting the requirements of Rule 24(a)(2), the District of Columbia also requires that a party which seeks to intervene as of right demonstrate that it has standing under Article III of the Constitution. *See e.g., Fund for Animals v. Norton,* 322 F.3d 728, 731 (D.C. Cir. 2003) (a prospective intervenor defendant must establish Article III standing); *Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060 (D.C. Cir. 1998) (defendant seeking intervention as of right must establish that it has standing to participate in the action). The underlying rationale for this requirement is that "because a Rule 24 intervenor seeks to participate on an equal footing with the original parties to the suit, he must satisfy the standing requirements imposed on those parties." *City of Cleveland, Ohio v. Nuclear Regulatory Comm'n*, 17 F.3d 1515, 1517 (D.C. Cir. 1994); *cf. Diamond v. Charles*, 476 U.S. 54, 68-71 (1986) (dismissing appeal because Rule 24 intervenor was sole appellant and he lacked standing).

A prospective intervenor's participation in an agency's rulemaking proceeding is insufficient to establish standing in later litigation that challenges the agency's final rule because "[a]n administrative agency . . . is not subject to Article III of the Constitution of the United States." *Pfizer Inc., v. Shalala,* 182 F.3d 975, 980 (D.C. Cir. 1999). There is thus no need to establish standing to participate in rulemaking proceedings before an agency. *See e.g., Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002) (petitioner has no need to establish its standing to participate in the proceedings before the agency). But when a party seeks to intervene in judicial review of agency action in district court, "the constitutional requirement that it have standing kicks in" and must be satisfied. *Id.*

A. <u>The State Does Not Meet Prudential Standing Requirements</u>.

The requirements of standing include not only those imposed by Article III of the Constitution, but also certain "prudential" requirements established by the Supreme Court. *See Warth v. Seldin,* 422 U.S. 490, 498-00 (1975); *Horizon Lines, LLC v. U.S.*, 414 F. Supp. 2d 46, 52 (D.D.C. 2006) (prudential standing must be established in APA action). In fact, where the lack of prudential standing is clearly dispositive, the question of constitutional standing need not even be reached. *Hazardous Waste Treatment Council v. Thomas*, 885 F.2d 918, 921 n.2 (D.C. Cir. 1989). The prudential standing test limits justiciable cases and controversies to those in which "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute . . . in question." *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970). Thus, a party must establish that "the injury he complains of (his aggrievement, or the adverse effect upon him) falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990); *Air Courier Conference of Am. v. Am. Postal Workers Union*, 498 U.S. 517, 523-24 (1991) (the "relevant statute" for a determination of whether a plaintiff has prudential standing under the APA is the specific "statutory provision whose violation forms the legal basis for his complaint.").

The State does not address prudential standing requirements but merely avers in its motion that it has standing because a change in the regulation would harm the State in that any subsequent application of the regulation would result in an abrogation of the State's sovereignty.

Mot. at 7. The State's claimed assertion is specious and fails to meet prudential standing requirements.

The specific statutory provisions whose violation forms the legal basis for plaintiffs' complaint is not ANCSA but section 5 of the Indian Reorganization Act (IRA), 25 U.S.C. § 465 and §§ 476(f) and (g). Section 5 is specific to Tribes and provides a process whereby the Secretary may take fee land into trust "for the purpose of providing land to Indians." 25 U.S.C. § 465. Subsections § 476(f) and (g) limit the Secretary's authority to abridge the privileges and immunities of one Indian tribe *vis a vis* other federally recognized tribes. The provisions read:

> (f) <u>Privileges and immunities of Indian tribes; prohibition on new regulations</u>
> Departments or agencies of the United States shall not promulgate any regulation or make any decision or determination pursuant to the Act of June 18, 1934 (25 U.S.C. 461 et seq., 48 Stat. 984) as amended, or any other Act of Congress, with respect to a federally recognized Indian tribe that classifies, enhances, or diminishes the privileges and immunities available to the Indian tribe relative to other federally recognized tribes by virtue of their status as Indian tribes.
>
> (g) <u>Privileges and immunities of Indian tribes; existing regulations</u>
> Any regulation or administrative decision or determination of a department or agency of the United States that is in existence or effect on May 31, 1994, and that classifies, enhances, or diminishes the privileges and immunities available to a federally recognized Indian tribe relative to the privileges and immunities available to other federally recognized tribes by virtue of their status as Indian tribes shall have no force or effect.

Nothing in these statutory provisions of the IRA refers to state sovereign interests or ANCSA.

