UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AKIACHAK NATIVE COMMUNITY *et al.*,<br><br>    Plaintiffs<br>          v.<br>DEPARTMENT OF THE INTERIOR, *et al.*.,<br><br>    Defendants | No. 1:06-cv-00969 (RWR) |

**ALASKA'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO INTERVENE**

Plaintiffs argue that their challenge to the land into trust regulations is based only on alleged violations of section 5 of the Indian Reorganization Act. As such, plaintiffs argue, the State of Alaska lacks the requisite constitutional and prudential standing to intervene. However, plaintiffs own complaint belies such a narrow approach to this lawsuit. At the heart of plaintiffs' case lies the question of whether the Alaska Native Claims Settlement Act (ANCSA), 43 U.S.C. §§ 1601 *et seq.*, continues to justify the regulatory bar prohibiting the Department of Interior ("Secretary" or "Interior") from applying the land into trust regulations in Alaska despite withdrawal of the 1978 Fredericks opinion. Plaintiffs' assertion that Alaska's interests are not implicated until specific land-into-trust applications are evaluated by the Secretary ignores the state's interest as a settling party in preserving the scope and integrity of the settlement codified in ANCSA as well as Alaska's sovereign interest in preserving regulatory jurisdiction

over land within its borders.  Alaska's motion to intervene should be granted.

I.   ARGUMENT

A.   **Alaska Meets Prudential And Constitutional Standing Requirements To Intervene**

Plaintiffs concede that Alaska's motion to intervene is timely, but contest that Alaska meets prudential and constitutional standing requirements.  Specifically, Plaintiffs argue that Alaska has no "interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest."  Fed. R. Civ. P. 24(a)(2).  Plaintiffs are wrong.

"[A]ny person who satisfies Rule 24(a) will also meet Article III's standing requirement."  *Reoder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003).  Furthermore, satisfying constitutional standing requirements demonstrates the existence of a legally protected interest for purposes of Rule 24(a)(2).  *Jones v. Prince Georges County Maryland*, 348 F.3d 1014, 1019 (D.C. Cir. 2003); *Fund for Animals v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003).

For the purposes of their opposition to Alaska's intervention, Plaintiffs describe their case as based narrowly on section 5 of the Indian Reorganization Act (IRA), 25 U.S.C. § 465, and 25 U.S.C. §§ 476(f) & (g).  Akiachak Opp. at 4.  Plaintiffs then conclude that Alaska has no legally protectable rights that fall within the zone of interest of these statutory provisions.  This argument is disingenuous. Plaintiffs state that

"the sole issue here is whether 25 C.F.R. § 151.1's bar against Alaska Tribes violates the IRA's mandates in 25 U.S.C. § 476(f) and (g) prohibiting the Secretary from promulgating any regulation that 'enhances, or diminishes the privileges and immunities available to the Indian tribe relative to other federally recognized tribes by virtue of their status as Indian tribes." Akiachak Opp. at 5. In actuality, this case turns on whether 25 C.F.R. § 151.1 differentiates between Alaska tribes and other federally recognized tribes by virtue of their status as tribes or by virtue of their status as parties to a land claims settlement.

> Plaintiffs' assert that they:
>
> have not alleged in their Complaint a single claim that arises under ANCSA, invokes ANCSA, or challenges ANCSA. Nor does this case involve land patented under ANCSA, or the resurrection of "aboriginal title."

Akiachak Opp. At 11-12. However, Plaintiffs' Consolidated Complaint directly challenges ANCSA as the basis for the regulatory prohibition against application of the land into trust regulations to Alaska. Consol. Compl. paras. 14-23. Furthermore, this case could not involve land patented under ANCSA, because that issue already has been decided. *Alaska v. Native Village of Venetie Tribal Government*, 522 U.S. 520, 532 (1998) holds that ANCSA land meets neither the "set apart for the use of the Indians as such" nor the "under the superintendence of the Federal Government" requirements to be designated Indian country. One issue this case will decide is whether ANCSA's extinguishment of aboriginal title and all land claims based on aboriginal title includes

the right to seek the jurisdictional rights sought by Plaintiff tribes in this case. Alaska clearly holds a legally protected interest both as a sovereign and as a settling party in preserving the scope and integrity of the land claims settlement codified in ANCSA. Maintaining the prohibition against taking land into trust in Alaska protects those interests.

