BOOK 0074 PAGE 951

## MEMORANDUM OF AGREEMENT
## TO CONVEY AND ACCEPT ASSETS, LIABILITIES AND OBLIGATIONS
## OF THE DISSOLVED CITY OF TULUKSAK

THIS AGREEMENT TO CONVEY AND ACCEPT the assets, liabilities and obligations of the inactive City of Tuluksak, a city being legally dissolved under state law, is entered into by and between the State of Alaska, represented by the Department of Community and Regional Affairs (hereafter referred to as the "State of Alaska " or "State"), on one hand, and the Tuluksak IRA Council, representing the Tuluksak Native Community, a federal corporation chartered under the Act of June 18, 1934, as amended by the Act of May 1, 1936, on the other.

WHEREAS on December 13, 1994, the Local Boundary Commission formally approved dissolution of the inactive City of Tuluksak, contingent and effective upon satisfaction of certain conditions being met within two years of tacit approval by the Alaska Legislature of the recommended dissolution of the City of Tuluksak pursuant to AS 29.06.450(b);

WHEREAS the Alaska Legislature's tacit approval of the Local Boundary Commission's recommended dissolution of the City of Tuluksak with those certain conditions precedent as set out in the recommendation, was effective on March 10, 1995;

WHEREAS the recommendation of the Local Boundary Commission required as a condition to dissolution that, at an advisory election administered by the State Division of Elections, at least 50 percent of voters voting in the election approve the dissolution and, further, endorse a successor entity to the inactive city;

WHEREAS the advisory election was held on October 3, 1995, and certified by the state Division of Elections on October 20, 1995, with the voters approving the dissolution of the City of Tuluksak by a vote of 58 in favor and 26 against, with the

Memorandum of Agreement to Convey and Accept
Assets, Liabilities and Obligations of the
Dissolved City of Tuluksak

Page 1 of 8

Exhibit 1
Page 1 of 16

BOOK 0074 PAGE 952

Tuluksak IRA Council endorsed as the successor to the inactive city by a margin of 61 in favor and 24 against;

WHEREAS the State of Alaska agrees that the Tuluksak IRA Council is the successor to the assets, liabilities and obligations of the City of Tuluksak;

WHEREAS the known financial liabilities of the inactive City of Tuluksak as set out in the Department of Community & Regional Affairs' "Petition for Dissolution -- City of Tuluksak," and other financial liabilities known to have accrued to date, have been satisfied as required in the recommendation of the Local Boundary Commission;

WHEREAS the terms of this Agreement were approved by the members of the Tuluksak IRA Council at a duly convened meeting on __06__ day of __March__, 1997__;

THEREFORE, the assets, liabilities and obligations of the inactive City of Tuluksak, as passed through the Department of Community and Regional Affairs under authority of AS 29.06.520, AS 44.47.150 and 19 AAC 94, are conveyed to and accepted by and succeeded to the Tuluksak IRA Council, subject to the following conditions expressly agreed to by the Tuluksak IRA Council in accepting the subject assets, liabilities and obligations:

1.  That all properties of the inactive City of Tuluksak, including those properties conveyed under the Quitclaim Deed (Attachment A), are conveyed hereunder to the Tuluksak IRA Council. In accepting such properties, the Tuluksak IRA Council covenants that the properties of the inactive City of Tuluksak received under this Agreement will be used only for public purposes and will be available to the public without restriction as to race, religion, color, national origin, sex or tribal affiliation.

2.  That the Tuluksak IRA Council will, without consideration* or other condition, transfer the title and ownership of the properties of the inactive City of Tuluksak that are succeeded to in this Agreement, including the real property in the Quitclaim Deed (Attachment A), to a future city or organized borough of which the

Memorandum of Agreement to Convey and Accept    Page 2 of 8
Assets, Liabilities and Obligations of the
Dissolved City of Tuluksak

Exhibit 1
Page 2 of 16

BOOK 0074 PAGE 953

property becomes a part, but only upon request of the city or organized borough within five years of the date that the property was first included within the corporate boundaries of the city or organized borough. It is the expectation of the State of Alaska that a future city or borough will consult fully with the Tuluksak IRA Council before any request is made to transfer property under this provision.

