UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AKIACHAK NATIVE COMMUNITY <u>et al.</u>, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:06-cv-00969 (RWR) |
| DEPARTMENT OF THE INTERIOR, <u>et al.</u> | ) ) ) | PLAINTIFFS' MOTION TO COMPEL PRODUCTION, WITH POINTS AND AUTHORITIES IN SUPPORT |
| Defendants. | ) ) | |

Introduction

The Department is including in the record a "privilege log" containing short descriptions[1] of approximately twenty-six documents. Plaintiffs sought access to these documents in a Request for Production. The Department's response (Attachment A) objects to all the Requests on the grounds of attorney-client privilege and work product privilege; additionally, as to one Request (#10), the Department's response relies on the deliberative process privilege.

One of the documents listed on the log was actually included in the preliminary compilation of the record Defendants sent to counsel for Plaintiffs on December 3.[2]

---

[1] These short descriptions are contained on pages 2-3 of Attachment A.

[2] This document is the 8/17/2000 "Email from Roger Hudson to John Leshy re: A 'Heads up' regarding taking land into trust in Alaska" (Attachment B). The document supplied to Plaintiffs was an 8/28/2000 email from Scott Keep to Mary Anne Kenworthy and Suzanne Schaeffer, forwarding the email dated 8/17/2000 from Roger Hudson.

The sole issue in this case is the legal validity of that provision in the Secretary's land-into-trust (LIT) regulations forbidding requests from Alaska tribes and tribal members. For purposes of this motion, the relevant legal background is as follows: in 1978, the Solicitor's Office issued an opinion (the "Fredericks Opinion") to the effect that the authority of the Secretary of the Interior under the Indian Reorganization Act (IRA)[3] to take land into trust for Indian Tribes had been implicitly repealed within Alaska by the 1971 passage of ANCSA (Alaska Native Claims Settlement Act).[4] The regulations promulgated in 1980 governing LIT procedures included a specific "Alaska prohibition" based on that Fredericks opinion.[5] In 1994, several Alaska Tribes petitioned to eliminate the "Alaska prohibition," leading to publication of a notice and request for comments.[6] Ultimately, in January 2001, the Department revoked the "Fredericks opinion." However, the Department simultaneously published new regulations that continued the "Alaska prohibition," announcing that the Department would revisit that prohibition in three years (2004).[7] Those new final regulations were withdrawn later in 2001,[8] leaving the pre-2001 regulations still in effect today, including the Alaska prohibition.

---

[3] Ch. 576, 48 Stat. 984, codified as amended at 25 U.S.C. §§ 461 et seq.

[4] Pub.L. No. 92-203, 85 Stat. 688, codified at 43 USC §§ 1601 et seq.

[5] 45 Fed. Reg. 62034 (Sep. 18, 1980), former 25 C.F.R. 120a, currently at 25 C.F.R. 151 (as reorganized)

[6] 60 Fed. Register 1956 (Jan. 5, 1995).

[7] 66 Federal Register 3454 (January 16, 2001).

[8] 66 Federal Register 56608 (Nov. 9, 2001)

The 8/17/2000 email already supplied to the Plaintiffs comes from the period just prior to the Department's revocation of the Fredericks opinion, and makes reference to a conclusion that had been reached some three years earlier:

> According to my files, it's been almost three years to the day since we stopped laboring over the draft memo to the Secretary reconsidering the question of the Secretary's authority to take land in trust in Alaska. As you'll recall, we concluded that statutory authority did still exist to take land in trust in Alaska, but that our draft recommended that the subject be addressed in regulations before the Secretary attempted to exercise such authority.

