The Honorable Gale Norton
June 15, 2001
Page 7

tribe exerts jurisdiction over all on-reservation lands, as its jurisdiction may be quite limited on non-Indian lands on the reservation. *Strate v. A-1 Contractors*, 520 U.S. 438 (1997); *Atkinson trading Co. v. Shirley* , __U.S.__ (May 29, 2001). Thus, many of the same issues facing an off-reservation acquisition pertain to non-Indian on-reservation lands that may be acquired in trust.
2. Definition of "reservation"in section 151.2. In both the November 12, 1999, and March 7, 2001, letters, the Attorneys General recommended amending the definition of "reservation." While the published rule did make changes to the definition, as it relates to Pueblos in New Mexico, it did not observe the comment made by our letters. The Attorneys General again suggest a definition which states:

> Reservation means that area of land which has been set aside or which has been acknowledged as having been set aside by the United States for the use of the Tribe as described in a final treaty, Executive order or proclamation, Federal statute, or final judicial determination, except as such lands may have been diminished or Indian title extinguished by agreements, treaties, executive orders or congressional actions or by a decree or ruling of a court.

The published rule uses a definition which refers to the "exterior boundaries" of lands, as "more particularly defined . . ." in the statutes, etc. However, while ceded lands are no longer part of the "reservation," under the definition in the published rule, ceded lands may arguably be included within the "exterior boundaries" of the reservation. Notably, the term "exterior boundaries" has been deleted from our proposal to reflect the reality that the land ownership on many reservations is checkerboarded and the jurisdiction over those lands is checkerboarded as well. Additionally, the states oppose any definition of "reservation" that fails to acknowledge that tribes have ceded certain lands back to the United States and that these ceded lands are no longer part of the reservation unless subsequently restored to reservation status. A clear definition of the term "reservation" is extremely important to the states.

3. Federal agency transfers of title. As discussed in the March 7, 2001, letter, the now-published rule excludes from its provisions "federal agency transfers of title." § 151.3(b)(5). The rationale given is that such exchanges "do not have an impact on the local governments because these lands are not already under their jurisdiction." This is an overly-broad and inaccurate statement concerning federal lands within the states. While there may be federal preemption of certain areas of jurisdiction, unless the parcel is in the exclusive jurisdiction of the United States, states exercise certain limited police powers in federal lands within their boundaries. The State of South Dakota, for example, has hunting and fishing jurisdiction over non-Indians on Corps of Engineers' lands on reservations. *South Dakota v. Bourland*, 508 U.S. 679 (1993). Any proposal to transfer Corps of Engineers, Bureau of Reclamation, BLM, U.S. Forest, U.S. Wilderness, U.S. Monuments, or other federal lands into trust is a matter of substantial concern to the states, affecting their jurisdiction and potentially impacting land use, environmental quality, water rights, public safety, gaming policies, and general welfare of the state and local communities. Existing federal agency transfer rules do not contemplate the new use of such lands for activities such as Indian gaming. The rule should be amended to require consideration of all such impacts under section 151 and to include such transfers within the ambit of a federal-state-tribal cooperative dialogue discussed herein.


COPY

AR00700

The Honorable Gale Norton
June 15, 2001
Page 8

4.  Change in use for gaming purposes.  Also discussed in both the November 12, 1999, and March 7, 2001, letters, was the fact that the preamble to the proposed rule (April 1999) set forth the Department's position that any land acquired in trust after October 17, 1988 (the effective date of the Indian Gaming Regulatory Act), could not be used for gambling without prior compliance with Section 20 of the Act.  That section generally prohibits gaming on any newly acquired lands with certain exceptions, such as when certain secretarial findings are made and there is gubernatorial concurrence with those findings.  The preamble to the proposed rule stated:

> If a tribe applies under these regulations to have title acquired in trust for a non-gaming purpose, and then at a later date decides that it would like to conduct gaming on that parcel, it will be authorized to engage in such gaming only if it complies with the requirements of Section 20 of IGRA. In other words, to game on a parcel of trust land acquired after October 17, 1988, (i.e., the date of passage of IGRA), the tribe must submit to the same Section 20 analysis and obtain the same gubernatorial consent as would have been required if the parcel were originally taken into trust for the purpose of gaming.

Again, we observe that the statement in the April 1999 preamble should be included in the text of the rule itself.  As we said in November 1999, it substance should be recited in the "regulations so that it is part of the Federal Register, and ultimately, the Code of Federal Regulation, rather than just a statement of intent. . . ."  While the Department has promulgated a proposed rule governing acquisition of land in trust for gaming purposes, 65 Fed. Reg. 55471 (Sept. 14, 2000), that rule has not been finalized and, in any case, it serves to strengthen the Department's position to restate its view in this published rule.  Indeed, the Department should unequivocally articulate the requirement, in the form of a final, binding rule relating to land in trust acquisitions generally, that Section 20 of IGRA governs the use of lands acquired after October 17, 1988, for gaming purposes, including, where applicable, the requirement of secretarial findings and gubernatorial concurrence.  Therefore, we recommend an amendment to include the relevant language of the preamble of the original proposed rule into the text of the current published rule.

## CONCLUSION

The Attorneys General appreciate the opportunity to address again this critical question that relates to core sovereign interests of the state and the local communities.  The acquisition of land in trust for the benefit of Indian tribes is generally a commendable and important federal governmental action, but it is  simultaneously a taking of land out of the traditional scope of the states' jurisdiction and that of their political subdivisions.  The federal government, then, should proceed quite carefully in matters such as this and give full measure to a consultative, cooperative and collaborative approach to the federal-state-tribal relations involved.  The Attorneys General have addressed these issues in their previous letters and reiterate them here. Further, the States of Alaska, Kansas, Michigan, South Dakota, Rhode Island and Connecticut have submitted separate comments over the past two years; those comments should be revisited in this review.



The Honorable Gale Norton
June 15, 2001
Page 9

We urge you to adopt the recommended amendments and other changes that we have suggested and circulate a new draft for the states and other interested parties to review. As part of this review process, we also suggest a more intense consultation with the states' Attorneys General in meetings or sessions where the issues can be fully developed.

Sincerely,

Attorney General Bill Pryor
Attorney General of Alabama

Attorney General Bruce Botelho
Attorney General of Alaska

Attorney General Janet Napolitano
Attorney General of Arizona

Attorney General Ken Salazar
Attorney General of Colorado

Attorney General Richard Blumenthal
Attorney General of Connecticut

Attorney General Robert A. Butterworth
Attorney General of Florida

Attorney General Alan Lance
Attorney General of Idaho

Attorney General Stephen Carter
Attorney General of Indiana

Attorney General Carla J. Stovall
Attorney General of Kansas

Attorney General Richard P. Ieyoub
Attorney General of Louisiana

Attorney General Jennifer Granholm
Attorney General of Michigan

Attorney General Mike Moore
Attorney General of Mississippi

COPY

AR00702

The Honorable Gale Norton
June 15, 2001
Page 10

Attorney General Jeremiah W. Nixon
Attorney General of Missouri

Attorney General Frankie Sue Del Papa
Attorney General of Nevada

Attorney General John Farmer, Jr.
Attorney General of New Jersey

Attorney General Patricia Madrid
Attorney General of New Mexico

Attorney General Wayne Stenehjem
Attorney General of North Dakota

Attorney General Betty D. Montgomery
Attorney General of Ohio

Attorney General Sheldon Whitehouse
Attorney General of Rhode Island

Attorney General Mark Barnett
Attorney General of South Dakota`

Attorney General Mark Shurtleff
Attorney General of Utah

Attorney General William H. Sorrell
Attorney General of Vermont

Attorney General Christine O. Gregoire
Attorney General of Washington

# COPY

AR00703

4/16/01 #145

**ORGANIZED VILLAGE OF KASAAN IRA**
**P.O. BOX 26 – KASAAN**
**KETCHIKAN, ALASKA 99950-0340**
**TELEPHONE NO. (907) 542-2230  FAX NO. (907) 542-3006**

June 15, 2001

The Honorable Gale A. Norton, Secretary of Interior
ATTN: Terry Virden
MS 4513-MIB
1849 C Street, NW
Washington, D.C. 20240

**RE:  Comments on Final Regulations on Acquisition of Title to Land in Trust**

Dear Secretary Norton:

I am writing on behalf of the Organized Village of Kasaan to urge you to make effective the final regulations regarding Indian Trust Land Acquisitions, as published in the Federal Register on January 16, 2001.

The regulations should be made effective because they advance three fundamental principles.  First, the regulations carry out the purposes of the Indian Reorganization Act *and recognize* the critical role that land restoration must play in the fostering tribal self-sufficiency. Second, the final regulations implement clear standards for taking lands into trust which provide guidance to the Department in the exercise of its authority, and ensure basic fairness to all parties in connection with the trust application process. Third, the final regulations facilitate fair consideration of appropriate factors and a timely decision on trust land applications.

The Department has given the issue of land into trust and *further delay would be unfair and unwarranted.* The process of revisiting the trust land acquisition regulations has been ongoing for years.   The Department, as well as tribes, states and local governments, share an interest in seeing the process come to an end.  There needs to be certainty regarding the procedures and standards for taking land into trust. The final rule provides a fair process that will facilitate informed and timely decision making under meaningful standards.  It is time for the Department to move forward and make the final rule effective.

As Secretary of Interior, you have a trust responsibility to Indian tribes, and *we believe that the* Department of Interior has an obligation to further that relationship by removing obstacles to tribal self-government and self-determination.  Moving forward with the final regulations will further that objective.

We urge you to make the final regulations on trust land acquisitions effective as soon as possible.  Thank you for your consideration of this matter of great importance to us, and to Indian Tribes nationwide.

Sincerely,

Audrey L. Escoffon
Vice President

COPY

AR00704

applications to take land into trust in Alaska as proposed by the Babbitt-era regulations.

