Author:   Bob T Anderson at NP-PNRO
Date:      9/22/98  9:52 AM
Priority: Normal
TO: Heather Sibbison at ~IOS
Subject: Alaska Trust Lands

H,

Attached is a draft of the Alaska trust lands opinion that was put together when I was the associate at DIA.  It needs some more work and is a little too long, but the general reasoning is sound and the conclusion will not change as a result of the Venetie case.  I'm working on the Venetie portion and will edit the doc down, but this should give you what you need. I hope to get it to Leshy by tomorrow

I think the preamble should note that the solicitor has determined that there is no legal bar to trust land acquisitions in Alaska, but that we will not change the reg as a matter of policy -- pending further review of Alaska issues.  I think you should out this statement in brackets and put a question mark after it.  We need to discuss exactly how we want to proceed.  We should talk with Deborah Williams about it.  She's in D.C. this week.

Bob

Date:     4/2/99
Sender: ROGER HUDSON
To:       DENNIS HOPEWELL
cc:       LAURI ADAMS
Priority: Normal
Subject: Re:proposed regs on taking land in trust

Dennis & Lauri — I don't know if any of these comments may still be timely or not, but I've taken a quick look at the draft text of the Federal Register publication relating to proposed revisions of 25 C.F.R. part 151. I don't have any major substantive quarrels with the overall thrust, or the particular explanatory material relating to trust acquisitions in Alaska, found at pages 10-12 of the printed-out copy I have seen. However, I do have several suggestions for revising the wording of the passage dealing with Alaska:

1. Page 11, line 1, after ". . . credible legal argument . . .," revise wording to read: "that neither ANCSA nor the Federal Land Policy and Management Act repealed or otherwise withdrew the Secretary's statutory authority to . . ."

2. Page 11, line 6, after ". . . . land in trust in Alaska," insert "the decision" before ". . . whether to exercise."

3. Page 11, line 11: official cite for Venetie decision is 522 U.S. 520.

4. Page 11, line 18, after ". . . by the Secretary," insert "on behalf of a tribe." This change would clarify that we are not saying that land taken in trust *for an individual* would *necessarily* constitute all or part of a dependent Indian community.

5. Page 12, line 4, replace ". . . clarifying that ANCSA lands are Indian country" with "changing the definition of Indian country to include lands conveyed under ANCSA." The Supreme Court already interpreted 18 U.S.C. 1151 as not covering ANCSA conveyances to Native corporations. The current or a future Congress cannot "clarify" what the Court concluded was the intent and effect of the legislation enacted by the 92nd Congress, but it can dictate a different future jurisdictional status and treatment of ANCSA lands in the future by in effect legislatively reversing the Supreme Court's interpretation of 1151 in its Venetie decision.

Sorry I didn't get a look at this stuff sooner. If it's too late to give input, we can certainly live with the unrevised wording.

                              -- Roger

_____Reply Separator _____
Subject: proposed regs on taking land in trust
Author:  DENNIS HOPEWELL
Date:       3/19/99 5:34 PM

Roger,

Because I was somewhat interested in the subject matter, Lauri asked me to take a quick look at the proposed regs on taking lands in trust. Incoming e-mail from Leshy had indicated there was no change in the Alaska position but told Lauri she should be ready for questions. This got our attention. If Lauri has not already forwarded that e-mail to you, I believe she intends to do so.

My quick peek at the draft regs reveals that while the U.S. proposes no change to the current bar on taking lands in trust in Alaska, the preamble recognizes that the 1978 Solicitor's Opinion upon which this position is based is open to debate. The preamble continues on to invite public comment on that opinion, and, apparently, whether the current Alaska bar should continue. This is undoubtedly what Leshy had in mind when he said we should be ready for questions.

Just what we needed! I was afraid we were running out of things to do...

The printed package of these draft, proposed regs are on there way to you.

For the record, my limited interests have been more than satisfied.

Dennis.

Date:      5/18/99
Sender:  ROGER HUDSON
To:        Marilyn Heiman, ron_mccoy@ios.doi.gov
cc:        DAVE ETHERIDGE, LAURI ADAMS, Robert Anderson, GMiller@smtp.ak.bia.gov
Priority: Urgent
            Receipt requested
Subject: Draft revisions of 25 CFR Part 151

This is my follow-up to Marilyn's May 13 request that I find out what I could about the source of the reference to the Rural Governance Commission under the heading "Discretionary Acquisitions in Alaska," in the preamble to the proposed revisions of 25 CFR Part 151, recently published for public comment in the Federal Register.  I spoke to David Etheridge, Assistant Solicitor of the Branch of Environment, Land and Minerals in the Division of Indian Affairs (202) 208-4361.  He mentioned several several upper level people who were directly involved in okaying the content of the Fed Reg notice.  These included Babbitt's Chief of Staff, Anne Shields (202) 208-7351, and Heather Sibbison, a Special Assistant (202) 208-5617.  I did not learn exactly who the author of the wording in question might have been.

David also indicated that Solicitor John Leshy (202) 208-4423 had provided input.  As I told you last week, John has in the past looked very carefully at the issue of changing the legal interpretation and/or policy which currently prevents the Secretary from taking land in trust in Alaska.  NARF and others have formally petitioned the Secretary to make a change on past occasions.  The proposed revisions to Part 151 do not presently contemplate making such a change.  However, rather than being silent on the issue, the discussion signals the Department's awareness of it, and in effect invites public comment on that point as part of the rule-making process.

I would certainly acknowledge that the wording of the last sentence in the Federal Register discussion is unfortunate, but I think it just reflects someone's sheer speculation as to what areas the Rural Governance Commission might be getting into.  Since it's out there, I would recommend that we just tell AFN or anyone else who wants to try to get the legal interpretation or policy changed, to submit their comments and arguments to the BIA's Office of Trust Responsibilities, as they are explicitly invited to do in the Federal Register publication itself.

