IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AKIACHAK NATIVE COMMUNITY, et al, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>)<br>UNITED STATES DEPARTMENT OF )<br>  THE INTERIOR et al., )<br>)<br>Defendants. )<br>) | CASE NO. 1:06 CV 00969-RWR<br><br>STATEMENT OF MATERIAL<br>FACTS AS TO WHICH<br> PLAINTIFFS CONTEND<br> THERE IS NO GENUINE<br>ISSUE |

<u>Plaintiffs</u>

Plaintiffs Akiachak Native Community, Chalkyitsik Village, Chilkat Indian Association, and Tuluksak Native Community are federally recognized tribes, publicly acknowledged by the Secretary "to have the immunities and privileges available to other federally acknowledged tribes by virtue of their government-to-government relationship with the United States, as well as the responsibilities, powers, limitations and obligations of such tribes."[1] The same is true of the Native Village of Barrow, of which Plaintiff Alice Kavairlook is a member.[2] Plaintiffs are desirous, for various reasons, of having the Secretary consider requests from them to have specific areas of land taken back into trust status, as the Secretary does from Tribes in the contiguous 48 states. The Secretary is unwilling to do so because of his policy, embodied in the applicable regulations, of not accepting such requests from Alaska Native Villages.

---

[1] 73 Federal Register 18553, 18556, 18557 (April 4, 2008).

[2] *Id*. at 18556. Affidavit of Alice Kavairlook, par. 1.

In actuality, the foregoing are all the facts about the plaintiffs that this Court needs in order to undertake its legal analysis. However, it may be helpful, albeit not strictly necessary, for the Court to have a bit more background information on each plaintiff.

The Akiachak Native Community is comprised of some 600-700 tribal members who live approximately 18 miles northeast of Bethel in western Alaska.[3] The community is located on the west bank of the Kuskokwim River, in the Yukon-Kuskokwim Delta. Akiachak can be reached only by air and water.[4] The community had incorporated as a second class city under state municipal corporation law, but the city government was dissolved in favor of traditional village council governance.[5] The Akiachak Native Community tribal government has banned the possession of alcohol in Akiachak.[6] To enforce the ban on alcohol and to provide a police presence in the community, the tribal government employs four public safety officers with money derived from a local sales tax.[7] The specific lands which Akiachak presently wishes to have taken into trust are several townsite lots conveyed to Akiachak by the Bureau of Land Management, as

---

[3] Affidavit of George Peter, par. 1.

[4] Alaska Community Database Community Information Summaries (hereafter Alaska CIS), available at http://www.commerce.state.ak.us/dca/commdb/CIS.cfm.

[5] Affidavit of George Peter, par. 2; Alaska Community Database CIS.

[6] Affidavit of George Peter, par. 3. Studies have shown that local prohibition of alcohol combined with the presence of local police is associated with a decreased incidence of serious injury in isolated Alaska Native villages. *See*, Darryl S. Wood & Paul J. Gruenewald (2006), *Local alcohol prohibition, police presence and serious injury in isolated Alaska Native Villages*. Addiction, 101, 393 - 403.

[7] Affidavit of George Peter, par. 4.

trustee for the Alaska Native Townsite of Akiachak, in 1990.[8] Having the townsite lands taken into trust would in the Tribe's view enhance its ability to enforce its alcohol ban.[9]

Chalkyitsik Village is comprised of some 100-200 members who live in an isolated rural community on the Black River about 50 miles east of Fort Yukon, in Northwestern Alaska.[10] Chalkyitsik can only be reached by air and water. Like Akiachak, Chalkyitsik received its unoccupied Alaska Native Townsite lot parcels under the Alaska Native Townsite Act. In 1982 the Chalkyitsik tribal government banned the possession of alcohol in Chalkyitsik, and petitioned the Department of the Interior to

---

[8] Affidavit of George Peter, par. 5. The Alaska Native Townsite Act was enacted in 1926 and repealed in 1976. (Act of May 25, 1926, 44 Stat. 629, formerly codified at 43 USC §§733 et seq., repealed by the Federal Land Policy Management Act, Pub. L. 94-579, 90 Stat. 2743, codified at 43 USC §§1701 et seq.). Within each Alaska Native Townsite, individual lots conveyed to Alaska Natives were in restricted title status. (Individual lots were also conveyed to non-Natives, during the period 1933-1959 and again after 1976, but such lots were not held in restricted status.) Unoccupied lots within the townsite were to be ultimately conveyed to the municipality if one existed; otherwise they were conveyed to the Village Council, see *Aleknagik Natives Ltd. v. United States*, 886 F.2d 237 (9th Cir. 1989). However, such unoccupied lots, even if conveyed to the Village Council, were conveyed in unrestricted status. See generally D. Case and D. Voluck, Alaska Natives and American Laws (2d Ed. 2002) at 130-141.

[9] Affidavit of George Peter, par. 6. Although Alaska Native Village tribal jurisdiction in several subject matter areas does not depend on the existence of "Indian country," see *John v. Baker*, 982 P.2d 738 (Alaska 1999) (tribal authority to resolve disputes over custody of tribal children does not depend on "Indian country"), a tribe's authority over liquor in particular is tied quite closely to "Indian country" as a matter of federal statute, see 18 U.S.C. §1161.

[10] Affidavit of William Salmon Jr., par. 1. Alaska CIS, Chalkyitsik.

Akiachak Native Community et al. v. Dept of Interior et al, 1:06 CV 969-RWR
Statement of Material Facts, page 3

have its ordinance published under the Federal Indian Liquor Laws.[11] On May 12, 1983, the Department of the Interior published Chalkyitsik's ordinance prohibiting the introduction, possession, and sale of intoxicating beverages in Chalkyitsik, and authorized the First Chief of Chalkyitsik to request federal enforcement of 18 U.S.C. § 1161 in the event the ordinance is violated.[12] The Notice designated the Chalkyitsik Village townsite lands as the boundaries for purposes the liquor ordinance's application and classified those lands as "Indian country" for purposes of enforcement of 18 U.S.C. § 1161. In 1998, a United States Supreme Court ruling cast doubt on whether these unoccupied Alaska Native Townsite lots would constitute "Indian country" if they were not held in restricted status,[13] and thus since then Chalkyitsik has been unable to assert undisputed jurisdiction over its lands or rely on federal enforcement of its alcohol ordinance pursuant to 18 U.S.C. § 1161.[14]

---

[11] Affidavit of William Salmon Jr., par. 2; Act of August 15, 1953, 67 Stat. 586, 18 U.S.C. § 1161.

[12] *See* 48 Fed. Reg. 21378 (May 12, 1983).

[13] In 1998, the United States Supreme Court interpreted the "dependent Indian community" leg of the "Indian country" triad (see 18 USC §1161) to require that lands not only be "set apart for the use of Indians as such," but also remain under the superintendence of the federal government. *Alaska v. Native Village of Venetie Tribal Government*, 522 U.S. 520 (1998). Alaska Native Townsite lands held by the Village Council satisfy the first requirement, but may not satisfy the second unless they are held in restricted status.

[14] Affidavit of William Salmon Jr., par. 3.

The Chilkoot Indians have lived in the area now known as Haines from time immemorial.[15] Haines is located on the shore of Lynn Canal on the narrow Chilkat Peninsula between Chilkoot and Chilkat Bays. In 1879, S. Hall Young, a Presbyterian missionary, and John Muir, the naturalist, visited the area, and made plans for a Christian town with a mission and school to be operated for the benefit of the local Chilkoot Indians. In 1881, a site was selected, and Young received permission from the Chilkoot Indians to build a mission at the crossroads area known as Da-Shu.[16] Over a century later, in 1994, the Presbyterian Church conveyed seventy-three acres of land that had formerly been part of the Mission back to the Chilkoot Indians.[17] The Chilkoot Indian Association wishes to have this land placed in trust in order to ensure its protection for future generations of tribal members.[18]

The Tuluksak Native Community is comprised of some 300-400 tribal members who live in an isolated rural community approximately 35 miles northeast of Bethel in Western Alaska.[19] The community is located on the south bank of the Tuluksak River

---

[15] Affidavit of Janice Hill, par. 2; Alaska CIS for "Haines." When the first Russians came to the Chilkoot Valley in the 1800s, it was populated by the Chilkoot who owned and controlled the trails between the coast and the Interior. Originally, Haines was called "Dtehshuh" (spelled in various ways) meaning "end of the trail" in the Native language.

[16] Affidavit of Janice Hill, par. 3; Alaska CIS for "Haines." In 1884, this "Willard Mission" was renamed Haines when the post office was established.

[17] Affidavit of Janice Hill, par. 3.

[18] Affidavit of Janice Hill, par. 4.

[19] Affidavit of Joe Alexi, par. 2; Alaska CIS "Tuluksak."

where it meets the Kuskokwim River, and can be reached only by air and water.[20]  In 1983, the Society of the United Brethren for Propagating Gospel Among the Heathen quit-claim deeded a tract of land that had once been known as the Moravian Mission Reserve to the City of Tuluksak.[21]  In 1997, lands owned by the City of Tuluksak were transferred to the Tuluksak Native Community when the City dissolved.  A portion of these reconveyed tribal lands have been used to build badly needed housing.  The remaining parcel has special historic significance for the tribe.  As such, the Tuluksak Native Community wishes to place the land in trust to assure its continued protection.[22]

Plaintiff Alice Kavairlook in 1983 acquired an individual townsite lot[23] within the Barrow Alaska Native Townsite, as a Native Restricted Trustee Deed conveyance.  The lot was taken from her in 1994 in a fraudulent transaction by a non-Native Bexhet Bordonici, who was subsequently convicted on several counts of drug offenses and money laundering in 2002.[24]  With assistance, Ms. Kavairlook was able to persuade the

---

[20] Affidavit of Joe Alexi, par. 2.

[21] Affidavit of Joe Alexi, par. 3

[22] Affidavit of Joe Alexi, paras. 3-4.

[23] Lot 5, Block 9, Barrow Townsite, U.S. Survey 4615, as shown on the plat of survey dated September 2, 1964, located in the Barrow Recording District, Second Judicial District, State of Alaska.  Affidavit of Alice Kavairlook, par. 2.

[24] *United States v. Bordonici*, case number F-01-014 CR (RRB) in the United States District Court for the District of Alaska.  Affidavit of Alice Kavairlook, par. 5.

federal court to release the lot from its forfeiture proceeding,[25] and was able to persuade a state court to rescind Mr. Bordonici's acquisition of the property and restore it to her.[26] She now wishes to have the lot's original restricted status restored.

All five requests are frustrated by the Secretarial policy against consideration of applications from federally recognized tribes in Alaska, and their members, to have land taken into trust status, a policy which developed as described below.

Historical background to the Secretary's regulation

In 1934, as part of the Indian Reorganization Act ("IRA"),[27] Congress in section 5[28] authorized the Secretary of the Interior to take real property into trust on behalf of Tribes and individual Indians, and in section 7 empowered the Secretary to declare newly acquired lands to be Indian reservations, or to add them to existing reservations.

As of its enactment in 1934, section 13 of the IRA made only sections 9, 10, 11, 12, and 16 of the IRA applicable to Alaska.

In 1936, most of the remaining sections of the IRA, including section 5, were made applicable to Alaska.[29] The 1936 Act had two sections. Section 1 of the 1936 Act

---

[25] *United States v. Bordonici*, case number F-01-014 CR (RRB). Affidavit of Alice Kavairlook, par. 5.

[26] *Kavairlook v. Bordonici*, case number 2BA-05-79 CIV, Superior Court for the State of Alaska, Second Judicial District. Affidavit of Alice Kavairlook, par. 5.

[27] Ch. 576, 48 Stat. 984, codified as amended at 25 USC 461 et seq.

[28] 25 U.S.C. 465.

[29] Act of May 1, 1936, ch. 254, 49 Stat. 1250.

extended sections 1, 5, 7, 8, 15, and 19 of the IRA to Alaska. Section 2 of the 1936 Act placed special conditions on Secretarial creation of any new reservations in Alaska. Several reservations were created in Alaska pursuant to the IRA.[30]

In 1971, Congress revoked all reservations in Alaska (except for one, the Metlakatla Reservation on the Annette Islands in southeast Alaska), in enacting the Alaska Native Claims Settlement Act (ANCSA).[31] ANCSA did not repeal any portion of the 1934 IRA nor did it repeal any portion of the 1936 IRA Amendments.

In 1976, Congress repealed section 2 of the 1936 IRA amendments, which had placed conditions on Secretarial creation of new reservations in Alaska, as part of the Federal Land Policy Management Act (FLPMA).[32] FLPMA did not repeal section 1 of the 1936 amendments, which make section 5 of the IRA applicable in Alaska, nor did it repeal section 5 or any other portion of the IRA itself.

---

[30] There had in fact been several reservations created in Alaska prior to the IRA as well. See generally D. Case and D. Voluck, Alaska Natives and American Laws (2d ed. 2003) at 65-98.

[31] ANCSA §19, Pub.L. No. 92-203, 85 Stat. 688, codified at 43 USC §§ 1601 et seq.

[32] Act of October 21, 1976, P.L. 94-579, Title VII, Section 704(a), 90 Stat.2743, 2792, repealing 49 Stat. 1250, 25 U.S.C. 496.

In 1978, an Opinion by then Associate Solicitor for Indian Affairs Thomas Fredericks ("Fredericks Opinion") opined that ANCSA precluded the Secretary from taking land into trust for Natives in Alaska.[33]

In 1980, the Department of the Interior issued regulations governing the Secretary's resolution of tribal requests under IRA Section 5 to place Indian-owned land in trust status.[34] Those regulations expressly excluded the acquisition of land in trust or restricted status in the State of Alaska on behalf of Alaska Native Villages or their members, except acquisitions for the Metlakatla Indian Community of the Annette Island Reserve or its members.[35] The Department's preclusion of Alaska Tribes (other than Metlakatla) from the Part 151 Trust Lands Regulations was based upon the 1978 Fredericks Opinion.[36]

In February of 1990, the Native Village of Point Hope, Alaska, filed a petition to have some of its lands taken into trust.[37] Roughly six months later, Point Hope was informed that the request was being referred by the Acting Deputy to the Assistant

---

[33] AR 1-4, "Trust Land for the Natives of Venetie and Arctic Village," Memorandum to Assistant Secretary, Indian Affairs from Associate Solicitor, Indian Affairs, Thomas W. Fredericks (September 15, 1978).

[34] AR 18-21, 45 Fed. Reg. 62034 et seq. (Sep. 18, 1980).

[35] *Id*.; former 25 CFR 120a.1, current 25 CFR 151.1.

[36] AR 358-359, 64 Fed. Reg. 17577-17578 (Apr. 12, 1999) ("The regulatory bar to acquisition of title in trust for Alaska in the original version of these regulations was predicated on an opinion of the Associate Solicitor, Indian Affairs ('Trust Land for the Natives of Venetie and Arctic Village,' September 15, 1978) …"

[37] AR 79–98.

Secretary for Indian Affairs in Washington D.C. to the Juneau Area BIA Office.[38] One month after that, Point Hope's representative was informed that the Juneau Office was requesting technical assistance from the Portland Area BIA Office.[39] About eight months after that, on 1 May 1991, the Point Hope petition was referred to the Fairbanks BIA Office for action.[40] On May 9, the Regional Solicitor's Office received a memo asking it to assign an attorney to work on the Point Hope petition.[41] From the record, it would appear that the Point Hope petition has not been resolved

In October 1994, Plaintiff Chilkoot Indian Association, along with other Tribes, filed a petition for rulemaking with the Secretary of the Interior requesting that the Secretary revise the Part 151 Trust Lands Regulations to include lands in Alaska and that the Secretary rescind the Fredericks Opinion as erroneous and contrary to existing law.[42] Notice of the petition, and a solicitation of comments on the petition, were issued by the Department of the Interior in January of 1995.[43]

In March of 1997, an internal Interior Department draft memorandum addressed itself to the question, concluding that "The reasoning of the 1978 [Fredericks]

---

[38] AR 108.

[39] AR 113.

[40] AR 117-118.

[41] AR 28.

[42] AR 272-298.

[43] AR 297-299.

memorandum is unpersuasive for the following reasons: …"[44]  A subsequent internal email comment noted, "The draft memorandum states pretty strongly that the Fredericks opinion was wrong (which it may have been, but that is not my point), and also seems to imply a conclusion that the NARF petition to change the regulation is well-founded.  I am not sure we should say all that in a memorandum which leaves the Solicitor's office …"[45]  Thereafter, the sentence in the memorandum was reworded to read, "the petitioners asserted that the reasoning of the 1978 memorandum is unpersuasive for the following reasons: …"[46]

---

[44] AR 804.  The reasons were as follows:

> In 1936, Congress made most key provisions of the IRA, 25 U.S.C. §§ 461-497, applicable in Alaska, notwithstanding the limited number of reservations in Alaska.  25 U.S.C. §473a.  Among those provisions applicable in Alaska is one permitting the United States to take lands in trust.  25 U.S.C. §465, as amended.  Through FLPMA, Congress repealed 25 U.S.C. 496 and 497 which authorized the Secretary to designate tracts of land in Alaska as Indian reservations and to reserve tracts of land in Alaska for schools, hospitals, and other uses for Indians, Eskimos, and Aleuts.  90 Stat. 2792.  However, Congress left 25 U.S.C. § 465 intact and chose to distinguish between the authority to proclaim reservations and the acquisition of trust land.
>
> Moreover, a fundamental principle of Indian law prohibits extinguishment of tribal rights except by a "clear and plain" expression of Congressional intent. … Congress is fully capable of unambiguously repealing statutes when it so chooses. … When it chose to repeal one portion of the IRA applicable to Alaska and left the remainder intact, the rules of statutory construction require that we continue to give effect to the remaining provisions of the statute.  [AR 804-805]

[45] AR 799.

[46] AR 795.

In July of 1997, another round of internal Interior Department email discussions ensued over another draft memorandum, proposed to be sent by the Solicitor to the Secretary. One contributor commented to the author, "Although I have no strenuous objection to your draft, and in fact think it constitutes a much better reading of the statutory history than Fredericks', I am not particularly enthusiastic about reversing the policy of not taking land into trust in Alaska."[47] Another observation was made that the memorandum would need a concluding paragraph, which the emailer drafted:

> In conclusion, it is my opinion that the Secretary does have under existing law the statutory authority and discretion to take land into trust for Alaska Native tribes and individuals. However, it is my recommendation that you not attempt to exercise such discretion with respect to any specific proposed trust acquisition until you have first made appropriate amendments to 25 C.F.R. Part 151.[48]

In April 1999, the Department of the Interior published a proposed revision to the rules for the acquisition of trust land.[49] The Department invited comments on the continued validity of the Alaska prohibition, noting that "although [the Fredericks Opinion] has not been withdrawn, we recognize that there is a credible legal argument that ANCSA did not supersede the Secretary's authority to take land into trust in Alaska under the IRA."[50]

---

[47] AR 809.

[48] AR 814.

[49] AR 355-369, 64 Fed. Reg. 17574-17588 (April 12, 1999).

[50] AR 359, 64 Fed. Reg. at 17578 (April 12, 1999).

In August of 2000, one of the participants in the email discussions on the 1997 memorandum wrote:

> According to my files, it's been almost three years to the day since we stopped laboring over the draft memo to the Secretary reconsidering the question of the Secretary's authority to take land in trust in Alaska. As you'll recall, we concluded that statutory authority did still exist to take land in trust in Alaska, but that our draft recommended that the subject be addressed in regulations before the Secretary attempted to exercise such authority.[51]

On January 16, 2001, the Department rescinded the Fredericks Opinion.[52] In rescinding the opinion, the Department noted:

> There were several comments concerning the authority to take land into trust in Alaska. The preamble to the proposed rule addressed in some detail the question of whether to continue the bar in the existing regulations to the acquisition of trust title in land in Alaska (other than for the Metlakatla Indian Community or its members). See 64 FR 17577-78 (1999). As the discussion there indicated, the Department had earlier received, and invited public comment on (See 60 FR 1956 1995)), a petition by Native groups in Alaska which requested that the Department initiate a rulemaking to remove the prohibition in the regulations on taking Alaska land in trust. That discussion also noted that the Associate Solicitor for Indian Affairs has concluded, in a brief September 15, 1978 Opinion, that the Alaska Native Claims Settlement Act (ANCSA) precluded the Secretary from taking land into trust for Natives in Alaska (except for Metlakatla).
>
> The Solicitor has considered the comments and legal arguments submitted by Alaska Native governments and groups and by the State of Alaska and two leaders of the Alaska State Legislature on whether the 1978 Opinion accurately states the law. The Solicitor has concluded that there is substantial doubt about the validity of the conclusion reached in the 1978

---

[51] AR 887.

[52] AR 619.

Akiachak Native Community et al. v. Dept of Interior et al, 1:06 CV 969-RWR
Statement of Material Facts, page 13

>  Opinion . . . .  Accordingly, the Solicitor has signed a brief memorandum rescinding the 1978 Opinion.[53]

Notwithstanding this rescission, the January 2001 final rule continued the Alaska prohibition, at least as a temporary measure, explaining that "the position of the Department has long been, as a matter of law and policy, that Alaska Native lands ought not to be taken in trust.  Therefore, the Department has determined that the prohibition in the existing regulations on taking Alaska lands into trust (other than Metlakatla) ought to remain in place for a period of three years during which time the Department will consider the legal and policy issues involved in determining whether the Department ought to remove the prohibition on taking Alaska lands into trust."[54]

On January 20, 2001, George W. Bush was sworn in as President, and the new Administration ordered a delay in the effective date of the new Part 151, and other regulations, in order to allow for review by the President's new appointees.[55]  After several additional delays, the new Part 151 was ultimately withdrawn in November 2001.[56]  In the withdrawal announcement, the Interior Department also announced its

---

[53] AR 589, 66 Federal Register at 3454 (Jan. 16, 2001).

[54] AR 590, 66 Federal Register at 3454 (Jan. 16, 2001).

[55] AR 627, 66 Fed. Reg. 8899 (Feb. 5, 2001).

[56] The effective date of the final rule was delayed until 17 March 2001 (AR 627, 66 Fed. Reg. 8899 (Feb. 5, 2001)), then until 16 April 2001 (66 Fed. Reg. 10815 (Feb. 20, 2001)), then to 13 August 2001 (AR 629, 66 Fed. Reg. 19403 (Apr. 16, 2001)), then to 10 November 2001 (AR 742, 66 Fed. Reg. 42415 (Aug. 13, 2001)), and ultimately the regulation was withdrawn November 9 (AR 748, 66 Fed. Reg. 56608 (Nov 9, 2001).

intent to promulgate a new rule,[57] but no new proposed rule has yet been published in the Federal Register.

That is the current state of affairs: the 1978 Fredericks opinion has been rescinded, but the regulatory bar remains in place, prohibiting to tribes and tribal members in Alaska that ability to file land-into-trust petitions which the Secretary accepts from tribes and tribal members elsewhere in the United States.

Respectfully submitted this 21 day of April, 2008.

/s/ Heather Kendall Miller
Alaska Bar No. 9211084
NATIVE AMERICAN RIGHTS FUND
420 L Str. Suite 505
Anchorage, Alaska 99517
Telephone: (907) 276-0680
Facsimile: (907) 276-2466
Email: kendall@narf.org

/s/ Andrew Harrington
Alaska Bar No. 9106026
Denise Bakewell, California Bar No. 208660
ALASKA LEGAL SERVICES CORPORATION
1648 South Cushman, Suite 300
Fairbanks, Alaska 99701
Telephone 907-452-5181
Fax 907-456-6359
Email aharrington@alsc-law.org

/s/ Richard A. Guest
D.C. Bar No. 477572
NATIVE AMERICAN RIGHTS FUND
1712 N/ Street, N.W.
Washington, D.C. 20036
(202) 785-4166
Attorneys for Plaintiffs

---

[57] AR 750, 66 Fed. Reg. 56609 (Nov. 9, 2001).