UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| AKIACHAK NATIVE COMMUNITY <u>et al.</u>, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    No. 1:06-cv-00969 (RWR) |
| | ) |
| DEPARTMENT OF THE INTERIOR, <u>et al.</u> | ) ) |
| | ) |
| Defendants. | ) |

_____


**DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

RONALD J. TENPAS
Assistant Attorney General

Daniel G. Steele
Attorney of Record for Defendant
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington D.C., 20044-0663

Of Counsel:
David Moran
Attorney-Advisor
Division of Indian Affairs
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, N.W.  MS 6513
Washington, D.C.  20240

**Table of Contents**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statutory and Legal Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    The Alaska Native Townsite Act ("ANTA"): . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    The Alaska Native Claims Settlement Act ("ANCSA") . . . . . . . . . . . . . . . . . . . . . . . . . 5

    Interior Regulations Codified at 25 C.F.R. Part 151 . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Historical Perspective and Recent Policy Initiatives . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    Administrative Procedure Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    Summary Judgment: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    I.     INTERIOR'S ADMINISTRATIVE ACTIONS ARE FULLY SUPPORTED BY
          THE ADMINISTRATIVE RECORD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    II.    INTERIOR PROPERLY EXERCISED ITS DISCRETIONARY
          AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    III.   THE REGULATORY PROHIBITION DOES NOT VIOLATE
          25 U.S.C. §476(f) AND (g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    IV.   THE REGULATORY PROHIBITION DOES NOT VIOLATE EQUAL
          PROTECTION UNDER THE DUE PROCESS CLAUSE OF THE FIFTH
          AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

          A.    The Plaintiffs Have Not Been Deprived of Due Process of Law . . . . . . 22

          B.    Plaintiff Does Not Possess a Constitutionally Protected Property Interest;
               Thus, the Due Process Guarantee Does Not Apply. . . . . . . . . . . . . . . . . 22

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Aleknagik Natives, Ltd. v. United States,
    806 F.2d 924 (9th Cir. 1986), 635 F. Supp. 1477, 1497 (D. Alaska 1985) . . . . . . . . . . 4, 6

Am. Ass'n of Paging Carriers v. FCC,
    442 F.3d 751 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

American Fed'n of Gov't Employees v. United States,
    195 F.Supp.2d 4 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

American Mfrs. Mut. Ins. Co. v. Sullivan,
    526 U.S. 40 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Ark. Power & Light Co. v. ICC,
    725 F.2d 716 (D.D.C. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Balt. Gas & Elec. Co. v. Natural Res. Def. Council,
    462 U.S. 87(1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Board of Regents v. Roth,
    408 U.S. 564 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 26

Bristol Bay Hous. Auth.,
    95 IBLA 20 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

C&E Services, Inc. of Washington v. District of Columbia Water and Sewer Authority,
    310 F.3d 197, 200 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 26

Camp v. Pitts,
    411 U.S. 138 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cape Hatteras Access Preservation Alliance v. Dep't of Interior,
    344 F. Supp.2d 108 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Citizens to Preserve Overton Park, Inc. v. Volpe,
    401 U.S. 402 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 15

City of Alexandria v. Fed. Highway Admin.,
     756 F.2d 1014 (4th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

City of Klawock v. Andrew,
    24 IBLA 85 (1976), aff'd  City of Klawock v. Gustafson,
    Civ. No. K-74-2 (D.Alaska 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Commercial Drapery Contractors, Inc. v. United States,
    133 F. 3d 1(D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Community for Creative Non-Violence v. Lujan,
    908 F.2d 992 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Community Nutrition Inst. v. Bergland,
     493 F.Supp. 488 (D.D.C. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. Power Comm'n v. Fla. Power & Light Co.,
    404 U.S. 453 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Florida Power & Light Co. v. Lorion,
    470 U.S. 729 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Florida v. U.S. Dep't of Interior,
    768 F.2d 1248, 1256 (11th Cir. 1985), cert. denied, 475 U.S. 1011 (1986) . . . . . . . 17, 18

Geller v. FCC,
    610 F.2d 973 (D.C. Cir 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Gilbert v. Nat'l Transp. Safety Bd.,
    80 F.3d 364 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Greenlee v. Board of Medicine of District of Columbia,
    813 F. Supp. 48 (D.D.C. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 26

Koons Buick Pontiac GMC, Inc. v. Nigh,
    543 U.S. 50 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

LeBoeuf, Lamb, Greene & MacRae, LLP v. Abraham,
    215 F.Supp 2d 73 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Littlewolf v. Lujan,
        877 F.2d 1058 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

Lujan v. Nat'l Wildlife Fed'n.,
         497 U.S. 871 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Lyng v. Payne,
        476 U.S. 926 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

Marsh v. Oregon Natural Res. Council,
        490 U.S. 360 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

Marshall County Health Care Auth. v. Shalala,
        988 F.2d 1221 (D.C. Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

McAlpine v. United States,
        112 F.3d 1429 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

McKinley v. United States,
        828 F. Supp. 888 (D.N.M. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Miami Nation of Indiana, Inc. v. Babbit,
        112 F.Supp. 2d. 742 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Narragansett Indian Tribe v. National Gaming Comm'n,
        158 F.3d 1335 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Nat'l Cong. of Hispanic American Citizens, et al. v. Marshall,
        626 F.2d 882 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Organized Vill. of Kake v. Egan,
        369 U.S. 60 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

O'Bannon v. Town Court Nursing Center,
        447 U.S. 773 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Reeve Aleutian Airways, Inc. v. United States,
        982 F.2d 594 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Richlin Sec. Service Co. v. Chertoff ,
        No. 06-1717, 2008 WL 2229175 at *8 (S.Ct. June 2, 2008) . . . . . . . . . . . . . . . . . . . 18

United States v. Lara,
    541 U.S. 193 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

United States v. Morgan,
    313 U.S. 409 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United Steelworkers of Am. v. Marshall,
    647 F.2d 1189 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

Univ. Med. Ctr. of S. Nev. v. Shalala,
    173 F.3d 438 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.,
    435 U.S. 519 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Williams Natural Gas Co. v. Federal Energy Reg. Comm'n,
    872 F.2d 438 (D.C. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Zobel v. Williams,
    457 U.S. 55 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## FEDERAL STATUTES

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
5 U.S.C. §706(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13, 15
18 U.S.C. § 3243 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
25 U.S.C. § 232 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
25 U.S.C. § 473 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
25 U.S.C. § 473a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
25 U.S.C. § 465 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7-9,17, 18
25 U.S.C. § 476 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21
25 U.S.C. § 476(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18-20
25 U.S.C. § 496 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
25 U.S.C. § 497 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
25 U.S.C. § 715d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
25 U.S.C. § 941h . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
25 U.S.C. § 1725 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
28 U.S.C. § 2341-2351 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
29 U.S.C. § 655(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
43 U.S.C. § 733 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
43 U.S.C. § 733-736 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
43 U.S.C. § 737 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

43 U.S.C. § 1601(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

43 U.S.C. § 1603 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 U.S.C. § 1606 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

43 U.S.C. § 1610(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

43 U.S.C. § 1611 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

43 U.S.C. § 1611(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

43 U.S.C. § 1613 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 U.S.C. § 1613(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

43 U.S.C. § 1617 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 U.S.C. § 1618(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 24

43 U.S.C. § 1620(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

43 U.S.C. § 1636(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

43 U.S.C. § 1601-1629 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 5

43 U.S.C. § 2701-1 through 270-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

47 U.S.C. § 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16


24 Stat. 388 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

26 Stat. 1099 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

34 Stat .197 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

44 Stat. 629 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

48 Stat. 984 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

49 Stat. 1250 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

62 Stat. 35 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

90 Stat. 2786 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

90 Stat. 2792 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

94 Stat. 2434 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## PUBLIC LAWS

Pub. L. No. 94-579; 90 Stat. 2743 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Pub. L.96-487; 94 Stat. 2371 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Pub. L. 101-241; 101 Stat. 1804-10 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## FEDERAL REGULATIONS

25 C.F.R. Part 151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3, 6, 7, 9, 21

25 C.F.R. § 151.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 14, 16, 17, 21

25 C.F.R. § 151.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

25 C.F.R. § 151.3(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

25 C.F.R. § 151.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

25 C.F.R. § 151.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17

25 C.F.R. Part 152 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

25 C.F.R. §152.22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

43 C.F.R. § 2564.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

43 C.F.R. § 2564.0-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

43 C.F.R. § 2564.5-2564.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## FEDERAL REGISTER

66 Fed. Reg. 56608 (Nov. 9, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## OTHER AUTHORITIES

140 Cong. Rec. S6147 (Technical Corrections Act of 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

David S. Case & David A.Voluck, <u>Alaska Natives and American Laws</u>
      133, 140 (2d ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AKIACHAK NATIVE COMMUNITY <u>et al.</u>, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 1:06-cv-00969 (RWR) ) |
| DEPARTMENT OF THE INTERIOR, <u>et al.</u> | ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

<u>Introduction</u>

Plaintiffs are challenging the rule promulgated by the United States Department of the Interior ("Interior") regarding acquisitions by the United States of land in trust status for Indians, published in 1980 and currently codified at 25 C.F.R. Part 151.  Section 151.1 states in relevant part, "[t]hese regulations do not cover the acquisition of land in trust status in the State of Alaska, except acquisitions for the Metlakatla Indian Community of the Annette Island Reserve or it [sic] members."  Underlying this regulatory challenge is the Plaintiffs' position that the Interior Secretary, Dirk Kempthorne ("Secretary"), lacks discretion to categorically exclude trust land acquisitions in Alaska, notwithstanding enactment in 1971 of the Alaska Native Claims Settlement Act, 43 U.S.C. §§ 1601-1629, 1629a-1629h ("ANCSA").  ANCSA extinguished aboriginal rights to land and water, revoked then-existing reservations, and disclaimed any intent to create a trusteeship.

In their Consolidated Complaint ("Compl.") filed on November 9, 2007, the Akiachak

Native Community, et al., ("the Tribal Entities") seek declaratory and injunctive relief concerning the Interior policy not to acquire land in trust status in the State of Alaska for Indians. Compl. ¶ 2 and Prayer for Relief ¶ I-V. The bottom-line relief sought by the Tribal Entities in this lawsuit is for the United States to consider applications to hold land in trust status in Alaska. In the Consolidated Complaint, Alice Kavairlook, ("the individual Plaintiff"), a member of the federally-recognized tribe of the Native Village of Barrow, seeks declaratory and injunctive relief to have her Alaska Native townsite lot's restricted status restored or, in the alterative, for the land to be placed in trust status. Compl. ¶ 2 and Prayer for Relief ¶ I-V.[1] Plaintiff alleges that she received a restricted deed to a townsite lot on October 4, 1983, Compl ¶ 44, but that she subsequently conveyed it, id. ¶ 45, resulting in the termination of the lot's restricted status which she seeks to have restored, id. ¶ 52. Like the Tribal Entities, the individual Plaintiff specifically challenges the rule promulgated by Interior regarding acquisitions by the United States of land in trust status for Indians, published in 1980, and currently codified at 25 C.F.R. Part 151.

Defendants file this memorandum in response to Plaintiffs' Motion for Summary Judgment and in support of Defendants' Cross-Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(b). The Plaintiffs' motion for summary judgment should be denied and Defendants' cross-motion for summary judgment, accompanied herewith, should be granted

---

[1] Restricted land and land that is held by the United States in trust status share the characteristics of protection against voluntary or involuntary alienation without federal approval and exemption from state and local taxation. See Act of May 25, 1926, ch. 379, 44 Stat. 629 (formerly codified at 43 U.S.C. §§ 733-736 (1975)); 25 U.S.C. § 465; 43 C.F.R. § 2564.4; 25 C.F.R. §152.22. A restricted Alaska Native townsite loses its restrictions if the owner conveys the land with federal approval. See 43 U.S.C. §§ 733-736; 43 C.F.R. § 2564.4. The Kavairlook Complaint factually alleges that, under "fraud and duress," on January 10, 1994, she deeded the townsite lot to a private individual (id. ¶ 20), but that on or about June 24, 2002, through judicial action, she reacquired the land. Id. ¶¶ 21-26.

because, as described in detail below, Defendants did not violate 25 U.S.C. §476(f) and (g) or

the Due Process Clause of the Fifth Amendment.  Moreover, Interior's deliberations, as

documented in the certified Administrative Record ("AR") conform with the standard of review

for informal agency actions pursuant to the Administrative Procedure Act, 5 U.S.C. §706(2)(A)

("APA").

Statutory and Legal Background

Plaintiffs' underlying claims implicate ANCSA, a Statute which only applies to land

located in the State of Alaska, and Interior's regulations which describe Interior's policy and

process for acquiring lands in trust for Indians, promulgated at 25 C.F.R. Part 151.  Two statutes

and a federal regulation are directly implicated in the suit.  They are the following:

**The Alaska Native Townsite Act ("ANTA"):**

The Alaska Native Townsite Act ("ANTA"), Act of May 25, 1926, ch. 379, 44 Stat. 629

(formerly codified at 43 U.S.C. §§ 733-736 (1975)), was enacted to supplement the Alaska

Townsite Act of March 3, 1891, ch. 561, § 11, 26 Stat. 1099 (formerly codified at 43 U.S.C. §

732 (1975)).  ANTA originally provided a means for individual Alaska Natives to obtain,

without payment, a restricted title to lots in Alaska townsites.  See 43 C.F.R. §§ 2564.0-3, 2564.1

and 2564.2. The ANTA was amended in 1948 to permit Alaska Natives to obtain unrestricted

deeds. Act of Feb. 26, 1948, 62 Stat. 35, formally codified as 43 U.S.C. § 737.  The Alaska

townsite laws were repealed on October 21, 1976, by Section 703(a) of the Federal Land Policy

and Management Act ("FLPMA"), Pub. L. No. 94-579, 90 Stat. 2743, 2789-90 (1976).

Section 701 of FLPMA, 90 Stat. 2786, a savings provision, states that nothing in the Act

shall be construed to terminate any patent or other land use right existing on the date of repeal.

The effect of the repeal of the Alaska townsite laws was that only townsite occupants who could

-3-

establish that they commenced occupancy prior to October 21, 1976 remained eligible for a deed.  See Aleknagik Natives, Ltd. v. United States, 635 F. Supp. 1477, 1497 (D. Alaska 1985), aff'd, 806 F.2d 924 (9th Cir. 1986); Bristol Bay Hous. Auth., 95 IBLA 20, 24 (1986); City of Klawock v. Andrew, 24 IBLA 85, 90 (1976), aff'd, City of Klawock v. Gustafson, Civ. No. K-74-2 (D. Alaska Nov. 11, 1976).  More than one hundred townsites were established under the Alaska townsite laws.  See D. Case & D. Voluck, Alaska Natives and American Laws 133, 140 (2d ed. 2002).  By 1997, all of the lands in the townsites had been distributed either to individual occupants, to municipalities, or to tribal governments.  See id.  According to the Bureau of Indian Affairs ("BIA") Alaska Title Services Center within the Department of the Interior, there are presently 4,183 townsite lots owned by Alaska Natives under restricted titles.

As discussed above, page 2 and footnote 1, when land was conveyed under ANTA to an individual Alaska Native, some but not all, Alaska Natives elected to receive deeds that restricted the owner's ability to convey the property.  See 43 C.F.R. § 2564.4.  Such ANTA restricted lands were statutorily protected against taxation, levy and sale in satisfaction of the debts, contracts, or liabilities of the patentee and adverse occupancy or prescription.  43 U.S.C. § 733.

In order for an Alaska Native to sell a restricted townsite lot, approval was required from the Area Director (now Regional Director) of the BIA.  43 C.F.R. §§ 2564.5 - 2564.7.  Approval of the sale of a restricted Native townsite lot vests in the purchaser "a complete and unrestricted title from the date of such approval."  43 U.S.C. § 733.  In this case, the individual Plaintiff alleges that she acquired her property under a Native Restricted Trustee Deed conveyance on October 4, 1983, conveyed it, and after having reacquired the land now seeks to have it restored to restricted status or placed in trust.  See Compl. ¶¶ 18-20, 27; Prayer for Relief IV.

-4-

**The Alaska Native Claims Settlement Act ("ANCSA"):**

The Alaska Native Claims Settlement Act of 1971 ("ANCSA"), 43 U.S.C. §§ 1601-1629, 1629a-1629h, another relevant Alaska-specific statute, "embodied a novel and experimental approach in the settlement of Native claims." Case & Voluck, supra, at 168. Section 2(b) of ANCSA declared the congressional policy that:

> the settlement should be accomplished . . . with maximum participation by Natives in decisions affecting their rights and property, without establishing any permanent racially defined institutions, rights, privileges, or obligations, without creating a reservation system or lengthy wardship or trusteeship, and without adding to the categories of property and institutions enjoying special tax privileges or to the legislation establishing special relationships between the United States Government and the State of Alaska.

43 U.S.C. § 1601(b).

In exchange for relinquishing all aboriginal title and claims to land in Alaska, Alaska Natives received 44 million acres of land and $962.5 million in monetary compensation. See 43 U.S.C. §§ 1603, 1611, 1613, 1615. Congress eliminated prior forms of Native land tenure in the state and substituted in their place a novel form of land ownership. In doing so, ANCSA revoked all existing reservations in Alaska, except one (the Annette Island Reserve for the Metlakatla Indian Community, whose members are not eligible for benefits under the Act). See 43 U.S.C. §§ 1617, 1618.[2] Unlike prior land claims settlements, Congress directed settlement

---

[2]      Also in keeping with above quoted policy declaration, Congress in ANCSA repealed the Alaska Native Allotment Act of May 17, 1906, formally codified at   43 USC § 2701-1 through 270-3, 34 Stat .197, as amended (1970).  ANCSA §18, 43 U.S.C. §1617.  The 1906 Act had been the primary authority for granting land titles to individual Alaska Natives, which enjoyed federal restrictions against alienation and taxation.  In its place Congress provided in ANCSA §14(h) (5) for individual Natives to obtain unrestricted fee title to their primary places of residence, 43 U.S.C. §1613 (h) (5), again expressing legislative intention to cut off creation of trust land in Alaska.

lands and monies to be conveyed in fee (not in trust) and without permanent restrictions on voluntary or involuntary alienation.  <u>See</u> 43 U.S.C. § 1611.  Under ANCSA, the settlement lands and/or monies provided by the Act were distributed to thirteen regional corporations and to more than two hundred village corporations.  <u>See</u> 43 U.S.C. §§ 1606, 1607, 1610(b)(1), 1611, 1615.

To enable village corporations to acquire lands near their Native villages, ANCSA withdrew public lands surrounding Native villages "from all forms of appropriation under the public lands laws," except for those lands already "subject to valid existing rights."  43 U.S.C. § 1610(a)(1); <u>see</u> <u>Aleknagik Natives, Ltd.</u>, 635 F. Supp. at 1481.  ANCSA gave village corporations three years from its enactment to select lands out of these withdrawn areas.  43 U.S.C. § 1611(a)(1).  ANCSA also required village corporations to issue village land occupants, as of the date of ANCSA's enactment, patents to the surface estates of those lands.  <u>See</u> 43 U.S.C. § 1613(c)(1).  Interior continued to convey restricted or unrestricted deeds to townsite lands post-ANCSA if the Alaska Native applicants could establish that they commenced occupancy prior to the passage of FLPMA in 1976.

The Alaska Federal District Court and the Ninth Circuit have found these land management practices to be consistent with ANCSA's directive to accomplish the settlement "without creating a . . . lengthy . . . trusteeship," 43 U.S.C. § 1601(b), and have determined that the Secretary had validly construed ANCSA to allow the continued administration of existing townsites.  <u>See</u> <u>Aleknagik Natives, Ltd.</u>, 635 F. Supp. at 1495.

**Interior Regulations Codified at 25 C.F.R. Part 151:**

The Secretary does not have general authority to place land in restricted status. Consequently, Interior has not promulgated regulations to do so.  <u>Cf.</u> 25 C.F.R. Part 152 (regarding sale of restricted lands).  While the Secretary does have general discretionary

authority for acquiring land in trust for Indians under Section 5 of the Indian Reorganization Act of 1934, 48 Stat. 984, 25 U.S.C. § 465 ("IRA"), with the BIA implementing regulations codified at 25 C.F.R. Part 151, the regulations expressly distinguish on-reservation applications from off-reservation applications.  <u>Compare</u> 25 C.F.R. § 151.10 (on-reservation criteria) <u>with</u> § 151.11 (off-reservation criteria).

Except for the Annette Island Reserve held by the Metlakatla Indian Community, there are no Indian reservations in Alaska.  All other former Alaska reservations were explicitly revoked by ANCSA.  43 U.S.C. § 1618(a).  And, consistent with current BIA policy of not acquiring land in trust for an individual Indian when the land to be acquired is located off-reservation, Part 151 does not contain procedures for off-reservation acquisitions for individuals.  <u>See</u> 25 C.F.R. § 151.3(b); <u>cf.</u> 25 C.F.R. § 151.11 ("The Secretary shall consider the following requirements in evaluating tribal requests for the acquisition of lands in trust status, when the land is located outside of and noncontiguous to the tribe's reservation, and the acquisition is not mandated . . . .").  Consequently, current regulations preclude an individual Indian from having off reservation land placed in trust not only in Alaska, but nationwide. Therefore, the regulations have been inapplicable to trust land acquisitions within the State of Alaska for either Indian tribe or Native individuals (except for the Metlakatla Indian Community of the Annette Island Reserve or its members).  <u>See</u> 25 C.F.R. § 151.1.

**Historical Perspective and Recent Policy Initiatives:**

The general authority for the Secretary of the United States Department of the Interior to take land in trust for Indians is 25 U.S.C. § 465, enacted as Section 5 of the IRA. The IRA was a major turning point in national Indian policy. It reversed the policy of assimilation of the General Allotment (Dawes) Act of 1887, 24 Stat. 388 which had resulted in a substantial

breakup of Native American lands.  Section 5 of the IRA did not initially apply to Alaska.

Specifically, Section 13 of the IRA generally excluded the application of the IRA to "any of the

Territories [which included Alaska at that time], colonies, or insular possessions of the United

States," but five Sections of the IRA, not including Section 5, did apply to Alaska. See 25 U.S.C.

§ 473.  Two years later, in 1936, acting on a proposal submitted by Secretary Harold Ickes,

Congress made most of the remaining provisions of the IRA, including Section 5, applicable in

Alaska. 25 U.S.C. § 473a. Thus, Congress specifically authorized the Secretary to take Alaska

lands in trust for Native Alaskans. Id., 49 Stat. 1250.  Then in 1971, Congress enacted ANCSA

which, as discussed above, effected a comprehensive settlement of aboriginal land claims in

Alaska.  ANCSA did not expressly repeal the 1936 IRA's provision authorizing the Secretary to

take Alaska land in trust.

    Five years after ANCSA, Congress expressly repealed some statutes that applied to

Alaska lands.  Section 704(a) of the FLPMA of 1976,  90 Stat. 2792, expressly repealed Section

2 of the May 1, 1936 Act (formerly 25 U.S.C. § 496) and the May 31, 1938 Act (formerly 25

U.S.C. § 497).  These statutes had authorized the Secretary to designate tracts of land in Alaska

as Indian reservations (Section 2 of the 1936 Act) and to reserve tracts of land in Alaska for

schools, hospitals, and other uses for Indians, Eskimos, and Aleuts (1938 Act).  In contrast  to

the repeal of these laws specifically applicable in Alaska, Congress did not repeal 25 U.S.C. §

465, an omission which was understandable because its reach was nationwide.

    In 1978, the Associate Solicitor, Indian Affairs, reviewed the question of whether the

ANCSA precluded the Department from taking land of the former Venetie Reserve back into

trust. AR 00001-00005. The Associate Solicitor noted that the "intent of Congress [in ANCSA]

to permanently remove all Native lands in Alaska from trust status is unmistakable" and opined

that it would be an abuse of discretion to use Section 5 to restore the former Venetie Reserve to

trust status.  In 1980, the Department promulgated regulations, 25 C.F.R Part 151, governing the

acquisition of land into trust.  These regulations "set forth the authorities, policy, and procedures

governing the acquisition of land by the United States in trust status for individual Indians and

tribes."  25 C.F.R. § 151.1.  The last sentence of this subsection states "[t]hese regulations do not

cover the acquisition of land in trust status in the State of Alaska, except acquisitions for the

Metlakatla Indian Community of the Annette Island Reserve or it [sic] members."  The preamble

to this rulemaking notes only that ANCSA "does not contemplate further acquisition of land in

trust status, or the holding of land in such status . . . with the exception of . . . the Metlakatla

Indian Community."  45 Fed. Reg. 62,034 (Sept. l8, 1980).[3]

     The Statute authorizing trust land acquisitions, 25 U.S.C. § 465, contains no such

limitation:

> The Secretary of the Interior is authorized, in his discretion, to acquire, through
> purchase, relinquishment, gift, exchange, or assignment, any interest in lands,
> water rights, or surface rights to lands, within or without existing reservations,
> including trust or otherwise restricted allotments, whether the allottee be living or
> deceased, for the purpose of providing land for Indians.

25 U.S.C. § 465.  In October 1994, several Alaska Villages (Chilkoot Indian Association, Native

Village of Larsen Bay, Kenaitze Indian Tribe), represented by the Native American Rights Fund

("NARF"), petitioned the Secretary to undertake rulemaking to modify 25 C.F.R. § 151.1[4] to

delete the Alaska exemption, and to allow the Secretary to exercise his discretion to acquire land

---

[3]    It is noted that the Preamble does not refer to the 1978 Opinion, nor does it flatly say
that ANCSA forbids acquisition of land in Alaska in trust.

[4]    See "Petition for Rule-Making to the Secretary of [the] Interior to Revise 25 C.F.R. § 151.1 to
bring Federally Recognized Alaska Native Tribes Within the Scope of Federal Regulations Authorizing
the Acquisition of Land in Trust Status," submitted on October 11, 1994. AR 00272-00297.

outside the Annette Island Reserve, in trust for Alaska Natives. The petitioners did not ask for any particular lands in Alaska to be taken in trust, but only sought removal of the regulatory bar to such acquisitions.  The Department published a notice of the petition in the Federal Register and requested comments. 60 Fed. Reg. 1956 (Jan. 5, 1995).  Subsequently, in 1999, the Department published proposed amendments to the 1980 trust land acquisition regulations in their entirety.  64 Fed. Reg. 17,574 (Apr. 12, 1999).  The preamble to those proposed amendments specifically noted the existing bar in the regulations to the acquisition of trust lands in Alaska and invited comment on the same.

On January 16, 2001, the Solicitor rescinded the September 15, 1978 opinion of the Associate Solicitor that had concluded it would be an abuse of discretion for the Secretary to take land in trust in Alaska in view of the clear intent in ANCSA to remove Native lands from trust. AR00619-00631. In the view of the Solicitor, the 1978 opinion wrongly concluded that ANCSA and FLPMA together had repealed Secretary's authority to acquire, in trust, land in Alaska.  On the same day, the Department issued final rules amending the land acquisition regulations. AR 00585-00619. The amended regulation, however, continued the ban on the acquisition of land in Alaska but indicated that the Department would consider, over the next three years, the legal and policy issues involved and determine at the end of that period whether the ban should be removed.  66 Fed. Reg. 3452. This final rule was, however, later withdrawn, leaving in place the original regulations and the ban on their applicability to acquiring land in trust in Alaska.  66 Fed. Reg. 56608 (Nov. 9, 2001). AR 00748-00752.

-10-

<u>Standard of Review</u>

**Administrative Procedure Act:**

Plaintiffs' challenge is governed by the Administrative Procedure Act's ("APA")

standard of review for informal agency adjudications; whether the action was "arbitrary,

capricious, or otherwise not in accordance with law." See 5 U.S.C. § 706; <u>Citizens to Preserve</u>

<u>Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 416 (1971). This APA standard of review is a narrow

one whereby the court is not empowered to substitute its judgment for that of the agency. <u>Marsh</u>

<u>v. Oregon Natural Res. Council</u>, 490 U.S. 360, 378 (1989); <u>Gilbert v. Nat'l Transp. Safety Bd.</u>,

80 F.3d 364, 368 (9th Cir. 1996). The Court is not to determine whether it would make an

administrative decision differently; instead, it is to evaluate whether "the decision was based on

the relevant factors and whether there has been a clear error of judgment." <u>Overton Park</u>, 401

U.S. at 416; <u>City of Alexandria v. Fed. Highway Admin.</u>, 756 F.2d 1014, 1017 (4th Cir. 1985).

Furthermore, judicial review is focused upon the administrative record before the agency at the

time the decision is made. <u>Florida Power & Light Co. v. Lorion</u>, 470 U.S. 729, 743 (1985). An

agency deserves an extra measure of deference with regard to factual questions involving

scientific matters in its area of expertise. <u>Balt. Gas & Elec. Co. v. Natural Res. Def. Council</u>,

462 U.S. 87, 103 (1983); <u>Fed. Power Comm'n v. Fla. Power & Light Co.</u>, 404 U.S. 453, 463

(1972).

**Summary Judgment**:

Summary judgment is appropriate when "there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." <u>See</u> Fed. R. Civ. P., Rule

56; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). "[T]he mere existence of some

alleged factual dispute between the parties will not defeat an otherwise properly supported

-11-

motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247–48.  The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of its case.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Because the court need not and, indeed may not, "find" underlying facts, there are no material facts essential to the court's resolution of this action.  Id. at 322; Lujan v. Nat'l Wildlife Fed'n., 497 U.S. 871, 883 (1990).

In APA cases, the district court sits as an appellate tribunal.  Univ. Med. Ctr. of S. Nev. v. Shalala, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999) (citing Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1225-26 (D.C. Cir.1993).  Under the APA, judicial review is normally confined to the administrative record already in existence, and does not contemplate a factual record developed de novo in federal district court.  Community for Creative Non-Violence v. Lujan, 908 F.2d 992, 998 (D.C. Cir. 1990).  "As all material facts are within the administrative record, no material facts are in dispute."  LeBoeuf, Lamb, Greene & MacRae, LLP v. Abraham, 215 F.Supp 2d 73, 84 (D.D.C. 2002); see also Florida Power and Light Co., 470 U.S. at 743; Commercial Drapery Contractors, Inc. v. United States, 133 F. 3d 1, 7 (D.C. Cir. 1998). Because an administrative review proceeding, such as this one, does not implicate the possibility of a trial, if the court were to conclude from a review of Interior's  administrative record that the agency's decision was arbitrary or capricious, the remedy would be to remand the matter for reconsideration.  Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 549 (1978); Camp v. Pitts, 411 U.S. 138, 143 (1973).

<u>**Argument**</u>

**I.    INTERIOR'S ADMINISTRATIVE ACTIONS ARE FULLY SUPPORTED BY THE ADMINISTRATIVE RECORD**

As stated above, the 1994 Chilkoot Indian Association, <u>et al.,</u> Petition for Review sought removal of the regulatory bar to acquiring Alaska lands in trust.  As noted above, and as supported by the record, the Department of the Interior's final determination in 2001 was to leave in effect the existing rule. AR 00748-00751.  Accordingly, Defendants' are entitled to summary judgment regarding the Plaintiffs' Third Cause of Action.  Pls' Compl. §58.

Plaintiffs challenge the Assistant Secretary's final determination pursuant to Section 706(2)(A) of the APA.  The APA directs the Court to uphold the Assistant Secretary's final determination unless it is deemed to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. §706(2)(A).  Plaintiffs bears the burden of showing that the Assistant Secretary acted arbitrarily in reaching the final determination.  <u>Cape Hatteras Access Preservation Alliance v. Dep't of Interior</u>, 344 F. Supp.2d 108, 119 (D.D.C. 2004) (citations omitted).  Although the inquiry must be thorough, the standard of review is narrow and highly deferential.  The Assistant Secretary's decision is "entitled to a presumption of regularity," and the Court cannot substitute its judgment for that of the agency decision-maker.  <u>Overton Park</u>, 401 U.S. at 415.

Plaintiffs do not call into question the thoroughness of Interior's review or that Interior's seven-year "hard look" at the issues was not based on relevant factors.  Plaintiffs merely object to the outcome of the administrative proceedings.  The fact that Plaintiffs disagree with the conclusions drawn by the Assistant Secretary does not make the final determination arbitrary, capricious, an abuse of discretion or contrary to law.  <u>United States v. Morgan</u>, 313 U.S. 409,

-13-

419-20 (1941) (the Secretary can attach a different significance to the data).  In the event of

conflicting views, the Assistant Secretary has the discretion to rely on its own  expertise.  Marsh

v. Oregon Natural Defense Council, 490 U.S. 360, 378 (1989);  McKinley v. U.S., 828 F. Supp.

888, 892 (D.N.M. 1993) ("That the agency chose to follow the opinions of its own experts is not

grounds for overturning the [agency] decision").  As set out in Miami Nation of Indiana, Inc. v.

Babbit, 112 F.Supp. 2d. 742 (N.D. Ind. 2000):

> An agency decision ordinarily isn't arbitrary and capricious if the court sees that
> the agency considered the relevant data and explained its decision, and the court
> can identify a rational connection between the agency's factual findings and its
> decision.

Id. at 753 (citation omitted).  As detailed above, the Secretary considered the Chilkoot, et al.

Petition and articulated fully informed reasons for Interior's final determination.

## II.    INTERIOR PROPERLY EXERCISED ITS DISCRETIONARY AUTHORITY

As discussed in detail above, the final rules promulgated on January 16, 2001 that

provided for Secretarial review of land-into-trust petitions in Alaska were withdrawn in

November 2001 (66 Fed. Reg. 56608 (Nov. 9, 2001)), the effect of which was to leave in place

the original regulations, 25 C.F.R. § 151.1, and the ban on acquiring land in trust in Alaska.

Generally, when an agency withdraws a rule, as opposed to promulgating a rule, the application

of the APA's "arbitrary and capricious" standard is viewed more deferentially.  Williams Natural

Gas Co. v. Federal Energy Reg. Comm'n, 872 F.2d 438, 443, 450. (D.C. 1989) ("We recognize

that an agency's discretion is surely at its height when it chooses not to act.")  (Emphasis in

original)); Ark. Power & Light Co. v. ICC, 725 F.2d 716,723 (D.D.C. 1984) ("[t]his court will

compel an agency to institute rulemaking proceedings only in extremely rare instances . . . .

[S]cope of review under the APA of an agency decision to deny a rulemaking petition is very

-14-

<u>narrow</u>.") (Emphasis in original)).

In withdrawing the Rule, Interior specifically detailed its reasons for withdrawal of the Rule, mentioning numerous considerations, many of which came to light during the public comment period in the previous months. <u>See</u> <u>id.</u>, AR 00750-51. The Publication stated Interior's view that it was "impracticable and inefficient" to only withdraw part of the Rule "as the Bureau of Indian affairs needs clear direction and standards to process land into trust applications [in Alaska]" . . . and Interior's need to conduct consultation with Indian tribes in the following areas:

> [A]pplications for housing or home site purposes to meet individual housing needs; the requirement of land use plans; the standards of review used in reaching a determination of whether to accept land into trust; the availability of applications for review; and the use of computer technology prior to the proposal of a new Acquisition of Title to Land in Trust rule.

<u>Id.</u> The heightened degree of deference the Secretary is due in this case is an essential consideration in the Court's review of these factors.

Thus, Interior's review of the relevant considerations pursuant to withdrawal of the Rule fully comports with APA requirements, and the decision should be upheld because the decision was rational, has a reasoned basis which is supported in the record, and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. §706(2)(A); <u>Citizens to Preserve Overton Park</u>, 401 U.S. at 416. Further, the APA's informal rulemaking procedures apply and require the Secretary to identify and comment only on major issues raised during the proceeding, as he did. <u>Community Nutrition Inst. v. Bergland</u>, 493 F.Supp. 488, 492-93 (D.D.C. 1980).

Plaintiffs' challenge Interior's decision to withdraw the Rule on the basis that when a long time goes by and the Secretary has not renewed review, justification for the delay, and the

Secretary's discretion "evaporate" citing <u>Geller v. FCC</u>, 610 F.2d 973 (D.C. Cir 1979), <u>United Steelworkers of Am. v. Marshall</u>, 647 F.2d 1189 (D.C. Cir. 1980), and <u>Am. Ass'n of Paging Carriers v. FCC</u>, 442 F.3d 751 (D.C. Cir. 2006).[5]  Pls' Brf. pp. 18-20.  The Circuit, however, also recognizes that the issue of delay within the context of administrative proceedings is to be viewed by determining whether or not the Secretary acted as a result of good faith efforts, taking into consideration other ordered priorities.  <u>Nat'l Cong. of Hispanic American Citizens, et al. v. Marshall</u>, 626 F.2d 882, 890 (D.C. Cir. 1979).  In that case, the court concluded that the Secretary's claim of a good faith effort to discharge his statutory obligations was supported by the fact that he had already promulgated standards concerning the subject matter of that suit. <u>Id.</u> Although the court cautioned that Plaintiffs were entitled to a timetable, it determined that a delay of years beyond the prescribed time period was not an abuse of discretion.

The same is also true here.  25 C.F.R. § 151.1 cannot be read as an absolute prohibition on the Secretary's discretionary authority to take lands into trust in the State of Alaska.  The regulation only excludes using those Part 151 regulations to take Alaska land in trust, and does not flatly prohibit the Secretary from taking Alaska land in trust outside of those regulations.  Consistent with this discretion and Interior's good faith effort, the Solicitor did rescind the September 15, 1978, opinion of the Associate Solicitor, and the preamble to the 2000 Amendments to Part 151 (subsequently withdrawn) which indicated the Department's intent to

---

[5]    The cases upon which Plaintiffs rely all involve challenges to statutorily prescribes duties – <u>Geller</u> and <u>Am. Ass'n of Paging Carriers</u> under the Communications Act, 47 U.S.C. § 402 and <u>United Steelworkers of Am.</u> under Section 6 of the Occupational and Safety and Health Act, 29 U.S.C. §655(f) (1976).  Courts of appeals have original appellate jurisdiction in all instances.  <u>See</u> <u>e.g.</u>  the Judicial Review Act, 28 U.S.C. §§ 2341-2351.  On the other hand, the <u>Akiachak, et al.</u> suit arises from informal rulemaking and APA-styled challenges are to be brought in district courts.

later consider removal of the bar. AR 00358-00359 and AR 00589-00590.  The record, therefore

reflects that 25 C.F.R. § 151.1, as a matter of policy, serves merely as a limitation rather than

revocation of the Secretary's discretionary authority under 25 U.S.C. §465 to take lands into

trust in the State of Alaska.  Thus, to the extent 25 C.F.R. § 151.1, as adopted in 1980 simply

followed the 1978 Associate Solicitor's Opinion on this point it was unnecessary that Interior do

so. Nevertheless, Part 151 is a duly promulgated regulation, and as such, ought to be amended

before the Secretary could, if he chose, exercise his authority to take Alaska land in trust.

        It is important to emphasize that although the Secretary has both the authority and

discretion to take lands within the State of Alaska into trust, the Secretary is not legally obligated

to do so.  See, e.g., McAlpine v. United States, 112 F.3d 1429 (10th Cir. 1997);  Florida v. U.S.

Dep't of Interior, 768 F.2d 1248, 1256 (11th Cir. 1985), cert. denied, 475 U.S. 1011 (1986)

(Secretary's decision to acquire land in trust is discretionary and "decision to acquire a particular

tract of land would involve a myriad of factors").

        Thus, even if the regulation is changed to eliminate the bar, the Department is not under a

legal duty to take Alaska land in trust. In this vein, for example, without prejudging any

outcome, in the case of individual Indian petitions (non-tribal) to place in trust outside of Alaska,

25 C.F.R. § 151.3 (b) provides as follows:

> Subject to the provisions contained in the acts of Congress which authorize land
> acquisitions or holding land in trust or restricted status, land may be acquired for
> an individual Indian in trust status: (1) When the land is located within the
> exterior boundaries of an Indian reservation, or adjacent thereto; or (2) When the
> land is already in trust or restricted status.

25 C.F.R. § 151.11 provides further guidance and restrictions on the Secretary's discretion.

Thus, upon the filing of the individual Plaintiff's petition to have her lot placed in trust, it will be

Interior's responsibility, among others in the exercise of the Secretary's discretion, to determine

how such regulations apply, especially given the fact that there are no reservations in Alaska, except for the Metlakatla Indian Community of the Annette Island Reserve.

Clearly, then the issue of trust lands in Alaska is and has been a matter that is within the Secretary's sound discretion and Interior's expertise. But that by itself, is not evidence of bad faith. In fact, the record evidences the Secretary's good faith in Interior's seven-year long consideration of Chilkoot, et al. Petition and the rational reasons for Interior's final determination. Thus, the Court should reject the Geller, United Steelworkers of Am., and Am. Ass'n of Paging Carriers rationale without also considering the good faith standard of Nat'l Cong. of Hispanic American Citizens.

## III.    THE REGULATORY PROHIBITION DOES NOT VIOLATE 25 U.S.C. §476(f) AND (g)

While legislative history should not be "used to make words appear to come from Congress's mouth which were spoken or written by others (individual Members of Congress, congressional aides, or even enterprising lobbyists)," it is appropriate to use legislative history to provide insight into the plain meaning of statutory language. See, Koons Buick Pontiac GMS, Inc. v. Bradley, 543 U.S. 50, 73 (2004) (Scalia, J. (dissent)); see also, Richlin Sec. Service Co. v. Chertoff,        U.S.        , No. 06-1717, 2008 WL 2229175 at *8 (S.Ct. June 2, 2008). In this instance, the legislative history clearly addresses the reasons why 25 U.S.C. §476(f) and (g) was enacted and affirms Congress' intention to correct how Interior was, in their view, misinterpreting section 16 of the IRA concerning the prerogative of he Secretary to revoke tribal elections and thus, favoring one group of Indians over another residing on the same reservation. See IRA, Section 16. Plaintiffs' expansive interpretation of Section 16 to somehow invoke Section 5's (25 U.S.C. § 465) authority to acquire trust lands for Indians is beyond credibility and

-18-

must be rejected.

In 1994, Congress sought to clarify the intent of Section 16 of the IRA and to correct the

Department's interpretation of the same through enactment of  25 U.S.C. §476(f) and (g).

Plaintiffs blatantly ignores Congress' purpose in legislating the Act and the important legislative

history which explains why Congress deemed the Act necessary.

Senator McCain, a sponsor of the Bill, stated the purpose of the bill before the Senate as

follows:

> The purpose of the amendment is to clarify that section 16 of the Indian
> Reorganization Act was not intended to authorize the Secretary of the Department
> of the Interior to create categories of federally recognized Indian tribes.  In the
> past year, the Pascua Yagui Tribe of Arizona has brought to our attention the fact
> that the Department of the Interior has interpreted section 16 to authorize the
> Secretary to categorize or classify Indian tribes as being either created or historic.
> According to the Department, created tribes are only authorized to exercise such
> powers of self-governance as the Secretary may confer on them.

140 Cong. Rec. S6147 (Technical Corrections Act of 1994).  He further stated, "I can find no

basis in law or policy for the manner in which Section 16 has been interpreted by the Department

of the Interior.  Clearly the interpretation of Section 16 which has been developed by the

Department is inconsistent with the principal policies underlying the IRA, which were to

stabilize Indian tribal governments and to encourage self-government. " Id.  Emphasis added.

Senator Inouye, also a sponsor of the Bill, further elaborated on the need for the legislation:

> I have reviewed section 16 of the Indian Reorganization Act and have reached the
> conclusion that on its face it does not authorize or require the Secretary to
> establish classifications between tribes or to categorize them based on their
> powers of self-governance . . . . The amendment which we are offering to section
> 16 will make it clear that the Indian Reorganization Act does not authorize or
> require the Secretary to establish classifications between Indian tribes.

Id.  Emphasis added.

The Amendment served to overrule a 1936 Solicitor's Opinion that concluded that by

-19-

authorizing the adoption of tribal constitutions through enactment of Section 16 of the IRA, Congress intended to distinguish the manner in which the provision was applied to "historic tribes versus "non-historic" or "created" tribes. Thus, to the extent that 25 U.S.C. § 476 (f) and (g) are intended to merely address the manner in which Section 16 of the IRA is applied to federally recognized tribes, these provisions have no bearing on Section 5 of the IRA or the land-into-trust relief that the Alaska Plaintiffs seek here. Accordingly, Plaintiffs cannot rationally rely on 25 U.S.C. §476(f) and (g) for the proposition that the Secretary's discretion concerning trust lands in Alaska in any way violated this law.

This notwithstanding, it is reasonable to interpret the enactment of 25 U.S.C. §476(f) and (g) as an indication of congressional intent that unless authorized or directed by statute, Interior may not, though administrative action, classify, enhance or diminish the privileges and immunities available to an Indian tribe under 25 U.S.C. § 476 relative to other similarly situated federally recognized tribes. Thus, in order to determine what constitutes "relative to other similarly situated federally recognized tribes", Interior must seek guidance from federal statutes. In this regard, it is noted the United States Code is replete with special legislation limiting or otherwise affecting the tribal powers of individual tribes or groups of Indians. See e.g., 25 U.S.C. §941h (all matters involving tribal powers immunities, and jurisdiction of the Catawba Indian Tribe of South Carolina are governed by a settlement agreement and State Act); 25 U.S.C. §715d (granting Oregon civil and criminal jurisdiction within the boundaries of the Coquille Reservation); 25 U.S.C. §§ 232, 233 (granting New York civil and criminal jurisdiction on Indian reservations); 18 U.S.C. §§ 3243 (granting Kansas criminal jurisdiction on Indian reservations); 25 U.S.C. §1725 (granting Maine criminal jurisdiction over Indian reservations). In other words, Congress has often found it necessary and/or prudent, to enact statutes that

classify, enhance or diminish the privileges and immunities available to an Indian tribe relative to other similarly situated federally recognized tribes.  Clearly, ANCSA is such a statute.

Indeed, it may be argued that taking land in trust under the authority of 25 U.S.C. §465 is inconsistent with the purpose underlying federal legislation providing special protection of property interests of Alaska Native corporations.  For example, Congress extended and then made permanent the tax immunity for undeveloped lands held by Native corporations.  See 43 U.S.C. § 1620(d)(1) as amended by Pub. L.96-487, 94 Stat. 2434 (Dec. 2, 1980).  Congress also provided extensive protections against creditor claims under 43 U.S.C. § 1636(d), Pub. L. 101 – 241, 101 Stat. 1807 (Feb. 3, 1988).  See also the Land Bank and Settlement Trust provisions, codified at 43 D.S.C. §§ 1629e and 1636, which were added to ANCSA in 1980 and 1988 by Pub. L. 96-487, 94 Stat. 2371, 2444-47 and Pub. L. 101-241, 101 Stat. 1804-10.

While these measures might be viewed as partial substitutes for the protections afforded by the Secretary taking land in trust for Natives, they are nonetheless measures mandated by Congress rather than by administrative directive which, arguably, 25 U.S.C § 476 (f) and (g) is intended to prohibit. Thus, ANSCA in conjunction with FLPMA, clearly support the Department's position that Alaskan Natives are not "similarly situated" in relation to other federally recognized tribes for purposes of the applicability of 25 C.F.R. Part 151.  Accordingly, Plaintiffs' challenge to 25 C.F.R. § 151.1 on grounds that the regulation violates 25 U.S.C § 476 (f) and (g) is wrongly founded.

**IV.    THE REGULATORY PROHIBITION DOES NOT VIOLATE EQUAL PROTECTION UNDER THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT**

**A.    The Plaintiffs Have Not Been Deprived of Due Process of Law.**

Plaintiffs allege that the "regulatory bar" prohibiting them from having the Defendants take property in trust or restricted status is a violation of the Equal Protection and Due Process clauses of the United States Constitution. Pls.' Compl., ¶ 56 (Plaintiff's Second Cause of Action). See also Pls' Brf. pp. 9-14. Plaintiffs' argument fails because the Secretary's withdrawal of the final rules issued on January 16, 2001 leaving in place the original regulations and the ban on their applicability to acquiring land in trust in Alaska (66 Fed. Reg. 56,608 (Nov. 9, 2001)) does not implicate the due process guarantee.

Even assuming <u>arguendo</u> the Equal Protection and Due Process clauses are applicable, the 1994 Petition for Rule-Making by Alaska Indian entities (AR 00272) received an unbiased, detailed, and thorough evaluation over the ensuing seven years it was being considered by Interior. See AR generally. Interior's thorough deliberations and the Secretary's final determination withdrawing the rules issued on January 16, 2001 and leaving in place the original regulations and the ban on their applicability to acquiring land in trust in Alaska was wholly consistent with the standards for review required by 5 U.S.C. § 706(2)(A) of the APA. Accordingly, as discussed in detail above, Defendants are entitled to summary judgment regarding Plaintiffs' Third Cause of Action. (Pls.' Compl., ¶58. See also Pls' Brf. pp. 14-26.)

**B.    Plaintiff Does Not Possess a Constitutionally Protected Property Interest; Thus, the Due Process Guarantee Does Not Apply.**

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" <u>American Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 59 (1999) (citing U.S. Const., Amend. 14) (additional citation omitted). If

a government action does not deprive an individual of such an interest, the due process guarantee does not require any hearing or process whatsoever – even if the challenged action adversely affects that individual in other ways.  See e.g., O'Bannon v. Town Court Nursing Center, 447 U.S. 773 (1980).  Thus, "only after finding the deprivation of a protected interest" may the Court proceed to considering Plaintiffs' allegations.  American Mfrs. Mut. Ins. Co., 526 U.S. at 59; see also Reeve Aleutian Airways, Inc. v. United States, 982 F.2d 594, 598 (D.C. Cir. 1993) ("If the party has a protected interest, we then decide how much process is due.") (internal quotation omitted).

An examination of the relevant case law demonstrates that Plaintiffs do not possess the necessary "legitimate claim of entitlement."  "[T]he Constitution's 'procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits.'"  C&E Services, Inc. of Washington v. District of Columbia Water and Sewer Authority, 310 F.3d 197, 200 (D.C. Cir. 2002) (quoting Board of Regents v. Roth, 408 U.S. 564, 576 (1972)) (emphasis in original).  See also Greenlee v. Board of Medicine of District of Columbia, 813 F. Supp.. 48, 56 (D.D.C. 1993) ("[c]ourts generally have held that present enjoyment is integral to the existence of a property entitlement.").  Indeed, the Supreme Court has explicitly stated:

> We have never held that applicants for benefits, as distinct from those already receiving them, have a legitimate claim of entitlement protected by the Due Process Clause of the Fifth or Fourteenth Amendment.

Lyng v. Payne, 476 U.S. 926, 942 (1986) (emphasis added).

Plaintiffs cannot establish the critical constitutionally protected property interest, because the Plaintiffs' subject lands do not presently have the land trust status from which they would receive the benefits that such a status would extend to them.  In fact only one Alaska reservation

does have trust status – the Metlakatla Indian Community, pursuant to a congressionally mandated designation. There are no Indian reservations in Alaska. All other former Alaska reservations were explicitly revoked by ANCSA. 43 U.S.C. § 1618(a).

Consequently, Plaintiffs' due process claims are not based, as they must be, on existing specific benefits and services that come with lands put in Trust by the Secretary. Thus, Plaintiffs' claims are akin to an applicant for benefits, "as distinct from [one] already receiving" benefits and possessing a "legitimate claim of entitlement protected by the Due Process Clause." Lyng, 476 U.S. at 942. In addition, Plaintiffs do not cite any specific benefits they or Tribal members had been receiving that were terminated by the Secretary's actions. Moreover none of the cases Plaintiffs cite in support of their due process argument stand for the proposition that a party has a due process/equal protection right to a property interest which has not been received.

Notably, the cases on which Plaintiffs rely either did not uphold due process/equal protection rights or the courts did not reach that issue. The petitioner in United States v. Lara, 541 U.S. 193 (2004), asserted that the Due Process Clause forbids Congress to permit a tribe to prosecute a non-tribal member. Noting that Lara's due process argument "suffers from a critical structural defect" the Court did not consider the merits of that claim. In American Fed'n of Gov't Employees v. United States, 195 F.Supp.2d 4 (D.D.C. 2002), the plaintiff was not able to compete for a benefit on an equal footing with others, and was being subjected to different treatment. Ruling that there was no substantive due process right, the court stated that property interests are not generated by the Constitution, "[r]ather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that support claims of entitlement to those benefits." (Quoting Roth, 408 U.S. at 577). In Littlewolf v. Lujan, 877 F.2d 1058 (D.C. Cir. 1989), the court found

it "unnecessary to resolve the Due Process issues because even if we assume that the period allowed for filing claims is unreasonably short and "takes" the White Earth Indians' property rights, we conclude that the Act's compensation provision (land value plus interest) is reasonable" Id.

In Narragansett Indian Tribe v. National Gaming Comm'n, 158 F.3d 1335 (D.C. Cir. 1998), appellant brought an action against National Indian Gaming Commission and its Chairman challenging the constitutionality of amendments to the Rhode Island Indian Claims Settlement Act prohibiting the Commission from authorizing gambling on Narragansett lands. Rejecting the argument, the court stated that "the Narragansetts are not the only tribe excluded from IGRA and subjected instead to state gaming law. The Catawba Indians, the Passamoquoddy Tribe and Penobscot Nation, and the Wampanoag Tribal Council of Gay Head have also regained lands through legislative settlements in which they accepted general state jurisdiction over tribal lands." Narragansett Indian Tribe, 158 F.3d at 1341. Similarly, in the case of the Alaska tribes, they are all subject to the lands-into-trust prohibition except for one excepted by Congress. In Organized Vill. of Kake v. Egan, 369 U.S. 60 (1962), the Villages of Kake and Angoon had not been provided with a reservation and there is no statutory authority under which the Secretary might permit them to operate fish traps contrary to state law. The court did not consider the Villages' equal protection claims.

Zobel v. Williams, 457 U.S. 55 (1982) can be distinguished. There petitioner asserted that Alaska's dividend program, distributing a State fund's earnings directly to the State residents, would make newer residents receive different benefits than those who have been in the State since 1959. The Court invalidated the rule because it violated the Privileges and Immunities Clause due to its association with "the rights to travel and migrate interstate." Id. at

78.  The relief Plaintiffs seek relates only to Alaska Indian interests and does not invoke inter-state commerce interests as in Zobel.

Thus, the cases upon which Plaintiffs rely offer little support for the proposition that Plaintiffs possess a protected property interests.  Such cases regarding the procedural protections associated with the continued provision of benefits have little applicability to Plaintiffs who are similarly situated with other Alaskan tribes and their members.  Plaintiffs clearly hoped that the seven-year deliberative process would afford them the opportunity to have land put into trust.  In the end, the Secretary determined that final rules issued on January 16, 2001 would be withdrawn, leaving in place the original regulations and the ban on acquiring land in trust in Alaska.  Plaintiffs' unilateral expectations in this regard did not create a constitutionally protected property interest.  Roth, 408 U.S. at 577 ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.").  See e.g., C&E Services, Inc. of Washington, 310 F.3d at 200 ("The Constitution's "procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits . . . [a] Fifth Amendment-protected property interest arises only upon award.") (emphasis in original) (citation omitted); Greenlee, 813 F. Supp. at 56 ("Present enjoyment is integral to the existence of a property entitlement.").  Because Plaintiffs here lack the requisite interest for the entitlement they seek, the outcome of Interior's deliberative process did not deprive Plaintiffs of any due process rights and the Court should grant Defendants summary judgment with regard to this claim.

-26-

<u>Conclusion</u>

For all of the foregoing reasons, the Plaintiffs' motion for summary judgment should be denied, the Defendants' cross motion for summary judgment should be granted, Interior's decision to withdraw the final rules issued on January 16, 2001 and leaving in place the original regulations and the ban on acquiring land in trust in Alaska should be affirmed, and the Consolidated Complaint in this action should be dismissed with prejudice.

Dated this 13th day of June, 2008.

Respectfully submitted,

<u>/s/ Daniel G. Steele</u>
Daniel G. Steele
D.C. Bar No. 962894
U.S. Department of Justice
Environment and Natural Resources Division
General Litigation Section
P.O. Box 663
Washington, D.C. 20044-0482
Tel: (202) 305-0484
Fax: (202) 305-0506
Attorney for the Defendants

Of Counsel:
David Moran
Attorney-Advisor
Division of Indian Affairs
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, N.W.   MS 6513
Telephone: (202) 208-3358
Fax:        (202) 219-1791

## CERTIFICATE OF SERVICE

I, Daniel G. Steele, hereby certify on this 13th day of June, 2008 I have caused the

foregoing Defendants' Cross-Motion for Summary Judgment, accompanying Memorandum in

Support of Defendants' Cross-Motion for Summary Judgment and Response in Opposition to

Plaintiffs' Motion for Summary Judgment, Statement of Material Facts as to Which there is No

Genuine Dispute, and proposed Order to be served by electronic filing on the following counsel:

    Richard A. Guest, Esquire
    1712 N Street, N.W.
    Washington, D.C.  20036-2976

    Andrew Harrington, Esquire
    Alaska Legal Services Corporation
    1648 South Cushman, Suite 300
    Fairbanks, AK 99701

    Heather Kendall Miller, Esquire
    Native American Rights Fund
    420 L Street, Suite 505
    Anchorage, Alaska  99501

                                    _/s/Daniel G. Steele_____
                                    Daniel G. Steele