UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

AKIACHAK NATIVE COMMUNITY          )
    et al.,                          )
                                   )
      Plaintiffs,                  )
                                   )
          v.               )       No. 1:06-cv-00969 (RWR)
                                   )
DEPARTMENT OF THE INTERIOR,        )
    et al.                           )
                                   )
      Defendants.                  )
_____   )


**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT**

RONALD J. TENPAS
Assistant Attorney General

Daniel G. Steele
Attorney of Record for Defendant
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington D.C., 20044-0663

Of Counsel:
David Moran
Attorney-Advisor
Division of Indian Affairs
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, N.W.   MS 6513
Washington, D.C.  20240

# TABLE OF CONTENTS

**Introduction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

**Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

    I.      **THE SECRETARY'S DECISION IS SUPPORTED BY EXTENSIVE ADMINISTRATIVE DELIBERATIONS AND IS IN ACCORDANCE WITH APPLICABLE LAWS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

          A.      **Lengthy and Thorough Administrative Deliberations Fully Support Interior's Informed Decision to Withdraw the Rule** . . . . . . . . . . . -4-

          B.      **The Decision Document Adequately Articulates Interior's Reasons for the Rule's Withdrawal** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

          C.      **Interior's Administrative Review Complies With This Circuit's Jurisprudence As To Rulemaking Criteria** . . . . . . . . . . . . . . . . . . . -9-

    II.     **25 U.S.C. §476(f) AND (g) IS NOT TO BE GIVEN ANY GREATER WEIGHT THAN CONGRESS INTENDED** . . . . . . . . . . . . . . . . . . . . . . . -14-

    III.    **PLAINTIFFS FAIL TO SHOW THAT THEY HAVE BEEN DENIED EQUAL PROTECTION OF LAW UNDER THE DUE PROCESS CLAUSE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

## TABLE OF AUTHORITIES

**FEDERAL CASES**

Am. Fed'n of Gov't Employees v. United States,
  195 F. Supp. 2d 4 (D.D.C. 2002), aff'd, 330 F.3d 513 (D.C. Cir. 2003) . . . . . . .  -15-,-16-

Arkansas. Power & Light Co. v. ICC,
  725 F.2d 716 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -9-, -10-, -11-

Bd. of Regents v. Roth,
  408 U.S. 564 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -15-

Bowman Transp., Inc. v. Ark.-Best Freight Sys.,
  419 U.S. 281(1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -5-, -8-

Cape Hatteras Access Preservation Alliance v. U.S. Dep't of Interior,
  344 F. Supp. 2d 108 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -4-

Cellco P'ship v. FCC,
  357 F.3d 88 (D.C.Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -5-

Citizens to Preserve Overton Park v. Volpe,
  401 U.S. 402 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -9-, -13-

City of Cleburne v. Cleburne Living Ctr., Inc.,
  473 U.S. 432 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -18-

Cotton Petroleum Corp. v. New Mexico,
  490 U.S. 163 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -17-

Fed. Communications Commission v. Beach Communications, Inc.,
  508 U.S. 307 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -17-, -18-

Fed. Election Comm'n v. Democratic Senatorial Campaign Comm.,
  454 U.S. 27 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -5-

Hamton v. Mow Sun Wong,
  426 U.S. 88 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -16-, -17-

Hornbeck Offshore Transp. v. U.S. Coast Guard,
  424 F. Supp. 2d 37 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -5-,-8-

Jimenez v. Weinberger,
    417 U.S. 628 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

Johnson v. Transportation Agency,
    480 U.S. 616 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

Lindahl v. Office of Pers. Mgmt.,
    470 U.S. 768 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

Marsh v. Or. Natural Res. Council,
    490 U.S. 360 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-, -13-

Matthews v. Hesburgh,
    504 F. Supp. 108 (DD.C. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-, -17-

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.,
    463 U.S. 29 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

Narragansett Indian Tribe v. National Indian Gaming Com'n.,
    158 F.3d 1335, 1341 (D.C. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

Nat'l Labor Relations Bd. v. Bell Aerospace Co.,
    416 U.S. 267 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

Pub. Citizen, Inc. v. Fed. Aviation Admin.,
    988 F.2d 186 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

Public Sys. v. FERC,
    606 F.2d 973, 986 (D.C. Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-, -9-

Republican Nat'l Comm. v. Fed. Election Comm'n,
    76 F.3d 400, 407 (D.C. Cir.1996), cert. denied, 519 U.S. 1055 (1997) . . . . . . . . . . . . -5-

United States R.R. Retirement Bd. v. Fritz,
    449 U.S. 166, 175 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-, -18-

Williams Natural Gas Co. v. FERC,
    872 F.2d 438, 443, 450. (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . -9-, -10-, -11-

## FEDERAL STATUTES

102 Stat. 2938 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
104 Stat. 206 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
5 U.S.C. § 706(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-, -4-, -9-, -13-
25 U.S.C. § 465 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-
25 U.S.C. § 473a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-
25 U.S.C. § 476(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
43 U.S.C. § 1601-1629 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-
43 U.S.C. § 1601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-, -18-
43 U.S.C. § 1603 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
43 U.S.C. § 1606 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
43 U.S.C. § 1611 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
43 U.S.C. § 1617 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
43 U.S.C. § 1701-1782 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

## FEDERAL REGULATIONS

25 C.F.R. § 151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-,-4-, -10-, -13-
25 C.F.R. § 151.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2--4-, -11-
25 C.F.R. § 151.3(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11
25 C.F.R. § 151.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

45 Fed. Reg. 62 (Sept. 18, 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-
60 Fed. Reg. 1956 (Jan. 5, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
64 Fed. Reg. 17 (Apr. 12, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
66 Fed. Reg. 3452 (Jan. 16, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
66 Fed. Reg. 56608 (Nov. 9, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

## OTHER AUTHORITIES

Amendments to the Alaska Native Claims Settlement Act and the Alaska National Interest Lands
Conservation Act and to Establish a Memorial in D.C., 99th Cong. 51 (Aug. 4, 1986) . . . . . -12-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AKIACHAK NATIVE COMMUNITY <u>et al.</u>, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| DEPARTMENT OF THE INTERIOR, <u>et al.</u> | ) ) ) |
| | ) |
| Defendants. | ) |

No. 1:06-cv-00969 (RWR)

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT**

<u>Introduction</u>

Front and center in this litigation is the apparent agreement of the parties now that the

Secretary of the United States Department of the Interior ("Interior Secretary") has discretionary

authority to take Indian lands into trust status in the State of Alaska.[1]  The Secretary's

discretionary authority to do so is through 25 U.S.C. § 465, enacted as Section 5 of the Indian

Reorganization Act of 1934 ("IRA"), which was made applicable to Alaska in the 1936 IRA

amendments.  25 U.S.C. § 473a. Subsequent laws – the Alaska Native Claims Settlement Act of

1971 ("ANCSA"), 43 U.S.C. §§ 1601-1629, 1629a-1629h and Federal Land Policy and

Management Act ("FLPMA"), 43 U.S.C. §§1701-1782, have not removed the Secretary's

---

[1]        Plaintiffs' failed to grasp this significant predicate to the litigation as evidenced by their
references to the Secretarial or regulatory "prohibition," "absolute bar," or "Alaska ban" throughout their
Memorandum in Support of Motion for Summary Judgment  ("Pls. Brf.") and they spoke to this
misunderstanding in their Reply Memorandum at 1 ("Pls. Reply"), stating that there is "agreement" on
this point.  Defendants also added to the misunderstanding by imprecisely referring to the Secretary's
declination to exercise his discretionary authority as a "bar."

discretionary authority to take Indian lands into trust status in the State of Alaska.

The Secretary's discretionary authority to take Indian lands into trust status in the State of Alaska is further evidenced by the Department of the Interior's ("Interior") long-running and thorough administrative deliberations considering the issue of whether or not ANCSA precluded the Department from taking land of the former Venetie Reserve into trust. Administrative Record ("AR") 00001-00006. In 1978, the Associate Solicitor for Indian Affairs, concluded that it would be an abuse of discretion to use Section 5 to restore the former Venetie Reserve to trust status. Following that, in 1980, the Department promulgated regulations, 25 C.F.R Part 151, which governed the acquisition of land into trust which stated, in part, that "[t]hese regulations do not cover the acquisition of land in trust status in the State of Alaska, except acquisitions for the Metlakatla Indian Community of the Annette Island Reserve or it [sic] members." 25 C.F.R. § 151.1. See also, 45 Fed. Reg. 62,034 (Sept. l8, 1980) (stating that ANCSA "does not contemplate the further acquisition of land in trust status, or the holding of land in such status . . . with the exception of . . . the Metlakatla Indian Community). AR 00018-00021.

From 1980 through 1992, the AR reflects Interior's comprehensive and continuing deliberations concerning implementation of  25 C.F.R. § 151.1 and 45 Fed. Reg. 62,034 through policies and procedures governing the acquisition of land by the United States in trust status for individual Indians and tribes nationwide (see, e.g., AR 00119-00125), as well as specific consideration of the Secretary's authority to declare Alaskan lands as "reservations" (see, e.g., AR 00014-00017), and to process a Native Village Petition to have lands put into trust status (see, e.g., AR 00028-00118). In January 1993, the AR ultimately reflects Interior's thorough evaluation and analysis of land-into-trust issues, specifically in Alaska, during this time period as

memorialized in a 133 page Solicitor's Memorandum. A briefing paper of April 26, 1994 (AR 00268-00269) prepared for the Secretary candidly stated that "the appropriateness or advisability of revising the Department's position is under review."

On October 11, 1994 the Chilkoot Indian Association, Native Village of Larsen Bay, and Kenaitze Indian Tribe, all represented by the Native American Rights Fund, petitioned the Secretary to undertake rulemaking to modify 25 C.F.R. § 151.1 to delete the Alaska exemption. AR 00272-00297. A Federal Register notice was subsequently published. 60 Fed. Reg. 1956 (Jan. 5, 1995); AR 00297-00299. The Record reflects that Interior continued its exhaustive deliberations of the land-into-trust issues as documented in a July 10, 1997 Interior memorandum (see AR 00303-00338) and in Proposed Amendments of November 26, 1999 (AR 00343-00352). In 1999, Interior's efforts culminated in the publication of proposed amendments to the 1980 trust land acquisition regulations. 64 Fed. Reg. 17,574 (Apr. 12, 1999; AR 00355-00370. As discussed in detail at 10-11 of Defendants' Memorandum in Support of Defendants' Cross-Motion for Summary Judgment ("Defs.' Opening Br."), on January 16, 2001, the Solicitor rescinded the September 15, 1978 opinion of the Associate Solicitor (AR00619-00631) and on the same day, the Department issued final rules amending the land acquisition regulations (AR 00585-00619). 66 Fed. Reg. 3452. As further discussed therein, this final rule was later withdrawn, leaving in place the original regulations (AR 00748-00752). 66 Fed. Reg. 56608 (Nov. 9, 2001).

Plaintiffs challenge the Assistant Secretary's final determination pursuant to Section 706(2)(A) of the Administrative Procedure Act ("APA"). 5 U.S.C. 706(2)(A). The APA directs the Court to uphold the Assistant Secretary's final determination unless it is deemed to be

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. For the reasons discussed below, Plaintiffs have failed to meet their burden of showing that the Assistant Secretary acted arbitrarily or capriciously in the administrative proceedings summarized above. Cape Hatteras Access Preservation Alliance v. U.S. Dep't of Interior, 344 F. Supp. 2d 108, 119 (D.D.C. 2004).

## Argument

I.    **THE SECRETARY'S DECISION IS SUPPORTED BY EXTENSIVE ADMINISTRATIVE DELIBERATIONS AND IS IN ACCORDANCE WITH APPLICABLE LAWS**

   A.    **Lengthy and Thorough Administrative Deliberations Fully Support Interior's Informed Decision to Withdraw the Rule**

In an effort to establish a violation of the APA, Plaintiffs hang their hat on a very narrow aspect of Interior's longstanding and thorough administrative deliberations of the lands-into-trust issues which extended over a period of twenty-one years from the time Interior promulgated regulations (25 C.F.R Part 151) in 1980, and for a period of seven years from the time Interior undertook rulemaking to modify 25 C.F.R. § 151.1 pursuant to the Chilkoot Indian Association, et al. Petition, up until the time of Interior's withdrawal of the Final Rule in November 2001. In their own words, Plaintiffs focus exclusively on the fact that withdrawal "is not in agreement with the conclusion by the Department in rescinding the Fredericks opinion and that [alone] make[s] the final determination [withdrawal] arbitrary, capricious, an abuse of discretion, and contrary to law." Pls.' Reply at 3, n.2. This objection by itself, however, is not nearly enough to support remand, nor does it meet Plaintiffs' obligation to establish that the Secretary's actions were arbitrary or capricious.

The APA standard of review is highly deferential, requiring the Court only to "consider whether the [challenged agency] decision was based on consideration of the relevant factors and whether there has been a clear error of judgment." Marsh v. Or. Natural Res. Council, 490 U.S. 360, 378 (1989); see also Cellco P'ship v. FCC, 357 F.3d 88, 93-94 (D.C.Cir.2004) (noting "arbitrary and capricious" review is "highly deferential"). Accordingly, reviewing courts, are not "empowered to substitute their judgment for that of the agency." Bowman Transp., Inc. v. Ark.-Best Freight Sys., 419 U.S. 281, 285 (1974). Here, the sheer length of the administrative proceedings from 1980, as evidenced in the AR and Interior's deliberations during this twenty-one year period does not lend itself to a lean and discrete process as is usually the case in APA review. That, however, does not support remand. The court will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned. Hornbeck Offshore Transp. v. U.S. Coast Guard, 424 F. Supp. 2d 37, 45 (D.D.C. 2006).

Further, the APA's 'reasoned analysis' requirement is 'not 'particularly demanding,'' and 'is satisfied if the agency 'enables us to see what major issues of policy were ventilated and why the agency reacted to them as it did.''" Id. (quoting Republican Nat'l Comm. v. Fed. Election Comm'n, 76 F.3d 400, 407 (D.C. Cir.1996), cert. denied, 519 U.S. 1055 (1997) (quoting Pub. Citizen, Inc. v. Fed. Aviation Admin., 988 F.2d 186, 197 (D.C.Cir.1993)). The degree of deference a court should pay an agency's construction is, however, affected by "'the thoroughness, validity, and consistency of an agency's reasoning.'" Hornbeck Offshore Transp., 424 F. Supp. 2d at 45 (quoting Fed. Election Comm'n v. Democratic Senatorial Campaign Comm., 454 U.S. 27, 37, (1981)). Evidence of the thoroughness of this Record is evident in the Solicitor's 133 page Memorandum of January 11, 1993 (AR 00135-00267) which was based on

an Office-wide review of all pending legal issues in Alaska.  AR 00135.  In a personal note, the

Solicitor stated that the Memorandum Opinion was "one of the most difficult to prepare during

my tenure at the Department of the Interior" and hoped that his exhaustive work on the Alaska

issues "will be beneficial to all who are dealing with jurisdictional questions."  AR 00265.  The

Memorandum states the following conclusions:

> The statutory scheme established in ANCSA precludes the treatment of lands
> received under the Act as Indian Country.  The purpose of ANCSA to develop
> state chartered business entities and to avoid the establishment of any permanent
> reservation system, trusteeship or other racially based institutions would be
> frustrated by a determination that enclaves of federal and tribal jurisdiction
> continue to exist . . . . Our decision on this matter is very much based on what
> Congress did in ANCSA, and subsequent amendments and other legislation do
> not change this conclusion.

Id.

Interior's ongoing administrative deliberations about Alaska lands-into-trust issues

studied in the Memorandum Opinion were of a continuing nature, revisited four years later in

another Solicitor's Office Memorandum, this time out of the Regional Solicitor's Office in

Alaska.  AR 00303.  The purpose of the Memorandum was to address a process for taking land in

trust at the request of the State of Alaska.  It listed the criteria that had to be evaluated in putting

Alaska lands into trust and recited other incumbent "programmatic responsibilities."  AR 00304-

00305.

These excerpts from the Record exemplify Interior's careful analysis of the lands-into-

trust issues since 1980. These memoranda also refute Plaintiffs' illogical supposition and

exceedingly narrow interpretation of the APA, and their assertion that the November 2001

withdrawal of the Final Rule issued earlier that year violates the APA simply because that action

was at odds with the recission of the 1978 Fredericks opinion.  In light of Interior's repeated and

-6-

ongoing administrative deliberations since 1978, as evidenced, in part, by the 1993 and 1997

Solicitor's Office memoranda, Plaintiffs' exceedingly narrow and faulty reasoning does not

persuasively demonstrate a violation of the APA arbitrary and capricious standards.

    **B.**    **The Decision Document Adequately Articulates Interior's Reasons for the Rule's Withdrawal**

Shifting ground, Plaintiffs seek remand on the alternative basis that the November 2001

withdrawal of the Final Rule failed to articulate "fully informed" reasons for withdrawal.

Specifically, Plaintiffs attack the basis of withdrawal on grounds that "the Alaska bar was not

among [the reasons for withdrawal]." Pls.' Reply at 4. However, Plaintiffs choose to disregard

the Secretary's enumerated reasons for withdrawal of the Rule. Indeed, as set out in the Federal

Register notice withdrawing the rule, the Department found as follows:

> [i]t is impracticable and inefficient to repeal only part of the final rule as the
> Bureau of Indian Affairs needs clear direction and standards to process land into
> trust applications. Considering the variety of comments received, the Department
> has decided to withdraw the final rule in whole to address these specific areas of
> concern in a new rule. Consistent with Departmental policy to consult with
> federally-recognized Indian tribes on proposed Federal actions that impact Indian
> tribes, the Department will conduct consultation with Indian tribes on the
> following areas in its efforts to promulgate a new rule: applications for housing or
> home site purposes to meet individual housing needs; the requirement of land use
> plans; the standards of review used in reaching a determination of whether to
> accept land into trust; the availability of applications for review; and the use of
> computer technology prior to the proposal of a new Acquisition of Title to Land in
> Trust rule.

AR 00748-00751. Further, the Department announced that, in promulgating a new rule, it would

conduct consultation with Indian tribes in the aforementioned areas of concern. Id.

Again, narrowly focusing on recission of the 1978 Fredericks opinion, Plaintiffs

disingenuously imply that because mention of the "Alaska bar" was not specifically stated in

-7-

"specific areas of concern," Interior failed to give "fully informed" reasons for continuation of the "regulatory bar." Pls.' Reply at 3-4. The fact of the matter is that the Secretary's concerns supporting the Rule's withdrawal are relevant to what would be a significant shift in policy to allow Alaska lands to be put in trust. Just because Plaintiffs do not agree with the reasons stated therein, or because they would have stated other reasons, does not mean that the decision-maker's reasons were not "informed."

Here, the reasons expressed by the Secretary supporting withdrawal of the Rule can "reasonably be discerned" (Hornbeck Offshore Transp., 424 F. Supp. 2d at 45), and reviewing courts are not "empowered to substitute [their] judgment for that of the agency" with regard to the Secretary's reasons. Bowman Transp., Inc., 419 U.S. at 285; Motor Vehicle Mfrs. Ass'n of U.S., Inc v. State farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983). Plaintiffs' preference to add additional procedural requirements beyond those that the APA imposes is not permissible. Public Sys. v. FERC, 606 F.2d 973, 986 (D.C. Cir. 1977). The Secretary articulated fully informed reasons for his decision which comport with the APA's standards of review.

The articulated rationale support Interior's decision to withdraw the Rule. Many of these same or similar criteria were considered four years earlier by the Regional Solicitor's Office in Alaska. AR00303-00338. That memorandum listed "[t]he criteria to be evaluated in exercising the discretion to accept or reject a request to take land in trust" as the following:

- The Tribe's or individual's need for the land.
- The purpose for which the land will be used.
- For an individual, how much trust land he already has, and his need for assistance in handling his own affairs.
- The impact on the State and it political subdivisions of removal of the land from tax rolls.
- Possible jurisdictional problems and land use conflicts.

- Whether the BIA is equipped to discharge the additional responsibilities resulting from acquisition in trust status.
- Tribal plans specifying anticipated economic benefits.
- Assuming that acquisition of land in trust is deemed appropriate in light of the relevant factors, NEPA and hazardous waste concerns must also be addressed . . . .

AR 00304-00305. The Secretary's withdrawal decision was based on his informed judgment of the need to further consult with regard to <u>need and use of land</u> and whether the BIA is equipped to discharge the <u>additional responsibilities</u> resulting from acquisition. <u>Id.</u> Tracking the Regional Solicitor's office memorandum, the withdrawal decision document phrased these concerns in the context of the "availability of applications for review and the use of computer technology prior to the proposal of a new Acquisition of Title to Land in Trust rule." <u>Id.</u>; AR 00750-751. Consideration of these criteria was within the Secretary's sound discretion, and his decision should be upheld because his decision was rational, has a reasoned basis which is supported in the record (<u>see</u>, <u>e.g.</u> <u>id.</u>), and was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A); <u>Citizens to Preserve Overton Park v. Volpe</u>, 401 U.S. 402, 416 (1971).

### C. Interior's Administrative Review Complies With This Circuit's Jurisprudence As To Rulemaking Criteria

Defendants appropriately rely on relevant District of Columbia Circuit authority enunciated in <u>Williams Natural Gas Co. v. FERC</u>, 872 F.2d 438, 443, 450. (D.C. Cir. 1989) and <u>Arkansas. Power & Light Co. v. ICC</u>, 725 F.2d 716, 723 (D.C. Cir. 1984) because here, as in those cases, the courts were asked to consider controversies involving agency rule-making; all claims were deemed reviewable under the APA's arbitrary and capricious standard; and the cases involve[d] agency decisions to terminate rule-making (in <u>Williams</u>), not to institute rule-making

-9-

(in <u>Arkansas Power & Light</u>), and here to postpone rule-making and return to the <u>status quo ante</u>
(in <u>Akiachak, et al.</u>).

      The <u>Williams</u> court spoke of the dichotomy between an agency's refusal to undertake
rule-making versus an agency's decision to terminate a docket after a substantial record has been
compiled. <u>Williams Natural Gas Co.</u>, 872 F.2d at 443. The court observed that promulgation of a
new rule or recission of an old one will require "a more persuasive justification than does a
decision to retain an existing rule." <u>Id.</u>  The court stated that "[w]e simply note that our
application of the 'arbitrary and capricious' standard must be informed by our recognition that an
agency's decision to <u>retain the status quo</u> may be more easily defensible than a shift in policy
would be." <u>Id.</u> at 444 (emphasis added). The <u>Williams</u> court rationale had its genesis five years
earlier in <u>Arkansas Power & Light Co.</u> wherein the court held, in part, "that the scope of review
under the [APA] of an agency decision to deny a <u>rulemaking petition</u> . . . is limited to ensuring
that the agency has adequately explained the facts and policy concerns it relied on, and that the
facts have some basis in the record." <u>Arkansas Power & Light Co.</u>, 725 F.2d at 723 (citation
omitted).

      In <u>Akiachak, et al.</u>, Interior commenced rule-making in 1993, promulgated a Final Rule in
January 2001, and withdrew the Rule in November 2001 before the Final Rule went into effect.
The Federal Register Notice provided that the current 25 C.F.R. Part 151 regulations were to
remain in effect "during pendency of the development of a new rulemaking." AR 007512.  Thus,
the effect of Interior's process <u>was a return to the status quo ante</u> – the FLPMA Rules that were
promulgated in 1980.  Following the <u>Williams</u> precedent, Interior's decision was to return to the
existing 1980 rules and to postpone final action.  The Circuit in <u>Arkansas Power & Light Co.</u>,

therefore, limits the inquiry of this court to whether the AR adequately explains the facts and

policy concerns that Interior relied on and to assure that the facts have some basis in the record.

Indeed, Interior's longstanding and thorough rule-making proceedings, detailed above, compel a

finding that Defendants have complied with the APA's standards of review.

Interior's actions resulted in a reversion back to the 1980 Rule, so these court proceedings

would look to the more relaxed standard of review articulated in Arkansas Power & Light Co.. In

Williams, however, the agency terminated rulemaking leaving petitioners with no recourse to

determine rates.  The Williams court held in that instance that remand was the appropriate

remedy because the Commission had failed to provide a satisfactory explanation for its

termination of the case.  Williams Natural Gas Co., 872 F.2d at 450.  Here, however, Interior has

committed not to terminate rule-making, but to develop "a new rulemaking to address this

matter."  AR 00751.  In the mean time, the 1980 Rule remains in effect and the more relaxed

Arkansas Power & Light review standards apply.

The Williams court also ruled that the Commission "retains wide discretion on remand.

The agency might, for instance, wish to solicit new comments in order to obtain updated

information.  FERC may also choose to terminate the docket again and to address this problem

within the context of another proceeding, provided that it offers a reasoned explanation for its

decision."  Williams Natural Gas Co., 872 F.2d at 450;  See also, Arkansas Power & Light Co.,

725 F.2d at 723 ("It is well established that the choice between rulemaking and case-by-case

adjudication 'lies primarily in the informed discretion of the administrative agency.'") (quoting

Nat'l Labor Relations Bd. v. Bell Aerospace Co., 416 U.S. 267, 293 (1974)).[2/]

In a larger sense, the United State's relationship with Alaskan Native people has been and is expected to remain open to Interior's continuing overall review through both executive branch and legislative initiatives. These continuing efforts are demonstrated by the Plaintiffs' own references to Senator Steven's testimony concerning proposed amendments to ANCSA in 1986. While Plaintiffs selectively recite portions of the testimony to imply that ANCSA was intended to be nothing more than a land settlement act, (Pls.' Reply at 9), Senator Stevens went on to present a much broader picture of ANCSA's reach. He states as follows:

> I think the Alaska Native Land Claims Settlement Act broke new ground in American Indian law. Those of us who served on the 1971 Conference Committee that actually wrote that act-and there are only two of us remaining in Congress now - had high hopes for the land settlement. To a large extent, those hopes have been fulfilled.
> I believe the settlement opened new doors to Natives throughout Alaska. It also added the dimension of almost $1 billion to the Alaska economy. In my judgment, all Alaskans, Native and non-Native, have benefitted from the settlement which has become an integral part of the economic and social fabric of our great State.

---

[2/] Remand of these Tribal claims and the individual claim to Interior would require the Department to do a case-by-case review of the merits of the requested relief without the benefit of rules in place to guide an administrative process. This is particularly troublesome as to the individual's claim request for relief because there are no reservations in Alaska (except for the Metlakatla Indian Community). See 25 CFR § 151.1. As discussed in Defendants' Opening Brief at 7, it is current BIA policy not to acquire land in trust for an individual Indian when the land to be acquired is located off-reservation. Part 151 does not contain procedures for off-reservation acquisitions for individuals. See 25 C.F.R. § 151.3(b); cf. 25 C.F.R. § 151.11 ("The Secretary shall consider the following requirements in evaluating tribal requests for the acquisition of lands in trust status, when the land is located outside of and noncontiguous to the tribe's reservation, and the acquisition is not mandated . . . ."). This would apply in Alaska where there are, with one exception, no reservation lands and also nationwide. Plaintiffs only respond that the Secretary did set aside land for a reservation for Barrow from 1946 (Pls. Reply at 7, note 8), but does not address the fact that the lot lost its restricted status when Plaintiff Kavairlook sold it. The Alaska townsite laws were repealed on October 21, 1976, by Section 703(a) of FLPMA. See discussion on this point at Defs' Opening Brf. at 3.

Clearly without the 1971 settlement, the oil and gas development history written over the past 15 years, including the impressive royalty and tax income that the State of Alaska has received, would not have been possible.

Amendments to the Alaska Native Claims Settlement Act and the Alaska National Interest Lands Conservation Act and to Establish a Memorial in D.C.  99th Cong. 51 (Aug 4, 1986) (statement of Sen. Stevens.).

Those hearings evidence continuing government review of ANCSA and other laws periodically receive in ongoing legislative and administrative processes. At that hearing Congress was considering Native sovereignty issues.  The record reflects also that testimony was received on the proposed amendments from Interior's Assistant Secretary for Fish, Wildlife and Parks, again pointing to the fact that ANCSA and other Alaska-specific federal laws are subject in Interior's continuing review.  ("[Senate Bill 2065 [subject matter of hearings] makes several changes to ANCSA that could have long-range impacts on Native land policy in Alaska")  Id. at 55 (statement of William P. Horn, Assistant Secretary for Fish and Wildlife and Parks).

The fact that Interior intends to renew rule-making in this matter with regard to significant aspects of 25 CFR Part151 and, given other continuing federal executive branch and legislative efforts to review how federal laws affect Alaska Native issues, as exemplified by the 1986 hearings that Plaintiffs themselves referenced, Defendants submit that, although Interior has withdrawn the 2001 Rule, Plaintiffs and Native Alaskans generally will continue to receive Interior's ongoing review and analysis of the issues germane to this litigation consistent with the APA's standards of administrative review.  For these reasons, based on a thorough Record, the Court should find Interior's review in this case was properly based on a consideration of the relevant factors ( Marsh, 490 U.S. at 378) and that the Secretary's decision was not "arbitrary,

-13-

capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. §

706(2)(A); Citizens to Preserve Overton Park v. Volpe 401 U.S. at  416.

## II.    25 U.S.C. §476 (f) AND (g) IS NOT TO BE GIVEN ANY GREATER WEIGHT THAN CONGRESS INTENDED

Plaintiffs respond to Defendants' position that ANCSA is a statute that does "classify,

enhance, or diminish the privileges or immunities available to an Indian tribe relative to other

similarly situated Indian tribes,"  arguing that ANCSA merely required that corporations be

formed, separate and apart from tribal governments.  However, Plaintiffs ignore that the express

intent of this land settlement statute was to avoid the continuation and/or creation of  "a

reservation system or lengthy wardship or trusteeship, and without adding to the categories of

property and institutions enjoying special tax privileges or to the legislation establishing  special

relationships between the United States Government and the State of Alaska."  43 U.S.C. §

1601(b).

Moreover, in exchange for relinquishing all aboriginal title and claims to land in Alaska,

Alaska Natives received 44 million acres of land and $962.5 million in monetary compensation.

See 43 U.S.C. §§ 1603, 1611, 1613, 1615.  Congress eliminated prior forms of Native land

tenure in the state and substituted in their place a novel form of land ownership.  In doing so,

ANCSA revoked all existing reservations in Alaska, except one (the Annette Island Reserve for

the Metlakatla Indian Community, whose members are not eligible for benefits under the Act)

and terminated authority for creation of additional restricted fee individually-owned Native

allotments.  See 43 U.S.C. §§ 1617, 1618.  Further, unlike prior land claims settlements,

Congress directed settlement lands and monies to be conveyed in fee (not in trust) and without

-14-

permanent restrictions on voluntary or involuntary alienation.  See 43 U.S.C. § 1611.  Under

ANCSA, the settlement lands and/or monies provided by the Act were distributed to thirteen

regional corporations and to more than two hundred village corporations.  See 43 U.S.C. §§

1606, 1607, 1610(b)(1), 1611, 1615.

      Plaintiffs correctly state that only Congress can take a particular prerogative away from

the tribe.  Clearly, ANCSA embodied a novel and experimental approach in the settlement of

Native claims and by its enactment Congress intended to treat Indian property interests in Alaska

differently than those in other parts of the country.  Moreover, Congress has acquiesced in and

consented to the Department's practice in administering Section 5.  Congress has twice amended

the IRA since 1934 and in both instances reaffirmed its reach and purposes.  See Indian

Reorganization Act Amendments of 1988, Pub. L. No 100-581, 102 Stat. 2938, Indian

Reorganization Act Amendments of 1990, Pub. L. No 101-301, 104 Stat. 206.  In these

amendments Congress did not overrule or modify the Part 151 regulations, an omission which

may be interpreted as approval.  See, e.g., Lindahl v. Office of Pers. Mgmt., 470 U.S. 768, 782

n.15 (1985) ("Congress is presumed to be aware of an administrative . . . interpretation of a

statute and to adopt that interpretation when it reenacts a statute without change.") (citations

omitted); Johnson v. Transportation Agency, 480 U.S. 616, 629 n.7 (1987) (finding

Congressional inaction after interpretation may be probative of approval).

## III.    PLAINTIFFS FAIL TO SHOW THAT THEY HAVE BEEN DENIED EQUAL PROTECTION OF LAW UNDER THE DUE PROCESS CLAUSE

      The Secretary's withdrawal of the Final Rule issued on January 16, 2001, leaving in place

the original 1980 regulations does not implicate the due process guarantee of the Fifth

Amendment of the Constitution because Plaintiffs do not have "a legitimate claim of entitlement" to have lands put into trust status. Am. Fed'n of Gov't Employees v. United States, 195 F. Supp. 2d 4, 12 (D.D.C. 2002) aff'd, 330 F.3d 513 (D.C. Cir. 2003) (citing Board of Regents v. Roth, 408 U.S. 564, 576 (1972)). See Defs.' Opening Br. at 22-26. As discussed in Section II, above, Congress has legislated a distinction between Tribes in Alaska, which are subject to ANCSA, and Tribes elsewhere, which are not. Am. Federation holds that there are two ways to assert due process violations: when a plaintiff is not able to compete for benefits on an equal footing and being subjected to different treatment; and when a benefit is being denied. Am. Fed'n of Gov't Employees, 195 F. Supp. 2d at 14. Plaintiffs center their Reply on the former category.

All the case upon which the Plaintiffs rely are based on claims of entitlement to employment, benefits under Social Security, and federal employment practices which excluded aliens. In Matthews v. Hesburgh, 504 F. Supp. 108 (DD.C. 1980) relief was denied because the court did not find plaintiff had a "legitimate entitlement" to his job citing Board of Regents. In Jimenez v. Weinberger, 417 U.S. 628 (1974), the appellant sought relief asserting that illegitimacy as a basis for denial of Social Security benefits was a "suspect classification" in violation of equal protection. In Hamton v. Mow Sun Wong, 426 U.S. 88, 90 (1976), petitioner challenged the Civil Service Commission's practice of excluding noncitizens from employment in the federal government. The Supreme Court determined this to be a denial of liberty under the due process clause. Id. at 127.

Moreover, none of the cited by plaintiffs are at all analogous to the situation presented here. Plaintiffs have no entitlement to have Alaska lands taken into trust. The present

-16-

regulations give them no such right. From an administrative view, the proposed regulations never went into effect and certainly cannot be a basis for a right or entitlement under the holding of Matthews v. Hesburgh. Any procedural due process claim simply fails. Plaintiffs, frankly, do not make out any palpable equal protection claim, nor do they cite any case authority that suggest an analogous equal protection claim.

Hamton and Matthews did not involve a situation where Congress had not specifically passed laws which impacted in any way the particular claims of these cases. This critical fact distinguishes the equal protection claims litigated in these cases. Plaintiffs do not contest that Congress has the plenary authority "to legislate in the field of Indian affairs." Cotton Petroleum Corp. v. New Mexico, 490 U.S. 163, 192 (1989). Pursuant to this authority, when Congress passed ANCSA it exercised this authority to classify, enhance or diminish the privileges and immunities available to an Indian tribe relative to other similarly situated federally recognized tribes. The regulation presently in effect, and the proposal took into account the treatment by Congress given to the tribes. Any classification drawn in ANCSA, and the treatment by the Secretary related to the regulations presently in effect took into account ANCSA and were clearly rationally related to legitimate government interest. As the Supreme Court has often emphasized,

> equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. . . . [A] statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld . . . if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.
> Federal Communications Commission v. Beach Communications, Inc., 508 U.S. 307, 313 (1993) (citations omitted).

In Beach, it was fully recognized that:

-17-

> In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. [citations omitted] Where there are "plausible reasons" for Congress' action, "our inquiry is at an end." United States Railroad Retirement Bd. v. Fritz, supra, 449 U.S., at 179. [Emphasis added].

508 U.S. at 313-314.  Moreover, where Congress has defined a class of persons subject to a regulatory requirement or eligible for favored treatment, "the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." Id. at 315-16 (internal quotation and citation omitted).  A classification "does not offend the Constitution simply because . . . in practice it results in some inequality." United States R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 175 (1980).

For an equal protection claim in the context of ANCSA,  plaintiffs would have to demonstrate that Congress' decision, and the Secretarial treatment consistent with ANCSA, to treat Alaskan tribal entities differently has "no rational relationship to any legitimate purpose. See City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985)." Narragansett Indian Tribe v. National Indian Gaming Com'n 158 F.3d 1335, 1341 (D.C. Cir. 1998).  Plaintiffs have made no such showing nor could they.

The settlement of claims with Alaskan tribes presented a unique resolution that furthered multiple legitimate government purposes.  See e.g. 43 U.S.C. § 1601 (a)-(c).  The treatment of the Alaskan Tribes by the Secretary has been consistent with ANCSA in furthering these purposes.  In so doing, it legally adjusted the privileges and immunities of the Alaska Tribes, distinguishing them from other groups of American Indians.  For these reasons, the cases upon which Plaintiffs rely do not support their claims of equal protection violations.

-18-

Dated this 25th day of July, 2008.

Respectfully submitted,

*/s/ Daniel G. Steele*
Daniel G. Steele
D.C. Bar No. 962894
U.S. Department of Justice
Environment and Natural Resources Division
General Litigation Section
P.O. Box 663
Washington, D.C. 20044-0482
Tel: (202) 305-0484
Fax: (202) 305-0506
Attorney for the Defendants

Of Counsel:
David Moran
Attorney-Advisor
Division of Indian Affairs
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, N.W.   MS 6513
Telephone: (202) 208-3358
Fax:         (202) 219-1791

## CERTIFICATE OF SERVICE

I, Daniel G. Steele, hereby certify on this 25th day of July, 2008 I have caused the

foregoing Defendants' Reply in Support of Defendants' Cross-motion for Summary Judgment

to be served by electronic filing on the following counsel:

Richard A. Guest, Esquire
1712 N Street, N.W.
Washington, D.C.  20036-2976

Andrew Harrington, Esquire
Alaska Legal Services Corporation
1648 South Cushman, Suite 300
Fairbanks, AK 99701

Heather Kendall Miller, Esquire
Native American Rights Fund
420 L Street, Suite 505
Anchorage, Alaska  99501

_/s/Daniel G. Steele_____
Daniel G. Steele