**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
AKIACHAK NATIVE COMMUNITY,    )
    et al.,                   )
                              )
    Plaintiffs,               )
                              )
    v.                        )    Civil Action No. 06-0969 (RWR)
                              )
DEPARTMENT OF THE INTERIOR,   )
    et al.,                   )
                              )
    Defendants.               )
_____)
```

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Akiachak Native Community, Chalkyitsik Village, Chilkoot Indian Association, Tuluksak Native Community, and Alice Kavairlook bring this action against the United States Department of the Interior ("DOI") and Dirk Kempthorne, Secretary of the Interior, challenging the validity of a regulatory bar prohibiting the Secretary from acquiring land located in Alaska into trust status for most federally recognized Indian tribes. The State of Alaska has filed a motion under Federal Rule of Civil Procedure 24 to intervene as a defendant in this case, arguing that its interest in maintaining jurisdiction over the plaintiffs' land and its interest as a party to the settlement embodied in the Alaska Native Claims Settlement Act ("ANCSA"), 43 U.S.C. § 1601 et seq, may be impaired by the outcome of this litigation and are not adequately represented by existing

- 2 -

parties.  Because Alaska is entitled to intervene as of right under Rule 24(a), its motion to intervene will be granted.[1]

BACKGROUND

Section 5 of the Indian Reorganization Act of 1934 ("IRA") authorizes the Secretary to take land into trust on behalf of Indian tribes and individual Indians.  25 U.S.C. § 465.  In its original enactment, this section of the IRA excluded land located in the state of Alaska.  In 1936, section 5 was made applicable to the state of Alaska.  Act of May 1, 1936, 49 Stat. 1250.  In 1971, Congress enacted ANCSA, 43 U.S.C. § 1601 et seq, to resolve claims based on aboriginal land claims in Alaska.  ANCSA extinguished aboriginal title claims, see 43 U.S.C. § 1603, and revoked all reservations in Alaska, except for the Metlakatla Reserve.[2]  See 43 U.S.C. § 1618.  Alaska represents that, as a party to the settlement, the state provided consideration in the form of money and forfeiture of its priority to receive certain lands from the federal government.  (State of Alaska's Mot. to

---

[1]Alaska has also filed a motion for leave to file a cross-motion for summary judgment and a reply to plaintiffs' reply and opposition to the federal defendants' cross-motion for summary judgment.  In response, plaintiffs have filed a motion for an extension of time to respond to Alaska's cross-motion for summary judgment.  These motions will be granted.

[2]The Metlakatla Reserve is not at issue in this action.

Intervene ("Mot. to Intervene") at 13 (citing 43 U.S.C. §§ 1605, 1608, 1610(a)(2)).)[3]

The DOI regulations set forth in 25 C.F.R. Part 151 govern the acquisition of land by the United States to be held in trust for the benefit of federally recognized Indian tribes pursuant to the grant of authority under section 5 of the IRA.  See 25 C.F.R. § 151.1.  Section 151.1 states that the "regulations do not cover the acquisition of land in trust status in the State of Alaska, except acquisitions for the Metlakatla Indian Community of the Annette Island Reserve or its members."  Id.

Plaintiffs are four federally recognized tribes located in Alaska and an individual member of a fifth tribe.  (Pls.' Consol. Compl. ¶¶ I-III.)  Plaintiffs argue that ANCSA did not repeal any portion of the 1934 IRA or the 1936 amendments that made section 5 of the IRA applicable to Alaska.  (Id. ¶ 14.)  Accordingly, plaintiffs contend that the Part 151 regulations, to the extent that they preclude acquisition of land located in Alaska into trust status, violate 25 U.S.C. § 476(f) and (g), the provisions of the IRA that prohibit agencies from promulgating any regulation that "enhances, or diminishes the privileges and immunities available to the Indian tribe relative to other

---

[3]Under 43 U.S.C. § 1608, Alaska is obligated to "pay into the Alaska Native Fund . . . for the benefit of the Natives."  43 U.S.C. § 1608.  Section 1610(a)(2) withdrew certain lands from appropriation under the public land laws.  See 43 U.S.C. § 1610(a)(2).

- 4 -

federally recognized tribes by virtue of their status as Indian tribes." (Id. ¶¶ 53-54.) In addition, plaintiffs allege that the Part 151 regulations violate the Administrative Procedures Act, 5 U.S.C. § 706(a)(2) and the Equal Protection and Due Process Clauses of the Fifth Amendment to the U.S. Constitution. (Id. ¶¶ 55-58.) Plaintiffs seek declaratory and injunctive relief preventing DOI from applying the regulatory bar set forth in 25 C.F.R. § 151.1 insofar as it excludes federally recognized tribes or their members from petitioning to have land in Alaska taken into trust by the Secretary. (Id. ¶¶ III-V.)

Alaska has moved to intervene as a defendant in this case as a matter of right under Rule 24(a) and, in the alternative, for permissive intervention under Rule 24(b). Alaska supports the current regulatory bar in 25 C.F.R. § 151.1 (Mot. to Intervene at 3) and contends application of the land trust regulations in Part 151 to land located in Alaska would diminish Alaska's sovereign authority to tax the plaintiffs' land and to enforce regulations uniformly throughout the state and undermine the integrity of the settlement reached in ANCSA. (Mot. to Intervene at 5-6.)

Plaintiffs oppose Alaska's motion to intervene on the grounds that (1) Alaska cannot satisfy the requirements for intervention under Rule 24; (2) Alaska lacks constitutional and prudential standing; and (3) the Attorney General of Alaska cannot act on behalf of the state to seek intervention in this

- 5 -

case because he has not fulfilled the necessary prerequisites to validly waive Alaska's Eleventh Amendment immunity.[4]

DISCUSSION

I.   ALASKA'S INTERVENTION AS OF RIGHT

Under Federal Rule of Civil Procedure 24(a), intervention as a matter of right should be granted when the movant

> claims an interest relating to the property or transaction that is the subject of the action, and [the movant] is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  "An application to intervene should be viewed on the tendered pleadings –- that is, whether those pleadings allege a legally sufficient claim . . . and not whether the applicant is likely to prevail on the merits."  <u>Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.</u>, 840 F.2d 72, 75 (D.C. Cir. 1988).  The D.C. Circuit "ha[s] identified four prerequisites to interven[tion] as of right: '(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests.'"  <u>Karsner v. Lothian</u>, 532 F.3d 876, 885 (D.C. Cir. 2008) (quoting

---

[4]Plaintiff Kavairlook filed a separate opposition to expand on the argument that the Attorney General does not have authority to waive Eleventh Amendment immunity and therefore lacks authority to intervene on Alaska's behalf. (Pl. Kavairlook's Opp'n to Mot. to Intervene ("Kavairlook Opp'n") at 3-5.)

SEC v. Prudential Sec. Inc., 136 F.3d 153, 156 (D.C. Cir. 1998)). In addition, "because a Rule 24 intervenor seeks to participate on an equal footing with the original parties to the suit," the applicant also must establish that he has standing to participate in the action.  Fund for Animals, Inc. v. Norton, 322 F.3d 728, 732 (D.C. Cir. 2003) (quoting City of Cleveland v. NRC, 17 F.3d 1515, 1517 (D.C. Cir. 1994)).

    A.    Timeliness of the motion

"[T]imeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case."  United States v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1295 (citing Moten v. Bricklayers Int'l Union, 543 F.2d 224, 228 (D.C. Cir. 1976)). The critical factor is whether any "delay in moving for intervention will prejudice the existing parties to the case." 7C Charles Alan Wright et al., Federal Practice & Procedure § 1916 (3d ed. 2007).

Although the first complaint was filed on May 24, 2006, several extensions of time to file subsequent pleadings have been granted.  Alaska's motion to intervene was filed only eighteen days after the plaintiffs filed their consolidated complaint, on the same day as the defendants filed their answer to the

consolidated complaint and before any dispositive motions were filed.[5]  Accordingly, the existing parties will not be prejudiced by Alaska's intervention at this early stage in the litigation and Alaska's motion to intervene is timely.

    B.    <u>Alaska's interest</u>

The "interest" requirement serves "primarily [as] a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." <u>Nuesse v. Camp</u>, 385 F.2d 694, 700 (D.C. Cir. 1967); <u>see also</u> <u>S. Utah Wilderness Alliance v. Norton</u>, Civil Action No. 01-2518 (CKK), 2002 WL 32617198, *5 (D.D.C. June 28, 2002) (applying a "liberal approach" to the Rule 24(a) analysis). Alaska asserts two interests relating to the plaintiffs' land at issue in this case.  First, Alaska claims an interest in maintaining its sovereignty over plaintiffs' land.  Specifically, Alaska alleges the state could lose the rights to tax and to enforce land use, natural resource management, environmental, and public safety regulations on the land taken into trust.  (Mot. to Intervene at 7-8.)  A government's loss of sovereignty over land within its jurisdiction is a legally protectable interest.  <u>See</u> <u>City of Sault Ste. Marie v. Andrus</u>, 458 F. Supp. 465, 468 (D.D.C. 1978) (finding that "the diminishment of the tax base and impairment of municipal law and zoning enforcement" as a result

---

[5]The parties filed still-pending cross motions for summary judgment after Alaska moved to intervene.

- 8 -

of the United States taking land within city limits into trust status for an Indian tribe were legally protectable injuries).

Under section 5 of the IRA, land taken into trust by the United States for an Indian tribe or individual is exempt from state and local taxation. 25 U.S.C. § 465. In addition, 25 C.F.R. § 1.4 states that "none of the laws . . . or other regulations of any [s]tate . . . limiting, zoning or otherwise governing, regulating, or controlling the use or development of any real or personal property, including water rights, shall be applicable to any such property . . . belonging to any Indian or Indian tribe . . . [and] held in trust by the United States." Because removal of the bar that excludes Alaskan land from being taken into trust status would abrogate the state's jurisdiction over the trust land, Alaska has asserted an interest sufficient to support intervention as of right.

Alaska also asserts an interest in maintaining the terms of the settlement reached in ANCSA. (Mot. to Intervene at 13-14.) ANCSA extinguished "all aboriginal titles . . . , claims of aboriginal title . . ., and claims against the United States, the State, and all other persons that are based on claims of aboriginal right, title, use, or occupancy of land or water areas in Alaska." 43 U.S.C. § 1603(b)-(c). Plaintiffs Chalkyitsik, Tulusak, and Akiachak participated in ANCSA. 43 U.S.C. § 1610(b). Alaska contends that "tribal regulatory power over land . . . is an essential aspect of aboriginal title."

(Alaska's Reply Mem. in Support of its Mot. to Intervene at 5-6.) It argues that the plaintiffs who participated in the ANCSA settlement voluntarily extinguished their right to tribal regulatory authority and the relief sought in this action is an impermissible attempt to regain this authority through trust status.  (See id. at 6.)  Thus, Alaska has an interest in this action for the purpose of upholding the terms of ANCSA, to which it was a party.

    C.   <u>Impairment of Alaska's ability to protect its interest</u>

Whether a proposed intervenor is "so situated that the disposition of an action may as a practical matter impair or impede [its] ability to protect [its] interest," Fed. R. Civ. P. 24(a), is determined by "looking to the practical consequences of denying intervention, even where the possibility of future challenge to the regulation remains available."  <u>Fund for Animals</u>, 322 F.3d at 735 (internal quotation marks omitted) (recognizing that even if the intervenor could challenge the decision in a subsequent lawsuit, reversing an unfavorable ruling in a subsequent case would be "difficult and burdensome").  If plaintiffs were to prevail in this action, they could then petition the Secretary to have their land taken into trust status.  Because trust status would abrogate Alaska's taxing and regulatory authority over the trust land under 25 U.S.C. § 465 and 25 C.F.R. § 1.4, Alaska's interest may be impaired by the outcome of this litigation.  Similarly, because the removal of

the § 151.1 bar may disturb the rights of the parties under ANCSA, Alaska's interest as a party to that settlement also may be impaired. Although Alaska, if not a party to the present case, would not be precluded from challenging a change to the existing regulatory bar in a subsequent case, under Fund for Animals, the prejudice caused by an unfavorable judgment in the present case would sufficiently impair Alaska's interests for the purpose of satisfying Rule 24(a) intervention as of right. See id.

    D.   Inadequate representation of Alaska's interests by existing parties

Alaska must show that "the representation of [its] interest may be inadequate; and the burden of making that showing should be treated as minimal." Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972). An applicant ordinarily should be permitted to intervene as of right "unless it is clear that the party will provide adequate representation for the absentee." Wright et al., supra, § 1909. "Although there may be a partial congruence of interests, that does not guarantee the adequacy of representation." Fund for Animals, 322 F.3d at 737. In this case, the existing defendants, the DOI and the Secretary, have no clear interest in protecting Alaska's sovereignty or Alaska's interest as a party to ANCSA that would ensure adequate representation of Alaska's interests. Thus, Alaska is not adequately represented by existing parties.

E.   Standing

   1.   Article III standing

"To establish standing under Article III, a prospective intervenor . . . must show: (1) injury-in-fact; (2) causation, and (3) redressability." Fund for Animals, 322 F.3d at 732-33 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). The standing inquiry is repetitive in the case of intervention as of right because an intervenor who satisfies Rule 24(a) will also have Article III standing. See Roeder v. Islamic Republic of Iran, 333 F.3d 228, 233 (D.C. Cir. 2003). Here, Alaska alleges a recognized imminent injury -- the loss of its sovereignty over land taken into trust status -- that would be caused if the action were to be resolved in favor of the plaintiffs. See City of Sault Ste. Marie, 458 F. Supp. at 468 (finding the loss of taxing and regulatory authority to be sufficient injury to establish standing). Accordingly, Alaska, possessing a recognized injury that is judicially redressable, has standing under Article III to intervene in this case.

   2.   Prudential standing

In addition to Article III standing, a party also must establish prudential standing. See Bennett v. Spear, 520 U.S. 154, 162 (1997). A party seeking judicial review of agency action must show an injury that "fall[s] within the 'zone of interests' protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." Id. at 160; see

- 12 -

Air Courier Conf. of Am. v. Am. Postal Workers Union, 498 U.S. 517, 524-25 (1991); Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 883 (1990).  Moreover, "'[t]he [zone of interests] test is not meant to be especially demanding,'" Amgen, Inc. v. Smith, 357 F.3d 103, 108 (D.C. Cir. 2004) (brackets in original) (quoting Clark v. Sec. Indus. Ass'n, 479 U.S. 388, 399 (1987)), and "serves to exclude only those 'parties whose interests are not consistent with the purposes of the statute in question.'"  Id. at 109 (quoting Ethyl Corp. v. EPA, 306 F.3d 1144, 1148 (D.C. Cir. 2002).  "Where statutes are concerned, the trend is toward enlargement of the class of people who may protest administrative action."  See Assoc. of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 154 (1970).

Plaintiffs contend that Alaska cannot satisfy prudential standing because Alaska's interests are not within the zone of interests protected by the statutes that form the basis for the plaintiffs' legal claims.  (Akiachak Pls.' Opp'n to Mot. to Intervene ("Pls.' Opp'n") at 4-5.)  Plaintiffs cite the specific statutory provisions that form the basis for their complaint as section 5 of the IRA, 25 U.S.C. § 465, which authorizes the Secretary to take tribal land into trust, and parts of section 16, 25 U.S.C. § 476(f) and (g), which protect the privileges and immunities of federally recognized Indian tribes and their members.  (Id. at 4.)  However, section 5 of the IRA -- which gives the Secretary broad authority over land held by recognized

- 13 -

Indian tribes –- does regulate Alaska's interest because the Secretary's acquisition of land in trust would abrogate Alaska's jurisdiction over that land.  See 25 C.F.R. § 1.4 (stating that state laws do not apply to Indian trust land).

 Moreover, the Supreme Court has acknowledged that a court is "not limited to considering the statute under which [plaintiff] sued."  Clark, 479 U.S. at 401 ; see Air Courier, 498 U.S. 517, 530 (analyzing whether "an integral relationship" existed between different provisions under which claim arose and those argued to support prudential standing).  The requested relief, if granted, would invalidate the regulatory bar found in 25 C.F.R. § 151.1 which excludes land located in Alaska from being taken into trust.  Plaintiffs admit that the regulatory bar in § 151.1 was based upon an opinion by then Associate Solicitor for Indian Affairs Thomas Fredericks "that ANCSA precluded the Secretary from taking land into trust for Natives in Alaska.  (See Pls.' Consol. Compl. ¶¶ 16-17 (citing 64 Fed. Reg. 17578).)  Thus, ANCSA is necessarily implicated as one of statutes involved in determining the plaintiffs' challenges to Part 151.  Alaska, as a party to ANCSA and obligated under its terms, see 43 U.S.C. §§ 1608, 1610, could sustain injury that is clearly within the zone of interests protected and regulated under this statute. See Assoc. of Data Processing Serv. Orgs., 397 U.S. at 155. Consequently, Alaska satisfies the prudential standing requirement.

II.  ELEVENTH AMENDMENT IMMUNITY

Plaintiffs contend that the Attorney General of Alaska lacks general authority to waive the state's Eleventh Amendment immunity and therefore cannot seek to represent Alaska in this court without express authorization by the Alaska legislature. (Pls.' Opp'n at 15; Kavairlook Opp'n at 3-5.)  Plaintiffs' argument lacks merit.

Plaintiffs rely on a case, Alaska v. O/S Lynn Kendall, 310 F. Supp. 433 (D. Alaska 1970), that held that the attorney general of Alaska had the authority to invoke the federal court's jurisdiction as a plaintiff, but did not have the authority to waive the state's Eleventh Amendment immunity which limited the defendant's ability to counterclaim.  (See Pls.' Opp'n at 15; Kavairlook Opp'n at 3.)  See O/S Lynn Kendall, 310 F. Supp. at 435.  In Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613 (2002), however, the Supreme Court held that when a state's attorney general, validly authorized to bring suit in federal court, does so voluntarily, the attorney waives the state's Eleventh Amendment immunity for that case.  See id. at 622.  The Court further explained that a state has reason to know that voluntary invocation of federal court jurisdiction waives Eleventh Amendment immunity and as a result, a state's grant of authority to its attorney general to invoke a federal court's jurisdiction is consent to waive the state's Eleventh Amendment immunity by the attorney general.  See id. at 624.

Under the Alaska statute defining the duties and powers of the Attorney General, "[t]he Attorney General shall . . . represent the state in all civil actions in which the state is a party . . . [and] <u>perform all other duties as required by law or which usually pertain to the office of attorney general in a state</u>."  Alaska Stat. § 44.23.020 (emphasis added).  The language in this statute has been interpreted to give the Attorney General broad authority, including "those powers which existed at common law, except where they are limited by statute or conferred upon some other state official.  <u>Botelho v. Griffin</u>, 25 P.3d 689, 692 (Alaska 2001) (quoting <u>Pub. Defender Agency v. Super. Ct.</u>, 534 P.2d 947, 950 (Alaska 1975)).  Under common law, "it is the inescapable historic duty of the Attorney General, as the chief state legal officer, to institute, defend or intervene in any litigation which he determines in his sound official discretion involves a legal matter of compelling public interest."  <u>Fl. ex rel Shevin v. Exxon Corp.</u>, 526 F.2d 266, 271 (5th Cir. 1976); <u>see</u> <u>Berger v. Alaska</u>, 910 P.2d 581, 585 ("The Attorney General has the power to intervene in cases in the public's interest.")

In this case, the Attorney General, in filing the State of Alaska's motion to intervene, has acted within his broad statutory authority to represent the Alaska's interest.  Such authority includes waiving Alaska's Eleventh Amendment immunity to the extent necessary for the present litigation.  Thus, the plaintiffs' argument fails.

CONCLUSION AND ORDER

Because the State of Alaska satisfies the requirements for intervention as of right under Rule 24(a) and the Attorney General of Alaska has the statutory authority to bring suit in this court and waive Eleventh Amendment immunity to the extent necessary for this litigation, Alaska's motion to intervene will be granted.  Accordingly, it is hereby

ORDERED that Alaska's motion [18] to intervene be, and hereby is, GRANTED.  It is further

ORDERED that Alaska's motion [25] to stay proceedings until resolution of its motion to intervene be, and hereby is, DENIED AS MOOT.  It is further

ORDERED that defendant's motion [48] to stay consideration of plaintiff's motion for summary judgment be, and hereby is, DENIED AS MOOT.  It is further

ORDERED that plaintiff's motion [52] for an extension of due dates be, and hereby is, GRANTED nunc pro tunc.  It is further

ORDERED that Alaska's motion [58] for an order on its motion to intervene be, and hereby is, DENIED AS MOOT.  It is further

ORDERED that Alaska's motion [54] for leave to file its cross-motion for summary judgment and opposition to plaintiffs' motion for summary judgment be, and hereby is, GRANTED.  The Clerk is directed to file Alaska's opposition and cross motion attached to its motion [54] for leave to file.  It is further

- 17 -

ORDERED that plaintiffs' motion [60] for an extension of time to file an opposition or cross-motion for summary judgment or to accept Alaska's lodged summary judgment filings be, and hereby is, GRANTED.  Plaintiffs shall have until October 15, 2008 to respond to Alaska's opposition and cross-motion.  It is further

ORDERED that Alaska's motion [66] for leave to file its reply to plaintiffs' opposition to federal defendants' cross-motion for summary judgment and for an extension of time to file a reply in support of its cross-motion for summary judgment be, and hereby is GRANTED.  The Clerk is directed to file Alaska's reply attached to its motion [66] for leave to file and docket it as Alaska's reply to plaintiffs' opposition to defendant's cross-motion [55] for summary judgment.  Alaska shall have until October 30, 2008 to file its reply in support of its cross-motion for summary judgment.

SIGNED this 30th day of September, 2008.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge