UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AKIACHAK NATIVE COMMUNITY,
et al.,

              Plaintiffs,

v.

SALLY JEWELL,
Secretary of the Interior, et al.,

              Defendants,

and

THE STATE OF ALASKA,

              Intervenor.

Civil Action 06-969 (RC)

## MEMORANDUM OPINION

On March 31, 2013, the court found that the regulations governing the taking of land into trust under Section 5 of the Indian Reorganization Act, 25 U.S.C. § 465, which "do not cover the acquisition of land in trust status in the State of Alaska, except acquisitions for the Metlakatla Indian Community of the Annette Island Reserve or it[s] members," 25 C.F.R. § 151.1, thereby violate the anti-discrimination provision codified at 25 U.S.C. § 476(g). The court granted summary judgment to the plaintiffs, but withheld a ruling on the appropriate remedy. The parties have now briefed that issue; the State of Alaska and the Secretary of the Interior have also moved the court to reconsider its earlier opinion. Turning first to the motions for reconsideration, the court assumes familiarity with that opinion and the posture of this case.

Although "[m]otions for reconsideration are not specifically provided for under the Federal Rules of Civil Procedure," *United Mine Workers of Am. 1974 Pension Trust v. Pittston*

*Co.*, 793 F. Supp. 339, 344 (D.D.C. 1992), *aff'd* 984 F.2d 469 (D.C. Cir. 1993), "[i]nterlocutory orders . . . may always be reconsidered prior to final judgment."[1] *Langevine v. District of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997); *see also Schoen v. Washington Post*, 246 F.2d 670, 673 (D.C. Cir. 1957) (Burger, J.) ("[W]here the interests of justice require it, [a trial] court has plenary powers to set aside or otherwise modify its interlocutory orders at any time before final judgment."); *Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 42, 48 n.6 (D.D.C. 2001) ("[I]nterlocutory judgments are not brought within the restrictions of [Rule 60(b)], but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.") (quoting FED. R. CIV. P. 60(b) Advisory Comm. Notes (1946)). "[S]o long as the court has jurisdiction over an action, it should have complete power over interlocutory orders made therein and should be able to revise them when it is consonant with equity to do so." *Schoen*, 246 F.2d at 673 (emphasis and internal quotation marks omitted); *accord Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge.") (citing FED. R. CIV. P. 54(b)).

The State's motion for reconsideration argues that the Alaska Native Claims Settlement Act, Pub. L. No. 92-203, 85 Stat. 688, implicitly repealed the Secretary's authority to take most Alaska land into trust; from this premise it concludes that the Alaska exception to the land-into-trust regulations is mandated by statute and does not violate 25 U.S.C. § 476(g). The State thoroughly briefed this position in its motion for summary judgment, and merely reprises those arguments here. Because "a motion for reconsideration is 'not simply an opportunity to reargue

---

[1] Interlocutory orders are those which are "interim or temporary; not constituting a final resolution of the whole controversy." BLACK'S LAW DICTIONARY 889 (9th ed. 2009).

facts and theories upon which a court has already ruled,'" the State's motion will be denied. *LG Display Co. Ltd. v. Obayashi Seikou Co., Ltd.*, 2013 WL 1680038, at *1 (D.D.C. Apr. 18, 2013) (quoting *Black v. Tomlinson*, 235 F.R.D. 532, 533 (D.D.C. 2006) (internal quotation marks omitted)).

The Secretary's motion for reconsideration raises a concern that was not presented in her earlier briefs: that the court's interpretation of 25 U.S.C. § 476(g) could destabilize a number of federal programs in which, for example, tribes are treated differently from one another because their treaties confer different rights. She therefore asks the court to amend its opinion to hold that the Alaska exception to the land-into-trust regulations is void because it lacks a rational basis, and not because it violates 25 U.S.C. § 476(g).

In her summary judgment briefing, the Secretary offered two arguments that the Alaska exception is not a "regulation . . . that . . . diminishes the privileges and immunities available to a federally recognized Indian tribe relative to the privileges and immunities available to other federally recognized tribes by virtue of their status as Indian tribes." 25 U.S.C. § 476(g). First, the Secretary explained that 25 U.S.C. § 476(g) had been enacted "to clarify that section 16 of the Indian Reorganization Act was not intended to authorize the Secretary of the Department of the Interior to create categories of federally recognized Indian tribes," 140 Cong. Rec. 11,234 (1994) (statement of Sen. John McCain), and urged the court to limit its application to Section 16. The court responded that "Congress commonly enacts statutes that address more than the precise concern that gave rise to them," and that where "[n]othing in the text of 25 U.S.C. § 476(g) suggests that it is limited" to the privileges and immunities conferred by Section 16, the court would not "read such a limitation into the statute." *Akiachak Native Cmty. v. Salazar*, 2013

WL 1292172, at *12 (D.D.C. Mar. 31, 2013).[2] The Secretary's second argument was that 25 U.S.C. § 476(g) only prohibits discrimination between "similarly situated" tribes. Explaining that "'similarly situated' appears nowhere in the statutory text," the court concluded that "the Secretary cannot invent a limitation on the statute any more than [s]he could import one from the public statements of individual legislators." *Id.* at *13.

The Secretary offered no other objection to the plaintiffs' argument that the ability to submit a land-into-trust petition is a "privilege[] . . . available to other federally recognized tribes by virtue of their status as Indian tribes," 25 U.S.C. § 476(g), yet withheld from non-Metlakatlan Alaska Natives by the regulation set out in 25 C.F.R. § 151.1. And indeed, the Secretary endorsed a similar argument in the First Circuit. The plaintiffs cited her brief there at great length.

The case that became *Carcieri v. Salazar*, 555 U.S. 379 (2009), concerned the Secretary's authority to take land into trust on behalf of the Narragansett Indian Tribe. The parties challenging the land acquisition argued (as the Supreme Court ultimately held) that Section 5 only allowed the Secretary to take land into trust on behalf of Indian tribes that were under federal jurisdiction when the Indian Reorganization Act became law in 1934.[3] Before a

---

[2] It appears, moreover, that the drafters of 25 U.S.C. § 476(g) intended for it to have a broader effect than the Secretary has urged. *See* 140 Cong. Rec. 11,235 (1994) (statement of Sen. John McCain) ("I would also state that our amendment is intended to prohibit the Secretary or any other Federal official from distinguishing between Indian tribes or classifying them based not only on the [Indian Reorganization Act] but also based on any other Federal law. . . . [O]ur amendment to section 16 of the [Indian Reorganization Act] is intended to address all instances where such categories or classifications of Indian tribes have been applied and any statutory basis which may have been used to establish, ratify or implement the categories or classifications.").

[3] The parties here agree that *Carcieri* does not control this case because the Act of May 1, 1936, Pub. L. No. 74-538, § 1, 49 Stat. 1250 (codified at 25 U.S.C. § 473a), made Section 5

4

panel of the First Circuit, the Secretary argued that to hold that she lacked land-into-trust authority because the Narragansett were not under federal jurisdiction in 1934 would impermissibly "diminish the Tribe's privileges in relation to other federally recognized tribes, contrary to the IRA's plain language" in 25 U.S.C. §§ 476(f)–(g). Pls.' Mot. [Dkt. # 46], at 5 (quoting Br. for Federal Appellees at 17, *Carcieri v. Norton*, 398 F.3d 22 (1st Cir. 2005), *on reconsideration*, 423 F.3d 45 (1st Cir. 2005), *aff'd sub nom. Carcieri v. Kempthorne*, 497 F.3d 15 (1st Cir. 2007) (en banc), *rev'd sub nom. Carcieri v. Salazar*, 555 U.S. 379 (2009)). That position is unintelligible unless it concedes that the right to submit a land-into-trust petition is a privilege within the meaning of 25 U.S.C. §§ 476(f)–(g), and the Secretary has never (to this court's knowledge) disavowed it.

Nor does she exactly do so here. Although the Secretary spends much of her brief attempting to establish that 25 U.S.C. §§ 476(f)–(g) is ambiguous, she never offers to resolve that ambiguity. Instead, the Secretary urges that "Interior should be provided the opportunity to opine on the extent and reach of 476(f) and (g) in the first instance." Federal Defs.' Mot. [Dkt. # 120], at 12. She has had that opportunity many times over in this litigation. If she has not availed herself of it, that is hardly a reason for the court to refrain from construing the statute.

Yet the Secretary's argument is well taken in one limited way: the court's references to 25 U.S.C. § 476(g) as "clear," "plain," and "unambiguous" may have been too broad, and were unnecessary to its holding. *Akiachak Native Cmty.*, 2013 WL 1292172, at *12–13. The court did not attempt a complete statutory interpretation. Rather, its holding with regard to 25 U.S.C. § 476(g) was simply that 1) by its plain text the provision does more than prohibit the Secretary

---

applicable to Alaska Native tribes.

5

from distinguishing between "historic" and "created" tribes under Section 16, although that may have been Congress's chief purpose in enacting it; 2) there is no requirement that tribes be "similarly situated" for the anti-discrimination provision to apply; and 3) the Secretary has waived any other argument that the right to submit a land-into-trust petition is a not privilege within the meaning of 25 U.S.C. § 476(g). That holding does not define the "privileges and immunities available to a federally recognized Indian tribe" but rather concludes that the phrase applies here because the plaintiffs have made a reasonable argument for its applicability and the Secretary has offered only unavailing arguments to the contrary. To the extent that the court's earlier opinion suggested a broader holding, the Secretary's motion for reconsideration will be granted—but only to that extent.

Finally, the court turns to the appropriate remedy in this case. "Whether the offending portion of a regulation is severable depends upon the intent of the agency and upon whether the remainder of the regulation could function sensibly without the stricken provision." *MD/DC/DE Broadcasters Ass'n v. FCC*, 236 F.3d 13, 22 (D.C. Cir. 2001) (citing *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988)) (emphasis deleted), *reh'g denied with opinion*, 253 F.3d 732 (D.C. Cir. 2001). All parties agree that the land-into-trust regulations "could function sensibly" without the Alaska exception, the deletion of which would simply mean that the regulations applied to all of Alaska, as they do to the other forty-nine states.

As for "the intent of the agency," although the land-into-trust regulations lack a severability provision the parties also agree that there is no "substantial doubt" that the Secretary would have promulgated the remainder of those regulations without the Alaska exception. *See Davis Cnty. Solid Waste Mgmt. v. EPA*, 108 F.3d 1454, 1459 (D.C. Cir. 1997) ("Severance and

affirmance of a portion of an administrative regulation is improper if there is 'substantial doubt' that the agency would have adopted the severed portion on its own." (citing *North Carolina v. FERC*, 730 F.2d 790, 795–96 (D.C. Cir. 1984)). The regulations as originally proposed made no special mention of Alaska. *See* Land Acquisitions, 43 Fed. Reg. 32,311 (July 19, 1978). The preamble to the final regulations explained that, during the notice-and-comment period "[i]t was . . . pointed out that the Alaska Native Claims Settlement Act does not contemplate the further acquisition of land in trust status, or the holding of land in such status, in the State of Alaska, with the exception of acquisitions for the Metlakatla Indian Community," and that "consequently a sentence [was] added . . . to specify that the regulations do not apply, except for Metlakatla, in the State of Alaska." Land Acquisitions, 45 Fed. Reg. 62,034, 62,034 (Sept. 18, 1980). This is the best evidence of the intent of the agency in promulgating these regulations; it shows that the regulations were originally intended to apply to Alaska but later amended out of a concern that the Alaska Native Claims Settlement Act had affected the Secretary's authority to take Alaska land into trust outside of Metlakatla. As the court explained in its earlier opinion (and as the Secretary later concluded) that was not the case. There is no reason to think that the Secretary would have promulgated the Alaska exception if she had believed that her authority to take Alaska land into trust was unaffected by the Claims Settlement Act. And so, conversely, there is no "substantial doubt" that the agency would have adopted the remainder of the land-into-trust regulations without that exception. The court therefore concludes that the Alaska exception is severable from the remainder of the land-into-trust regulations.

The State and the Secretary both urge the court to vacate the Alaska exception and enter final judgment. The plaintiffs, however, argue that the land-into-trust regulations should be

7

remanded for curative rulemaking and the court's judgment stayed until that administrative process is complete. "The decision whether to remand or vacate 'depends on (1) the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and (2) the disruptive consequences of an interim change that may itself be changed.'" *Milk Train , Inc. v. Veneman*, 310 F.3d 747, 755–56 (D.C. Cir. 2002) (quoting *Allied-Signal Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)). For the reasons set out in the court's earlier opinion, the deficiencies of the Alaska exception are fatal; the Secretary could not promulgate it again on remand. Where there is "no doubt that the agency chose incorrectly," and the "'fundamental flaws'" in its approach "'foreclose [the agency] from promulgating the same [rule] on remand,'" vacatur rather than remand is the appropriate remedy. *EME Homer City Generation, L.P. v. EPA*, 696 F.3d 7, 37 (D.C. Cir. 2012) (quoting *North Carolina v. EPA*, 531 F.3d 896, 929 (D.C. Cir. 2008)). Although the plaintiffs argue that vacatur would be extremely disruptive, that potential disruptiveness is only relevant if there is a realistic possibility that the agency will be able to justify the present rule on remand. *Compare Se. Ala. Med. Ctr. v. Sebelius*, 572 F.3d 912, 920 (D.C. Cir. 2009) ("We . . . remand this issue for [the agency] to provide an adequate explanation, if it can."), *with Natural Res. Def. Council v. EPA*, 571 F.3d 1245, 1279 (D.C. Cir. 2009) ("Because the flaws in this part of the [rule] cannot be remedied by further explanation by [the agency], it must be vacated.").[4]

---

[4] In the Secretary's main brief on remedies, she suggests that "[i]f the Court sets aside the Alaska exception, Interior believes the remainder of the Part 151 regulations could apply in Alaska." Defs.' Remedy Br. [Dkt. # 118], at 7 n.4. As the plaintiffs note, the Secretary had previously taken the position that the land-into-trust regulations would require amendment to account for circumstances particular to Alaska. *See* Defs.' Supplemental Br. [Dkt. # 101], at 10 ("[I]f or when regulations might be amended or promulgated to provide a process and decisional criteria for the exercise of the discretion to acquire land in trust for Alaska Natives, such action would . . be entrusted to the Secretary 'in h[er] discretion.'"); Defs.' Supplemental Reply Br.

The court will therefore sever and vacate the final sentence of 25 C.F.R. § 151.1 in a separate order. *See* 25 C.F.R. § 151.1 ("These regulations do not cover the acquisition of land in trust status in the State of Alaska, except acquisitions for the Metlakatla Indian Community of the Annette Island Reserve or it[s] members.").

Rudolph Contreras<br>
United States District Judge

Date: September 30, 2013

---

[Dkt. # 108], at 13 (arguing that the Secretary "has the authority to take Native lands in Alaska into trust status, *if additional proposed rulemaking is completed*" (emphasis added)). The plaintiffs argue that, in accordance with the Secretary's earlier position, "[a] remand is necessary . . . so that the regulation can be revised . . . to incorporate processes for decisional criteria for the exercise of the Secretary's discretion to acquire trust land in Alaska." Pls.' Reply Br. [Dkt. # 124] at 5. They suggest that to simply vacate the Alaska exception would allow the Secretary "to promulgate a new rule in the footnote of a legal brief." *Id.* at 7. But it is not the Secretary who has altered the land-into-trust regulations. Rather, the plaintiffs have challenged the Alaska exception and prevailed, and all parties agree that the exception is severable from the remainder of the regulations. The court concurs, and will therefore sever it. If the Secretary decides to amend the regulations in light of the court's decision, the plaintiffs will of course have notice and the opportunity to comment. And if the Secretary decides not to do so, the plaintiffs would be free to petition for a rule-making and to challenge any denial of their petition. The Secretary may have changed her view as to whether further rule-making is needed, but that is no argument against severing a single sentence from a rule that would have been promulgated and will function sensibly without it. Nor is it an argument in favor of remanding the Alaska exception when there is "no doubt that the agency chose incorrectly" in promulgating it. *EME Homer City*, 696 F.3d at 37.