UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| AKIACHAK NATIVE COMMUNITY, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 06-0969 (RC) |
| | : | | |
| v. | : | Re Document No.: | 139 |
| | : | | |
| SALLY JEWELL, | : | | |
| Secretary of the Interior, *et al.* | : | | |
| | : | | |
| Defendants. | : | | |
| | : | | |
| and | : | | |
| | : | | |
| STATE OF ALASKA, | : | | |
| | : | | |
| Defendant-Intervenor | : | | |

**MEMORANDUM OPINION & ORDER**

**GRANTING IN PART AND DENYING IN PART ALASKA'S MOTION TO STAY PENDING APPEAL**

**I. INTRODUCTION**

This case involved a challenge by certain Alaskan Native Tribes ("Tribes") to a regulation promulgated by the Secretary of the Interior ("Secretary") regarding taking land into trust on behalf of all Indian Tribes, 25 C.F.R. § 151.1, pursuant to section 5 of the Indian Reorganization Act, 25 U.S.C. § 465. *See Akiachak Native Cmty. v. Salazar*, 935 F. Supp. 2d 195, 197 (D.D.C. 2013). Now pending before the Court is the State of Alaska's (hereinafter referred to as "Alaska") Motion for a Stay and Injunction pending appeal of the Court's September 30, 2013 Order in the D.C. Circuit. *See* ECF No. 139. For the reasons that follow, the Court will grant in part and deny in part Alaska's Motion.

## II.  PROCEDURAL BACKGROUND

This case involved a challenge to a regulation promulgated by the Secretary, governing the procedures for the United States to take land into trust for individual Indians and tribes, 25 C.F.R. § 151.1.  This Court concluded on March 31, 2013, that the Alaska exception within the rule was arbitrary and capricious and violated the Indian Reorganization Act ("IRA"), 25 U.S.C. § 476(g).  *See* Mem. Op. 23–25, ECF No. 109.  Though the Court granted the plaintiffs' motion for summary judgment, it ordered the parties to submit supplemental briefs discussing whether the Alaska exception contained in 25 C.F.R. § 151.1 could be severed from the remainder of the land into trust regulatory scheme.  *See* Order 2, ECF No. 115.  After considering those supplemental briefs, the Court concluded that the last sentence could be severed from the remainder of the regulation, and that vacatur of that final sentence—the Alaska exception—was warranted.  *See* Mem. Op. 8–9, ECF No. 130.  The Court accordingly entered an order that severed and vacated the final sentence of 25 C.F.R. § 151.1 from the regulation—which provided that "[t]hese regulations do not cover the acquisition of land in trust status in the State of Alaska, except acquisitions for the Metlakatla Community of the Annette Island Reserve or it[s] members."  *See* Order 1, ECF No. 131.  As such, the current status quo is that there is no Alaska exception to the land into trust regulations, 25 C.F.R. § 151.1.  The case is currently on appeal in the D.C. Circuit.  *See* Notice of Appeal, ECF No. 132.[1]

Meanwhile, on April 30, 2014, the Bureau of Indian Affairs ("BIA") published a Proposed Rule, proposing to formally remove the Alaska exception from 25 C.F.R. § 151.1, and begin considering the acquisition of lands into trust on behalf of Alaska Native Tribes and

---

[1] On June 18, 2014, the D.C. Circuit dismissed the Department of the Interior's appeal.  *See* ECF No. 144.  As such, only the State of Alaska's case remains on appeal before the D.C. Circuit.

2

individuals. *See* Proposed Rule, Land Acquisitions in the State of Alaska, 79 Fed. Reg. 24,648, 24,649 (May 1, 2014). On May 9, 2014, Alaska filed a motion for a Stay and Injunction pending appeal in this case. *See* ECF No. 139. Alaska specifically asks this Court to stay its September 30, 2013 Order and to "enjoin the Secretary's rulemaking activities, including accepting comments on the recently proposed rule, and enjoin the Secretary from accepting and processing applications to take land into trust for Alaska tribes, pending resolution of the appeal." *See* Alaska's Mot. Stay 3, ECF No. 139. Because the Court concludes that the Proposed Rule and the process of accepting applications for taking land into trust does not constitute irreparable harm, it will deny Alaska's motion to enjoin the Secretary from engaging in those activities. However, because the Court concludes that irreparable harm to Alaska will result if the Secretary is permitted to actually take land into trust for Alaskan tribes, it will grant Alaska's motion on that ground, and enjoin the Secretary from taking land into trust pending disposition of the appeal in the D.C. Circuit.[2]

### III. ANALYSIS

#### 1. Factors to consider on a Motion to Stay

Alaska asks this Court to "stay its decision and enjoin the Secretary's rulemaking activities, including accepting and processing applications to take land into trust for Alaska tribes, pending resolution of the appeal." *See* Alaska's Mot. Stay 6. Under Federal Rule of Civil Procedure 62(c), "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." *See* FED. R.

---

[2] The Court's ruling today does not apply to the Metlakatla Indian Community of the Annette Island Reserve or its members, as they were an exception to the Alaska exception that the Court severed. *See* 25 C.F.R. § 151.1; 79 Fed. Reg. 24, 648, 24,649.

3

CIV. P. 62(c). In the D.C. Circuit, a court assesses four factors when considering a motion to stay and injunction pending appeal: (1) the moving party's likelihood of success on the merits of its appeal, (2) whether the moving party will suffer irreparable injury, (3) whether issuance of the stay would substantially harm other parties in the proceeding, and (4) the public interest. *See Wash. Met. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *accord Mylan Labs. Inc. v. Leavitt*, 495 F. Supp. 2d 43, 46 (D.D.C. 2007); *Shays v. FEC*, 340 F. Supp. 2d 39, 44 (D.D.C. 2004). "[I]t is the movant's obligation to justify the court's exercise of such an extraordinary remedy [as a stay]." *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985).

Before the Supreme Court decided *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008), the four factors for a stay and injunctive relief were analyzed on a sliding scale. *See, e.g.*, *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) ("Before *Winter*, this court and others had allowed that a strong showing on one factor could make up for a weaker showing on another."); *Cuomo*, 772 F.2d at 974 ("[A] movant need not always establish a high probability of success on the merits. Probability of success is inversely proportional to the degree of irreparable injury evidenced. A stay may be granted with either a high probability of success and some injury, or *vice versa*."). Since *Winter*, however, it is unclear whether the likelihood of success on the merits factor is a threshold inquiry that must be addressed before the other factors. As the D.C. Circuit recently explained, "[i]n this circuit, it remains an open question whether the 'likelihood of success' factor is an 'independent, free-standing requirement,' or whether, in cases where the three other factors strongly favor issuing an injunction, a plaintiff need only raise a 'serious legal question' on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014) (quoting *Sherley*, 644 F.3d at 393, 398); *accord Kingman Park Civic Ass'n v. Gray*, 956 F. Supp.

2d 230, 241 (D.D.C. 2013) ("Recently, the continued viability of [the sliding scale] approach has been called into some doubt, as the United States Court of Appeals for the District of Columbia Circuit has suggested, without holding, that a likelihood of success on the merits is an independent, free-standing requirement for a preliminary injunction."); *Guttenberg v. Emery*, No. 13-2046, 2014 WL 1100982, at *8 (D.D.C. Mar. 19, 2014) ("The D.C. Circuit has noted this issue, but it has not yet decided whether the sliding-scale analysis made it through the *Winter*."). Given the uncertainty, courts in this jurisdiction have continued to analyze motions for preliminary injunctions under the sliding scale approach, because "[i]f a plaintiff cannot meet the less demanding sliding scale standard, then it cannot satisfy the more stringent standard alluded to by the Court of Appeals." *See Kingman Park Civic Ass'n*, 956 F. Supp. 2d at 241; *Guttenberg*, 2014 WL 1100982, at *9 ("Whether or not *Winter* spelled the end of the sliding-scale analysis, one thing is clear: plaintiffs here must at least demonstrate that irreparable injury is *likely* in the absence of an injunction.") (emphasis in original). As such, this Court will also proceed by analyzing the factors on a sliding scale, absent contrary binding authority from the D.C. Circuit. Therefore, "[t]he motion to stay may be granted when a 'serious legal question is presented, when little if any harm will befall other interested persons or the public, and when denial of the order would inflict irreparable injury on the movant.'" *Shays*, 340 F. Supp. 2d at 45 (quoting *Wash. Metro. Area Transit Comm'n*, 559 F.2d at 844).

### 2. Application of the Four Factors

*a. Likelihood of success on the merits*

With respect to the first factor, Alaska argues that it is likely to prevail on the merits of its appeal, arguing that the Court's decision misapprehends the comprehensive nature of the Alaska Native Claims Settlement Act, misapprehends the reasons Congress did not repeal the land-to-

5

trust statute, and does not give appropriate weight to the Supreme Court's decision in *Alaska v. Native Village of Venetie*, 522 U.S. 520 (1998). *See* Alaska's Mot. Stay 8. Meanwhile, the plaintiffs and the Secretary argue that this is Alaska's third time making these arguments to this Court, and a party offering a "regurgitation of rejected arguments," cannot establish a likelihood of success on the merits. *See Shays*, 340 F. Supp. 2d at 46.[3] For the third time, the Court remains unconvinced of Alaska's position, for the reasons stated in its Memorandum Opinion granting the plaintiffs' motion for summary judgment and its Memorandum Opinion denying defendants' motions for reconsideration. *See* Mem. Op., ECF No. 109, Mem. Op. 2–3, ECF No. 130.

However, as the D.C. Circuit has explained, a movant "need not establish an absolute certainty of success [on the merits]: It will ordinarily be enough that the [movant] has raised serious legal questions going to the merits, so serious, substantial, difficult as to make them a fair ground of litigation and thus for more deliberative investigation." *Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986) (quoting *Wash. Metro. Area Transit Comm'n*, 559 F.2d at 844). Though the Court disagrees with Alaska's position, and finds there to be a low likelihood of success on the merits, it recognizes that the case presented difficult and substantial legal questions regarding the balance between federal and state regulation of Indian land, and that its decision was at times, a close one. *See, e.g.*, Mem. Op. 18, ECF No. 109 ("There may be a tension between ANCSA's elimination of most trust property in Alaska and the Secretary's

---

[3] In the Memorandum Opinion disposing of Alaska's and the Secretary's Motions for Reconsideration, the Court acknowledged and analyzed a new argument raised *by the Secretary*, regarding how the Court's decision regarding its interpretation of 25 U.S.C. § 476(g) could destabilize other federal programs regarding Indian tribes. *See* Mem. Op. 3–6, ECF No. 130. In response, the Court limited its holding so as not to be susceptible to a broad, sweeping interpretation. *Id.* at 6. Those were the only new arguments raised in the motions for reconsideration, however, and are not at issue here because the Secretary does not ask for a stay of the Court's order—the State of Alaska does—and in fact, opposes Alaska's requested relief.

authority to create new trust land, but a tension is not an 'irreconcilable conflict.'"). And given the extensive, ever-changing nature of the federal government's role in tribal land trust affairs, it is entirely possible that the D.C. Circuit will disagree with this Court's position on the regulation. *See, e.g.*, *Akiachak*, 935 F. Supp. 2d at 203–204 (explaining the chronology of the land into trust statutes and regulations in Alaska, and noting that "[a]fter many ambiguous pronouncements and years of internal debate, the Secretary now agrees" that his authority to take Alaska land into trust survived ANSCA); *see also* Pls.' Opp'n Mot. 12 n.56, ECF No. 140 (explaining that because the Secretary's position has changed so frequently over the years, "Plaintiffs have been here before"). Alaska has thus raised "serious legal questions going to the merits, so serious, substantial, difficult as to make them a fair ground of litigation." *Population Inst.*, 797 F.2d at 1078. Given this, and given that, in certain respects, the other factors weigh heavily in favor of Alaska, the Court finds that Alaska's low likelihood of success on the merits is not fatal to its motion for a stay and injunction.

### b. Irreparable Harm

The more probing inquiry in this stay analysis pertains to the degree of injury evidenced by Alaska, which could be great. There are several actions taken by the Secretary that Alaska argues could cause it irreparable harm: (1) the rulemaking itself,[4] officially eliminating the

---

[4] The Secretary and plaintiff Tribes both make arguments that Alaska cannot challenge the Proposed Rule in this Court, invoking a variety of different theories. *See* Fed.-Def.'s Opp'n Mot. 3–6; Pls.' Opp'n Mot. 10–14. Specifically, they argue that any challenge to the Proposed Rule is beyond the scope of the complaint, is not ripe, was not properly exhausted, and does not represent final agency action capable of being challenged under the APA. The Court need not decide all of these issues because, as set forth above, the Proposed Rule itself does not cause Alaska irreparable harm. Even if it did, however, the Court doubts that any challenge to the Proposed Rule would be ripe for judicial review. *See Ctr. for Auto Safety v. Nat. Highway Traffic Safety Admin.*, 710 F.2d 842, 846 (D.C. Cir. 1983) (noting that "the issuance of a notice of proposed rulemaking . . . often will not be ripe for review because the rule may or may not be adopted or enforced"); *see also Action on Smoking & Health v. Dep't of Labor*, 28

Alaska exception from the land into trust regulations in light of this Court's September 30, 2013 Order; (2) the Secretary's accepting of applications by Indian tribes to take land into trust; and (3) actually taking Alaskan land into trust. The D.C. Circuit has explained that in order to show irreparable injury, "the injury must be both certain and great; it must be actual and not theoretical. Injunctive relief 'will not be granted against something merely feared as liable to occur at some indefinite time.'" *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985); *see also Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("The moving party must show the injury complained of is of such *imminence* that there is clear and present need for equitable relief to prevent irreparable harm.") (emphasis in original).[5] The Court analyzes each potential action in turn.

1. Rulemaking

Here, the Proposed Rule and rulemaking process do not cause Alaska irreparable harm. The comment period is open until June 30, 2014; after that period closes, the Secretary will begin

---

F.3d 162, 164–65 (D.C. Cir. 1994) (finding that OSHA's notice of proposed rulemaking was not ripe for judicial review); *Belmont Abbey Coll. v. Sebelius*, 878 F. Supp. 2d 25, 39 (D.D.C. 2012) (holding that an advance notice of proposed rulemaking rendered a challenged rule "not sufficiently final to satisfy the fitness prong of the ripeness inquiry").

[5]     The Secretary argues that Alaska has "slept on its rights" by waiting eight months to move for a stay of the Court's September 30, 2013 Order. *See* Fed.-Def.'s Opp'n Mot. 8, ECF No. 141. The Court does not agree. Alaska acted almost immediately after the Secretary announced that it would issue a new rule officially deleting the Alaska exception to the land into trust regulations. Specifically, the Proposed Rule was published on May 1, 2014, and the State of Alaska moved for a stay and injunction on May 9, 2014. As Alaska represented to the Court, "[u]ntil the Secretary announced a rulemaking effort focused only on removing the Alaska exception from the land into trust regulations, there was no indication that the Secretary intended to take land into trust while her ability to do so was still being litigated." *See* Alaska's Reply 12–13, ECF No. 143. If anything, this factor cuts in Alaska's favor because it shows that the Secretary is initiating the first steps of taking land into trust by engaging in the rulemaking (even though, it arguably does not need to, given the Court's September 30, 2013 Order already vacating the final sentence at issue), and that the Secretary plans on moving forward with the process of considering applications to take land into trust, thus showing that there is a "clear and present need for equitable relief to prevent irreparable harm." *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

reviewing the comments, and issue a final rule. But as the plaintiffs "begrudgingly note . . . [,] even after engaging in the rulemaking process, there is no guarantee the Secretary will actually develop a final rule on Alaska trust lands." *See* Pls.' Opp'n Mot. 12 n.56. It is entirely possible that the Secretary never issues a final rule, and even if she does, the issuance of the final rule itself will not result in irreparable harm to Alaska, because there are several other steps that need to take place before the Secretary can actually take land into trust. *See* 25 C.F.R. §§ 151.9–151.12. Importantly, Alaska does not argue that the Proposed Rule or the rulemaking process itself will cause it irreparable harm, but focuses on the land being taken into trust as the basis for irreparable harm. *See* Alaska's Mot. Stay 6, 21–24; Alaska's Reply 12–14, ECF No. 143. Because the rulemaking process marks such a preliminary step, and one with limited consequences as this Court has already severed the Alaska exception to the land into trust regulations, the rulemaking process does not cause Alaska irreparable harm and therefore, the Court will not enjoin the Secretary from continuing that activity.

2. Application process

The process of accepting and reviewing applications to take land into trust also does not cause Alaska irreparable harm because there are so many regulatory procedures involved in that process that merely accepting and reviewing applications would not result in land being directly taken into trust. For instance, in this case, once a final rule is published (or possibly even without a final rule being published, in light of the Court's September 30, 2013 Order), an Indian or tribe may file an application for approval of taking land into trust with the Secretary. *See* 25 C.F.R. § 151.9. After the Secretary receives that application, it must notify the state and local governments having jurisdiction over the land, and give that government 30 days to provide written comments to the possible acquisition (the exact procedure differs depending on whether

9

the land is an on-reservation or off-reservation acquisition). *See* 25 C.F.R. §§ 151.10, 151.11(d). Then, the Secretary reviews each applicant's request and issues a written decision. *See id.* § 151.12(b). Only *after* the Secretary has issued a decision does she actually "acquire the land in trust." *See id.* § 151.12(c)(2)(i)–(iii) ("If the Secretary or Assistant Secretary approves the request, the Assistant Secretary shall [p]romptly provide the applicant with the decision; [p]romptly publish in the Federal Register a notice of decision to acquire land in trust under this part; and [i]mmediately acquire the land in trust . . . ").[6] Again, Alaska does not argue that

---

[6] In one sentence in its opposition, the Secretary argues that any harm to Alaska is not irreparable because "[i]f a State still disagrees with the decision [made by the Secretary], it may challenge Interior's decision to take a specific parcel into trust through an administrative appeal or in federal district court." *See* Fed.-Def.'s Opp'n Mot. 5. The Secretary cites two cases: *New York v. Jewell*, No. 6:08-CF-0644 (N.D.N.Y. 2008), and *South Dakota v. Acting Great Plains Reg'l Dir.*, 49 IBIA 129 (2009), which became *County of Charles Mix v. Dep't of Interior*, 799 F. Supp. 2d 1027 (D.S.D. 2011). In those cases, a state government (New York) and a state government (South Dakota) and county government (Charles Mix County in South Dakota), respectively, challenged Interior's decisions to take land-into-trust for certain tribes. From these cases and from the Court's reading of the 25 C.F.R. § 151 regulations, it would appear that any decision regarding an application to take land into trust could ultimately be litigated in federal court (1) because other state governments have done so and (2) the land-into-trust regulations allow for it. *See* 25 C.F.R. § 151.12(c) ("A decision made by the Secretary, or the Assistant Secretary—Indian Affairs pursuant to delegated authority, is final agency action under 5 U.S.C. § 704 upon issuance.").

The federal government's argument on this point, however, is half-hearted; and the Court's own reading of the regulations in the absence of anything heartier from the government does not persuade the Court that the state's ability to litigate a Department decision renders the harm reparable. Once the Secretary issues a final decision on a particular application, it must "[p]romptly provide the applicant with the decision; [p]romptly publish in the Federal Register a notice of decision to acquire land under this part; and [i]*mmediately acquire the land in trust* under § 151.14 on or after the date such decision is issued and upon fulfillment of the requirements of § 151.13 and any other Departmental requirements." 25 C.F.R. § 151.12(c)(2)(i)–(iii) (emphasis added). The regulations do not spell out the timelines in which all these events must occur, but it appears to the Court that any litigation of a parcel-into-trust decision would result in a race between the State (to the courthouse to file for an injunction) and Interior (to "immediately acquire the land"). And even if the State could pursue litigation immediately, the ensuing litigation could still cause chaos over clouded title to land in Alaska— the exact irreparable harm Alaska seeks to prevent. Without more specific information from the Secretary as to how the State's ability to litigate a parcel-into-trust determination makes the harm

10

accepting applications or reviewing them will cause it irreparable harm, but focuses on the land being taken into trust as the basis for irreparable harm. *See* Alaska's Mot. Stay 6, 21–24; Alaska's Reply 12–14. The accepting and reviewing of applications to take land into trust does not result in irreversible turning points, but rather marks the preliminary steps to begin considering the taking of land into trust. As such, Alaska will not be irreparably harmed absent an order enjoining such activities.

3. Taking Land into Trust

Once the Secretary reaches a decision, however, and takes the land into trust, the harm to Alaska at that point becomes irreparable. Alaska argues that once land is actually taken into trust, "[c]reating new trust land in Alaska would impinge upon state sovereignty by transferring primary jurisdiction over land taken into trust from the state to the federal government and the affected Indian tribe." Alaska's Mot. Stay 19. In addition, land taken into trust "could greatly compromise the State's ability to manage its fish and game resources, enforce state alcoholic beverage control laws, protect the environment, tax, provide public services, and ensure public safety." *See id.* Finally, Alaska states that its interest in maintaining the terms of the Alaska Native Claims Settlement Act would be compromised if the land into trust regulations are applied in Alaska. *See id.* at 23–24.

The plaintiffs in turn argue that Alaska has not shown that it will suffer an imminent injury such that a stay is needed to prevent irreparable harm, because there is no final rule in effect yet, and without a final rule and several other intermediary steps taking effect, the Secretary will not begin taking land into trust. *See* Pls.' Opp'n Mot. 6–7. Meanwhile, the

---

here reparable, the Court will not entertain this argument as a basis to deny Alaska injunctive relief.

11

Secretary argues that Alaska has "slept on its rights" by not bringing this emergency motion sooner—given that the Court's order eight months ago "opened the possibility of Interior taking land into trust." *See* Fed.-Def.'s Opp'n Mot. 8, ECF No. 141. As such, the Secretary continues, Alaska has not shown that there is an imminent injury here.

The Court finds that Alaska has the stronger argument. Irrespective of the final rule taking effect, the Court's order "opened the possibility," as the Secretary readily admits, that the Secretary could begin the process of taking land into trust in Alaska pursuant to the pre-existing land into trust regulations. Given that the Court severed the Alaska exception, there is arguably nothing to stop the Secretary from taking land into trust in Alaska prior to the D.C. Circuit deciding this case. To be sure, the Assistant Secretary for Indian Affairs at the Department of the Interior has represented to the Court that he will not begin accepting applications for taking land into trust until a final rule is published. *See* Washburn Decl. ¶ 8, ECF No. 141-1. However, even operating under that assumption, it is entirely possible that the BIA publishes a final rule before the D.C. Circuit issues an opinion in this case, and that the Secretary will then begin the process of taking land into trust before a decision is issued on appeal.[7] As such, a stay is necessary to prevent the irreparable harm to state sovereignty and state management of land that will befall Alaska if state land begins to be taken into trust for the Tribes. *See Int'l Snowmobile Mfrs. Ass'n v. Norton*, 304 F. Supp. 2d 1278, 1287 (D. Wyo. 2004) (recognizing that, *inter alia*, infringement on Wyoming's state sovereignty in managing its trails and fish populations caused by a federal regulation constituted irreparable harm, and ultimately granting a preliminary injunction on that and other grounds).

---

[7] Public comment on the Proposed Rule concludes on June 30, 2014. *See* 79 Fed. Reg. 24,648, 24,648. But as of today, from the Court's examination of the appeals docket, No. 13-5360, it does not appear that a briefing schedule has even been set by the Circuit.

### c. Other parties

The potential harm suffered by other parties also weighs heavily in favor of Alaska. Alaska argues first that the plaintiff Tribes will suffer no harm if this Court preserves the status quo, because if the Tribes prevail in the litigation, the only harm they will suffer will be a delay in their ability to have land taken into trust for them. And if they do not ultimately prevail in the litigation, the stay will have no effect on them—as land will not be able to be taken into trust for them at all if Alaska wins its appeal. *See* Alaska's Mot. Stay 24. As to the federal government, Alaska argues that maintaining the status quo pending appeal similarly will not harm the Secretary because its rulemaking activities may be delayed, but not impaired. On the other hand, if a stay is not granted, Alaska argues that the Secretary will waste substantial resources by beginning to take land into trust and having to undo that work if the Alaska exception is then ultimately restored. *See id.* at 24–25.

Meanwhile, the Secretary argues that "[t]he harm to the United States and Alaska tribes of granting Alaska's request is concrete and clear." *See* Fed.-Def.'s Opp'n Mot. 14. However, the Secretary does not specifically identify any harm to the United States or the Alaska tribes, but rather explains that Indian tribe self-governance may be impeded if the Secretary is prevented from taking land into trust on behalf of the Tribes. *See id.* at 12–13. And the plaintiffs argue that "imposing indefinite delays on the rulemaking process will cause harm to the Tribes and tribal citizens of Alaska who have been wrongfully excluded from the land into trust process since the Alaska exception was promulgated in 1980." *See* Pls.' Opp'n Mot. 9.

The Court agrees with Alaska on this prong. Alaska would likely suffer irreparable harm if the Court did not enjoin determinations to take land into trust. As Alaska aptly argues, "all parties will suffer harm because title to all of the new trust acquisitions would be clouded," if the

Secretary were allowed to take land into trust, only for that process to be potentially undone by the circuit court's forthcoming decision. *See* Alaska's Mot. Stay 25; *see also* Alaska's Reply 15 ("[T]his harm would be in the form of the clouded title on all new trust acquisitions in the state, and the inevitable uncertainty and litigation this situation would create. *Quite simply, the creation of trust land in Alaska would be a very difficult bell to un-ring*.") (emphasis added). Any delay caused to the plaintiff Tribes while the Court's order is stayed will not be indefinite but will only last through the pendency of appeal. Moreover, any delay caused to the plaintiff Tribes does not outweigh the deleterious effect that confusion and chaos will have on all parties involved if title to the land in trust becomes clouded. And any such delay will be minimized, given that the Court will allow the rulemaking and application process to go forward, and will only enjoin the Secretary from actually taking parcels into trust, that can be acted on quickly if the D.C. Circuit issues a decision affirming this Court.

In sum, all the parties would have expended a tremendous amount of time, energy, and resources engaging in the process of taking land into trust, to only have the Alaska exception restored if the D.C. Circuit disagrees with this Court. All parties would be harmed by any confusion and ensuing litigation created by attempts to undo the land into trust determinations. In order to make the process as efficient as possible, and to reduce any confusion as to land title in Alaska, the Court believes that the harm to all the parties weighs in favor of issuing a partial injunction here.

### d. Public Interest

As to the public interest prong, Alaska argues that "the public interest would be seriously jeopardized if new trust land is created in Alaska but the Alaska exception in the land into trust regulations is affirmed on appeal, thus voiding trust land acquisitions and administrative

14

decisions that occurred in the interim." Alaska's Mot. Stay 25. The plaintiffs do not really address this argument, but instead focus on the public interest as it relates to the rulemaking process, noting that even if the rulemaking process is completed, that "does not guarantee that a single acre of land will be placed into trust." *See* Pls.' Opp'n Mot. 9. Similarly, the Secretary does not address Alaska's argument directly, instead arguing that taking land into trust serves an important public interest, including furthering Indian self-government, and securing tribal homelands. *See* Fed.-Def.'s Opp'n Mot. 12–13.

The Court again finds that Alaska has the stronger argument. There is a public interest in having certainty over title to land in Alaska maintained. *See, e.g.*, *Entek GRB, LLC v. Stull Ranches, LLC*, 885 F. Supp. 2d 1082, 1096 (D. Colo. 2012) ("The public interest is best served when established contract and property rights are enforced."); *Barbosa v. Solomon*, 243 B.R. 562, 567 (D. Mass. 2000) (explaining that public policy interests include "certainty of land titles in the marketplace"). As set forth above, if the Secretary were able to take land into trust pending the outcome of the appeal, and the D.C. Circuit reversed this Court's decision, title to land in Alaska would be clouded at best, and ensuing litigation would likely require energy and expense from the federal government, the State of Alaska, and all native tribes involved. Such confusion over land title is not in the public interest, and as such, the public interest favors a partial injunction pending appeal.

## IV. CONCLUSION

For the foregoing reasons, the Court will GRANT IN PART Alaska's motion for an injunction by enjoining the Secretary from taking any land into trust in Alaska, pending the outcome of the appeal. The Court's ruling does not apply to the pre-existing exception for the

Metlakatla Indian Community of the Annette Island Reserve or its members.  25 C.F.R. § 151.1; *see also* 79 Fed. Reg. 24,648, 24,649.

Accordingly, it is hereby ORDERED that Alaska's motion for a stay and injunction pending appeal (ECF No. 139) is GRANTED IN PART AND DENIED IN PART.  It is further ORDERED that the Secretary of the Interior is hereby ENJOINED from taking land into trust in Alaska (except for the Metlakatla Indian Community of the Annette Island Reserve or its members, as set forth above) until the D.C. Circuit issues a ruling and mandate resolving Alaska's appeal.

SO ORDERED.

Dated:  June 26, 2014                                                                        RUDOLPH CONTRERAS
                                                                                                               United States District Judge