The State's alleged sovereign interest would not fall within the zone of interests protected by the IRA until a petition for trust acquisition of a specific land parcel is actually submitted to the Secretary for consideration. But even then, 25 U.S.C. § 465's implementing regulation, 25 C.F.R. § 151.10, requires that the Secretary notify a state and local government having regulatory

jurisdiction over such land to consider any comments by those governments. Such active consideration of a specific trust land petition may certainly trigger a State's interests sufficient to satisfy the "zone of interests" test. But this case does not involve a trust land petition pending before the Secretary. Rather, the sole issue here is whether 25 C.F.R. § 151.1's bar against Alaska Tribes violates the IRA's mandates in 25 U.S.C. § 476(f) and (g) prohibiting the Secretary from promulgating any regulation that "enhances, or diminishes the privileges and immunities available to the Indian tribe relative to other federally recognized tribes by virtue of their status as Indian tribes." The State can claim no interest that falls within the "zone of interests" of the IRA when the legal issue here turns on the Secretary's treatment of Alaska tribes *vis-a-vis* other federally recognized tribes.

      The Supreme Court has rejected claims of prudential standing in similar contexts. For instance, in *Air Courier* the Supreme Court considered whether postal employee unions, challenging the Postal Service's decision to allow overnight delivery by private couriers, would fall within the zone of interest of the "private express statutes" codifying the U.S. Postal Service's monopoly. 498 U.S. at 519 (quoting 39 U.S.C. § 601(b)). The unions argued that their claim was within the zone of interests protected by the Postal Reorganization Act, a larger statutory scheme that included the private express statutes, because that Act contained provisions intended to stabilize labor-management relations. *Id.* at 521. The Supreme Court rejected this attempt to look beyond the specific statutory provision that formed the basis of the claims, holding that "to accept this level of generality in defining the 'relevant statute' could deprive the zone-of-interests test of virtually all meaning." *Id*. at 529-30; *see also Fed'n for Am.*

*Immigration Reform, Inc. v. Reno*, 93 F.3d 897, 903 (D.C. Cir. 1996) (quoting *Air Courier*) ("If a plaintiff were permitted to bring a claim for violation of a particular statutory provision whenever he or she came within the zone of interests of *some* provision contained within the same act, the zone-of-interests test could be 'deprive[d] . . . of virtually all meaning.'") (emphasis in original). The Supreme Court in *Air Courier* determined that the language and legislative history of the private express statutes evidenced no intent to protect the jobs of postal employees, but instead were designed to protect the necessary revenues of the Postal Service. 498 U.S. at 525-528. The Supreme Court reversed the decision upholding the postal workers' standing, cautioning against "conflat[ing] the zone-of-interests test with injury in fact." *Id.* at 524.

Similarly, in *Grand Council of the Crees v. FERC*, 198 F.3d 950 (D.C. Cir. 2000), the D.C. Circuit held that the Grand Council lacked prudential standing under the Federal Power Act, 16 U.S.C. § 824d, to seek review of a Federal Energy Regulatory Commission ("FERC") order authorizing an energy company to sell power at market-based rates rather than under cost-based rate ceilings. *Id.* at 953. The Council alleged that the license would "devastate the lives, environment, culture and economy of the Crees" because the authorized rates would lead to an increase in exports, which would lead to construction of more hydroelectric generation facilities that would destroy the fish and wildlife upon which Cree members depended. *Id*. at 954. The Court held that the Council lacked standing to challenge FERC's action because "the agency here acts only in its ratemaking capacity" under a specific ratemaking provision of the Federal Power Act, and the non-economic and non-competitive injury alleged by the Council was outside the interest of that provision. *Id*. at 956. The Court acknowledged that environmental concerns were

*Akiachak Native Community v. Dept. of Interior*  
Opposition to Motion to Intervene  
Page 6 of 16

within the zone of interests protected by the Federal Power Act generally, including actions by FERC to permit construction. *Id*. However, the Court held that prudential standing must be determined by reference to the particular provision of law at issue, not the overall purpose of the Act, noting that "Congress's purposes in enacting the overall statutory scheme are relevant only insofar as they may help reveal its purpose in enacting the particular provision." 198 F. 3d at 956; *see also Bennett v. Spear*, 520 U.S. 154, 175-76 (1997) (holding that the zone of interests test must be applied "not by reference to the overall purpose of the Act in question . . ., but by reference to the particular provision of law" under which the plaintiff's claim arises).

In this case, the State of Alaska does not assert any interest falling within the zone of interests Congress intended to protect under section 465 of the IRA. The purpose of the IRA, as noted above, is to allow the Secretary to take land into trust "for the purpose of providing land to Indians." 25 U.S.C. § 465. Subsections 476(f) and (g) further prohibit the Secretary from promulgating any regulation that "enhances, or diminishes the privileges and immunities available to the Indian tribe relative to other federally recognized tribes by virtue of their status as Indian tribes." Again, there is a total absence of any reference to state interests in either of these provisions. Thus, the State cannot demonstrate that the sovereign interest it seeks to protect falls within the zone of interests sought to be protected by the IRA's statutory provisions whose violation forms the legal basis for this complaint.

    B. <u>The State Does Not Meet Article III's Standing Requirements</u>.

Article III standing requires that a prospective intervenor establish each of three elements:

(1) It has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly

>traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw,* 528 U.S. 167, 180-81 (2000). The State cannot satisfy Article III's standing requirements because it cannot point to a specific injury-in-fact that it will suffer should plaintiffs prevail in their regulatory challenge.

In order to show injury in fact, the State must show that there is a "substantial probability" that its interests will be adversely affected. *Am. Petroleum Inst. v. U.S. EPA*, 216 F.3d 50, 63 (D.C. Cir. 2000). But the State can point to no concrete facts demonstrating that it will suffer an injury as a consequence of this litigation. And indeed, it cannot. Should plaintiffs succeed in their administrative challenge, the litigation will only establish that Alaska Tribes and their tribal members have the right – on a par with all other federally recognized tribes and tribal members – to file petitions with the Secretary to place tribal lands into trust. It will not establish the Secretary's duty to affirmatively grant such a petition, much less speak to the legal consequences if he did (including what, if any, impact the grant of such a petition would have on the State's interests).

In short, even if this Court were to strike down 151.1's regulatory bar to petitions from Alaska Tribes, and thus hold that the Secretary retains authority to consider whether to take land into trust in Alaska, the future exercise of that authority is speculative and remains in the sound discretion of the Secretary. *See* 25 U.S.C. § 465. Thus, the State cannot show that there is a substantial probability that it will suffer concrete injury should this Court grant the very limited relief plaintiffs seek. The regulatory process neither mandates that the Secretary take land into trust, nor does it guarantee that the Secretary will act favorably on a trust lands petition. Any

impact to the State's sovereign interest is therefore entirely speculative and several steps removed from this case. Because the State claims nothing more than speculative injury, it has suffered no harm nor have its interests been impaired in any way that is traceable to the plaintiffs' challenged action. The State thus fails to meet Article III's standing requirements.

      C. <u>The State Does Not Satisfy Rule 24(a)(2) Requirements for Intervention of Right</u>.

Turning to the four-part test of Rule 24(a)(2), plaintiffs do not contest that the State's motion to intervene is timely, but challenges the State's ability to meet the second and third prongs, that the movant have "an interest relating to the property or transaction which is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest."

"Rule 24(a) 'impliedly refers not to *any* interest the applicant can put forward, but only to a legally protectable one.'" *Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060, 1074 (D.C. Cir. 1998) quoting *Southern Christian Leadership Conference (SCLC) v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984) (emphasis in original). As already discussed, the State has no legally protected interest in this action. Indeed, it has nothing more than a speculative interest in the outcome of some future proceeding that may or may not even occur. At this juncture there is no process for the submission of a trust land petition by an Alaska Tribe to the Secretary and, consequently, there is no trust land petition pending. The State's interest in generally protecting its "sovereignty" is an interest that is not currently at issue, and will never be at issue unless and until an actual trust land petition is favorably acted upon by the Secretary.

Further, the disposition of this action in plaintiffs' favor will as a practical matter, not impede the State's ability to protect its interest in those later proceedings. That is, should plaintiffs prevail in their APA challenge to the regulation and later file a trust land petition, the State will be free to participate fully in the petition process (as allowed by 25 C.F.R. 151.) and to challenge any final agency decision. *See e.g., Alternative Research & Dev. Found. v. Veneman*, 262 F.3d 406, 411 (D.C. Cir. 2001) (finding that a biomedical association suffered no impairment from an agency's initiation of rulemaking because the association could participate in the rulemaking process and challenge the final rule). *See also*, *Sokaogon Chippewa Cmty v. Babbitt,* 214 F.3d 941 (7th Cir. 2000) (denying intervention on basis that proposed intervenor could challenge the Department of Interior's ultimate decision under the APA). At those junctures the State will be free to raise all the non-IRA based interests asserted in its Motion, unconstrained by the outcome of the proceedings.

The State relies heavily on *Nuesse v. Camp*, 385 F.2d 694 (1967) to argue intervention of by a State is proper when the interpretation of a federal statute may have some effect on state policy. Mot. at 10. But *Nuesse* does not support the proposition that a speculative claim of injury to a sovereign interest is sufficient to establish a legally protectable interest for purpose of Rule 24(a)(2). In *Nuesse*, suit was brought by the Wisconsin-chartered American State Bank to enjoin the United States Comptroller of Currency from certifying approval of a national bank within the vicinity of American's office. 385 F.2d at 698. American alleged that the source of the Comptroller's authority to issue certificates turned on the National Banking Act, 12 U.S.C. § 36© (1964). That Act authorized branching of national banks only "'if such establishment and

operation are at the time expressly authorized to state banks, and under Wisconsin law, Wisconsin state banks were forbidden to branch.'" *Id*. Nuesse, the Wisconsin Banks Commissioner, moved to intervene to assert that under state law he was charged with enforcing state laws relating to banking, that American was relying on a state statute under his jurisdiction, and that American's representation of his interest might be inadequate. *Id*. The D.C. Circuit reversed the denial of intervention on the ground that Nuesse had a legally protectable interest because of the unique "circumstance that the regulation of national banking is an area in which Congress, in its exercise of delegated federal power, had for various policy reasons decided to adopt and incorporate state law on issues of common concern." *Id*. at 700.  The Court further explained that

> [t]his admixture of national and state policies, attaching national legal force to the state policy, yields the corollary that a state official directly concerned in effectuating the state policy has an 'interest' in a legal controversy involving the Comptroller which concerns the nature and protection of the state policy.

*Id.*

Alaska's asserted interest here is far from the legally protected interest recognized in *Nuesse*. Congress has not delegated federal power to adopt or incorporate state law into national policy under the IRA. To the contrary, the IRA and the land into trust regulations have remained an area of exclusive federal concern. The State has no legally protected interest in the federal polices effectuated by Congress in the IRA.

As for Alaska's alleged interest "as a settling party in preserving the scope and finality of the land claims settlement codified in ANCSA," Mot. at 13, that alleged interest, too, is not impacted in any plausible way by this litigation. Plaintiffs have not alleged in their Complaint a

single claim that arises under ANCSA, invokes ANCSA, or challenges ANCSA. Nor does this case involve land patented under ANCSA, or the resurrection of "aboriginal title." Mot. at 14. What Alaska's Motion really seems to oppose is plaintiffs' status as federally recognized Tribes, an interest that is not at issue in this case; an interest that is not legally protectable; and an interest that has long been resolved by the courts. *See, e.g., John v. Baker*, 982 P.2d 738 (Alaska 1999) (confirming federally recognized status of Alaska Tribes).

The State reliance on *Miami Tribe of Oklahoma v. Walden*, 206 F.R.D. 238, 242 (S.D. Ill. 2001), is misplaced. Mot. at 12. The sovereign interest at stake in *Walden* was much more concrete and susceptible to injury than Alaska's alleged sovereign interest here. In *Walden* the Miami Tribe sued landowners, claiming ownership and sovereign control over more than 2.6 million acres of land. *Id*. In assessing whether Illinois had a legally protectable interest justifying intervention, the Court reasoned that, were the Miami Tribe to win on the merits of its claim, Illinois would be unable to exercise its sovereignty over those lands and no longer be able to tax or regulate the individuals in the same manner that it was currently doing. 206 F.R.D. at 243. Thus, Illinois's interest was its sovereign regulatory power over an existing tax base that it would lose should the Miami Tribe prevail. *Id*.

Here, the State of Alaska can make no such similar claim because, unlike *Walden*, its sovereign interest is not directly challenged by the plaintiffs. Unlike the circumstance in *Walden*, were plaintiffs here to prevail on the merits, Alaska would not lose a tax base or any of its current regulatory powers over any particular land. All that would be happen is the opening of a process, should any plaintiff file a petition sometime in the future. A vague claim of "sovereign

interests" that are not currently threatened is not a legally protectable interest for purposes of Rule 24(a)(2).

Finally, the State has failed to demonstrate that any interests it may have are inadequately protected by the Secretary. Where, as here, a would-be intervenor is not asserting a legal right of his own, but merely advocating a particular policy that is vested in the discretion of government officials, his interest is deemed to be adequately represented by existing parties. *See United States v. Perry County Board of Education,* 567 F.2d 277 (5th Cir. 1978) (denying intervention on basis that challenge did not concern concrete legal issue but disagreement over policy). In addition, where, as here, the United States is the party defendant charged by law with defending the agency's regulation, there is a presumption of adequate representation. *Environmental Defense Fund, Inc. v. Higginson*, 631 F.2d 738 (D.C. Cir. 1979). The State of Alaska's interest in maintaining 25 C.F.R. § 151.1's bar to Alaska tribes is completely aligned with the federal defendants' interest in upholding the regulation. *Humane Society of United States v. Clark*, 109 F.R.D. 518, 520 (D.D.C. 1985) (rejecting movants' "vigor" argument, pointing out that, "in the context of this lawsuit, the federal defendants' only interest is in upholding the regulations.") Thus, any asserted interest the State might possess is adequately represented by the Secretary.[1]

---

[1] To the extent the state wishes to share its views with the Court, it is free to do so by an *amicus curiae* brief. *See Sweet Home Chapter of Communities for a Great Oregon v. Lujan*, No. 91-1468, 1991 U.S. Dist. LEXUS 17449, at *11 (D.D.C. 1991) (Intervenors' extensive familiarity with the issues that would contribute a useful perspective are best received through a timely filing of amicus briefs); *see also, Bethune Plaza, Inc. v. Lumpkin,* 863 F.2d 525, 533 (7th Cir. 1988) (" . . . stare decisis effects may satisfy the standard of Rule 24(a)(2) only when the putative intervenor's position so depends on facts specific to the case at hand that participation as amicus curiae is inadequate to convey essential arguments to the tribunal").

II.     MOVANT SHOULD BE DENIED PERMISSIVE INTERVENTION

Rule 24(b)(2) provides in pertinent part, that

[u]pon timely application, anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common.

The District of Columbia has articulated three factors upon which permissive intervention is dependent: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *Env. Def. v. Leavitt*, 329 F. Supp. 2d 55, 66 (D.D.C. 2004) (quoting *Equal Employment Opportunity Comm'n v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998)). In addition, a court "shall consider whether the requested intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(2).

With respect to the first prong, the D.C. Circuit has explained that:

Requiring an independent basis for jurisdiction makes sense in cases involving permissive intervention, because the typical movant asks the district court to adjudicate an additional claim on the merits. No less than the original claimants, a third party who seeks to intervene in a federal action and litigate a claim on the merits must demonstrate that the claim falls within the court's limited jurisdiction.

*Equal Employment Opportunity Comm'n v. Nat'l Children's Ctr., Inc.*, 146 F.3d at 1046-1047. Alaska cannot show that it has an independent ground for subject matter jurisdiction here. Alaska has no claim against the Secretary, and it is barred by tribal sovereign immunity from bringing a cross-claim against plaintiff tribes. *See United States v. United States Fidelity & Guar. Co.*, 309 U.S. 506, 512 (1940). Alaska has no case or controversy to assert against the Tribes and no independent claims against either the Secretary or the Tribes.

An added reason barring the State's intervention as a defendant is the Eleventh Amendment. The State's intervention motion necessarily waives its Eleventh Amendment immunity, *Lapides v. Board of Regents*, 535 U.S. 613, 619 (2002), but Alaska's Attorney General is not authorized to waive this absent approval from the Alaska Legislature, *Alaska v. O/S Lynn Kendall,* 310 F. Supp. 433, 434-35 (D. Alaska 1970).  The Alaska Legislature has only authorized the Attorney General to waive Alaska's Eleventh Amendment immunity in two narrow circumstances, neither of which is present here.  See Alaska Statute 44.23.020(c) and (g).  Until the State can demonstrate that the irrevocable waiver of sovereign immunity concomitant to its motion is one that the Alaska Legislature has validly authorized, intervention should be denied.  For this reason too, permissive intervention must be denied.

For the foregoing reasons, plaintiffs respectfully urge the Court to reject State of Alaska's Motion to Intervene.

Dated this 10th day of December, 2007.

        s/  Heather Kendall Miller
        Alaska Bar # 9211084
        NATIVE AMERICAN RIGHTS FUND
        420 L Street, Suite 505
        Anchorage, Alaska 99501
        Tel:  (907) 276-0680
        Fax: (9F07) 276-2466

        Email: kendall@narf.org

        s/ Richard Guest
        D.C. Bar No. 477572
        NATIVE AMERICAN RIGHTS FUND
        1712 N Street, N.W.

Washington, D.C. 20036  
(202) 875-4166

Attorneys for Plaintiffs

Certificate of Service

The undersigned hereby certifies that on the 10th day of December, 2007, a true and correct copy of the Opposition to Motion to Intervene in the above-captioned case was served by electronic means upon the following:

Daniel G. Steele
U.S. Department of Justice
Environment and Natural Resources Division

General Litigation Section
P.O. Box 663
Washington, D.C. 20044-0482

For the Defendants

Attorney for Defendants

                                        s/  Heather Kendall Miller