Alaska meets the requirements for Article III standing because removing the prohibition against taking land into trust in Alaska would cause the state to suffer concrete and particularized injury in fact, and such injury would be completely redressable by maintaining the regulatory bar. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (identifying requirements for constitutional standing*)*. Plaintiffs' argument that the state suffers no harm, and is not even at risk of harm, until the Secretary acts affirmatively on a land-into-trust petition attempts to tease the court into a simplistic, but flawed, view of the issues at play in this case. Plaintiffs apparently argue that a party's interest in protecting its legal rights does not vest until its rights have been violated. This is not true. The State of Alaska maintains that the Secretary is prohibited by law from taking *any* land in Alaska into trust with one exception not relevant here. Because of this, it would be improper (and an unproductive use of government resources) for the Secretary to accept for consideration any land into trust petition from Alaska. The issue of whether the Secretary should grant a particular land-into-trust application concerning land in Alaska should never be reached. The prerequisite, fundamental issue that must be decided in this case is whether the Secretary

has legal authority to *consider any* land into trust application from Alaska.[1]

The State of Alaska provided money and land selection priority for Alaska Natives with the express intent of avoiding "a reservation system or lengthy wardship or trusteeship, and without adding to the categories of property and institutions enjoying special tax privileges or to the legislation establishing special relationships between the United States Government and the State of Alaska." 43 U.S.C. § 1601(b). The declaration of settlement in ANCSA is explicit:

> (b) All aboriginal titles, if any, and claims of aboriginal title in Alaska based on use and occupancy, including submerged land underneath all water areas, both inland and offshore, and including any aboriginal hunting or fishing rights that may exist, are hereby extinguished.
>
> (c) All claims against the United States, the State, and all other persons that are based on claims of aboriginal right, title, use, or occupancy of land or water areas in Alaska, or that are based on any statute or treaty of the United States relating to Native use and occupancy, or that are based on the laws of any other nation, including any such claims that are pending before any Federal or state court of the Indian Claims Commission, are hereby extinguished.

43 U.S.C. § 1603 (b) & (c).

Application of the land into trust regulations to Alaska would abrogate the terms of this settlement. Tribal regulatory power over land, which is the exact relief sought by at least some of the plaintiffs,[2] is an essential aspect of aboriginal title. *See,*

---

[1] The exception is for the Metlakatla Indian Community of the Annette Islands Reserve.
[2] Plaintiff tribes Chalkyitsik and Akiachak seek regulatory jurisdiction to enforce the village alcohol ban. Consol. Compl. paras. 27-36.

*e.g., Johnson v. McIntosh,* 21 U.S. (8 Wheat) 543, 574 (1823) (stating that until extinguished by the federal government, aboriginal title includes the right of tribes "to use [the soil] according to their own discretion.")  It is also a right that at least some of the plaintiffs voluntarily extinguished by participating in ANCSA.[3]  To protect the legal rights granted Alaska in this settlement from being eroded by application of the land into trust regulations, Alaska would be required to initiate a lawsuit against the Secretary, and possibly also the petitioning tribe, to determine the very issues that comprise this case.

In addition to its rights as a settling party in ANCSA, Alaska is vested with legal rights as a sovereign over the land within its borders.  Application of the land into trust regulations to Alaska would abrogate Alaska's sovereign rights to tax any land taken into trust and potentially abrogate its authority to regulate land use, manage natural resources, and regulate the environment on trust land.  Exercise of police powers and regulation of resources within state boundaries are fundamental elements of state sovereignty.  Const. Art. IV, § 3, cl. 1.  These elements of state sovereignty are widely recognized:

> Courts have long recognized that a governmental entity has sovereign interests in exercising power over individuals and entities in its territory and in having its territory and power recognized by other sovereigns. *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601, 102 S. Ct. 3260, 73 L. Ed. 2nd 995 (1982).  A governmental body's sovereign interest is the type of direct, significant and legally protectable interest that could justify intervention under Rule 24(a)(2). *See Scotts*

---

[3] Plaintiff tribes Chalkyitsik, Tuluksak and Akiachak participated in ANCSA.  43 U.S.C. 1610(b).

> *Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States,* 921 F.2d 924, 927-28 (9th Cir. 1990); *see, e.g., Sierra Club v. City of San Antonio,* 115 F.3d 311, 315 (5th Cir. 1997) (holding that state's claim of "important sovereign interest" in protecting the authority of and enforcing a statutory scheme satisfied requirements of Rule 24(a)(2)); *United States v. Oregon*, 745 F.2d 550, 553 (9th Cir. 1984) (noting that state's claim of interest in regulating fishing satisfied requirements of Rule 24(a)(2)).

*Miami Tribe of Oklahoma v. Walden*, 206 F.R.D. 238, 242 (S.D. Ill. 2001). Whether the elements of state sovereignty at issue in this case may be legally compromised by any authority on the part of the Secretary to take land into trust in Alaska is central to this case.

Plaintiffs' myopic argument that Alaska has no legally protectable interest at stake until a specific land into trust application is submitted ignores the fundamental aspects of state sovereignty at issue in this case. It also assaults the integrity and scope of the land claims settlement in ANCSA, to which the state and three of the plaintiff tribes were parties. The state provided consideration in the form of money and land selection priorities in exchange for a release from future land claims on the part of the settling tribes. *See* 43 U.S.C. §§ 1605, 1608, 1610. The plain language of Rule 24(a)(2) requires only that the intervenor claim "an interest *relating to* the property or transaction which is the subject of the action." Fed. R. Civ. P. 24(a)(2). Alaska has a *direct* interest in the subject of this action.

**B.     Alaska's Interests Are Not Adequately Protected By The Secretary**

Plaintiffs argue that Alaska is adequately represented by the existing parties

because it does not assert a legal right of its own, "but merely advocat[es] a particular policy that is vested in the discretion of government officials." Akiachak Opp. at 13. Again, this assertion relies entirely on an artificially constricted characterization of this case. Alaska does not advocate a policy vested in the discretion of the Secretary. Alaska disputes that applicable law grants the Secretary discretion to decide as a matter of policy that the prohibition against taking land into trust in Alaska may be lifted. Alaska's interest in maintaining 25 C.F.R. § 151.1's bar to Alaska tribes is not completely aligned with the federal defendants' interest in upholding the regulation. The federal defendants are concerned with defending the regulation. They are not concerned with preserving Alaska's jurisdiction over land within its borders, or in protecting Alaska's interests as a settling party to ANCSA.[4] These interests are the sole concern of the State of Alaska, and the state cannot rely on the Secretary to protect them.

### C.      Alaska Meets The Requirements For Permissive Intervention

Plaintiffs argue that Alaska does not meet even the requirements for permissive intervention because "Alaska has no case or controversy to assert against the Tribes and no independent claims against either the Secretary or the Tribes." Akiachak Opp. at 14. This is not true. As set forth above, Alaska has articulated both a case and controversy against the Secretary and the Tribes concerning the legal foundation for the prohibition against applying the land into trust regulations to Alaska. Alaska maintains

---

[4] The federal government also was party to the land claims settlement in ANCSA and therefore has interests in preserving the scope and integrity of the settlement that don't necessarily align directly with those of the State.

that the Secretary lacks discretion to lift the regulatory bar against Alaska tribes, and would have the right to pursue this claim in court. Alaska therefore would have an independent claim against the Secretary should the prohibition against taking land into trust in Alaska be lifted.

The state also has an independent claim against the Tuluksak Native Community related to the specific land at issue in this case. In 1997 the Tuluksak IRA Council, representing the Tuluksak Native Community, accepted the assets, liabilities and obligations of the dissolved City of Tuluksak, including the land Plaintiffs describe in paragraph 42 of their Consolidated Complaint. The Tuluksak IRA Council signed a Memorandum of Agreement (MOA) in which it agreed that the conveyed land "will be used only for public purposes and will be available to the public without restriction as to race, religion, color, national origin, sex or tribal affiliation." Ex. 1, Memorandum of Agreement to Convey and Accept Assets, Liabilities and Obligations of the Dissolved City of Tuluksak, 1997, at 2. The MOA also includes an express waiver of sovereign immunity by the Tuluksak IRA Council and states:

> That this agreement does not constitute recognition of "Indian Country" with respect to real property conveyed under this Agreement and Attachment A [the quitclaim deed], and the Tuluksak IRA Council agrees not to assert that this particular real property is "Indian Country."

*Id.* at 5. The MOA indicates that the Tuluksak IRA Council intends to transfer the MOA and the quitclaim deed conveying the land at issue in this case to the Tuluksak Traditional Council, and requires that the transfer "include precisely the same terms" and

"each and every stipulation, condition, and requirement" imposed on the Tuluksak IRA Council by the MOA. *Id.* The MOA also includes a possibility of reverter to the State of Alaska should any provision of the MOA be violated. *Id.* Plaintiffs' lawsuit itself arguably breaches the MOA. The act of filing a petition to have the Secretary take the Tuluksak land into trust almost certainly would.

**D.      The Alaska Attorney General Has Authority To Intervene**

Plaintiffs argue that Alaska's motion to intervene should be denied because the Alaska Attorney General is without authority to waive the state's Eleventh Amendment immunity, and that such a waiver would necessarily result from the State's intervention in this case. Akiachak Opp. at 15; Kavairlook Opp. at 1. This argument is a red herring. Statutory and case law support the Alaska Attorney General's authority to intervene in this case.

The Alaska Statute establishing the duties and powers of the Alaska Attorney General is broad. It states:

> (b) The attorney general shall
> (1) defend the Constitution of the State of Alaska and the Constitution of the United States of America;
> . . . .
> (3) represent the state in all civil actions in which the state is a party;
> . . . .
> (8) perform all other duties required by law or which usually pertain to the office of the attorney general in a state;

AS 44.21.415. The statute grants the Alaska Attorney General comprehensive authority to represent the legal interests of the state in all civil actions. The statute does not limit

the attorney general's authority by court or forum or by the procedural posture of the case. The specific Eleventh Amendment waiver provisions cited by Plaintiffs, AS 44.23.020(c) & (g), do not indicate that the Alaska Attorney General lacks authority to intervene in a case in federal court without legislative approval, which is what Alaska seeks here.[5] By intervening, Alaska does not waive its right to be sued in federal court by its own citizens or citizens of another state for money damages, which is the core protection afforded states by the Eleventh Amendment. *Lapides v. Board of Regents*, 535 U.S. 613, 620 (2002). Alaska's intervention amounts only to consent to this court's jurisdiction to determine the case at hand.

The case law cited by Plaintiffs actually supports the Alaska Attorney General's authority to intervene in this case. The decision in *Alaska v. O/S Lynn Kendall*, 310 F. Supp. 433, 434 (D. Alaska 1970) arose in the context of a case brought by the Alaska Attorney General in federal district court to recover salvage services and public nuisance abatement damages against the defendant. Defendants asserted counterclaims seeking affirmative relief in the form of money damages. *Id.* Alaska moved for an order limiting any recovery by defendants to that arising from the same transaction alleged in the State's complaint and limiting the amount, if any, to that recovered by the state. *Id.*

---

[5] As indicated in Attachment C, page 2 to the Kavairlook Plaintiff's opposition, legislative approval to intervene in the Tongass submerged lands litigation was sought as a matter of expedience after being informed that the State's intervention would be challenged on Eleventh Amendment grounds by the United States: "While the Department of Law does not believe that the law is settled in this area, we have chosen to remove any ambiguity in this case rather than consume court time in litigating the issue."

Alaska's Reply Memorandum in Support of Its Motion to Intervene: *Akiachak Native Community et al. v. Kempthorne*, 1:06-cv-969
Page 11 of 15

The court granted the motion:

> Although a counterclaim may be asserted against a sovereign by way of setoff or recoupment to defeat or diminish the sovereign's recovery, no affirmative relief may be given against the sovereign in the absence of consent.

*Id.* at 435. Plaintiff's argument confuses a state attorney general's authority to consent to federal court jurisdiction with its authority to waive the state's immunity to suit under the Eleventh Amendment. The issues are related, but are not the same.

The other case relied on by plaintiff Kavairlook, *Lapides*, holds that as a matter of federal law, a state's attorney general authorized to bring a case in federal court may voluntarily invoke the federal court's jurisdiction. 535 U.S. at 622-23. In that case, the Georgia Attorney General consented to removal of the case to federal district court and then sought Eleventh Amendment immunity against suit in federal court. *Id.* at 617. The court rejected the argument that Georgia state law did not authorize the state attorney general to waive the state's Eleventh Amendment immunity:

> This Court consistently has found a waiver when a State's attorney general, authorized (as here) to bring a case in federal court, has voluntarily invoked that court's jurisdiction. And the Eleventh Amendment waiver rules are different when a State's federal-court participation is involuntary.

*Id.* at 621-22. *Lapides* recognizes the distinction between a state's consent to have a case heard in federal court versus a state consenting to waive its Eleventh Amendment immunities: voluntary appearances in federal court by state attorneys general constitute consent to federal court jurisdiction, whereas involuntary suits against a state may not

divest the state of its Eleventh Amendment protections. *Id.* at 622. When a state attorney general authorized to bring a case in federal court invokes the court's jurisdiction, the state has consented to waive "its otherwise valid objection to litigation of a matter . . . in a federal forum." *Id.* at 624.

Finally, Plaintiffs' arguments fail as a matter of common sense and practicality. The Alaska Legislature meets in regular session for 90 days each year.[6] The Alaska Attorney General is required to handle litigation year-round in accordance with court rules and state and federal statutes. Any implied requirement that the Alaska Attorney General seek approval from the Legislature every time he seeks to enter into a case in federal court would be so impracticably burdensome as to be nonsensical. Not only is the Alaska Attorney General authorized to intervene in federal court to protect the State's legal interests, but he does so regularly without objection from the Legislature. *See, e.g., Exxon Mobil Corp. v. Federal Energy Regulatory Com'n.*, 501 F.3d 204 (D.C.Cir. 2007); *Southeast Alaska Conservation Council v. U.S. Army Corps of Engineers*, 486 F.3d 638 (9th Cir. 2007); *Northern Alaska Environmental Center v. Kempthorne*, 457 F.3d 969 (9th Cir. 2006); *Natural Resources Defense Council v. U.S. Forest Service*, 421 F.3d 797 (9th Cir. 2005); *New York v. U.S. E.P.A.*, 413 F.3d 3 (D.C.Cir. 2005); *Edwardsen v. U.S. Dept. of Interior*, 268 F.3d 781 (9th Cir. 2001); *Alaska Center for Environment v. Armbrister*, 131 F.3d 1285 (9th Cir. 1997); *Alyeska*

---

[6] In recent years, the regular legislative session has been limited to 120 days. It has been reduced to 90 days starting in 2008.

*Pipeline Service Co. v. Kluti Kaah Native Village of Copper Center*, 101 F.3d 610 (9th Cir. 1996); *Confederated Tribes & Bands of Yakama Indian Nation v. Baldrige*, 91 F.3d 1366 (9th Cir. 1996); *Silas v. Babbitt*, 96 F.3d 355 (9th Cir. 1996); *Minchumina Natives, Inc. v. U.S. Dept. of Interior*, 51 F.3d 220 (9th Cir. 1995); *Chilkat Indian Village v. Johnson*, 643 F.Supp. 535 (D.Alaska 1986); *Tyonek Native Corp. v. Secretary of Interior of U.S.*, 629 F.Supp. 554 (D.Alaska 1986); *Jones v. Gordon*, 621 F.Supp. 7 (D.Alaska 1985); *Auke Bay Concerned Citizen's Advisory Council v. Marsh*, 779 F.2d 1391 (9th Cir. 1986).

In short, the Alaska Attorney General is authorized to intervene in cases before the federal courts when required to protect the State's legal interests, and under *Lapides*, will be held to have consented to federal court jurisdiction. Plaintiffs' argument that Alaska's motion to intervene should be denied because the Alaska Attorney General does not have legislative approval to do so is without merit.

**IV.      CONCLUSION**

Alaska is entitled to intervene in this case under Rule 24(a)(2). Alternatively, the State should be permitted to intervene under Rule 24(b)(2). Alaska's right to defend its sovereignty and preserve the land claims settlement in ANCSA must be honored by allowing its intervention in this litigation. Amicus status would not adequately protect the state's interests in this case, as amici may not appeal unfavorable decisions and may not advance defenses or issues not raised by the original parties. The

State's motion to intervene should be granted.

DATED this 17th day of December, 2007.

TALIS J. COLBERG
ATTORNEY GENERAL

By:  /s/ J. Anne Nelson
J. Anne Nelson
Assistant Attorney General
Alaska Bar No. 0705023
1031 West 4th Avenue, Suite 200
Anchorage, Alaska 99501-1994

/s/ Elizabeth J. Barry
Elizabeth J. Barry
Chief Assistant Attorney General
Alaska Bar No. 8106006
1031 West 4th Avenue, Suite 200
Anchorage, Alaska 99501-1994