3. That if the Tuluksak IRA Council fails to comply with the terms of this Agreement governing the property of the inactive City of Tuluksak received under this Agreement, the property shall be transferred, without consideration\* or other condition, to the State of Alaska upon request by the State of Alaska. It is the expectation of the State of Alaska that the State will consult fully with the Tuluksak IRA Council before any action is taken to transfer property under this provision back to the State of Alaska.

4. That the Tuluksak IRA Council acknowledges that the property conveyed under this Agreement may be subject to certain reservations, exceptions, restrictions, and covenants.

5. That the Tuluksak IRA Council may, if it gives 30 days written notification to and receives approval by the State of Alaska Commissioner of the Department of Community and Regional Affairs or the Commissioner's designee, convey, lease, grant easements or otherwise obligate the property of the inactive City of Tuluksak received under this Agreement. Such approval by the Commissioner or the Commissioner's designee will not be unreasonably withheld. Any conveyance, lease, easement or other obligation made under this provision must be consistent with the terms of this Agreement and the Quitclaim Deed (Attachment A).

* Throughout this Agreement, "consideration" means something of value given or done in exchange for something of value given or done by another.

Memorandum of Agreement to Convey and Accept
Assets, Liabilities and Obligations of the
Dissolved City of Tuluksak

Page 3 of 8

Exhibit 1
Page 3 of 16

BOOK 0074 PAGE 954

6. That the State reserves the right to provide any easements with respect to real property of the inactive City of Tuluksak that is conveyed under this Agreement to the Tuluksak IRA Council, if providing such easements is necessary to ensure access to navigable or public water pursuant to AS 38.05.127.

7. That if the real property of the inactive City of Tuluksak that is conveyed under the Quitclaim Deed (Attachment A) and this Agreement is located within the boundaries of a future municipal government that exercises authority for planning, platting or land use regulation, the property of the inactive City of Tuluksak conveyed under this Agreement is subject to the planning, platting and/or land use regulations and ordinances of that municipality. This provision does not prevent the Tuluksak IRA Council as owner of the property conveyed under this Agreement from planning for the best use of that property in conformance with the terms of this Agreement.

8. That the Tuluksak IRA Council expressly agrees to hold the State of Alaska harmless with respect to any contracts, agreements or other liabilities and obligations of the inactive City of Tuluksak, including the period of time that the State of Alaska was successor to such contracts, agreements, liabilities or obligations by virtue of AS 29.06.520. Such contracts, agreements or other liabilities and obligations include contracts or agreements with the Association of Village Council Presidents Regional Housing Authority, specifically as to site control issues included in the land easement contained in the "Cooperation Agreement" entered into on October 13, 1978, by and between the Association of Village Council Presidents Regional Housing Authority and the City of Tuluksak (Attachment B). Except as provided herein, this Agreement shall not be construed to require the Tuluksak IRA Council to hold the State of Alaska harmless for actions taken by the State for which the State is legally responsible.

9. That the Tuluksak IRA Council expressly agrees to hold the State of Alaska harmless for any failure on the part of the inactive City of Tuluksak, including the period of time that the State of Alaska was successor by operation of law to the assets,

Memorandum of Agreement to Convey and Accept
Assets, Liabilities and Obligations of the
Dissolved City of Tuluksak

Page 4 of 8

Exhibit 1
Page 4 of 16

BOOK 0074 PAGE 955

liabilities or obligations of the inactive City of Tuluksak by virtue of AS 29.06.520, or on the part of the Tuluksak IRA Council, to comply with state or federal (a) water quality laws, and (b) hazardous waste/disposal laws to which the property may be subject. Except as provided herein, this Agreement shall not be construed to require the Tuluksak IRA Council to hold the State of Alaska harmless for actions taken by the State for which the State is legally responsible.

10. That the Tuluksak IRA Council agrees to apply for a transfer of the inactive City of Tuluksak's certificate of public convenience and necessity of local utilities with the Alaska Public Utilities Commission in an expeditious fashion.

11. That the Tuluksak IRA Council expressly waives its sovereign immunity for the purposes of this Agreement including the Quitclaim Deed (Attachment A) and consents to suit in a convenient State of Alaska court to ensure the enforceability of the stipulations of this Agreement. The waiver of sovereign immunity and consent to suit in a convenient State of Alaska court apply only to the provisions of this Agreement.

12. That this Agreement does not constitute recognition of "Indian Country" with respect to real property conveyed under this Agreement and Attachment A, and the Tuluksak IRA Council agrees not to assert that this particular real property is "Indian Country."

13. The Tuluksak IRA Council or the State of Alaska may seek amendments to this Agreement at any time. Any amendments to the agreement must be approved by the Alaska Department of Law.

14. The State has been informed that, notwithstanding the formation of the Tuluksak IRA Council by ratification of the voters of Tuluksak on January 5, 1950, the residents of Tuluksak claim that, historically, they have considered their village council to the Tuluksak Traditional Council. Additionally, the State has been informed that the Tuluksak IRA Council intends to pursue the complete transfer of this Agreement and the Quitclaim Deed (Attachment A) to the Tuluksak Traditional Council. However, it is

Memorandum of Agreement to Convey and Accept
Assets, Liabilities and Obligations of the
Dissolved City of Tuluksak

Page 5 of 8

Exhibit 1
Page 5 of 16

BOOK 0074 PAGE 956

understood by the parties to this Agreement that no transfer of the Agreement and Quitclaim Deed (Attachment A) from the Tuluksak IRA Council to the Tuluksak Traditional Council may occur unless

(a) the transfer of the Agreement and the Quitclaim Deed (Attachment A) is made in such a manner that the Agreement and Quitclaim Deed (Attachment A), as transferred, include precisely the same terms, including the transfer of all assets, liabilities and obligations of the inactive City of Tuluksak;

(b) each and every stipulation, condition, and requirement imposed on the Tuluksak IRA Council in this Agreement and the Quitclaim Deed (Attachment A) is transferred to and accepted by the Tuluksak Traditional Council and every stipulation, condition and requirement imposed by this Agreement and the Quitclaim Deed (Attachment A) remains in effect and is binding upon the Tuluksak Traditional Council; and

(c) the document transferring the assets, liabilities and obligations imposed under this Agreement and the Quitclaim Deed (Attachment A) is approved, in writing, by the State, Department of Community and Regional Affairs and the Department of Law, before the transfer is legally effective.

FURTHER, the State of Alaska and the Tuluksak IRA Council agree that it is desirable that any dispute related to this Agreement be resolved by mutual agreement between the State and the Tuluksak IRA Council. However, if it is not possible to resolve any dispute related to this Agreement by mutual agreement, the State of Alaska and the Tuluksak IRA Council agree that the terms and conditions of this Agreement are governed by the laws of the State of Alaska and shall be enforceable by the parties in the Superior Court for the State of Alaska. A failure by a party to enforce a section or provision of this Agreement does not constitute a party's waiver of its rights under a section or provision nor shall it be a waiver or bar to the enforcement of any other section or provision of this Agreement. This Agreement is an integrated agreement.

Page 6 of 8

Memorandum of Agreement to Convey and Accept
Assets, Liabilities and Obligations of the
Dissolved City of Tuluksak

Exhibit 1
Page 6 of 16

BOOK 0074 PAGE 957

and shall be construed without the use of any presumption in favor of or contrary to the position of either party.

Any provision of this Agreement which shall prove to be invalid, void or illegal shall in no way affect, impair or invalidate any other provision of the Agreement and such remaining provisions shall remain in full force and effect.

This Agreement becomes effective on the date the last signor signs.

STATE OF ALASKA
DEPARTMENT OF COMMUNITY
AND REGIONAL AFFAIRS

By: _____
Mike Irwin, Commissioner
DATED: 3.7.97

Approved as to form:
DEPARTMENT OF LAW
BRUCE M. BOTELHO
ATTORNEY GENERAL

By: _____
Bruce M. Botelho
DATED: 3/7/97

Return to:
Tuluksak IRA Council
P.O. Box 65
Tuluksak, Alaska 99679

Memorandum of Agreement to Convey and Accept
Assets, Liabilities and Obligations of the
Dissolved City of Tuluksak

Page 7 of 8

Exhibit 1
Page 7 of 16

MAR-07-97 FRI 10:06    ST ALASKA DCRA ANCH    FAX NO. 9072694539    P.01/01

BOOK 0074 PAGE 958

**TULUKSAK IRA COUNCIL**

By: *Joseph Alexie*
Joe Alexie, President

By: *Sammy J. Peter*
Sammy Peter, Vice President

By: _____
Elena Gregory, Secretary

By: *Peter J. Andrew*
Peter J. Andrew, Treasurer

By: *Willie Phillip*
Willie Phillip, Member

By: *Andrew B. Alexie*
Andrew B. Alexie, Member

By: _____
Paul J. Alexie, Member

DATED: *March 05, 1997*

**ACKNOWLEDGMENT**

STATE OF ALASKA        )
                       )  SS.
FOURTH JUDICIAL DISTRICT )

This is to certify that on the __5 6__ day of __March__, ~~1996~~ 1997 before me, the undersigned, a Notary Public, duly commissioned and sworn as such, personally came, to me Joe Alexie, Sammy Peter, Elena Gregory, Peter J. Andrew, John Napoka, Jr, Noel Owens, Olga Kinegak, known to be respectively, the President, Vice President, Secretary, Treasurer, Member, Member and Member of the Tuluksak IRA Council, who signed the foregoing "Memorandum of Agreement to Convey and Accept Assets, Liabilities and Obligations of the Dissolved City of Tuluksak."

*Carrie Peter*
Notary Public for the State of Alaska
My Commission expires: _____

Memorandum of Agreement to Convey and Accept
Assets, Liabilities and Obligations of the
Dissolved City of Tuluksak

Page 8 of 8

**Exhibit 1**
**Page 8 of 16**

BOOK 0074 PAGE 959

# STATE OF ALASKA
### Bethel Recording District

# QUITCLAIM DEED

### No. _____

The Grantor, State of Alaska, pursuant to the "Memorandum of Agreement to Convey and Accept Assets, Liabilities and Obligations of the Dissolved City of Tuluksak", entered into between the State of Alaska and the Tuluksak IRA Council, representing the Tuluksak Native Community, dated March 6, 1997, and under authority of AS 29.06.520, AS 44.47.150, and 19 AAC 94.015, conveys and quitclaims to the Grantee, Tuluksak IRA Council, as successor to the assets and liabilities of the dissolved City of Tuluksak, whose mailing address of record is P.O. Box 165, Tuluksak, Alaska 99679, all interest, if any, in the following described real property in the Bethel Recording District of the State of Alaska:

Tracts B, C, D and E of the Morovian Mission Reserve, a subdivision of U.S. Survey 875, filed as Plat No. 86-39 of the Bethel Recorder's Office.

Subject to:

Conditions for public use specified in the "Memorandum of Agreement to Convey and Accept Assets and Liabilities of the Dissolved City of Tuluksak", referenced above.

Easements and reservations of record.

Quitclaim Deed
No. _____

Page 1 of 3

M.I.
Attachment A

Exhibit 1
Page 9 of 16

BOOK 0074 PAGE 960

Easements, if any, necessary to ensure access to navigable or public waters pursuant to AS 38.05.127;

Valid existing rights, if any:

Excluding therefrom, however, all land underlying any navigable waters, if any, which may be located within the described real property.

Save and Except, those restrictions appearing in the Federal Patent or other conveyance by which this the Grantor acquired title.

To Have and To Hold the said land, together with the tenements, hereditaments and appurtenances thereunto appertaining, unto the Grantee, subject to the conditions and requirements of transfer said land to a future organized municipality, if any, or the State of Alaska, without consideration, upon request by a future organized municipality or the State of Alaska, for the reasons specified and agreed to in the "Memorandum of Agreement To Convey and Accept Assets and Liabilities of the Dissolved City of Tuluksak", referenced above.

A power of termination in the State, such that if Grantee or an agent or trustee acting for the Grantee ever restricts use of the property in a manner inconsistent with paragraph 1 "Memorandum of Agreement To Convey and Accept Assets and Liabilities of the Dissolved City of Tuluksak", then, by operation of law, the State shall have the immediate all of Grantee's right and interest in the property and to reenter and take possession of the property.

Quitclaim Deed
No. _____                     Page 2 of 3                            M.I.
                                                                Attachment A

Exhibit 1
Page 10 of 16

BOOK 0074 PAGE 961

In Testimony Whereof, the State of Alaska has caused these presents to be executed by the Commissioner of the Department of Community and Regional Affairs, State of Alaska, pursuant to AS 29.06.520, AS 44.47.150 and 19 AAC 96,015, this 10TH day of March, 1997.

By: _____
Mike Irwin, Commissioner
Department of Community and
Regional Affairs

STATE OF ALASKA )
                ) ss.
FIRST JUDICIAL DISTRICT )

THIS IS TO CERTIFY that on the 10 day of March, 1997, WR appeared before me MIKE IRWIN, who is known to me to be the Commissioner of the Department of Community and Regional Affairs, State of Alaska, and who executed the foregoing document; that Mike Irwin executed said document under such legal authority and with knowledge of its contents; and that such act was performed freely and voluntarily upon the premises and for the purposes stated therein.

WITNESS my hand and official seal the day and year in this certificate first above written.

_____
NOTARY PUBLIC in and for Alaska
My commission expires: 5/12/99

Return to:

Tuluksak IRA Council
P.O. Box 165
Tuluksak, Alaska 99669

Quitclaim Deed
No. _____

Page 3 of 3

M.I.
Attachment A

Exhibit 1
Page 11 of 16

Exhibit "A"
## COOPERATION AGREEMENT

BOOK 0074 PAGE 962

THIS AGREEMENT, entered into this 13 day of October, 19 76, by and between the Association of Village Council Presidents Housing Authority, (herein called the "Local Authority") and the City of Tuluksak, Alaska (herein called the "Municipality" 1/,

WITNESSETH:

In consideration of the mutual covenants hereinafter set forth, the parties hereto do agree as follows:

1. Whenever used in this Agreement:

    (a) The term "Project" shall mean any low-rent housing hereafter developed as an entity by the Local Authority with financial assistance of the Department of Housing and Urban Development (herein called the "HUD"); excluding, however, any low-rent housing project covered by any contract for loans and annual contributions entered into between the Local Authority and the HUD, or its predecessor agencies, prior to the date of this Agreement;

    (b) The term "Taxing Body" shall mean the State or any political subdivision or taxing unit thereof in which a Project is situated and which would have authority to assess or levy real or personal property taxes or to certify such taxes to a taxing body or public officer to be levied for its use and benefit with respect to a Project if it were not exempt from taxation;

    (c) The term "Shelter Rent" shall mean the total of all charges to all tenants of a Project for dwelling rents and non-dwelling rents (excluding all other income of such project), less the cost to the Local Authority of all dwelling and non-dwelling utilities;

    (d) The term "Slum" shall mean any area where dwellings predominate which, by reason of dilapidation, overcrowding, faulty arrangements or design, lack of ventilation, light or sanitation facilities, or any combination of these factors, are detrimental to safety, health or morals.

2. The Local Authority shall endeavor (a) to secure a contract or contracts with the HUD for loans and annual contributions covering one or more projects comprising approximately 26 units of low-rent housing, and (b) to develop and administer such Project or Projects, each of which shall be located within the corporate limits of the Municipality. The obligations of the parties hereto shall apply to each such Project.

3. (a) Under the Constitution and statutes of the State of Alaska, all Projects are exempt from all real and personal property taxes and special assessments levied or imposed by any Taxing Body. With respect to any Project, so long as either (i) such project is owned by a public body or governmental agency and is used for low-rent housing purposes, or (ii) any contract between the Local Authority and the HUD for loans or annual contributions or both, in connection with such Project remains in force and effect, or (iii) any bonds issued in connection with such Project or any monies due to the HUD in connection with such Project remain unpaid, whichever period is the longest, the Municipality agrees that it will not levy or impose any real or personal property taxes or special assessments upon such Project or upon the Local Authority with respect thereto. During such period, the Local Authority shall make annual payments (herein called "Payments in Lieu of Taxes") in lieu of such taxes and special assessments and in payment for the public services and facilities furnished from time to time without other cost or charge for or with respect to such Project.

---

1/ The term "Municipality" as herein used includes unincorporated villages

Exhibit 1
Page 12 of 16

(b) Each such annual Payment in Lieu of Taxes shall be made after the end of the fiscal year established for such Project, and shall be in the amount equal to either (i) ten per cent (10%) of the Shelter Rent actually collected, but in no event to exceed ten per cent (10%) of the Shelter Rent charged by the Local Authority in respect to such Project during such fiscal year, or (ii) the amount permitted to be paid by applicable state law in effect on the date such payment is made, whichever amount is the lower.

(c) The Municipality shall distribute the Payments in Lieu of Taxes among the Taxing Bodies in the proportion which the real property taxes which would have been paid to each Taxing Body for such year if the Project were not exempt from taxation bears to the total real property taxes which would have been paid to all the taxing bodies for such year if the Project were not exempt from taxation; Provided, however: That no payment for any year shall be made to any Taxing Body in excess of the amount of the real property taxes which would have been paid to such Taxing Body for such year if the Project were not exempt from taxation.

(d) Upon failure of the Local Authority to make any Payment in Lieu of Taxes, no lien against any Project or assets of the Local Authority shall attach, nor shall any interest or penalties accrue or attach on account thereof.

4. The Municipality agrees that, subsequent to the date of initiation (as defined in the United States Housing Act of 1937, as amended) of each Project and within five years after the completion thereof, or such further period as may be approved by the HUD, there has been or will be elimination (as approved by the HUD) by demolition, condemnation, effective closing, or compulsory repair or improvement, of unsafe or unsanitary dwelling units situated in the locality or metropolitan area in which such Project is located, substantially equal in number to the number of newly constructed dwelling units provided by such Project; Provided: That where more than one family is living in an unsafe or unsanitary dwelling unit, the elimination of such unit shall count as the elimination of units equal to the number of families accommodated therein; and Provided, further; That this Paragraph 4 shall not apply in the case of (i) any Project developed on the site of a Slum cleared subsequent to July 15, 1949, and that the dwelling units eliminated by the clearance of the site of such Project shall not be counted as elimination for any other Project or any other low-rent housing project, or (ii) any project located in a rural non-farm or Indian area.

5. During the period commencing with the date of the acquisition of the finished project and continuing so long as either (i) such Project is owned by a public body or governmental agency and is used for low-rent housing purposes, or (ii) any contract between the Local Authority and the HUD for loans or annual contributions, or both, in connection with such Project remains in force and effect, or (iii) any bonds issued in connection with such Project or any monies due to the HUD in connection with such Project remain unpaid, whichever period is the longest, the Municipality without cost or charge to the Local Authority or the tenants of such Project (other than the Payments in Lieu of Taxes), shall:

(a) Furnish or cause to be furnished to the Local Authority and the tenants of such Project public services and facilities of the same character and to the same extent as are furnished from time to time without cost or charge to other dwellings and inhabitants in the Municipality;

(b) Notwithstanding the date of acquisition, the Municipality shall vacate such streets, roads, and alleys within the area of such Project as may be necessary in the development thereof, and convey without charge to the Local Authority, such interest as the Municipality may have in such vacated areas; and, insofar as the Municipality is lawfully able to do so without cost or expense to the Local Authority or to the Municipality as the power of the Municipality to do so may appear by Alaska statutes, its charter, ordinances or other law that may appear, cause to be removed from such vacated areas, insofar as it may be necessary, all public or private utility lines and equipment;

- 2 -

Exhibit 1
Page 13 of 16

(i) grant such deviations from the building code as are reasonable and necessary to promote economy and efficiency in the development and administration of such Project, and at the same time, safeguard health and safety; and (ii) make such changes in any zoning of the site and surrounding territory of such Project as are reasonable and necessary for the development and protection of such project and the surrounding territory;

(d) The Municipality shall accept grants and easements necessary for the development of such Project; and

(e) Cooperate with the Local Authority by such other lawful action or ways as the Municipality and the Local Authority may find necessary in connection with the development and administration of such Project.

6. In respect to any Project, the Municipality further agrees that within a reasonable time after receipt of a written request therefore from the Local Authority:

(a) It will accept the dedication of all interior streets, roads, alleys, and adjacent sidewalks within the area of such Project, together with all storm and sanitary sewer mains in such dedicated areas, after the Local Authority's Developer has completed the grading, improvements, paving and installation thereof, in accordance with specifications acceptable to the Municipality.

(b) It will accept necessary dedications of land for, and will grade, improve, pave, and provide sidewalks for, all streets bounding such Project or necessary to provide adequate access thereto (in consideration whereof the Local Authority shall pay to the Municipality such amounts as would be assessed against the Project site for such work if such site were privately owned;) and

(c) It will provide, or cause to be provided, water mains, and storm and sanitary sewer mains, leading to such Project and serving the bounding streets thereof (in consideration whereof the Local Authority's Developer shall pay to the Municipality such amounts as would be assessed against the Project site for such work if such site were privately owned.)

7. If, by reason of the Municipality's failure or refusal to furnish or cause to be furnished any public services or facilities which it has agreed hereunder to furnish or to cause to be furnished to the Local Authority or to the tenants of any Project, the Local Authority's Developer incurs an expense to obtain such services or facilities, then the Local Authority may deduct the amount of such expenses from any payment in lieu of taxes due or to become due to the Municipality in respect to any Project or any other low-rent housing projects owned or operated by the Local Authority.

8. The Municipality agrees to exempt the tenants of the Project and the Local Authority from the payment of Sales Taxes in conjunction with rents.

9. No Cooperation Agreement heretofore entered into between the Municipality and the Local Authority shall be construed to apply to any Project covered by this Agreement.

10. So long as any contract between the Local Authority and the HUD for loans (including preliminary loans) or annual contributions, or both, in connection with any Project remains in force and effect, or so long as any bonds issued in connection with any project, or any monies due to the HUD in connection with any Project remain unpaid, this Agreement shall not be abrogated, changed, or modified without the consent of the HUD. The privileges and obligations of the Municipality hereunder shall remain in full force and effect with respect to each Project so long as the beneficial title to such Project is held by the Local Authority or by any other public body or governmental agency, including the HUD, authorized by law to engage in the development or administration of low-rent housing projects. If, at any time, the beneficial title to, or possession of, any Project is held

- 3 -

Exhibit 1
Page 14 of 16

BOOK 0074 PAGE 965

by such other public body or governmental agency, including the HUD, the provisions hereof shall inure to the benefit of and may be enforced by such other public body or governmental agency, including the HUD.

IN WITNESS WHEREOF, the Municipality and the Local Authority have respectively signed this Agreement and caused their seals to be affixed and attested as of the day and year first above written.

By: /s/ *[signature]*
Mayor of the City Council

SEAL

ATTEST:

/s/ *[signature]*
City Clerk/Secretary

A. V. C. P. Housing Authority

By: /s/ Edward Hoffman Sr.
Chairman

SEAL

ATTEST:

Ass't /s/ *[signature]*
Secretary

Exhibit 1
Page 15 of 16

BOOK 0074 PAGE 966

# MEMORANDUM

# STATE OF ALASKA
Department of Community and Regional Affairs

**TO:** Grace Lieb
Bethel Recorder's Office

**DATE:** March 13, 1997

**THRU:**

**FILE:** Dissolution of the City of Tuluksak

**PHONE NO:** (907) 269-4559

**FROM:** Dan Bockhorst, LBC Staff Supervisor
Municipal & Regional Assistance Division

**SUBJECT:** Recording of agreement to convey and accept assets, liabilities, and obligations of the dissolved City of Tuluksak

Please record the attached "Memorandum of Agreement [between the State of Alaska and the Tuluksak IRA Council] to Convey and Accept the Assets, Liabilities and Obligations of the Dissolved City of Tuluksak." Included with the Agreement are two attachments consisting of the following:
- Attachment A, the March 10, 1997 quitclaim deed concerning Tracts B, C, D, and E of the Morovian Mission Reserve, a subdivision of U.S. Survey 875, filed as Plat No. 86-39 of the Bethel Recorder's Office; and
- Attachment B, the "Cooperation Agreement" entered into on October 13, 1978, by and between the Association of Village Council Presidents Regional Housing Authority and the City of Tuluksak.

Recording of the attached agreement is required by 19 AAC 10.630(3)(c).

After the agreement has been recorded, it should be returned to me at the address listed below.

Dan Bockhorst
Department of Community and Regional Affairs
333 West 4th Avenue, Suite 220
Anchorage, Alaska 99501-2341

97-0484
NC

RECORDED-FILED
BETHEL RECORDING DISTRICT

MAR 19   9 49 AM '97

REQUESTED BY AS/DC+RA
ADDRESS _____

Thank you.

cc with copy of the agreement and attachments:
Joe Alexie, President, Tuluksak IRA Council
Marjorie Vandor, Assistant Attorney General
Rick Elliott, Municipal Lands Trustee Program Manager

Exhibit 1
Page 16 of 16