(Attachment B). It would appear that this became the Department's position: the 2001 rescission of the Fredericks memo implicitly acknowledged the invalidity of that memorandum's conclusion that ANCSA had removed Secretarial LIT authority in Alaska, but the exercise of this Secretarial authority was still to be withheld (and is still being withheld) solely because of the regulatory Alaska prohibition. Plaintiffs argue in this case that this regulatory prohibition "classifies, enhances, or diminishes the privileges and immunities available to a federally recognized Indian tribe relative to the privileges and immunities available to other federally recognized tribes by virtue of their status as Indian tribes" in violation of 25 USC 476(f) and (g).[9]

---

[9] These statutory subsections read:

> (f) Privileges and immunities of Indian tribes; prohibition on new regulations
> Departments or agencies of the United States shall not promulgate any regulation or make any decision or determination pursuant to the Act of June 18, 1934 (25 U.S.C. 461 et seq., 48 Stat. 984) as amended, or any other Act of Congress, with respect to a federally recognized Indian tribe that classifies, enhances, or diminishes the privileges and immunities

It is against this backdrop that plaintiffs now seek access to the 25 remaining documents on the privilege log. This memo addresses the attorney-client, work product, and deliberative process privileges. The agency bears the burden of demonstrating the applicability of the claimed privileges to those documents.[10]

I.      The attorney-client privilege does not protect these documents from discovery.

The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services,[11] reflecting the judgment that promotion of trust and honesty within the relationship is more important than the burden placed on the discovery of truth.[12] The underlying purpose of the privilege is to protect a client's disclosures so as to foster the full and frank communications that are necessary for effective legal representation, and the privilege only extends to those disclosures necessary to obtain informed legal advice

---

>      available to the Indian tribe relative to other federally recognized tribes by virtue of their status as Indian tribes.
>      (g) Privileges and immunities of Indian tribes; existing regulations
>      Any regulation or administrative decision or determination of a department or agency of the United States that is in existence or effect on May 31, 1994, and that classifies, enhances, or diminishes the privileges and immunities available to a federally recognized Indian tribe relative to the privileges and immunities available to other federally recognized tribes by virtue of their status as Indian tribes shall have no force or effect.

[10] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 14, 52 (D.D.C. 2006); see also *SafeCard Servs. v. SEC,* 926 F.2d 1197, 1204 (D.C. Cir. 1991).

[11] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 42 (D.D.C. 2006) citing *In re Lindsey,* 158 F.3d 1263, 1267 (D.C. Cir. 1998).

[12] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 42-43 (D.D.C. 2006), citing *Coastal States Gas Corp. v. Dept of Energy,* 617 F.2d 854, 862 (D.C. Cir. 1980).

which might not have been made absent the privilege.[13] The scope of the privilege is not limited to the litigation context or to specific disputes; rather, it encompasses "all situations in which an attorney's counsel is sought on a legal matter."[14]

The attorney-client privilege dissolves if the communication has been adopted as agency policy.[15] When government attorneys are "in effect ... making law," they may not properly invoke the protections of the attorney-client privilege. In that context, the communications are made not for the purpose of securing legal advice or services, but rather for the purpose of developing policy.[16]

With respect to organizational clients (such as government agencies), attorneys often have more than one role, and the line between those functions is not always easily ascertainable.[17] But the privileged role of an attorney does not encompass the establishment of broad agency policy, adjudication of responsibilities, assessment of penalties, or other functions that create the law. Hence, when an attorney is acting more

---

[13] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 42-43 (D.D.C. 2006), citing *Coastal States Gas Corp. v. Dept of Energy,* 617 F.2d 854, 862 (D.C. Cir. 1980).

[14] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 42-43 (D.D.C. 2006), citing *Coastal States Gas Corp. v. Dept of Energy,* 617 F.2d 854, 862 (D.C. Cir. 1980).

[15] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 45 (D.D.C. 2006), citing *Nat'l Council of La Raza v. Dep't of Justice,* 411 F.3d 350, 360-61 (2d Cir. 2005)**.**

[16] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 46 (D.D.C. 2006).

[17] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 48 (D.D.C. 2006).

in the nature of a business advisor, legislator, adjudicator, or regulator, the attorney-client privilege generally does not apply.[18]

Here, the entire focus of these discussions did not entail any confidential information concerning the client agency, or any full and frank disclosures from a client to an attorney to obtain legal advice; rather, the discussions, both in 1997 and in 2000, were the establishment of an agency policy. The attorneys involved were acting more as legislators. And in fact these communications were eventually adopted as agency policy, i.e., the reasoning of the Fredericks opinion was rejected and Secretarial authority to take land into trust within Alaska was found to still exist, but any actual exercise of that authority would not happen until the regulatory "Alaska prohibition" was changed. For those reasons, the attorney-client privilege should not protect communications regarding those discussions.

II.  The Department has waived the attorney-client privilege as to these documents.

"[T]he confidentiality of communications covered by the [attorney-client] privilege must be jealously guarded by the holder of the privilege lest it be waived. The courts will grant no greater protection to those who assert the privilege than their own precautions warrant."[19] Hence, a privilege holder's inadvertent disclosure of privileged

---

[18] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 49-50 (D.D.C. 2006), citing *In re Lindsey,* 158 F.3d 1263, 1269 (D.C Cir. 1998); *Coastal States Gas Corp. v. Dept of Energy,* 617 F.2d 854, 863 (D.C. Cir. 1980); *Mead Data Central Inc. v. Air Force,* 566 F.2d 242, 249, 253, 255 n. 32 (D.C.Cir. 1977).

[19] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 59-60 (D.D.C. 2006), citing *In re Sealed Case,* 877 F.2d 976, 980 (D.C. Cir. 1989).

materials will effect a waiver that "' extends to all other communications relating to the same subject matter.'"[20]

Here, the subject matter of the disclosed email is (1) the conclusion that Secretarial authority to take lands into trust in Alaska still exists and (2) the determination that the Department should nonetheless not accept any land-into-trust petitions from Alaska. The 2000 email summarizes discussions that occurred in 1997 and earlier (in all likelihood discussions that emanated from the January 1995 request for comments on the 1994 Petition for Rulemaking on the Alaska prohibition); and the conclusions it summarizes became agency policy in 2001, both the acknowledgement of Secretarial authority (by renunciation of the Fredericks opinion) and the procrastination of any implementation of that authority (originally only until 2004).[21] So the relevant time frame extends from January 1995 through January 2004, encompassing all the documents on the privilege log.

Thus, even assuming that the attorney-client privilege might otherwise protect the documents on the log, this Court should find that the Department has waived that privilege.

III.    The "work product" privilege does not protect these documents.

The purpose of the work-product doctrine is to ensure that a lawyer preparing for litigation can work with a certain degree of privacy, free from unnecessary intrusion by

---

[20] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 50 (D.D.C. 2006), citing *In re Sealed Case,* 877 F.2d 976, 980-81 (D.C. Cir. 1989), in turn citing *In re Sealed Case,* 676 F.2d 793, 809 (D.C.Cir. 1982).

[21] 66 Fed. Reg. 3454 (Jan. 20, 2001).

opposing parties and their counsel, and to permit attorneys to assemble information, sift what they consider to be the relevant from the irrelevant facts, prepare their legal theories and plan their strategies without undue and needless interference.[22] To this end, it "provides a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories."[23]

It applies so long as the document at issue was "created for use at trial or because a lawyer or party reasonably anticipated that specific litigation would occur and prepared [it] to advance the party's interest in the successful resolution of that litigation."[24] To determine whether a document was "prepared in anticipation of litigation," a court must examine the nature of the document, the factual situation in the particular case, and whether the lawyer had a subjective and reasonable belief (as judged by objective standards) that "litigation was a real possibility."[25] If the document "would have been prepared in essentially similar form irrespective of the litigation[,] ... it [cannot] fairly be said that [it was] created because of actual or impending litigation."[26]

---

[22] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 33 (D.D.C. 2006), quoting *Hickman v. Taylor,* 329 U.S. 495, 510-11 (1947).

[23] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 33 (D.D.C. 2006), quoting *Coastal States Gas Corp. v. Dept of Energy,* 617 F.2d at 854, 864 (D.C. Cir. 1980).

[24] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 33-34 (D.D.C. 2006), quoting *Willingham v. Ashcroft,* 228 F.R.D. 1, 4-5 (D.D.C. 2005); see *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987) (identifying "the function of the documents as the critical issue").

[25] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 34 (D.D.C. 2006), quoting *In re Sealed Case,* 146 F.3d 881, 884 (D.C. Cir. 1998).

[26] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 34 (D.D.C. 2006), quoting *In re Sealed Case,* 146 F.3d 881, 884 (D.C. Cir. 1998).

Because the purpose of the doctrine is to protect the integrity of the adversarial process, documents should not be withheld if their disclosure would not fairly be expected to impact pending or impending litigation.[27] Documents prepared for some purpose other than litigation, moreover (for example, material generated in the ordinary course of business), likewise do not fall within the doctrine's ambit.[28] With respect to a document that was generated for more than one purpose, the work product doctrine will only apply if litigation played a substantial role in its creation.[29]

The documents need not have been prepared in anticipation of a particular claim, but there must be some specificity to an assertion of work-product protection. It is not enough for the documents to relate to some unspecified claim that may conceivably be brought by some unidentified party at an unknown point in the future. Hence, documents that relate only generally to a broad agency program that is investigatory or adversarial in nature are not properly considered to have been "prepared in anticipation of litigation."[30] Such a broad interpretation of the doctrine would shield all materials prepared by lawyers

---

[27] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 34 (D.D.C. 2006), citing *Evans v. Atwood,* 177 F.R.D. 1, 8 (D.D.C. 1997).

[28] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 34 (D.D.C. 2006), citing *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. RTC,* 5 F.3d 1508, 1515 (D.C. Cir. 1993).

[29] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 35 (D.D.C. 2006), citing *Willingham v. Ashcroft,,* 228 F.R.D. 1, 4 (D.D.C. 2005)

[30] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 36-37 (D.D.C. 2006), citing *Coastal States Gas Corp. v. Dept of Energy,* 617 F.2d 854, 865 (D.C. Cir. 1980) ("To argue that every audit is potentially the subject of litigation is to go too far. While abstractly true, the mere possibility is hardly tangible enough to support so broad a claim of privilege.").

working for agencies that have significant law enforcement or investigatory duties, and, therefore, would foreclose the liberal discovery contemplated by the Federal Rules of Civil Procedure.[31] The focus, then, is whether, under the totality of the circumstances surrounding the document, it may fairly be said to have been created with an eye toward advancing the client's interest in specific litigation.[32]

Accordingly, a work-product assertion must be supported by some articulable, specific fact or circumstance that illustrates the reasonableness of a belief that litigation was foreseeable.[33] "Where ... lawyers claim they advised clients regarding the risks of potential litigation, the absence of a specific claim represents just one factor that courts should consider in determining whether the work-product privilege applies. … In some cases, [however], the absence of a specific claim will suggest that the lawyer had not prepared the materials 'in anticipation of litigation.'"[34]

---

[31] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 36-37 (D.D.C. 2006), citing *Coastal States Gas Corp. v. Dept of Energy,* 617 F.2d 854, 865 (D.C. Cir. 1980).

[32] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 37 (D.D.C. 2006), citing *Willingham v. Ashcroft,* 228 F.R.D. 1, 4 (D.D.C. 2005).

[33] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 37 (D.D.C. 2006) citing inter alia *Coastal States Gas Corp. v. Dept of Energy,* 617 F.2d 854, 864-66 (D.C. Cir. 1980) (refusing to shield advice memoranda prepared by agency attorneys in response to requests from agency auditors investigating regulatory compliance because they only contained interpretations of agency law, not advice regarding how to proceed with particular investigations), and *Evans v. Atwood,,* 177 F.R.D. 1, 7 (D.D.C. 1997) (refusing to shield agency manual and guidelines that were "promulgated as general standards to guide the Government lawyers in determining whether or not to bring an individual to trial in the first place).

[34] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 37 (D.D.C. 2006) quoting See *In re Sealed Case,* 146 F.3d 881, 887 (D.C. Cir. 1998).

Here, in the absence of any indication that the documents on the privilege log were prepared in anticipation of litigation, the work product privilege does not protect them.

Although the general rule is that a waiver of the work product privilege as to particular documents does not extend to other documents addressing the same subject matter, implicit waivers can be inferred if setting the privilege aside would directly further its underlying policy.[35]  The question is whether the integrity of the adversarial system is more effectively preserved by upholding or removing the privilege.[36]  In this particular factual setting, both parties will be attempting to explain to this Court the meaning and import of the Secretary's rather ambidextrous position, i.e., that Secretarial authority still exists under the IRA but that there is still some valid basis for maintaining the Alaska prohibition.  As to what those bases might be and whether they are actually valid, Plaintiffs are now obliged to waste this Court's time by hypothecating and speculating, whereas the Federal Defendants know precisely the reasoning (or, perhaps, the absence thereof) underlying that conclusion.  This is the exceptional case where the adversarial system is best served if both have access to the same background documents.

IV.   The "deliberative process" privilege does not protect the documents sought in Request #10.

This section pertains only to document request #10, the sole request as to which the Department asserts this privilege.

---

[35] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 57 (D.D.C. 2006)

[36] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 58 (D.D.C. 2006), citing *In re Sealed Case,* 676 F.2d 793, 818 (D.C. Cir. 1992).

The deliberative process privilege "serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism."[37] To this end, the privilege protects documents or communications that are "predecisional" and "deliberative" in nature.[38]

To approve exemption of a document as "predecisional," a court must be able to pinpoint an agency decision or policy to which the document contributed, and if the agency fails to identify a specific, final agency decision, disclosure can be ordered.[39] As with all privilege assertions, the agency bears the burden of demonstrating the final policy or decision that was reached at the end of the particular deliberative process that the document plays into.[40] "Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position."[41] At the very instant that an agency aligns its policy or program congruently with the views expressed in a particular document, the document is no longer seen as "reflect[ing] the

---

[37] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 12 (D.D.C. 2006), quoting *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C. Cir. 1980).

[38] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 13 (D.D.C. 2006), citing *Am. Fed'n of Gov't Emples., Local 2782 v. United States DOC,* 907 F.2d 203, 207 (D.C. Cir. 1990).

[39] *Wilderness Society v. United States Dep't of the Interior,* 344 F. Supp. 2d 1, 12 (D.D.C. 2004).

[40] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 14 (D.D.C. 2006), citing *SafeCard Servs. v. SEC,* 926 F.2d 1197, 1204 (D.C. Cir. 1991).

[41] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 14 (D.D.C. 2006), quoting *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C. Cir. 1980).

personal opinions of the writer"; rather, it reflects the position of the agency.[42]  Under such circumstances, the document is no longer considered "predecisional,"[43] and the purpose of the privilege is not implicated -- it is the agency, not the individual drafter, that may thereafter be exposed to ridicule or criticism if the policy proves ill-advised.[44] The law is unconcerned with scorn directed at the agency because "[w]henever an agency's actions are opened to public view, the agency exposes itself to pressure and criticism."[45] Hence, the agency must establish that it has never implemented the opinions or analyses contained in the document, incorporated them into final agency policy or programs, referred to them in a precedential fashion, or otherwise treated them as if they constitute agency protocol.[46]

---

[42] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 15 (D.D.C. 2006), citing *Tax Analysts v. IRS,* 117 F.3d 607, 617-18 (D.C. Cir. 1997) and *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 869 (D.C. Cir. 1980).

[43] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 14 (D.D.C. 2006), quoting *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C. Cir. 1980).

[44] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 15 (D.D.C. 2006), citing *Sterling Drug, Inc. v. FTC,* 450 F.2d 698, 706 (D.C. Cir. 1971).

[45] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 15 (D.D.C. 2006), citing *Tax Analysts v. IRS,* 117 F.3d 607, 618 (D.C. Cir. 1997).

[46] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 15-16 (D.D.C. 2006) , citing *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 161, (1975); *Tax Analysts v. IRS,* 117 F.3d 607, 617-18 (D.C. Cir. 1997);  *SafeCard Servs. v. SEC,* 926 F.2d 1197, 1205 (D.C. Cir. 1991); and *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866, 869 (D.C. Cir. 1980).   However, the mere fact that the agency has accepted a document's conclusion, however, does not mean that the document is postdecisional.  Rather, the agency must have adopted the document's rationale.

Generally, material is considered deliberative if it "'reflect[s] the give-and-take of the consultative process.'"[47] However, the D.C. Circuit has held that documents that evaluate the relative "strengths and weaknesses of alternative views" are not protected -- despite appearing, at first blush, to qualify as deliberative -- if they constitute an agency's statement of the law.[48] This is because "[t]he government's opinion about what is not the law and why it is not the law is as much a statement of government policy as its opinion about what the law is."[49] Hence, a document that "reflects a view eventually rejected by a field [employee may] ... still represent[] the opinion of the [agency]," in which circumstance "the public can only be enlightened by knowing what the [agency] believes the law to be."[50] It is incumbent upon the agency, then, to establish "'what deliberative process is involved, and the role played by the documents in issue in the course of that process.'"[51]

---

[47] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 17 (D.D.C. 2006), citing *Tax Analysts v. IRS,* 117 F.3d 607, 617 (D.C. Cir. 1997) (quoting *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C. Cir. 1980)).

[48] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 18 (D.D.C. 2006), citing *Tax Analysts v. IRS,* 117 F.3d 607, 617 (D.C. Cir. 1997).

[49] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 18 (D.D.C. 2006), citing *Tax Analysts v. IRS,* 117 F.3d 607, 617 (D.C. Cir. 1997).

[50] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 18 (D.D.C. 2006), citing *Tax Analysts v. IRS,* 117 F.3d 607, 617 (D.C. Cir. 1997).

[51] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 18 (D.D.C. 2006), citing *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 869 (D.C. Cir. 1980) and *Senate of Puerto Rico ex rel. Judiciary Comm. v. United States DOJ,* 823 F.2d 574, 585-86 (D.C. Cir. 1987).

"The [deliberative process] privilege was fashioned in cases where the governmental decisionmaking process is collateral to the plaintiff's suit."[52] Accordingly, the privilege may not apply if the plaintiff's cause of action is "directed at the government's intent."[53] Quite simply, under such circumstances, "the privilege's raison d'être evaporates."[54]

Here, there are several reasons why the deliberative process privilege should not protect these documents.

First, it is unclear whether the agency can in fact point to a specific, final agency decision. The continuation of the Alaska prohibition is a function of procrastination rather than decision. The Department's January 2001 "final regulation" explicitly noted it was continuing the Alaska prohibition in effect as a temporary measure, to be re-evaluated after three years.[55] The Department's November 2001 final decision to withdraw the January 2001 final regulation announced that it intended to address the

---

[52] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 20 (D.D.C. 2006), citing *In re Subpoena Duces Tecum,* 145 F.3d 1422, 1424 (D.C. Cir.), *modified*, 156 F.3d 1279 (D.C. Cir. 1998) and *In re Subpoena Served Upon the Comptroller of the Currency,* 967 F.2d 630 (D.C. Cir. 1992).

[53] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 21 (D.D.C. 2006), citing *Dep't of Econ. Dev. v. Arthur Andersen & Co.,* 139 F.R.D. 295, 299 (S.D.N.Y. 1991); *Grossman v. Schwarz,* 125 F.R.D. 376, 385 (S.D.N.Y. 1989); *United States v. AT&T Co.,* 524 F. Supp. 1381, 1389-90 (D.D.C. 1981).

[54] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 21 (D.D.C. 2006), citing *In re Subpoena Duces Tecum,* 145 F.3d 1422, 1424 *(D.C. Cir.)*, *modified*, 156 F.3d 1279, 1280 (D.C. Cir. 1998).

[55] 66 Federal Register 3454 (Jan. 16, 2001).

relevant areas of concern "in a new rule"[56] – with no proposal having been published in the Federal Register for comment in the six-plus years elapsed since then.

Second, to the extent that there was a clear decision, it was the decision to issue the memorandum explicitly withdrawing the 1978 Fredericks opinion. As such, the recitation in the email that "we concluded that statutory authority did still exist to take land in trust in Alaska" did become agency policy, and with that alignment having occurred, the statement is no longer "predecisional."

Third, this is a situation where "[t]he government's opinion about what is not the law and why it is not the law is as much a statement of government policy as its opinion about what the law is."[57]

Last, this is a case in which the government's intent may prove to be central. With the underlying legal rationale for the Alaska prohibition removed by withdrawal of the Fredericks opinion, what legitimate interests did the government intend to pursue by the apparently indefinite delay in dismantling the prohibition itself? The Department may argue – indeed, it almost will have to argue -- that it had some intent other than that to classify, enhance, or diminish the privileges and immunities available to federally recognized tribes in Alaska relative to the privileges and immunities available to federally

---

[56] "Considering the variety of comments received, the Department has decided to withdraw the final rule in whole to address these specific areas of concern in a new rule." 66 Federal Register 56608 (Nov. 9, 2001).

[57] *General Electric v. Johnson,* 2006 U.S.Dist. Lexis 64907 at 18 (D.D.C. 2006), citing *Tax Analysts v. IRS,* 117 F.3d 607, 617 (D.C. Cir. 1997).

recognized tribes elsewhere.[58]   The information in the draft memoranda sought in Request #10 may well be crucial to assessing the validity of that.

V.   If the motion is not granted outright, *in camera* review should be held.

Plaintiffs are obviously in a disadvantaged position, not having seen the other documents, to articulate and apply their arguments to them.  If the Court is not convinced by the above arguments to grant Plaintiffs access to the documents in their entirety, Plaintiffs respectfully request that this Court review the documents *in camera* and make individualized determinations of any claims of privilege made by the Secretary. Plaintiffs apologize for any imposition on the Court's time, but with only 26 documents listed on the log, the task should not be so burdensome as to require a sampling method.

DATED this 1st day of February, 2008.

        /s                   
Richard Guest
D.C. Bar No. 477572
NATIVE AMERICAN RIGHTS FUND
1712 N Street, NW
Washington DC, 20036
(202) 785-4166

        /s                   
Andrew Harrington, pro hac vice, Alaska Bar 8106026
Denise Bakewell, pro hac vice, California Bar 208660
Alaska Legal Services Corporation
1648 South Cushman Suite 300
Fairbanks AK 99701
907-452-5181
Attorneys for Plaintiff Alice Kavairlook

---

[58] Plaintiffs' position is that the fact that the regulatory provision has this effect is sufficient to invalidate it; but the Department may well disagree and Plaintiffs cannot predict with certainty with whom this Court will agree.

/s
Heather Kendall Miller, pro hac vice
Alaska Bar 9211084
Native American Rights Fund
420 L Street Suite 505
Anchorage AK 99501
907-276-0680
Attorney for Plaintiffs Akiachak Native Community, Chalkyitsik Village, Chilkoot Indian Association, and Tuluksak Native Community (IRA)