We ask that you amend the pending regulations to remove the ban or moratorium on applications to take land into trust in Alaska. In the alternative, we ask that you let the pending regulations die and promptly propose a new amendment to the current regulations that would expressly affirm that applications to take land into trust in Alaska shall be handled in the same manner that are applications throughout the rest of America.

I have attached this letter my previous comments provided for the record on November 12, 1999. Any consideration given my comments of today and of 1999 is very much appreciated.

Sincerely,


Edward K. Thomas
President



P.O. 26-Kasaan
Ketchikan, AK 99950-0340
Phone: 907-542-2230
Fax: 907-542-3006

**Organized Village of Kasaan-IRA**

# Fax

| To: | Terry Virden | From: | Audrey Escoffon |
|---|---|---|---|
| Fax: | 202-219-1255 | Pages: Including Cover | 2 |
| Phone: | N/A | Date: | 6/15/01 |
| Re: | Land Trust Reg. | CC: | |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

• Comments:

RECEIVED
JUN 1 9 2001
TRUST ... ILITIES

# COPY

Logged 6/20/01




RECEIVED
6/20/1

AR00706



# Old Harbor Tribal Council

P. O. Box 62, Old Harbor, Alaska 99643
Phone: (907) 286-2215  Fax: (907) 286-2277

The Honorable Gale A. Norton, Secretary of Interior
attn: Terry Virden
MS 4513-MIB
1849 C Street, NW
Washington, DC 20240

RE: Comments on Final Regulations on Acquisition of Title to Land in Trust

Dear Secretary Norton:

I write on behalf of _Village of Old Harbor_ to urge you to make effective the final regulations regarding Indian trust land acquisitions, as published in the Federal Register on January 16, 2001.

The regulations should be made effective because they advance three fundamental principles. First, the regulations carry out the purposes of the Indian Reorganization Act and recognize the critical role that land restoration must play in the fostering tribal self-sufficiency. Second, the final regulations implement clear standards for taking lands into trust which provide guidance to the Department in the exercise of its authority, and ensure basic fairness to all parties in connection with the trust application process. Third, the final regulations facilitate fair consideration of appropriate factors and a timely decision on trust land applications.

The issue of land into trust has been given full and fair consideration by the Department and further delay would be unfair and unwarranted. The process of revisiting the trust land acquisition regulations has been ongoing for years. The Department, as well as the tribes, states and local governments, share an interest in seeing the process come to an end. There needs to be certainty regarding the procedures and standards for taking land into trust. The final rule provides a fair process that will facilitate informed and timely decisionmaking under meaningful standards. It is time for the Department to move forward and make the final rule effective.

As Secretary of Interior, you have a trust responsibility to Indian tribes, and we believe that the Department of Interior has an obligation to further that relationship by removing obstacles to tribal self-government and self-determination. Moving forward with the final regulations will further that objective.

We urge you to make the final regulations on trust land acquisitions effective as soon as possible. Thank you for your consideration of this matter of great importance to us, and to Indian tribes nationwide.

Sincerely,

_Tony R. Gryak Sr._  President

**RECEIVED**

JUN 1 5 2001

TRUST RESPONSIBILITIES  TOTAL P.02

_Logged 6/20/01_

RECEIVED 6/18/1

COPY

AR00707

# Old Harbor Tribal Council

P. O. Box 62, Old Harbor, Alaska 99643
Phone: (907) 286-2215  Fax: (907) 286-2277

| Time: 1:10 PM | Date: 6-5-01 |
|---|---|
| To: Terry Virdon | Fax Number: 202-219-1255 |
| From: Tony R. Azuyak Sr | Re: Comments on final regulations |

__2__ # of pages being transmitted, including this cover sheet, if you have any problems receiving this fax please call 907-286-2215, Thank You

| For Your | Review | Information ✗ |
|---|---|---|
| Original to follow by mail: | Yes | No ✗ |

Comments to Recipient:

# COPY

AR00708



CENTRAL COUNCIL
tlingit and haida indian tribes of alaska

ANDREW P. HOPE BUILDING
320 West Willoughby Avenue • Suite 300
Juneau, Alaska  99801-9983

June 15, 2001

The Honorable Gale Norton                Terry Virden, Director
Secretary                                Office of Trust Responsibilities
U.S. Department of the Interior          MS 4513-MIB
1849 C Street, N.W.                      1849 C Street, N.W.
Washington, D.C.  20240                  Washington, D.C.  20240

RE:    Comments on Final Rule Regarding Acquisition of Title to Land in Trust, 25 CFR
       Part 151, Vol. 66 Federal Register No. 10, pp. 3452-3466 (January 16, 2001)

Dear Secretary Norton and Mr. Virden:

On behalf of the Central Council of the Tlingit and Haida Indian Tribes of Alaska (hereinafter,
the "Central Council"), I respectfully request that you amend the "Land-into-Trust" regulations
that were proposed as final by former Secretary Babbitt on January 16, 2001, by removing
restrictive language that would bar the acceptance of land into trust by the United States on
behalf of Indian tribes in Alaska.  In the alternative, we ask that you withdraw the pending rule
and promptly propose and finalize a new amendment to the current regulations which would
expressly affirm that applications to take land into trust in Alaska shall be handled in the same
manner that are applications throughout the rest of America.

When the Babbitt Administration first proposed this rule in 1999, the Central Council provided
written comment opposing all provisions of the proposed regulation that would treat Indian tribal
land in Alaska on terms different than those which apply in the lower 48 states.  Our comments
were of no avail, the Babbitt Administration placed in its "final" regulations an unlawful and
unfair ban on the taking into trust of tribal land in Alaska.

I ask that you remove these offensive provisions for several reasons:

1.    There is no legal foundation for treating tribes in Alaska any differently than tribes
      elsewhere on this important issue.

2.    The placement of land in trust status is very beneficial to tribes.  It stabilizes tribal lands in
      mixed communities where the land-base is at risk of being lost to tax lien or other
      foreclosure proceedings.  Most of these tribes do not have adequate financial resources to
      protect themselves and their lands without the help of the federal government.  In many
      instances, the tribal use of land is of great value to the tribe and its members but that use
      may not generate economic value with which to pay realty taxes.

RECEIVED
JUN 1 5 2001
TRUST RESPONSIBILITIES



COPY

RECEIVED
6/18/1

The Honorable Gale Norton
Terry Virden, Director
June 15, 2001
Page 2

3.  If these regulations are adopted and implemented, many tribes would have to re-apply and meet new and more burdensome criterion after waiting many years to have their proposals to take land into trust processed under current regulations.

4.  Alaska tribes have been promised time and again that once other issues have been addressed the BIA will revisit Alaska-specific language at a later date. That later date never comes, new issues perpetually arise and elbow aside our consideration. The Babbitt "final" regulations would shamelessly put Alaska out in the cold again.

The national question is a political one: whether it is more advantageous to accept the Babbitt-era proposal and extend the unlawful, unfair decades-long deferral of the tribal land management interests and needs of Alaska tribes" or to allow the proposed Babbitt regulations to die and restart the drafting process. The latter approach would allow the current regulations to continue in force until the Alaska specific language can be removed, thus equitably treating all tribes in America on the same terms. At a recent meeting on this issue in Washington, DC, BIA Deputy Commission Sharon Blackwell admitted under questioning that nothing was done by the Babbitt Administration nor during your tenure to begin the promised review of the Alaska tribal lands issue.

Also, please be aware that there is tribal and individual trust land in Alaska outside of Annette Island. Besides the thousands of acres of Native Allotments held by the federal government for individuals and/or their families, there are two tracts of land owned by Indian Reorganization Act tribes in the Southeast Alaska region that are held in trust for those tribes by the United States. There is already Indian trust land in Alaska. It is unfair, and, we submit, violative of our due process and equal protection rights, for the United States to discriminate against tribal applications to take land into trust in Alaska as proposed by the Babbitt-era regulations.

We ask that you amend the pending regulations to remove the ban or moratorium on applications to take land into trust in Alaska. In the alternative, we ask that you let the pending regulations die and promptly propose a new amendment to the current regulations which would expressly affirm that applications to take land into trust in Alaska shall be handled in the same manner that are applications throughout the rest of America.

I have attached this letter my previous comments provided for the record on November 12, 1999. Any consideration given my comments of today and of 1999 is very much appreciated.

Sincerely,

*Edward Thomas*

Edward K. Thomas
President

Attachment: November 12, 1999 Comments on Proposed Regulations

COPY



**CENTRAL COUNCIL**
tlingit and haida indian tribes of alaska

ANDREW P. HOPE BUILDING
320 West Willoughby Avenue • Suite 300
Juneau, Alaska 99801-9983

November 12, 1999

Received: *[signature]* Jonathan Pey
11/12/99

Terry Virden
Director
Office of Trust Responsibilities
Bureau of Indian Affairs MS-4513 MIB
U.S. Department of the Interior
1849 C Street, NW
Washington, D.C. 20240

Dear Mr. Virden:

I am writing, as the President of the Central Council of Tlingit and Haida Indian Tribes of Alaska (the "Tribe"), to convey the Tribe's comments on the proposed regulations published on April 12, 1999, in the *Federal Register* at pages 17574-588.

The Tribe has been working closely with the Indian Land Recovery Task Force of the National Congress of American Indians ("Task Force"). The suggestions drafted by the Task Force would vastly improve the Secretary's proposed procedures. We urge you to give them careful consideration during the Department's review of the comments. In particular, we are appreciative of the stance the Task Force has taken against the proposed perpetuation of the ban on taking land into trust in Alaska. We do have specific comments, however, which we offer that distinguish our comments from those of the Task Force.

As published, the proposed regulations would make some rather dramatic changes to the procedures by which the Secretary of the Interior takes land into trust for Indian tribes under the Indian Reorganization Act (25 U.S.C. 465) and other federal statutes. However, the proposed regulations contain a very serious flaw – they propose at Section 151.3(c) to perpetuate the Department's self-imposed ban against taking any land into trust for the benefit of Indian tribes located within the State of Alaska. We believe the Department's self-imposed ban is unlawful, unfair, and a root cause of our present great hardship. We strongly object to the ban being continued in any revision to the existing regulations.



FAX 907/586-8970

AR00711

Terry Virden
November 12, 1999
Page 2

### *The Fredericks Opinion and Ban Both Lack Any Basis in Present-Day Law or Policy*

The Department's self-imposed ban emanates from an indefensible opinion fraught with legal infirmities that was issued in the late 1970s by Tom Fredericks, then Associate Solicitor for Indian Affairs. To put it charitably, the memorandum was mis-guided and fundamentally mis-read both the law and political realities. Both have long since changed.

The Congress has, during this past decade, expanded upon and then ratified the clarification by then Assistant Secretary – Indian Affairs Ada Deer that village and regional tribes exist in the State of Alaska. Cf. 25 U.S.C. 1212 et seq. (the "Tlingit and Haida Status Clarification Act of 1994", Title II of Pub. L. 103-454); 25 U.S.C. 479a et seq. (the "Federally Recognized Indian Tribe List Act of 1994", Title I of Pub. L. 103-454, and particularly, the findings of Congress in Section 103 thereof).

More recently, in remarks he personally delivered to the national forum on subsistence convened by the Alaska Federation of Natives at the Smithsonian in Washington, D.C. in September, 1999, U.S. Senator Ted Stevens (R-AK) repeatedly referred to the practical reality that tribes do exist in Alaska and do have a role to play as governments in addressing the many challenges confronting American Indians and Alaska Natives in Alaska. His remarks indicate to me that the battle for acceptance of our existence as tribal governments has been largely concluded. The Interior Department, as our trustee, should be the first, not the last, to treat tribes in Alaska as governments and facilitate the reacquisition and protection of some of the land we have lost.

Even the highest court of the State of Alaska, which has traditionally been antagonistic toward any expression of tribal government in Alaska, recently held that as a matter of Alaska State law tribal courts have concurrent jurisdiction over domestic affairs. Cf. *Anita John v. John Baker*, No. S.-8099 (Alaska Sept. 8, 1999).

We note, as have others, that the April 12, 1999 notice of proposed rulemaking seeks guidance from the Alaska Governor's "Rural Governance Commission" on the question of whether the Secretary should remove the self-imposed regulatory ban on taking land into trust for tribes in Alaska. The June, 1999 final report of the State of Alaska's Rural Governance Commission could not be more clear in its strong recommendation to remove the regulatory ban against taking lands into trust in Alaska. The Commission bases its recommendation on persuasive evidence that the lack of a land base serves to further impoverish tribal communities in Alaska and deny them access to an array of land-based federal economic development assistance and associated authorities.



AR00712

Terry Virden
November 12, 1999
Page 3

The Commission's rationale is echoed in the Department's preamble comments published in the Notice of Proposed Rulemaking with regard to all Indian tribes who lack a reservation.

> Federal policy for many decades has viewed the existence of a
> tribal land base as integral to the cultural, political, and economic
> well-being of a tribe. For example, most federal programs for
> Indians are in one way or another tied to the tribal land base.
> Because of the overwhelming importance of the tribal land base,
> and because the new regulations make it less burdensome for tribes
> to take land into trust on (as opposed to off-) reservation, we are
> proposing in these regulations an alternative mechanism by which
> reservation-less tribes may benefit from the on-reservation
> acquisition provisions to create a homeland.

*Federal Register*, at p. 17578. With one exception, all tribes in Alaska lack reservations. We ask that the Secretary apply his own argument, set out above, and remove the Secretary's self-imposed ban against taking land into trust in Alaska.

For the foregoing reasons, combined with the 1998 *Venetie* decision by the United States Supreme Court, we believe that much of the debate of the past two decades regarding the existence and role of tribal governments in Alaska essentially has been resolved. The reality is that there is growing, albeit grudging, recognition by all interests that tribes do exist in Alaska and do exercise governmental responsibilities over land and people. The Department should not subvert this evolving policy by reviving the legally flawed ban against taking land into trust in Alaska.

### A Tribal Trust Land Base is Essential to Our Survival

There is another factual reality that is not reflected in the proposed regulations and which argues against continuing the ban on taking land into trust in Alaska. There are already a few tracts of tribal trust land in Alaska outside of the island of Metlakatla. And there are a fair number of parcels in Alaska now held on behalf of individual Indians and Natives by the United States in a restricted status. These tracts exist, making it all the more unfair for the United States to propose to tribes in Alaska that they be barred from adding any more land to their meager trust land base while proposing to tribes outside Alaska that they may add land to their holdings.



Terry Virden
November 12, 1999
Page 4

Without a modest land base, the tribal governments of our people are consigned to impoverishment and dependency. It is essential that we have our trustee, our advocate, stand with us on this issue and declare that there is no reason to treat Indian tribes in Alaska any different than Indian tribes in the Lower 48 States are treated for purposes of consideration of fee to trust land applications.

The regulations as proposed will do absolutely nothing to further our efforts toward self-determination and self-sufficiency. We need to recover our tribal lands in limited but targeted ways in order to take advantage of various Federal programs, resources, and advantages that accrue to the unique Federal-Tribal relationship.

Land is central to our Native way of life. Our tribal people cannot subsist without land. Our tribal governments cannot properly govern without land. Kept landless, our tribal economies are forever crippled and our tribal services are forever dependent upon grants funds that are fickle and undermine self-sufficiency. Unless the Secretary removes the ban against accepting tribal land into trust in Alaska, we will be forever damned to the hell of welfarism.

The current regulations, and the proposed regulations, completely and inequitably bar the tribal governments of American Indians and Alaska Natives in Alaska from participating in one of the single most basic aspects of tribal government – owning, managing, and exercising jurisdiction over land held in trust for the Tribe by the United States. This discriminatory approach is an outrage.

### The Tribal Land Acquisition Area Language Should Be Revised to Fit Southeast Alaska

We have additional concern regarding the proposed language on "Tribal Land Acquisition Areas" or "TLAAs". The Tribe's goal is to have the revised regulations permit an acknowledgement by the Department that the Tribe's TLAA is the "territorial area" of Southeast Alaska, the region in which the Tribe has traditionally provided primary services to its members. As you may know, the Tribe has provided governmental and program service activities to its members in this region and beyond since time immemorial. The Tribe has utilized funds from the Bureau of Indian Affairs (the "BIA") to provide services throughout this region since the 1960s when it first received funds from the BIA under contracts pursuant to the Buy Indian Act. Since 1975, the Tribe has received additional funds from BIA to serve this entire region under Titles I, III, and IV of P.L. 93-638. In 1993, the Tribe negotiated for the complete assumption of all BIA services for the entire region of Southeast Alaska. This assumption included closure of the BIA's Southeast Agency Office entire operations. As a practical matter, tribal governments now stand in the shoes of the BIA throughout Southeast Alaska. The Department has treated the



COPY

AR00714

Terry Virden
November 12, 1999
Page 5

entire region of Southeast Alaska as the service delivery area. As described in detail below, the entire region of Southeast Alaska is the former "reservation" of our Tribe and of other village-based tribes within our region.

We ask that the Department revise its draft regulations to conform them to the reality that Southeast Alaska is the "territorial area" of our Tribe and the other village-based tribes within our region. Denoting Southeast Alaska as our "former reservation" or "territorial area" for the purposes of these regulations is an essential step in our effort to regain land that we have lost and to restore it to a protected status that will prevent it from being lost again. Likewise, declaring Southeast Alaska as our "former reservation" or "territorial area" for the purposes of these regulations is the only way that our Tribes can effectively self-govern in key areas, such as domestic relations, a responsibility that the State of Alaska's highest state court recently confirmed is within the jurisdiction of tribal courts in Alaska. Cf. *Anita John v. John Baker*, No. S-8099 (Alaska Sept. 8, 1999).

The Department's revisions to the regulations should acknowledge that the Tribe exercises concurrent jurisdiction over lands held in trust for the Tribe by the United States, over lands it owns in fee and, of course, over members of our Tribe. Within the defined "territorial area" of Southeast Alaska, the Department should clarify in revisions to the draft regulations that the Tribe may seek trust status for lands the Tribe acquires without off-reservation concerns and without concerns about whether the consent of another Tribe is needed.

The opportunity to seek trust status for land within the "territorial area" of Southeast Alaska should be conditioned on the special considerations applicable to Southeast Alaska under the Tribe's constitution and under the 1994 re-acknowledgement statute that protect against duplication of services and require concurrent jurisdiction with other tribes within the same territorial area. Central Council Tlingit and Haida Indian Tribes is, by definition, a regional tribe. Within its region are other, village-based, Indian tribes. A virtually identical situation exists in at least one other region within Alaska (i.e., Arctic Slope). Comparable situations exist in Oklahoma (e.g., Cherokee Nation and the Delaware Tribe of Indians), Minnesota (e.g., Minnesota Chippewa Tribe and the Mille Lacs Band of Ojibwe), and in other parts of Indian Country (e.g., California, Washington), where regional or federated Indian tribes are recognized by the United States and co-exist in a territorial service delivery with other Indian tribes whose members sometimes are dually-enrolled in both. In Southeast Alaska, we have resolved the issues of duplicate services and concurrent jurisdiction that arise from dual-enrollment and overlapping jurisdiction. In each instance, Central Council Tlingit and Haida has agreed as a matter of constitutional and statutory obligation to give precedent to a village-based tribe and act only where and when the village-based tribe has chosen not to.



AR00715

Terry Virden
November 12, 1999
Page 6

Some other adjustments should be made to the TLAA provision as proposed in the April 12, 1999 notice of proposed rulemaking. We urge the Department to remove what we consider as curious the proposed ten-year limitation on acquisition of land in an approved TLAA that is set forth in the proposed Section 151.17. We would chafe at such a time restriction, especially when it is not applied to other Indian tribes on reservations. We request that once a TLAA is established, that it be considered, once and for all, the TLAA for the affected tribe. Indian tribes are no longer migrating. Our Tribe never did. Southeast Alaska has been our homeland from time immemorial. Try as we might, we cannot imagine what is the policy reason behind this proposal and ask that it be removed.

Similarly, we question the practical workability of the requirements set out in the proposed Section 151.18 which seem geared more to the consideration of a specific parcel of land than an entire TLAA. We believe the information requested in Section 151.18 should be reserved for the time when a specific parcel is applied for, rather than when the TLAA is applied for. Otherwise, to require land selections to be made at the time a TLAA is applied for is to skew the private sector market and cause to inflate the value of parcels subject to future acquisition interests of the Tribe.

We are also concerned about the proposed consent requirement provisions set forth in Section 151.18. As proposed, these requirements would allow the "host" tribe to veto any trust acquisitions for the tribe for whom the TLAA is established in the first place. Such a scheme would be simply unworkable in our region. We have in place a very effective mechanism which requires our Tribe to defer to any other village-based tribe in our region, but permits our sovereign Tribe the freedom to act, without first having the approval of any other sovereign tribe in our region, when and where those other sovereign tribes are not acting. We adopted this practice many years ago because the proposed approach of obtaining consent before acting caused a paralysis, given the number of tribes in our region and their relative small size and remoteness. Our region is quite large. There is plenty of room for each of the tribes in our region to do what they need to do without stumbling upon each other. But it has proven to be wholly impracticable to obtain the consent of each tribe in our region before acting. We have found that our policy of deferring to, but being able to act in default where there is no competing proposal from any of our neighboring tribes, is an effective way of exercising our sovereign powers while respecting the sovereign powers of our neighboring tribes. We urge you to amend the proposed regulations dealing with the evaluation of applications to place land in trust by a tribe within a multi-tribal TLAA to not apply the consent requirement upon a regional tribe like Central Council Tlingit and Haida where its land application is not in competition with the land application of another village-based tribe.



COPY

Terry Virden
November 12, 1999
Page 7

*Withdraw the Fredericks Opinion and Remove the Discriminatory Ban Against Alaska Tribes*

In the preamble to the April 12, 1999 proposed rule, the Department invites comment on the continuing validity of a 1978 legal opinion issued by a former Associate Solicitor for Indian Affairs, Tom Fredericks ("Trust Land for the Natives of Venetie and Arctic Village," September 15, 1978) (the "Fredericks opinion"). The Department's invitation notes that the Fredericks opinion is under review because it conflicts in part with a more recent and more authoritative interpretation of the Alaska Native Claims Settlement Act of 1971, 43 U.S.C. § 1601 *et seq.* ("ANCSA") by the United States Supreme Court (*Alaska v. Venetie*, 522 U.S. 520 (1998)).

We have reviewed the Fredericks opinion closely. Its conclusions have been over-run by the passage of time, decades of legislative and administrative policy, and the case law. We believe the Fredericks opinion is now thoroughly discredited. Accordingly, the Fredericks opinion should be either withdrawn or ignored and the regulatory ban against the taking of land into trust in Alaska abandoned.

The Fredericks opinion rests upon an erroneous conclusion, not supported by the law or legislative history, that ANCSA repealed the Secretary's authority to take land into trust in Alaska. The Secretary's authority arises from the Indian Reorganization Act ("IRA"), 25 U.S.C. § 465. This authority is not affected in any way by the provisions of ANCSA. To conclude otherwise is to conclude that the Secretary's authority under the IRA to take land into trust likewise does not extend to the many other Indian tribes who lack present-day reservations in Oklahoma, California and other Indian communities outside of Alaska. Such an interpretation as to reservation-less tribes outside of Alaska would and should be dismissed as preposterous. It is just as preposterous that the Fredericks opinion interpretation is not dismissed out-of-hand with respect to reservation-less tribes within Alaska in 1999.

In enacting the 1971 ANCSA and the 1976 Federal Land Policy and Management Act, the Congress certainly could have amended 25 U.S.C. 473a to repeal the application of the Secretary's authority to take land into trust in Alaska under 25 U.S.C. 465. But the Congress did not. In 1988, the Congress even went so far as to further amend 25 U.S.C. 465, without addressing or altering its application to Alaska pursuant to 25 U.S.C. 473a. We cannot see how any credit can be given to the conclusion reached in the 1978 Fredericks opinion that because the Congress in 1976 repealed the authority of the Secretary to establish reservations in Alaska pursuant to 25 U.S.C. 496, that somehow that action, by implication, repealed the authority of the Secretary to take land into trust in Alaska pursuant to 25 U.S.C. 473a. The courts have long-held that repeals, by implication, are strongly disfavored. Section 473a stands untouched by the 1971



COPY

Terry Virden
November 12, 1999
Page 8

and 1976 Acts of Congress. The Department's regulations should reflect that authority and remove the self-imposed ban against taking land into trust in Alaska.

The 1978 Fredericks opinion also appears to presume that the act of taking land into trust pursuant to 25 U.S.C. 465 and 25 U.S.C. 473a would also automatically result in the establishment of a reservation under 25 U.S.C. 496. They are distinct processes with separate statutory authorities. Quite simply, the acceptance of land in trust status does not establish a reservation upon such land. In fact, it is not widely known that the Department now holds land in trust or restricted status for both tribes and individuals in Alaska in addition to what it holds on the Annette Island Reserve for the Metlakatla Indian Community. Throughout the rest of Southeast Alaska the Department holds trust lands for several tribes, lands that formerly were cannery sites and maintained their trust land status untouched by the enactment of ANCSA. There are also numerous other parcels of land held in trust or restrictive status under the Native Allotment Act and Native Townsite Acts. Each of these tribal and individual parcels are trust or restricted land without being considered a reservation. The Secretary's lawful exercise of authority to take additional Alaska lands into trust pursuant to 25 U.S.C. 465 and 25 U.S.C. 473a would not result in the creation of reservation lands within a state where no such reservations currently exist.

The *Venetie* opinion focused on the question of whether the Village of Venetie's former reservation lands, now held in fee not trust or other restricted status, met the test for Indian country under 15 U.S.C. 1151(b). Obviously, the Supreme Court held that such lands do not meet the test for Indian country. The Court did not address, however, the question of whether the Secretary has authority under the IRA to place lands into trust in Alaska. Thus, the legal foundation for the Secretary's authority to take land into trust in Alaska remains intact.

Moreover, in 1994 the Congress expressly added the following subsection to 25 U.S.C. 476, which plainly prohibits the Department from promulgating any regulation or making any determination that would treat different tribes differently in the way proposed in the April 12, 1999 draft regulations:

> Departments or agencies of the United States shall not promulgate any regulation or make any decision or determination pursuant to the Act of June 18, 1934 (25 U.S.C. 461 *et seq.*, 48 Stat. 984) as amended, or any other Act of Congress, with respect to a federally recognized Indian tribe that classifies, enhances, or diminishes the



Terry Virden
November 12, 1999
Page 9

> privileges and immunities available to the Indian tribe relative to
> other federally recognized tribes by virtue of their status as Indian
> tribes.

25 U.S.C. 476(f). This 1994 statute, on its face, should be sufficient authority for the Department to rescind the 1978 Fredericks opinion as having been overturned as a matter of express statutory law. This 1994 statute, on its face, plainly would prohibit the Department from maintaining the regulatory ban against taking land into trust in Alaska. To maintain the ban is to flout the statutory authority and render the regulations patently vulnerable to challenge for being in violation of the law.

The proposed regulation is illegally restrictive both with respect to its arbitrary bar against taking lands into trust in Alaska, and with respect to the burden that it imposes upon tribes that lack reservation status. We most strenuously urge the Department to remove the ban against taking land into trust in Alaska and instead treat tribes in Alaska as all other tribes without reservations are treated for purposes of the acceptance and consideration of applications to place land into trust pursuant to 25 U.S.C. 465. We also urge the Department to remove the extra burdens it proposes to impose upon tribes without reservations.

The Tribe appreciates having this opportunity to comment on the proposed regulations. We are likewise grateful that the Department has extended the time period to enable tribal governments to more fully analyze the proposed rules.

Sincerely,

*Edward K. Thomas /CK*

Edward K. Thomas
President

cc: Philip Baker-Shenk, Esq.

**COPY**

AR00719

**Terry Virden**

06/15/2001 01:45 PM

☐ Return receipt

To: Kayla Danks/DC/BIA/DOI@BIA

cc:

Subject: Final Regulations

----- Forwarded by Terry Virden/DC/BIA/DOI on 06/15/01 01:40 PM -----

**"Linda Williams" <igapihp@ptialaska.net>**

06/14/01 07:14 PM

☐ Return receipt

To: <TerryVirden@bia.gov>

cc:

Subject: Final Regulations

## Organized Village of Saxman

## Saxman I.R.A. Council

Route 2 Box 2 - Saxman Ketchikan, AK  99901

Phone (907) 247-2502 / FAX (907) 247-2504

email: igapihp@ptialaska.net

The Honorable Gale A. Norton, Secretary of Interior

Attn: Terry Virden

MS 4513-MIB

1849 C Street, NW

Washington, DC  20240

RE: Comments on Final Regulations on Acquisition of Title to Land in Trust

Dear Secretary Norton:

# COPY

*Logged 6/18/01*

AR00720

I write on behalf of Saxman I.R.A. Council to urge you to make effective the final regulations regarding Indian trust land acquisitions, as published in the Federal Register on January 16, 2001.

The regulations should be made effective because they advance three fundamental principles.

> ➢ First, the regulations carry out the purposes of the Indian Reorganization Act and recognize the critical role that land restoration must play in the fostering tribal self-sufficiency.

> ➢ Second, the final regulations implement clear standards for taking lands into trust, which provide guidance to the Department in the exercise of its authority, and ensure basic fairness to all parties in connection with the trust application process.

> ➢ Third, the final regulations facilitate fair consideration of appropriate factors and a timely decision on trust land applications.

The issue of land into trust has been given full and fair consideration by the Department and further delay would be unfair and unwarranted. The process of revisiting the trust land acquisition regulations has been ongoing for years. The Department, as well as the tribes, states and local governments, shares an interest in seeing the process cone to an end. There needs to be certainty regarding the procedures and standards for taking land into trust. The final rule provides a fair process that will facilitate informed and timely decision making under meaningful standards. It is time for the Department to move forward and make the final rule effective.

As Secretary of Interior, you have a trust responsibility to Indian tribes, and we believe that the Department of Interior has an obligation to further that relationship by removing obstacles to tribal self-government and self-determination. Moving forward with the final regulations will further that objective



COPY

AR00721

We urge you to make the final regulations on trust land acquisitions effective as soon as possible. Thank you for your consideration of this matter of great importance to us, and to Indian tribes nationwide.

Sincerely,

Joe Williams II,

President

COPY

AR00722

**Terry Virden**
06/15/2001 01:46 PM
☐ Return receipt

To: Kayla Danks/DC/BIA/DOI@BIA
cc:
Subject: Final Regulations

····· Forwarded by Terry Virden/DC/BIA/DOI on 06/15/01 01:40 PM ·····



**"Saxman IRA"**
**<saxman@eagle.ptialaska.net>**
06/14/01 07:18 PM

To: <terryvirden@bia.gov>
cc:
Subject: Final Regulations

☐ Return receipt

The Honorable Gale A. Norton, Secretary of Interior

Attn: Terry Virden

MS 4513-MIB

1849 C Street, NW

Washington, DC 20240

RE: Comments on Final Regulations on Acquisition of Title to Land in Trust

Dear Secretary Norton:

I write on behalf of Saxman I.R.A. Council to urge you to make effective the final regulations regarding Indian trust land acquisitions, as published in the Federal Register on January 16, 2001.

The regulations should be made effective because they advance three fundamental principles.

➢ First, the regulations carry out the purposes of the Indian Reorganization Act and recognize the critical role that land restoration must play in the fostering tribal self-sufficiency.

➢ Second, the final regulations implement clear standards for taking lands into trust, which provide guidance to the Department in the exercise of its authority, and ensure basic fairness to all parties in connection with the trust application process.

➢ Third, the final regulations facilitate fair consideration of appropriate factors and a timely decision on trust land applications.

The issue of land into trust has been given full and fair consideration by the Department and further delay would be unfair and unwarranted. The process of revisiting the trust land acquisition regulations has been ongoing for years. The Department, as well as the tribes, states and local governments, shares an interest in seeing the process cone to an end. There needs to be certainty regarding the procedures and standards for taking land into trust. The final rule provides a fair process that will facilitate informed and timely decision making under meaningful standards. It is time for the Department to move forward and make the final rule effective.



AR00723

As Secretary of Interior, you have a trust responsibility to Indian tribes, and we believe that the Department of Interior has an obligation to further that relationship by removing obstacles to tribal self-government and self-determination.   Moving forward with the final regulations will further that objective

We urge you to make the final regulations on trust land acquisitions effective as soon as possible.  Thank you for your consideration of this matter of great importance to us, and to Indian tribes nationwide.

Sincerely,

Joe Williams II, President



**ORGANIZED VILLAGE OF SAXMAN**
**SAXMAN I.R.A. COUNCIL**
Route 2 Box 2 - Saxman Ketchikan, AK  99901
Phone (907) 247-2502 / FAX (907) 247-2504
email: igapihp@ptialaska.net

The Honorable Gale A. Norton, Secretary of Interior
Attn: Terry Virden
MS 4513-MIB
1849 C Street, NW
Washington, DC  20240

RE:  Comments on Final Regulations on Acquisition of Title to Land in Trust

Dear Secretary Norton:

I write on behalf of Saxman I.R.A. Council to urge you to make effective the final regulations regarding Indian trust land acquisitions, as published in the Federal Register on January 16, 2001.

The regulations should be made effective because they advance three fundamental principles.

> First, the regulations carry out the purposes of the Indian Reorganization Act and recognize the critical role that land restoration must play in the fostering tribal self-sufficiency.

> Second, the final regulations implement clear standards for taking lands into trust, which provide guidance to the Department in the exercise of its authority, and ensure basic fairness to all parties in connection with the trust application process.

> Third, the final regulations facilitate fair consideration of appropriate factors and a timely decision on trust land applications.

The issue of land into trust has been given full and fair consideration by the Department and further delay would be unfair and unwarranted.  The process of revisiting the trust land acquisition regulations has been ongoing for years.  The Department, as well as the tribes, states and local governments, shares an interest in seeing the process come to an end.  There needs to be certainty regarding the procedures and standards for taking land into trust.  The final rule provides a fair process that will facilitate informed and timely decision making under meaningful standards.  It is time for the Department to move forward and make the final rule effective.

As Secretary of Interior, you have a trust responsibility to Indian tribes, and we believe that the Department of Interior has an obligation to further that relationship by removing obstacles to tribal self-government and self-determination.  Moving forward with the final regulations will further that objective

We urge you to make the final regulations on trust land acquisitions effective as soon as possible.  Thank you for your consideration of this matter of great importance to us, and to Indian tribes nationwide.

Sincerely,

Jo_ _illia__ II,
_reside__

**RECEIVED**

JUN 1 5 2001

TRUST RESPONSIBILITIES


6/15/1

AR00725

# ORGANIZED VILLAGE OF SAXMAN

## FACSIMILE TRANSMITTAL SHEET

TO: _Terry Virclen_  
FROM: _br Williams II_

COMPANY:  
DATE: _6/14/07_

FAX NUMBER: _202-219-1265_  
TOTAL NO. OF PAGES INCLUDING COVER: _2_

PHONE NUMBER:  
RE: _Final Regulations_

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY

SAXMAN I.R.A. COUNCIL ROUTE 2 BOX 2 · SAXMAN KETCHIKAN, AK 99901

COPY

AR00726

**Terry Virden**
06/16/2001 01:30 PM

☐ Return receipt

To: Kayla Danks/DC/BIA/DOI@BIA
cc:
Subject: Comments on Final Rule Regarding Acquisition of Title to Land in Trust 25 CFR Part 151

----- Forwarded by Terry Virden/DC/BIA/DOI on 06/16/01 01:24 PM -----



**"Jess Brown"**
**<greatrex@ptialaska.**
**net>**
06/15/01 07:45 PM

☐ Return receipt

To: <TerryVirden@bia.gov>
cc:
Subject: Comments on Final Rule Regarding Acquisition of Title to Land in Trust 25 CFR Part 151

Attached please find comments to the final rule regarding acquisition of Title to Lands in Trust from the Sitka Tribe of Alaska.

Original to follow via U.S. Mail. PLease note this is being sent at 3:44 pm Alaska Standard Time.

☐ · 061501 Land into Trust Regulations comments.doc
----- Forwarded by Terry Virden/DC/BIA/DOI on 06/16/01 01:24 PM -----



**Michael Minnis**
**<mminnis@swbell.ne**
**t>**
06/15/01 08:42 PM

☐ Return receipt

To: Terry Virden <TerryVirden@bia.gov>
cc: "John A. Barrett, Jr." <rbarrett@potawatomi.org>, Rocky Barrett <rocky@potawatomi.org>, Linda Capps <lcapps@POTAWATOMI.ORG>, Rhonda Butcher <RButcher@potawatomi.org>, Lisa Kraft <lkraft@potawatomi.org>
Subject: 25 CFR Part 151, comment on proposed rule

Consistent with 66 FR 19403, we have attached in PDF format comments on Acquisition of Title to Land in Trust.

Michael Minnis
Michael Minnis & Associates, P.C.
100 N Broadway Ave Ste 3160
Oklahoma City OK 73102-8816
405 235-7685 (FAX 232-5460)

☐ · Michael Minnis.vcf

☐ · Comment on Final rule.pdf
----- Forwarded by Terry Virden/DC/BIA/DOI on 06/16/01 01:24 PM -----

**Michael Minnis**
**<mminnis@swbell.ne**
**t>**
06/15/01 08:50 PM

To: Terry Virden <TerryVirden@bia.gov>
cc:
Subject: Fw: 25 CFR Part 151, comment on proposed rule

COPY

Logged 6/18/01

AR00727

 Return receipt

Michael Minnis
Michael Minnis & Associates, P.C.
100 N  Broadway Ave Ste 3160
Oklahoma City OK 73102-8816
405 235-7685 (FAX  232-5460)
----- Original Message -----
**From:** Michael Minnis
**To:** Terry Virden
**Cc:** John A. Barrett, Jr. ; Rocky Barrett  ; Linda  Capps ; Rhonda Butcher ; Lisa
Kraft
**Sent:** Friday, June 15, 2001 7:42 PM
**Subject:** 25 CFR Part 151, comment on proposed rule

Consistent with 66 FR 19403, we have attached in  PDF format comments on Acquisition of Title
to Land in Trust.

Michael Minnis
Michael Minnis &  Associates, P.C.
100 N Broadway Ave Ste 3160
Oklahoma City OK  73102-8816
405 235-7685 (FAX 232-5460)

 · Comment on Final rule.pdf



June 15, 2001

**VIA U.S. MAIL and Electronic Mail**

The Honorable Gale Norton
Secretary
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

Terry Virden, Director
Office of Trust Responsibilities
MS 4513-MIB
1849 C Street, N.W.
Washington, D.C. 20240

>    **Re: Comments on Final Rule Regarding Acquisition of Title to Land In Trust,
>    25 CFR Part 151**

Dear Secretary Norton and Mr. Virden,

On behalf of the Sitka Tribe of Alaska, I respectfully request that the proposed final rule regarding Acquisition of Title to Land in Trust be amended to allow the United States to accept land in trust for Indian Tribes in Alaska. The Department must allow Alaska Tribes to participate in the trust land process to the same extent as other Tribes now, as there is no valid distinction between Tribal governments organized under the Indian Reorganization Act in Alaska versus Tribal governments organized under the Indian Reorganization Act in the lower 48. Further, there is no reason for the Department to wait three years to "consider the legal and policy issues involved in determining whether the Department ought to remove the prohibition on taking Alaska lands into trust," as suggested in the preamble to the Final Rule. Alaska Tribes organized under the Indian Reorganization Act of 1934 should be given the opportunity to get lands placed into trust now.

No legal basis for disallowing Tribes in Alaska to get land placed into trust exists. As federally recognized Tribal governments organized under the Reorganization Act of 1934, tribal governments in Alaska should not be treated differently than Tribal governments in the lower 48. As noted in the preamble to the final rule, Congress



expressly extended section 5 of the IRA (giving the Secretary the authority to take Indian land into trust) to Alaska in 1936.  When Congress was repealing other statutes affecting Indian status in Alaska five years after the Alaska Native Claims Settlement Act was passed, Congress did not repeals this legislation.  Thus as IRA organized Tribal governments, Tribal governments in Alaska shall be allowed to place land into trust just like other IRA organized Tribal governments.

 Just because "the position of the Department has long been… that Alaska Native lands ought not be taken into trust," does not mean that this policy should continue.  The Department has already conducted the necessary research to determine that the former justifications for such a policy are invalid.  Thus, I respectfully request that the Department remove the current language prohibiting title to land in Alaska being accepted into trust.


Sincerely,


Lawrence Widmark
Sitka Tribe of Alaska
Tribal Chairman





# Sitka Tribe of Alaska

### Tribal Government for Sitka, Alaska

June 15, 2001

**VIA U.S. MAIL and Electronic Mail**

The Honorable Gale Norton
Secretary
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240



RECEIVED
JUN 2 5 2001
TRUST RESPONSIBILITIES

Terry Virden, Director
Office of Trust Responsibilities
MS 4513-MIB
1849 C Street, N.W.
Washington, D.C. 20240

> **Re: Comments on Final Rule Regarding Acquisition of Title to Land In Trust, 25 CFR Part 151**

Dear Secretary Norton and Mr. Virden,

On behalf of the Sitka Tribe of Alaska, I respectfully request that the proposed final rule regarding Acquisition of Title to Land in Trust be amended to allow the United States to accept land in trust for Alaska Tribes. The Department must allow Alaska Tribes to participate in the trust land process to the same extent as other Tribes now, as there is no valid distinction between Tribal governments organized under the Indian Reorganization Act in Alaska versus Tribal governments organized under the Indian Reorganization Act in the lower 48. Further, there is no reason for the Department to wait three years to "consider the legal and policy issues involved in determining whether the Department ought to remove the prohibition on taking Alaska lands into trust," as suggested in the preamble to the Final Rule. Alaska Tribes organized under the Indian Reorganization Act of 1934 should be given the opportunity to get lands placed into trust now.

No legal basis for disallowing Tribes in Alaska to get land placed into trust exists. As federally recognized Tribal governments organized under the Reorganization Act of 1934, tribal governments in Alaska should not be treated differently than Tribal governments in the lower 48. As noted in the preamble to the final rule, Congress



COPY   45 Katlian Street • Sitka, Alaska 99835 • (907) 747-3207 • Fax (907) 747-4915

AR00731

expressly extended section 5 of the IRA (giving the Secretary the authority to take Indian land into trust) to Alaska in 1936. When Congress was repealing other statutes affecting Indian status in Alaska five years after the Alaska Native Claims Settlement Act was passed, Congress did not repeals this legislation. Thus as IRA organized Tribal governments, Tribal governments in Alaska shall be allowed to place land into trust just like other IRA organized Tribal governments.

Just because "the position of the Department has long been... that Alaska Native lands ought not be taken into trust," does not mean that this policy should continue. The Department has already conducted the necessary research to determine that the former justifications for such a policy are invalid. Thus, I respectfully request that the Department remove the current language prohibiting title to land in Alaska being accepted into trust.

Sincerely,

Lawrence Widmark
Sitka Tribe of Alaska
Tribal Chairman

COPY





JUN 15 '01

**SITKA TRIBE OF ALASKA**
TRIBAL GOVERNMENT FOR SITKA, ALASKA

456 Katlian Street
Sitka, Alaska 99835



Terry Virden
Director
Office of Trust Responsibilities
MS 4513-MIB
1849 C Street, N.W.
Washington, D.C. 20240

# COPY

AR00733

KUYUKUK TRIBAL COUNCIL

4/6/01  #136

The Honorable Gale A. Norton, Secretary of Interior
attn: Terry Virden
MS 4513 MIB
1849 C Street, NW
Washington, DC 20240

RE: Comments on Final Regulations on Acquisition of Title to Land in Trust

Dear Secretary Norton:

I write on behalf of _Koyukuk Tribe_ to urge you to make effective the final regulations regarding Indian trust land acquisitions, as published in the Federal Register on January 16, 2001.

The regulations should be made effective because they advance three fundamental principles. First, the regulations carry out the purposes of the Indian Reorganization Act and recognize the critical role that land acquisition must play in the fostering tribal self-sufficiency. Second, the final regulations implement clear standards for taking lands into trust which provide guidance to the Department in the exercise of its authority, and ensure basic fairness to all parties in connection with the trust application process. Third, the final regulations facilitate fair consideration of appropriate factors and a timely decision on trust land applications.

The issue of land into trust has been given full and fair consideration by the Department and further delay would be unfair and unwarranted. The process of revisiting the trust land acquisition regulations has been ongoing for years. The Department, as well as the tribes, states and local governments, share an interest in seeing the process come to an end. There needs to be certainty regarding the procedures and standards for taking land into trust. The final rule provides a fair process that will facilitate informed and timely decisionmaking under meaningful standards. It is time for the Department to move forward and make the final rule effective.

As Secretary of Interior, you have a trust responsibility to Indian tribes, and we believe that the Department of Interior has an obligation to further that relationship by removing obstacles to tribal self-government and self-determination. Moving forward with the final regulations will further that objective.

We urge you to make the final regulations on trust land acquisitions effective as soon as possible. Thank you for your consideration of this matter of great importance to us, and to Indian tribes nationwide.

Sincerely,



1st Chief

**RECEIVED**

JUN 1 5 2001

TRUST RESPONSIBILITIES

06-14-01   12:27   RECEIVED FROM:9976561528   P.92

COPY

06-15-01   6:

RECEIVED FROM:9079272228   P.02

Local 6/30/01



AR00734

The Honorable Gale A. Norton, Secretary of Interior
attn: Terry Virden
MS 4513 MIB
1849 C Street, NW
Washington, DC 20240

RE: Comments on Final Regulations on Acquisition of Title to Land in Trust

Dear Secretary Norton:

I write on behalf of _Koyukuk Tribe_ to urge you to make effective the final regulations regarding Indian trust land acquisitions, as published in the Federal Register on January 16, 2001.

The regulations should be made effective because they advance three fundamental principles. First, the regulations carry out the purposes of the Indian Reorganization Act and recognize the critical role that land restoration must play in the fostering tribal self-sufficiency. Second, the final regulations implement clear standards for taking lands into trust which provide guidance to the Department in the exercise of its authority, and ensure basic fairness to all parties in connection with the trust application process. Third, the final regulations facilitate fair consideration of appropriate factors and a timely decision on trust land applications.

The issue of land into trust has been given full and fair consideration by the Department and further delay would be unfair and unwarranted. The process of revisiting the trust land acquisition regulations has been ongoing for years. The Department, as well as the tribes, states and local governments, share an interest in seeing the process come to an end. There needs to be certainty regarding the procedures and standards for taking land into trust. The final rule provides a fair process that will facilitate informed and timely decisionmaking under meaningful standards. It is time for the Department to move forward and make the final rule effective.

As Secretary of Interior, you have a trust responsibility to Indian tribes, and we believe that the Department of Interior has an obligation to further that relationship by removing obstacles to tribal self-government and self-determination. Moving forward with the final regulations will further that objective.

We urge you to make the final regulations on trust land acquisitions effective as soon as possible. Thank you for your consideration of this matter of great importance to us, and to Indian tribes nationwide.

Sincerely,

_[signature] Perry Schiltz 1st Chief_

RECEIVED

JUN 1 5 2001

TRUST RESPONSIBILITIES

COPY

AR00735



# NCAI News

*National congress of American Indians*

NCAI Update # 361 - June 14, 2001

### URGENT - Land to Trust Regulations - Comments Due Friday, June 15!

NCAI is urging all Indian Nations to submit comments to the Department of Interior on the issue of land to trust by tomorrow, Friday, June 15. We are concerned that the Department has received few comments from tribes, and that groups who are opposing tribes on land to trust may be organizing a letter writing campaign on this issue. For the Secretary of Interior, the volume of comments is a key indicator of public and tribal interest on this topic. It is very important that the Secretary knows that her policy on taking land into trust is one of the most critical issues today for Indian Nations.

As background, new regulations on acquisition of land in trust were published by the Department of Interior on January 16, 2001 (66 Fed. Reg. 3452). On April 16, 2001, the Department of Interior issued a notice seeking public comments on "whether the final rule should be amended in whole or in part or withdrawn in whole or in part." (66 Fed. Reg. 19102). NCAI recently passed a resolution at the May 13-16 Midyear Session supporting the new regulations and urging the Secretary to make the regulations effective. Secretary Gale Norton's decision on the pending regulations is a critical point in Interior Indian land policy. Secretary Norton has indicated that she will not be reviewing any previous comments submitted, but will rely solely on the comments submitted by June 15. NCAI urges all Indian Nations to submit their own comments on this most critical policy matter.

The Land Recovery Task Force strongly believes that the most compelling arguments for taking land into trust come from the histories of land loss and need for land recovery that are unique to each tribe. Therefore, we would strongly encourage each tribe to submit comments that discuss its particular land loss history and need for land recovery. However, since time is short we have also attached a draft letter. We would suggest that letters may contain a brief explanation of the history of the tribe's loss of land during allotment, termination or other key periods, and how that loss of land affected the welfare, culture and economy of the tribe, along with an explanation of the tribe's needs to recover land in trust.

Comments must be sent to: Terry Virden, Director
Office of Trust Responsibilities
Mail Stop 4513 MIB
1849 C Street, NW
Washington, DC 20240
FAX: 202-219-1255
or e-mail to: Terry.Virden@bia.gov

**For more information please contact NCAI at 202-466-7767.**

# COPY

AR00736

**Tanana Tribal Council**
**P.O. Box 130**
**Tanana, Alaska 99777**
**Ph: (907) 366-7160**
**Fax: (907) 366-7195**

June 14, 2001

Terry Virden, Director
Office of Trust Responsibilities
Mail Stop 4513-MIB
1849 C Street, NW
Washington, D.C. 20240

Dear Mr. Virden,

Enclosed is the following comments on the Land to Trust Regulations from the Tanana Tribal Council.

The Tanana Tribal Council is a federally recognized tribe from Alaska with a membership roll of over 1,000 members. Over 138,000 acres of land surrounding our village is currently owned by the ANCSA village corporation Tozitna Limited. This land is held in fee simple title for the corporation shareholders. Since the formation of our village corporation, they have added over one-hundred shareholders to their enrollment list, which stands at 627. We now have shareholders who have no Indian blood, and we also have shareholders who are not even from our tribal area. Our tribe has held meetings with the corporation Tozitna Limited to discuss the possibility of transferring land to the tribe, to be held in some type of trust. The importance of having this ability to hold lands in trust would be for protection against loss, due to the ability to sell shares, or to protect against any type of liens. The tribe also owns several pieces of land in the village and had sent a letter to then Assistant BIA Sec. Kevin Gover several years ago requesting him to put this land into trust. The one particular piece we were very interested in putting into trust was the Mission land. Several years ago the Episcopal Church returned this land to the tribe, which was always a very important place for the native people here in this area. It is a historical gathering place called Nuchalawoyya.

The Native people of Alaska has always been treated differently. We would like to be treated the same way as other Indian people across the Untied States in regards to issues such as taking lands into trust.

We ask that careful consideration be given to the tribes in Alaska and that by allowing the Secretary of Interior to take lands into trust would be a benefit for future preservation of land for generations to come. Thank you.

Sincerely,

Julie M. Roberts
Executive Director

COPY

RECEIVED

JUN 1 5 2001

TRUST RESPONSIBILITIES

Logged 6/20/01    6/18/1

AR00737

# FAX FROM:

# TANANA TRIBAL COUNCIL

P.O. Box 77130
Tanana, Alaska 99777
(907) 366-7170 phone
(907) 366-7195 facsimile

**To:** Mr. Terry Virden          **Dept:** _____

**Fax #** (202) 219-1255          **Date:** 6/15/01

**Re:** _____          **CC:** _____

**Pages including cover sheet:** _____

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

● **Comments:**

Enclosed is comments for
Land to Trust Regulations

_____

_____

_____

_____

**THIS FAX WAS SENT TO YOU BY:**

☑ Julie M. Roberts
Executive Director

☐ Carla K. Bonney
Health Director

☐ Jennifer R. Johnson
Administrative Assistant

☐ Membership Services Dir.

☐ Gerald D. Nicholia
Realty Director

☐ Stephanie Swenson-Nicholia
Accountant / Bookkeeper

☐ Kathleen Peters-Zuray
Environmental Specialist

☐ Herbie Edwin
Project Coordinator

☐ Michael L. Andon
Housing Director

**PLEASE ADVISE IF YOU DO NOT RECEIVE ALL LEGIBLE COPIES**

# COPY

2

# CHILKAT INDIAN VILLAGE

AN INDIAN REORGANIZATION ACT VILLAGE
UNDER ACT OF CONGRESS JUNE 15, 1935

**37 Chilkat Ave.**
**PO Box 210**
**Klukwan, AK 99827**
**(907) 767-5505 fax: (907) 767-5518**
E-mail: klukwan@wytbear.com

The Honorable Gale Norton, Secretary
US Department of Interior
1849 C Street, NW
Washington, DC 20240
June 15, 2001

Terry Virdon, Director
Office of Trust Responsibilities
MS 4513-MIB
1849 C Street, NW
Washington, DC 20240

RE: Comments on Final Rule Regarding Acquisition of Title to Land in Trust, 25 CFR
Part 151, Vol. 66 Federal Register No. 10, pp. 3452-466 (January 16, 2001)

Dear Secretary Norton and Mr. Virden,

On behalf of the Chilkat Indian Village of Klukwan, Alaska, I respectfully request that
you amend the Land Into Trust regulations that were proposed as final by former
Secretary Babbitt on January 16, 2001, by removing restrictive language that would bar
the acceptance of land into trust by the United States on behalf of Indian Tribes in
Alaska. In the alternative, we ask that you withdraw the pending rule and promptly
propose and finalize a new amendment to the current regulations which would expressly
affirm that applications to take land into trust in Alaska shall be handled in the same
manner that are applications throughout the rest of America.

Thank you.

Sincerely,

John Brower

John Brower
Tribal Administrator

**COPY**

RECEIVED

JUN 2 5 2001

TRUST RESPONSIBILITIES

L99
6/27/0

AR00739

Terry Virden, Director
Office of Trust Responsibilities
MS 4513-MIB
1849 C Street, NW
Washington, DC 20240

Chilkat Indian Village
P. O. Box 210
Klukwan, AK 99827



COPY

AR00740

**Terry Virden**
06/08/2001 04:26 PM

To: Kayla Danks/DC/BIA/DOI@BIA
cc:
Subject:

☐ Return receipt

----- *Forwarded by Terry Virden/DC/BIA/DOI on 06/08/01 04:21 PM* -----



**"Heather Kendall-Miller" <kendall@narf.org>**
06/08/01 03:43 PM

To: <TerryVirden@bia.gov>
cc:
Subject:

☐ Return receipt

Terry: attached are comments to the trust land rule.  Thank you, Heather Kendall Miller

▢ - comments4Norton.wpd

# COPY

*Logged 6/11/01*

AR00741

and informational impacts of this action on small businesses.

This action imposes no additional reporting or recordkeeping requirements on either small or large Washington-Oregon fresh prune handlers. As with all Federal marketing order programs, reports and forms are periodically reviewed to reduce information requirements and duplication by industry and public sector agencies.

The Department has not identified any relevant Federal rules that duplicate, overlap, or conflict with this rule.

A small business guide on complying with fruit, vegetable, and specialty crop marketing agreements and orders may be viewed at: http://www.ams.usda.gov/fv/moab.html. Any questions about the compliance guide should be sent to Jay Guerber at the previously mentioned address in the **FOR FURTHER INFORMATION CONTACT** section.

After consideration of all relevant material presented, including the information and recommendation submitted by the Committee and other available information, it is hereby found that this rule, as hereinafter set forth, will tend to effectuate the declared policy of the Act.

Pursuant to 5 U.S.C. 553, it is also found and determined upon good cause that it is impracticable, unnecessary, and contrary to the public interest to give preliminary notice prior to putting this rule into effect, and that good cause exists for not postponing the effective date of this rule until 30 days after publication in the **Federal Register** because: (1) The 2001–2002 fiscal period began on April 1, 2001, and the marketing order requires that the rate of assessment for each fiscal period apply to all assessable fresh prunes handled during such fiscal period; (2) the action decreases the assessment rate for all assessable fresh prunes beginning with the 2001–2002 fiscal period; (3) handlers are aware of this action which was unanimously recommended by the Committee at a public meeting and is similar to other assessment rate actions issued in past years; and (4) this interim final rule provides a 60-day comment period, and all comments timely received will be considered prior to finalization of this rule.

**List of Subjects in 7 CFR Part 924**

Marketing agreements, Plums, Prunes, Reporting and recordkeeping requirements.

For the reasons set forth in the preamble, 7 CFR part 924 is amended as follows:

**PART 924—FRESH PRUNES GROWN IN DESIGNATED COUNTIES IN WASHINGTON AND UMATILLA COUNTY, OREGON**

1. The authority citation for 7 CFR part 924 continues to read as follows:

   **Authority:** 7 U.S.C. 601–674.

2. Section 924.236 is revised to read as follows:

**§ 924.236   Assessment rate.**

On and after April 1, 2001, an assessment rate of $1.00 per ton is established for the Washington-Oregon Fresh Prune Marketing Committee.

Dated: August 7, 2001.

**Kenneth C. Clayton,**

*Acting Administrator, Agricultural Marketing Service.*

[FR Doc. 01–20187 Filed 8–10–01; 8:45 am]

BILLING CODE 3410-02-P

---

## DEPARTMENT OF THE INTERIOR

**Bureau of Indian Affairs.**

**25 CFR Part 151**

**Acquisition of Title to Land in Trust; Delay of Effective Date**

**AGENCY:** Bureau of Indian Affairs.

**ACTION:** Delay of effective date of final rule.

**SUMMARY:** This action temporarily delays for 90 days the effective date of the rule titled "Acquisition of Title to Land in Trust," that we published in the **Federal Register** on January 16, 2001. We have extended the effective date of this rule by similar action on April 16, 2001.

**DATES:** The effective date of the Acquisition to Title to Land in Trust rule, amending 25 CFR Part 151, published in the **Federal Register** on January 16, 2001 (66 FR 3452), delayed by a rule published February 5, 2001 (66 FR 8899), corrected by rules published February 20, 2001 (66 FR 10815) and June 13, 2001 (66 FR 31976), delayed by a rule published April 16, 2001 (66 FR 19403), is further delayed from August 13, 2001, to November 10, 2001.

**ADDRESSES:** Submit any correspondence of concern or clarification regarding the delay of the effective date of this rule to: Terry Virden, Director, Office of Trust Responsibilities, MS 4513 MIB, 1849 C Street, NW, Washington, DC 20240.

**FOR FURTHER INFORMATION CONTACT:** Terry Virden, Director, Office of Trust Responsibilities, MS 4513 MIB, 1849 C Street, NW, Washington, DC 20240; telephone 202/208–5831.

**SUPPLEMENTARY INFORMATION:** This action temporarily delays for 90 days the effective date of the rule entitled "Acquisition of Title to Land in Trust," published in the **Federal Register** on January 16, 2001, at 66 FR 3452, and which has had a prior extension of effective date published in the **Federal Register** on April 16, 2001. This document now extends the effective date of the final rule from August 13, 2001, to November 10, 2001, in order to continue to review comments that were received from the prior extension. The rule and received comments are being evaluated at this time to determine whether to amend the final rule in whole or in part. Given the imminence of the effective date of the final rule, seeking prior public comment on this temporary delay would have been impractical, as well as contrary to the public interest in the orderly promulgation and implementation of regulations.

The Department is publishing a Notice of Proposed Withdrawal in this issue of the **Federal Register** that will seek comments on whether this rule should be withdrawn and a new proposed rule promulgated which better addresses the public's continued concern with the procedures set out in 25 CFR Part 151.

Dated: August 8, 2001.

**Neal A. McCaleb,**

*Assistant Secretary—Indian Affairs.*

[FR Doc. 01–20253 Filed 8–10–01; 8:45 am]

BILLING CODE 4310-02-P

---

## ENVIRONMENTAL PROTECTION AGENCY

**40 CFR Part 52**

**[PA–4137a; FRL–7033–7]**

**Approval and Promulgation of Air Quality Implementation Plans; Pennsylvania; VOC RACT Determinations for Two Individual Sources in the Pittsburgh-Beaver Valley Area**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Direct final rule.

**SUMMARY:** EPA is taking direct final action to approve revisions to the Commonwealth of Pennsylvania's State Implementation Plan (SIP). The revisions were submitted by the Pennsylvania Department of Environmental Protection (PADEP) to establish and require reasonably available control technology (RACT) for two major sources of volatile organic

AR00742

compounds (VOC). These sources are located in the Pittsburgh-Beaver Valley ozone nonattainment area (the Pittsburgh area). EPA is approving these revisions to establish RACT requirements in the SIP in accordance with the Clean Air Act (CAA).

**DATES:** This rule is effective on September 27, 2001 without further notice, unless EPA receives adverse written comment by September 12, 2001. If EPA receives such comments, it will publish a timely withdrawal of the direct final rule in the **Federal Register** and inform the public that the rule will not take effect.

**ADDRESSES:** Written comments should be mailed to David L. Arnold, Chief, Air Quality Planning & Information Services Branch, Air Protection Division, Mailcode 3AP21, U.S. Environmental Protection Agency, Region III, 1650 Arch Street, Philadelphia, Pennsylvania 19103. Copies of the documents relevant to this action are available for public inspection during normal business hours at the Air Protection Division, U.S. Environmental Protection Agency, Region III, 1650 Arch Street, Philadelphia, Pennsylvania 19103; the Air and Radiation Docket and Information Center, U.S. Environmental Protection Agency, 401 M Street, SW., Washington, DC 20460; Allegheny County Health Department, Bureau of Environmental Quality, Division of Air Quality, 301 39th Street, Pittsburgh, Pennsylvania 15201 and the Pennsylvania Department of Environmental Protection, Bureau of Air Quality Control, P.O. Box 8468, 400 Market Street, Harrisburg, Pennsylvania 17105.

**FOR FURTHER INFORMATION CONTACT:** Rose Quinto at (215) 814–2182 or Pauline Devose at (215) 814–2186, the EPA Region III address above or by e-mail at quinto.rose@epa.gov or devose.pauline@epa.gov. Please note that while questions may be posed via telephone and e-mail, formal comments must be submitted, in writing, as indicated in the **ADDRESSES** section of this document.

**SUPPLEMENTARY INFORMATION:**

**I. Background**

Pursuant to sections 182(b)(2) and 182(f) of the Clean Air Act (CAA), the Commonwealth of Pennsylvania (the Commonwealth or Pennsylvania) is required to establish and implement RACT for all major VOC and $NO_X$ sources. The major source size is determined by its location, the classification of that area and whether it is located in the ozone transport region (OTR). Under section 184 of the CAA,

RACT as specified in sections 182(b)(2) and 182(f)) applies throughout the OTR. The entire Commonwealth is located within the OTR. Therefore, RACT is applicable statewide in Pennsylvania.

State implementation plan revisions imposing reasonably available control technology (RACT) for three classes of VOC sources are required under section 182(b)(2). The categories are:

(1) All sources covered by a Control Technique Guideline (CTG) document issued between November 15, 1990 and the date of attainment;

(2) All sources covered by a CTG issued prior to November 15, 1990; and

(3) All major non-CTG sources. The regulations imposing RACT for these non-CTG major sources were to be submitted to EPA as SIP revisions by November 15, 1992 and compliance required by May of 1995.

The Pennsylvania SIP already includes approved RACT regulations for all sources and source categories covered by the CTGs. On February 4, 1994, PADEP submitted a revision to its SIP to require major sources of $NO_X$ and additional major sources of VOC emissions (not covered by a CTG) to implement RACT. The February 4, 1994 submittal was amended on May 3, 1994 to correct and clarify certain presumptive $NO_X$ RACT requirements. In the Pittsburgh area, a major source of VOC is defined as one having the potential to emit 50 tons per year (tpy) or more, and a major source of $NO_X$ is defined as one having the potential to emit 100 tpy or more. Pennsylvania's RACT regulations require sources, in the Pittsburgh area, that have the potential to emit 50 tpy or more of VOC and sources which have the potential to emit 100 tpy or more of $NO_X$ comply with RACT by May 31, 1995. The regulations contain technology-based or operational "presumptive RACT emission limitations" for certain major $NO_X$ sources. For other major $NO_X$ sources, and all major non-CTG VOC sources (not otherwise already subject to RACT under the Pennsylvania SIP), the regulations contain a "generic" RACT provision. A generic RACT regulation is one that does not, itself, specifically define RACT for a source or source categories but instead allows for case-by-case RACT determinations. The generic provisions of Pennsylvania's regulations allow for PADEP to make case-by-case RACT determinations that are then to be submitted to EPA as revisions to the Pennsylvania SIP.

On March 23, 1998 EPA granted conditional limited approval to the Commonwealth's generic VOC and $NO_X$ RACT regulations (63 FR 13789). In that action, EPA stated that the conditions of

its approval would be satisfied once the Commonwealth either (1) certifies that it has submitted case-by-case RACT proposals for all sources subject to the RACT requirements currently known to PADEP; or (2) demonstrate that the emissions from any remaining major sources represent a de minimis level of emissions as defined in the March 23, 1998 rulemaking. On April 22, 1999, PADEP made the required submittal to EPA certifying that it had met the terms and conditions imposed by EPA in its March 23, 1998 conditional limited approval of its VOC and $NO_X$ RACT regulations by submitting 485 case-by-case VOC/$NO_X$ RACT determinations as SIP revisions and making the demonstration described as condition 2, above. EPA determined that Pennsylvania's April 22, 1999 submittal satisfied the conditions imposed in its conditional limited approval published on March 23, 1998. On May 3, 2001 (66 FR 22123), EPA published a rulemaking action removing the conditional status of its approval of the Commonwealth's generic VOC and $NO_X$ RACT regulations on a statewide basis. The regulation currently retains its limited approval status. Once EPA has approved the case-by-case RACT determinations submitted by PADEP to satisfy the conditional approval for subject sources located in Allegheny, Armstrong, Beaver, Butler, Fayette, Washington, and Westmoreland Counties; the limited approval of Pennsylvania's generic VOC and $NO_X$ RACT regulations shall convert to a full approval for the Pittsburgh area.

It must be noted that the Commonwealth has adopted and is implementing additional "post RACT requirements" to reduce seasonal $NO_X$ emissions in the form of a $NO_X$ cap and trade regulation, 25 Pa Code Chapters 121 and 123, based upon a model rule developed by the States in the OTR. That rule's compliance date is May 1999. That regulation was approved as SIP revision on June 6, 2000 (65 FR 35842). Pennsylvania has also adopted regulations to satisfy Phase I of the $NO_X$ SIP call and submitted those regulations to EPA for SIP approval. Pennsylvania's SIP revision to address the requirements of the $NO_X$ SIP Call Phase I consists of the adoption of Chapter 145—Interstate Pollution Transport Reduction and amendments to Chapter 123—Standards for Contaminants. On May 29, 2001 (66 FR 29064), EPA proposed approval of the Commonwealth's $NO_X$ SIP call rule SIP submittal. EPA expects to publish the final rulemaking in the **Federal Register** in the near future. Federal approval of a case-by-case RACT determination for a major source of $NO_X$

AR00743