Please give me a call if you wnat to discuss this further.    — Roger Hudson

AR00823

t/c David Etheridge    5/14/99

Leshy gave Solicitor's Office input (202) 208-4423
√ Heather Sibbison                    Dir + Spec Asst to the
         counsel to Babbitt                    secy
Anne Shields    Chief of Staff            (202) 208-5617
         (202) 208-7351

5/13/99

M. Herman / Heather A.            5485
— acquiring in trust
    May 25   Tues. afternoon meeting
    Niles wants to participate
    ~~~~~~~~~~ Marilyn
    June 1 — 1:00 pm.                    Veronica
    June 2   10:00 am.                      Slager

April 25   Fed. Reg

         1980 regs.    151.1

    "discretionary acquisition
         in Alaska"

    invite comment

    proposed regs. contemplate no change
         re Alaska bar

t/c Judy Rabinowitz
   she's helping Comm'n w/ legal issues, not incl. 151

AR00824

2/26/99 O:\151FINAL.VHS

**PRIVILEGED, CONFIDENTIAL, INTERNAL BIA DOCUMENT
FOR DISCUSSION PURPOSES ONLY!!**

(4310-02)

DEPARTMENT OF THE INTERIOR

Bureau of Indian Affairs

25 CFR Part 151

RIN: 1076 - AD90

Acquisition of Title to Land in Trust

Bureau of Indian Affairs, Interior

Action:  Proposed Rule

**SUMMARY:** On September 18, 1980, we issued the first regulations governing the exercise of

the Secretary of the Interior's authority to accept title to land in the name of the United States to

be held in trust for the benefit of Indian tribes and individual Indians (i.e., to "take land into

trust").  These regulations have not undergone substantial revision since their adoption.   We now

propose to amend these regulations to make clearer that we will follow a process that is

somewhat different, and we will apply a standard which is somewhat more demanding when a

land-into-trust application involves title to lands which are located outside the boundaries of a

AR00825

2/26/99 O:\151FINAL.VHS

reservation ("off-reservation lands"). In contrast, when the application involves lands located inside the boundaries of a reservation ("on-reservation lands"), we will apply a process and a standard which reflect a presumption in favor of acquisition of trust title to those lands. In addition, the proposed rule sets out the process we will use to comply with a mandate from Congress directing us to use our administrative procedures to place a particular tract of land into trust. Finally, the proposed rule establishes a framework in which a tribe without a reservation can establish a geographic boundary within which it may acquire land under the on-reservation provisions of the regulation.

**DATES:** Send comments before **[INSERT DATE 60 DAYS AFTER PUBLICATION IN THE FEDERAL REGISTER].**

**ADDRESSES:** If you wish to comment, you may submit your comments by any one of several methods.

You may mail comments to the Office of Trust Responsibilities, Bureau of Indian Affairs, 1849 C Street, N.W., MS-4513-MIB, Washington, D.C. 20240.

You may also comment via the Internet to [                    ]. Please submit Internet comments as an ASCII file avoiding the use of special characters and any form of encryption. Please also include "Attn: 1076-AD90" and your name and return address in your Internet message. If you do not receive a confirmation from the system that we have received your Internet message, contact the Office of Trust Responsibilities directly at (202) 208-5831.

Finally, you may hand-deliver comments to the Office of Trust Responsibilities, Bureau of

AR00826

2/26/99 O:\151FINAL.VHS

Indian Affairs, 1849 C Street, N.W., MS-4513-MIB, Washington, D.C. 20240.

Our practice is to make comments, including the names and addresses of persons commenting, available for public review during regular business hours. Persons commenting as private individuals may request that we withhold their home address from the rulemaking record, which we will honor to the extent allowable by law. There may also be circumstances in which we would withhold from the rulemaking record a commenter's identity, as allowable by law. If you wish us to withhold your name and/or address, you must state this prominently at the beginning of your comment. We will not consider anonymous comments. Comments from organizations or businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses, will be available for public inspection in their entirety.

**FOR FURTHER INFORMATION CONTACT:** Terry Virden, Director, Office of Trust Responsibilities, Bureau of Indian Affairs, MS-4513, Main Interior Building, 1849 C Street, N.W., Washington, D.C. 20240; by telephone at (202) 208-5831; or by telefax at (202) 219-1065.

**SUPPLEMENTARY INFORMATION**

**Introduction and Summary**

Congress has given the Secretary of the Interior discretionary authority to acquire title to land to be held in trust by the United States for the benefit of Indian tribes and individual Indians. Acquiring such title is commonly referred to as "taking land into trust." General statutory authority giving the Secretary discretion to acquire trust title to land is found in Section 5 of the Indian Reorganization Act of 1934 (the IRA), 25 U.S.C § 465:

The Secretary of the Interior is hereby authorized, in his discretion, to acquire,

2/26/99 O:\151FINAL.VHS

through purchase, relinquishment, gift, exchange, or assignment, any interest in
lands, water rights, or surface rights to land, within or without existing
reservations, including trust or otherwise restricted allotments, whether the allottee
be living or deceased, for the purpose of providing land to Indians.

Occasionally, Congress enacts other legislation granting the Secretary authority to take land into
trust for some specific purpose.   We refer to acquisitions of trust title under the IRA, and under
other specialized statutes that grant discretionary authority to the Secretary, as "discretionary
acquisitions of title."

    The regulations proposed here would restructure how we review proposed discretionary
acquisitions of title.  We believe this restructuring will facilitate land-into-trust decisions which
better reflect the modern-day needs and concerns of tribes, individual Indians, and surrounding
non-Indian communities.  Specifically,  the proposed regulation sets forth an application process
and review criteria which is more demanding when the land at issue is located outside the
boundaries of an existing reservation or outside a Secretarially-approved Tribal Land Acquisition
Area (collectively, "off-reservation acquisitions"), but which is less demanding when the land is
located inside the boundaries of an existing reservation or inside a Secretarially-approved Tribal
Land Acquisition Area (collectively, "on-reservation acquisitions").  In other words, the proposed
regulations would make the application process easier for on-reservation acquisitions, while
conversely requiring  a more detailed analysis of a greater number of criteria for off-reservation
acquisitions.

    The purpose of creating these differing processes and criteria is two-fold.  First, we intend
to better carry out our responsibility to assist tribes in reestablishing ownership of, and jurisdiction
over, land located within their own reservations.  Second, we also intend to create a framework
that adequately addresses the particular concerns that non-Indian governments have about the

AR00828

ramifications of placing off-reservation land into trust.

In addition, the proposed regulations delineate the procedure by which we process mandatory acquisitions of title. Mandatory acquisitions of title are trust acquisitions which Congress, by explicit statutory direction, requires the Secretary to accept through the administrative process. In other words, mandatory acquisitions are those which Congress has directed the Secretary to complete by removing any discretion in the administrative decision-making process. (Mandatory acquisitions of title are distinguishable from *legislative transfers of title*. Legislative transfers of title are those in which Congress directly places a parcel of land in trust, thereby removing the need for any administrative action to effectuate the transfer of title into trust status.)

Finally, the proposed regulations address the unique difficulties encountered by tribes which do not have reservations by including new provisions which set out a process by which those tribes may benefit from the on-reservation provisions of this regulation. In this process, a tribe without a reservation can designate a "Tribal Land Acquisition Area" in which it plans to acquire land. If the tribe obtains Secretarial approval of its Tribal Land Acquisition Area, the tribe will be able to apply to have title to the lands located within the Tribal Land Acquisition Area taken into trust under the on-reservations provisions of this regulation.

## Discretionary Acquisitions On-reservation

The General Allotment Act of 1887, 25 U.S.C. §§ 331 et seq., authorized the division, and distribution to individuals, of lands located within the boundaries of most Indian reservations across the country. This allotment policy was based in part on the theory that fee ownership of

AR00829

2/26/99 O:\151FINAL.VHS

land would improve the economic condition of Indians, which at the time was acknowledged to be very poor. Unfortunately, in practice the primary beneficiaries of the Allotment Act were land speculators who quickly acquired large portions of land within Indian reservations, often at prices well below market value. Institute for Government Research, The Problem of Indian Administration 460-462 (L. Meriam, ed.) (Johnson Reprint Corporation 1971) (1928) (Meriam Report).

Implementation of the Allotment Act resulted in the alienation of as much as 90 million acres of land originally reserved to tribes by treaties and Executive Orders. Felix S. Cohen, Handbook of Federal Indian Law 138 (Michie Company) (1982 ed.) (Cohen). The loss of these tribal lands was catastrophic and generally is regarded by historians and others as being responsible for a precipitous decline in the economic, cultural, social and physical health of tribes and their members. E.g., Charles F. Wilkinson, American Indians, Time and the Law 19-21 (Yale University Press 1987). To combat this downward spiral, in 1934 Congress passed the Indian Reorganization Act (IRA). Comment, Tribal Self-Government and Indian Reorganization Act of 1934, 70 Mich. L. Rev. 955, 960 (1972). One of the primary goals of the IRA was the restoration to tribal ownership of allotted land within existing reservations. See, Readjustment of Indian Affairs, Hearing before the Committee on Indian Affairs, 73d Cong. 2nd Sess. on H.R. 7902, at 16-1; Cohen, supra at 147. Although the IRA authorized appropriation to the Department of the Interior of two million dollars a year for land acquisition, since 1934 only $5.5 million has been appropriated by Congress for that purpose, all of it before 1950. Cohen at 150, note 51.

In the modern era tribes have taken full responsibility for rebuilding their reservation land bases, purchasing land from willing sellers and then applying to the Secretary to request that the

2/26/99 O:\151FINAL.VHS

land be taken into trust. Yet to date, less than eight percent of lands lost through allotment have been returned to tribal ownership. Cohen at 138, BIA's Annual Report for Indian Lands, 1996. Indeed, most applications requesting that we take land into trust have involved relatively small amounts of land. For example, in 1996 (the latest year for which data is available), the average amount of land involved in an application to take land in trust was about 30 acres. BIA's Annual Report for Indian Lands, 1996.

The proposed regulations are intended to promote the health and welfare of tribes and their members by better facilitating the restoration of on-reservation Indian lands into trust status. For example, the on-reservation provisions of the regulation provide that the tribe's stated need for the land will be accorded additional weight in recognition of the tribe's reasonable expectation that it benefit from the lands originally promised to it by treaty or Executive Order. For the same reason, because lands within reservation boundaries are subject to tribal governmental jurisdiction, the portion of the proposed rule governing on-reservation acquisitions does not specifically require submission of information concerning impacts on non-Indian communities, although State and local governments may comment on these impacts if they so desire. (In which case, the tribe will be given a copy of the comments and a reasonable amount of time in which to respond.)

**Discretionary Acquisitions Off-Reservation**

Congressional adoption of the land acquisition provisions of the IRA was based in part on Congress' understanding that the decimation of the tribal land base had resulted in substantial economic hardship for Indian tribes and their members. Hence, the regulations implementing the IRA anticipate the potential need for tribal trust land for economic development outside the

AR00831
7

2/26/99 O:\1.51FINAL.VHS

boundaries of a reservation, particularly in situations in which a tribe's reservation is isolated or otherwise remote from centers of economic activity.

The acquisition of title by the United States in off-reservation circumstances can, however, have significant ramifications for local non-Indian communities. In particular, important jurisdictional matters (e.g., those involving law enforcement, land use planning, public education, and maintenance of utilities and roads) can become blurred. The effects of off-reservation acquisitions are in contrast to those caused by on-reservation acquisitions, as the effects of on-reservation acquisitions are just incremental additions to an already established set of circumstances, and not marked by the establishment of a new sovereign or jurisdictional presence.

For this reason, the proposed rule requires tribes wishing to take off-reservation land into trust to submit a substantial amount of information about how the proposed acquisition would impact the surrounding non-Indian community, and about how the tribe would address that impact. Requiring submission of this detailed information helps ensure that the concerns of local non-Indian governments are identified, reviewed and evaluated in our decision-making process.

Unlike the regulations currently in effect, the proposed regulations do not treat applications concerning land which is adjacent (contiguous) to a reservation as if the land were located on-reservation. Rather, applications concerning adjacent parcels are to be treated as off-reservation acquisitions, and will be subject to the same process and local non-Indian government consultation as are applications concerning other off-reservation lands. Of particular note is that we will require consultation with the state and local non-Indian governments in the state in which the adjacent land is located (even if the main body of the reservation lies across a state line).

AR00832

2/26/99 O:\151FINAL.VHS

The proposed regulation, however, would continue our policy (as articulated in the existing regulations) of giving greater weight to the tribe's need (vis-a-vis the objections of the local non-Indian community) the closer the land is to the tribe's reservation. Thus, the stated need for land adjacent to a reservation will be given greater weight in the context of the off-reservation criteria. In addition, tribal applicants wishing to conduct gaming on a parcel adjacent to land which has held reservation status since October 17, 1988 will continue to benefit from the " contiguity exception" mandated by Congress in the Indian Gaming Regulatory Act (IGRA) Section 20 requirements. (See 25 U.S.C. § 2719(a)(1).)

The IRA land acquisition provisions authorize us to take off-reservation land into trust for the benefit of individual Indians. However, as a matter of general policy, we will approve applications from individual Indians for title to land located outside the boundaries of a reservation only under certain limited circumstances, in our discretion. For example, we will continue to accept title to interests in off-reservation land for the purpose of consolidating fractioned ownership of such land. Additionally, we will continue to accept title to lands purchased with funds obtained as the result of the voluntary sale of non-taxable Indian lands to any State, county, or municipality, or as the result of condemnation of such property by a State, county, or municipality, under 25 U.S.C. § 409a.

## Off-Reservation Acquisitions and Indian Gaming

If a tribe intends to use off-reservation land for gaming purposes, it must comply with the applicable requirements of Section 20 of the Indian Gaming Regulatory Act, 25 U.S.C. § 2719 (IGRA) before gaming may occur on that land. In most cases, compliance with Section 20 of IGRA requires additional consultation with local non-Indian governments, a determination by the

2/26/99 O:\151FINAL.VHS

Secretary that the acquisition is "in the best interest of the tribe and not detrimental to the surrounding community," and a concurrence in that determination from the Governor of the State in which the land is located. Id.

If a tribe applies under these regulations to have title acquired in trust for a non-gaming purpose, and then at a later date decides that it would like to conduct gaming on that parcel, it will be authorized to engage in such gaming only if it complies with the requirements of Section 20 of IGRA. In other words, to game on a parcel of trust land acquired after October 17, 1988 (i.e., the date of passage of IGRA), the tribe must submit to the same Section 20 analysis and obtain the same gubernatorial consent as would have been required if the parcel were originally taken into trust for the purpose of gaming.

## Discretionary Acquisitions in Alaska

Both the current and the proposed regulations bar the acquisition of trust title in land in Alaska, unless an application for such acquisition is presented by the Metlakatla Indian Community or one of its members. (The lands of the Metlakatla Indian Community comprise the only Native land in Alaska currently designated as a "reservation" by the federal government.) The regulatory bar to acquisition of title in trust in Alaska in the original version of these regulations was predicated on an opinion of the Associate Solicitor, Indian Affairs ("Trust Land for the Natives of Venetie and Arctic Village," September 15, 1978), which concluded that the Alaska Native Claims Settlement Act (ANCSA) precluded the Secretary from taking land into trust for Natives in Alaska (again, except for Metlakatla).

Although that opinion has not been withdrawn or overruled, we recognize that there is a

AR00834

*neither nor the Federal Laws policy+management repealed or eliminated*

2/26/99 O:\151FINAL.VHS

credible legal argument that ANCSA did not supersede the Secretary's authority to take land into

trust in Alaska under the IRA (see relevant IRA provision at 25 U.S.C. § 473a). See also the

Petition of Chilkoot Indian Association, Native Village of Larsen Bay, and Kenaitze Indian Tribe,

requesting the Department to undertake a rulemaking to remove the prohibition on taking land in

trust in Alaska (60 Fed. Reg. 1956 (1995). However, even if it were held that the Secretary

retained authority to take land in trust in Alaska, *the decision* whether to exercise that authority remains in the

sound discretion of the Secretary.


In recent years blue-ribbon commissions and working groups (such as the State of

Alaska's Rural Governance Commission) have been formed to address various related issues

concerning tribal governments and Native lands in Alaska and *especially* to address such issues in the wake

of the decision in Alaska v. Native Village of Venetie Tribal Government, 522 U.S. 520 ___, 118 S.

Ct. 948 (1998). In that decision, the court held that former Native Corporation lands owned in

fee simple by the Native Village of Venetie Tribal Government were not validly set apart for the

use of Indians as such, nor were they under the superintendence of the federal government, and

thus *they* did not meet the definition of "dependent Indian communities." Id. At 955. Since the lands

did not qualify as dependent Indian communities, they did not meet the definition of Indian

country and the Native Village of Venetie Tribal Government was not authorized to tax

non-members. *on behalf of a tribe* Of course, if land were taken in trust by the Secretary, such trust land then would

qualify as Indian country and an Alaskan tribe would have all the powers that pertain within

Indian country. We invite comment on the continued validity of the Associate Solicitor's opinion

and issues raised by the petition noticed at 60 Fed. Reg. 1956 (1995) in light of the Supreme

Court's ruling in the Venetie case.

AR00835

2/26/99 O:\151FINAL.VHS

The proposed regulations would make no change in the current regulations and would continue the bar against taking Native land in Alaska in trust. However, that bar would be subject to review pending the report of the Rural Governance Commission, or Congressional action ~~changing~~ ~~declaring~~ *The definition of* ~~clarifying that ANSCA lands are Indian country.~~ *to include ANCSA lands*

## Mandatory Acquisition of Title

The implementation of specific statutes containing congressional mandates to acquire title to land in trust through our administrative process has not always been well-understood. To provide more clarity, the proposed rule includes new language that specifically identifies the types of acquisitions we consider "mandatory," and sets out the process by which we will acquire title.

The proposed regulation clarifies that an acquisition of title is "mandatory" if Congress has removed *all* discretion in determining whether to accept title to a particular tract of land. ~~Situations in which all discretion has been removed include those situations in which Congress~~ dictates that the Secretary "shall" acquire title to a parcel of land which is specifically identified by legal description, or to land which is purchased with certain, specified funds. In contrast, a statute which merely directs that the Secretary "shall" accept title to unidentified land within *some* broader geographic boundary, e.g. within certain named counties, still allows for some discretion. Hence we do not view acquisitions under such a statute as "mandatory" for the purposes of this regulation. By definition, mandatory acquisitions of title rely on statutory authority which preempts the discretionary authority granted to the Secretary by the IRA. The Department will evaluate each statute on a case-by-case basis to determine whether it requires a mandatory acquisition of trust title.

AR00836

2/26/99 O:\151FINAL.VHS

The process for completing a mandatory acquisition of title is relatively simple. A tribe must submit an application that includes the identification of the federal statute which mandates the acquisition, and include the same sort of title insurance information required for discretionary acquisition applications. Because of the mandatory character of such acquisitions, the regulation does not require compliance with the National Environmental Policy Act (NEPA). However, we strongly advise applicants, for their own protection, to conduct the same type of environmental assessment generally done under NEPA prior to acquisition of the property, or at least prior to submitting an application to have the property taken into trust.

As a final matter, we note the distinction between mandatory acquisitions where Congress directs the Secretary to complete the administrative process of accepting trust title, and " legislative transfers of title," where Congress directly transfers land into trust status on behalf of tribes or individual Indians. In the later type of title transfer, Congress has removed the need for any administrative action to effectuate the title transfer.

## Tribal Land Acquisition Areas for Tribes without Reservations

There are a few tribes which do not benefit from the basic rights and opportunities inherent in having a reservation. For the most part, these are tribes recently restored to federal recognition by a federal statute which does not specifically designate a reservation, or they are tribes that have obtained federal recognition through the administrative Federal Acknowledgment Process, which as a matter of course does not provide for the designation of a reservation.

Federal policy for many decades has viewed the existence of a tribal land base as integral

2/26/99 O:\151FINAL.VHS

to the cultural, political, and economic well-being of a tribe. For example, most federal programs for Indians are in one way or another tied to the tribal land base. Because of the overwhelming importance of the tribal land base, and because the new regulations make it less burdensome for tribes to take land into trust on- (as opposed to off-) reservation, we are proposing in these regulations an alternative mechanism by which reservation-less tribes may benefit from the on-reservation acquisition provisions to create a homeland.

The alternative mechanism is the use of a "Tribal Land Acquisition Area." A Tribal Land Acquisition Area is a geographic boundary designated by a reservation-less tribe within which the tribe plans to acquire land within a specified period of time under the more lenient on-reservation provisions of the proposed rule. In other words, the Tribal Land Acquisition Area would create a geographic boundary within which individual parcels would be treated as on-reservation for the purposes of acquiring trust title under these regulations.

Because establishment of a Tribal Land Acquisition Area will affect local non-Indian governments, we will require that the concerns of local non-Indian governmental entities be addressed before the Secretary will approve the creation of the Tribal Land Acquisition Area boundaries. For that reason, an application for Secretarial approval of a Tribal Land Acquisition Area requires submission of information similar to that required in applications for off-reservation acquisitions. However, because we view the need for a homeland as fundamental, we will accord greater weight to the application of a reservation-less tribe, particularly in situations in which the tribe benefits from a federal statute directing the Secretary to acquire some land base for the tribe.

However, while off-reservation land located within a Tribal Land Acquisition Area may be treated as on-reservation land for acquisition purposes, such lands legally cannot be treated as

AR00838

2/26/99 O:\151FINAL.VHS

on-reservation for the purposes of IGRA.  In other words, title to land which is inside a Tribal

Land Acquisition Area cannot be taken into trust for the purpose of gaming unless and until the

requirements of Section 20 of IGRA have been satisfied.

Part 151 of Title 25, Chapter I of the Code of Federal Regulations is proposed to be amended for

the reasons set out below:

1.    The authority for part 151 is revised to include the False Statements Accountability

Act of 1996, 18 U.S.C. 1001.

2.    § 151.1 Purpose and Scope, is retitled as  What is the purpose of this part?, and is

reformatted and simplified.

3.    § 151.2 Definitions, is retitled as How are key terms defined in this part?, and is

revised to update some of the definitions of terms used in this part and to include new terms used

in this part.  The definitions in this section apply only to this part.

4.    § 151.3  Land acquisition policy, has been deleted, although some of the

substantive portions of the current § 151.3 have been incorporated into other parts of the

proposed rule.  A new § 151.3 is added entitled To what types of transactions do these

regulations apply?  The new §151.3 incorporates some of the information that is in the current

§151.1.

5.    § 151.4  Acquisitions in trust of lands owned in fee by an Indian, is deleted because

it is unnecessary given the rest of the proposed changes to this regulation.  A new §"151.4 entitled

AR00839

2/26/99 O:\151FINAL.VHS

How does an individual Indian or a tribe apply to have title to land conveyed to the United States in trust? is added to explain how to apply to have land taken into trust.

6.    § 151.5 Trust acquisitions in Oklahoma under Section 5 of the I.R.A.; is deleted because it is unnecessary. A new §151.5 entitled How do we process the request? is added to provide more clarity about how we review requests to take land into trust.

7.    § 151.6 Exchanges is deleted because it is no longer necessary given the other sections of the part. A new § 151.6, entitled How do we proceed after making a decision on the request? is added.

8.    § 151.7 Acquisition of fractional interests, is renumbered and retitled as §151.8, Will we accept and hold in trust an undivided fractional interest in land for an individual Indian or a tribe?, is reformatted to include acquisitions of "undivided" interest under the Indian Land Consolidation Act, and is revised for clarity. "Undivided fractional" is substituted for the word "fractional" to clarify that the "fractional" interest being acquired is not a geographically separate parcel of land. A new § 151.7 is added, When does land attain trust status?, to provide clarification as to how land technically attains trust status after we have decided to take it into trust.

9.    § 151.8 Tribal consent for nonmember acquisitions is renumbered and retitled as §151.11 Can an individual Indian or a tribe acquire land inside a reservation inside or an approved Tribal Land Acquisition Area of another tribe? and is revised for clarity.

10.    § 151.9 Requests for approval of acquisitions is renumbered and retitled as

AR00840

2/26/99 O:\151FINAL.VHS

§ 151.4 <u>How does an individual Indian or a tribe apply to have title to land conveyed to the</u> <u>United States in trust?</u>  A new § 151.9, <u>What information must be provided in ac request</u> <u>involving land inside land inside a reservation or inside an approved Tribal Land Acquisition Area,</u> is added.

11.    § 151.10 <u>On-reservation acquisitions,</u> is renumbered, retitled, and has been separated for clarity as § 151.5 <u>How do we process the application?,</u> § 151.9 <u>What information</u> <u>must be provided in a request involving land inside a reservation or inside an approved Tribal</u> <u>Land Acquisition Area?,</u> and § 151.10, <u>What criteria will we use use to evaluate requests</u> <u>involving land inside a reservation or inside an approved Tribal Land Acquisition Area?</u>  The new § 151.10 is revised to establish a uniform, nationwide, "minimum standard" set of criteria for the decision maker to consider in the evaluation of an application for an on-reservation trust acquisition.  The requirement to furnish title evidence is transferred from the current § 151.13 to this section to incorporate title evidence as part of a complete application request.

12.    § 151.11 <u>Off-reservation acquisitions,</u> is renumbered, retitled, and has been separated for clarity as § 151.5 <u>How do we process a request?,</u> § 151.12 <u>What information must</u> <u>be provided in an application involving land outside a reservation and outside an Tribal Land</u> <u>Acquisition Area?,</u>  and § 151.14 <u>What criteria will we use to evaluate a request involving land</u> <u>outside a reservation and outside a Tribal Land Acquisition Area?</u>  The requirement to furnish title evidence is transferred from the current § 151.13 to this section to incorporate title evidence as part of a complete application request.  In addition, a new § 151.11, <u>Can an individual Indian or a</u> <u>tribe acquire land inside a reservation or inside an approved Indian Land Acquisition Area of</u> <u>another tribe?,</u> is added, replacing the current § 151.8.

AR00841

2/26/99 O:\151FINAL.VHS

13.    § 151.12 <u>Action on requests</u> has been separated for clarity and is included as part of § 151.6 <u>How do we proceed after making a decision on the request?</u>  A new § 151.12, <u>What information must be provided in a request involving land outside a reservation and outside a Tribal Land Acquisition Area?</u>, is added.

14.    § 151.13  <u>Title examination</u>, is renumbered, reorganized, and revised for clarity. The requirement to furnish title evidence is transferred from this section and incorporated in the new §§ 151.9 and 151.12  as part of a complete application request.  Section (b), governing situations in which the title to the land has any liens, encumbrances, or infirmaties, has been integrated into § 151.6(c)(1).  A new § 151.13, entitled <u>Can an individual Indian acquire land outside his or her own reservation?</u>, has been added to clarify the Secretary's policy regarding the acquisition of off-reservation lands by an individual Indian.

15.    · § 151.14 <u>Formalization of acceptance</u> is renumbered and retitled as § 151.7 <u>When does the land attain trust status?</u>  A new § 151.14, entitled <u>What criteria will we use to evaluate a request involving land outside a reservation or outside a Tribal Land Acquisition Area?</u>, is added to establish a uniform, basic, nationwide, "minimum standard" set of criteria for the decision maker to consider in the evaluation of an application for an off-reservation trust acquisition.

16.    § 151.15  <u>Information collection</u>, is renumbered and retitled as § 151.27 <u>Do information collections under this part have Office of Management and Budget approval?</u>  Paragraph (a) is revised to include the new information collection requirements.  A new § 151.15 entitled <u>What information must be provided in a request to process a mandatory transfer of title into trust status, and how will we process the request?</u> has been added to clarify the information needed to process mandatory acquisitions.

AR00842

17.    A new § 151.16 entitled <u>Can our determination that a transfer of title into trust status is mandatory be appealed?</u> is added for clarity.

18.    A new § 151.17 entitled <u>What is a Tribal Land Acquisition Area?</u> has been added to clarify how a Tribal Land Acquisition Area can be used by tribes without reservations to benefit from the on-reservation provisions of this regulation.

19.    A new § 151.18 entitled <u>What must be included in a request for Secretarial approval of a Tribal Land Acquisition Area?</u> has been added to describe what information must be submitted in the request.

20.    A new § 151.19 entitled <u>How is a tribal request for Secretarial approval processed?</u> is added to describe how we will process the request for Secretarial approval of the Tribal Acquisition Area.

21.    A new § 151.20 entitled <u>What criteria will we use to decide whether to approve a proposed Tribal Land Acquisition Area?</u> has been added to set out the criteria the Secretary will use to evaluate a Tribal Land Acquisition Area.

22.    A new § 151.21 entitled <u>Can a tribe include in its Tribal Land Acquisition Area land inside another tribe's reservation or Tribal Land Acquisition Area?</u> is added for clarity.

23.    A new § 151.22 entitled <u>If a Tribal Land Acquisition Area is not approved, is the tribe prohibited from acquiring land within it?</u> is added for clarity.

AR00843

2/26/99 O:\151FINAL.VHS

24.    A new § 151.23 entitled <u>If a Tribal Land Acquisition Area is approved, does the land taken into trust within it attain reservation status?</u> is added for clarity.

25.    A new § 151.24 entitled <u>Can a Tribal Land Acquisition Area be modified after approval?</u> has been added to state that a Tribal Land Acquisition Area can be modified after approval by submitting a request for Secretarial approval of the modifications in compliance with the criteria in this part.

26.    A new § 151.25 entitled <u>What is the penalty for making false statements in connection with a request that we place land in trust?</u> has been added to notify applicants that they are subject to prosecution for knowingly and willfully making false statements on an application.

27.    A new § 151.26 entitled <u>What recordkeeping and reporting requirements apply to acquisitions of trust title under this part?</u> has been added to notify contracted or compacted tribes that documents created in the application process are permanent federal records.

28.    A new § 151.27 entitled <u>Do information collections under this Part have Office of Management and Budget approval?</u> is added for clarity.

**Clarity of this regulation.**

Executive Order 12866 requires each agency to write regulations that are easy to understand. We invite your comments on how to make this rule easier to understand, including answers to questions such as the following:   (1) Are the requirements in the rule clearly stated?

AR00844

2/26/99 O:\151FINAL.VHS

(2) Does the rule contain technical language or jargon that interferes with its clarity?  (3) Does the format of the rule (grouping and order of sections, use of questions as headings, paragraphing, etc.) aid or reduce its clarity?  (4) Would the rule be easier to understand if it were divided into more (but shorter) sections?  (A "section" appears in bold type and is preceded by the symbol "§" and a numbered heading; for example, **§151.1  What is the purpose of this part?**)  (5) Is the description of the rule in the Supplementary Information section of the preamble helpful in understanding the proposed rule?  What else could we do to make the rule easier to understand?

**Regulatory Planning and Review(E.O. 12866)**

In accordance with the criteria in Executive Order 12866, this rule is not a significant regulatory action and is not subject to review by the Office of Management and Budget.

(a) The proposed amendments to this rule basically conform to the policies and practices that currently guide the Department's decision making on land into trust applications.  Hence, we do not anticipate that this regulation will have a significant effect on the net amount of land taken into trust.  The rule will not have an annual effect of $100 million or more on the economy.  It will not adversely affect in a material way the economy, productivity, competition, jobs, the environment, public health or safety, or State, local, or tribal governments or communities.  This rule simply identifies a "minimum standard" of criteria and requirements to be considered in the exercise of the Secretary's discretion to place lands in trust for individual Indians and tribes.

Looking at the overall picture of how much land we have taken into trust historically, the annual number of requests to place lands in trust has been small.  Based on the BIA's Annual Report of Indian Lands for 1996, only 35 States have Indian lands, four of which have fewer than 1,000 acres of Indian lands.  The 1996 report indicated the average amount of land involved in an application was only about 30 acres, and that nationwide requests to place lands in trust totaled

AR00845

*request to acres*

2/26/99 O:\151FINAL.VHS

only about 212,000. Based on the annual caseload report for FY 1996, the total dollar amount
Indians paid for acquisitions of land in trust is $19,420,303.81, less than 20% of $100 million.
Some States and local governments may have a decrease in revenues derived from taxes.
However, the loss in annual revenues for State and local jurisdictions will only be a fraction of the
value of the land involved. Some tribes may choose to offset this loss by making payments in lieu
of taxes, or supplying services to the local communities. Overall, this loss is minimal, would not
be the result of these proposed amendments to existing regulations, and will not significantly
affect State or local governments.


(b) This rule will not create a serious inconsistency or otherwise interfere with an action
taken or planned by another Federal agency. Actions taken by this rule will affect tribal or
individual Indian land titles. The Department of the Interior, Bureau of Indian Affairs is the only
governmental agency that makes the determination whether to take land into trust.


(c) This rule does not alter the budgetary effects or entitlement, grants, user fees, or loan
programs or the rights or obligations of their recipients. This rule sets out the criteria and
procedures the Secretary uses in determining whether to accept *conveyance of* title of certain Indian lands to the
United States, as trustee, for the benefit of an individual Indian or a tribe.


(d) This rule does not raise novel legal or policy issues. This rule is of an administrative,
technical, and procedural nature. The land acquisition regulations have been in effect since 1980.
We are proposing to amend them in order to clarify procedures and requirements.


**Regulatory Flexibility Act**

The Department of the Interior certifies that this regulation will not have a significant

2/26/99 O:\151FINAL.VHS

economic effect on a substantial number of small entities under the Regulatory Flexibility Act (5 U.S.C. 601 et seq.). A Regulatory Flexibility analysis is not required. See our initial analysis above item 1(a) under Regulatory Planning and Review. The effect on small entities will be minimal.

    (a) It does not have an annual effect on the economy of $100 million or more. As stated above, the effect on the economy will be minimal.

    (b) It does not result in a major increase in costs or prices for consumers, individual industries, Federal, State, or local government agencies, or geographic regions. Actions taken by this rule will only affect title to tribal or individual Indian owned lands. While it may affect revenues collected by State or local jurisdictions, the effect as noted above, should be minimal.

    (c) It does not result in significant adverse effects on competition, employment, investment, productivity, innovation, or the ability of U.S.-based enterprises to compete with foreign-based enterprises. As stated above, actions under this rule will only affect title to tribal or individual Indian owned lands. This rule is of an administrative, technical, and procedural nature.

**Small Business Regulatory Enforcement Fairness Act (SBREFA)**

    This rule is not a major rule under 5 U.S.C. 804(2), the Small Business Regulatory Enforcement Fairness Act. See the initial analysis above, item 1(a) under Regulatory Planning and Review. This rule:

    (a) Does not have an annual effect on the economy of $100 million or more. An economic analysis is not required.

    (b) Will not cause a major increase in costs or prices for consumers, individual industries, Federal, State, or local government agencies, or geographic regions. Actions under this rule will only affect title to tribal or individual Indian owned lands.

AR00847

2/26/99 O:\151FINAL.VHS

(c) Does not have significant adverse effects on competition, employment, investment, productivity, innovation, or the ability of U.S.-based enterprises to compete with foreign-based enterprises. Actions under this rule will only affect title to tribal or individual Indian owned lands.

## Unfunded Mandates Reform Act

In accordance with the Unfunded Mandates Reform Act (2 U.S.C. 1531 et seq.):

(a) The rule will not significantly or uniquely affect small governments, or the private sector. A Small Government Agency Plan is not required. Additional expenses may be incurred by the requesting tribe or individual Indian to provide information to the Secretary. Tribes or an individual Indian provide information in order to receive a benefit.

(b) This rule will not produce a federal mandate of a $100 million or greater in any year. The overall effect of this rule will be negligible to the State, local, or tribal governments or the private sector. See our analysis under Regulatory Planning and Review.

## Takings (E.O. 12630)

With respect to Executive Order 12630, the rule does not have significant takings implications. A takings implication assessment is not required because actions under this rule do not constitute a taking. Tribes or individual Indians are voluntarily transferring title to the United States for their own benefit.

## Federalism (E.O. 13083)

With respect to Executive Order 13083, the rule does not have significant federalism implications to warrant the preparation of a Federalism Assessment. The local tax base may be affected. However, this rule should not affect the relationship between State and Federal governments because actions in this rule apply only to a relatively small amount of land. Due to

AR00848

2/26/99 O:\151FINAL.VHS

the loss of tax revenue, the relationship between the State and local governments with tribes and/or the Federal Government may be affected. However, because the loss of revenue is minimal and most of the land to be acquired will be within the boundaries of reservations where there is already a measure of Indian sovereignty, the effects are "insignificant" within the meaning of E. O. 13083. See the analysis under the Regulatory Planning and Review section.

### Civil Justice Reform (E.O. 12988)

With respect to Executive Order 12988, the Office of the Solicitor has determined that this rule does not unduly burden the judicial system and meets the requirements of sections 3(a) and 3(b)(2) of the Order. This rule contains no drafting errors or ambiguity and is written to minimize litigation, provides clear standards, simplifies procedures, reduces burden, and is clearly written. These regulations do not preempt any statute. They do supersede the current land acquisition regulations and the current procedure for establishing Indian Land Consolidation Areas. They would not be retroactive with respect to any land already taken into trust, but would apply to pending applications.

### Paperwork Reduction Act

This regulation does not require an information collection from ten or more parties and a submission under the Paperwork Reduction Act (44 U.S.C. 3501 et seq.). The information collection is covered by an existing OMB approval. An OMB form 83-I has been reviewed by the Department and sent to OMB for approval.

The information collection requirements in §§ 151.6; 151.9; 151.11, and 151.13 under 44 U.S.C. 3501 et seq. have been submitted to the Office of Management and Budget for approval

AR00849

2/26/99 O:\151FINAL.VHS

and assigned clearance number 1076-0100. This information is required from Indian tribes and individual Indians who wish to convey land into trust status.

## National Environmental Policy Act

This rule does not constitute a major Federal action significantly affecting the quality of the human environment. A detailed statement under the National Environmental Policy Act of 1969 is not required because this rule is of an administrative, technical, and procedural nature.

## Government-to-Government Relationship with Tribes

In accordance with the President's memorandum of May 14, 1998, "Consultation and Coordination with Indian Tribal Governments" (FR Vol. 63, No. 96, Pages 27655-27657) and 512 DM 2, we have evaluated any potential effects upon Federally recognized Indian tribes and have determined that there are no potential adverse effects. No action is taken under this rule unless a tribe or an individual Indian voluntarily requests that the United States place land in trust for their benefit. Tribes will be asked for comments prior to publication as a final regulation, of this rule, and their comments will be considered prior to publication.

## LIST OF SUBJECTS IN 25 CFR PART 151

Indians - lands

For the reasons set out in the preamble, we are proposing revise Part 151 in Chapter I of Title 25, of the Code of Federal Regulations so that it will read as follows: